**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation, | Case No. 1:15-cv-1364 |
| | MDL No. 2602 |
| | Judge Amy J. St. Eve |
| Related to: All Actions | |

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

1.      Plaintiffs (listed in this complaint) on behalf of themselves and all others similarly situated, by and through undersigned counsel, allege as follows:

**NATURE OF CASE**

2.      Outdoor wooden decks and similar structures typically require periodic upkeep as they are exposed to the elements and to surface contact. Traditionally, that upkeep consists of applying a paint or stain. Recently, homeowners have been advised that a "better" option exists by way of a deck resurfacer that purports to last longer and otherwise extend the life of a deck. These products, including the product at issue here, are marketed as superior and lower-maintenance alternatives to traditional deck paints and stains.  Consequently, consumers are willing to pay more for them.

3.      Defendant Rust-Oleum Corporation ("Defendant") manufactures a line of these deck resurfacers and aggressively markets them to consumers as being superior to paints and stains and thus worth the extra money. Defendant's product name "Restore," conveys that its resurfacers can actually repair deck surfaces and thus extend their life for a "lifetime." This lawsuit concerns Defendant's past and present deceptive marketing of its "Deck & Concrete

Restore" and "Restore 10X" resurfacer products (collectively "Restore"). Defendant markets Restore as lasting "as long as you own or reside in your home," and each package of Restore displays prominent language claiming Restore will end the traditional cycle of repainting, restaining, and replacing deck surfaces.

4.      As class members have now discovered, Restore does not live up to Defendant's promises and affirmative representations regarding the product. Rather than providing years of protection, Restore actually commences to peel and deteriorate in a short time period. Furthermore, not only is the product deteriorating at rapid pace, but soon consumers discover that if not removed, the product fails to protect the deck itself. As a result, even after proper application, damage will result to class members' decks. Thus, instead of ending the cycle of repainting and replacing, Restore hastens it. Class members have and will continue to expend considerable costs and time in attempts to repair the problems, but will likely end up with having to pay for a total replacement of the product and the deck itself at some point. At the same time, Defendant has insisted that it will only refund the purchase price or replace the product itself.

5.      Plaintiffs bring this class action suit to compel Defendant to halt its unlawful conduct and to provide remuneration to all of those affected as a result of the failure of the product. As alleged in detail, Defendant's conduct violates the Magnuson-Moss Warranty Act and state consumer protection and false advertising laws, breaches express and implied warranties, and constitutes negligent misrepresentation and fraudulent concealment. Given the lack of compensation to class members, and the cost of litigating these claims against this company alone, this class action may be the only remedy for justice to the class members and to remedy an obvious wrong.

## JURISDICTION AND VENUE

6.  This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and (d), because the amount in controversy exceeds $5,000,000.00 exclusive of interest and costs, and more than two-thirds of the members of the proposed class are citizens of states different from that of Defendant.

7.  This Court has jurisdiction under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, because the amount in controversy exceeds $50,000.00 exclusive of interest and costs. Furthermore, the class consists of more than 100 plaintiffs, and this Court has jurisdiction under the Class Action Fairness Act of 2005.

8.  Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district. Defendant is an Illinois corporation with its principal place of business in this District. Furthermore, the JPML panel transferred complaints pending in other jurisdictions to this Court for pretrial adjudication.

## PARTIES

**Plaintiffs**

9.  Plaintiff Angelita Hickman is a resident and citizen of the State of Alabama and has standing to pursue the claims of the class, as more fully defined below.

10.  Plaintiff Michael Reyes is a resident and citizen of the State of Alabama and has standing to pursue the claims of the class, as more fully defined below.

11.  Plaintiff Charles Hoff is a resident and citizen of the State of California and has standing to pursue the claims of the class, as more fully defined below.

12.     Plaintiff Michael Baden is a resident and citizen of the State of Colorado and has standing to pursue the claims of the class, as more fully defined below.

13.     Plaintiff Jerry Lautigar is a resident and citizen of the State of Colorado and has standing to pursue the claims of the class, as more fully defined below.

14.     Plaintiff John Malloy is a resident and citizen of the State of Delaware and has standing to pursue the claims of the class, as more fully defined below.

15.     Plaintiff Hans Shanks is a resident and citizen of the State of Florida and has standing to pursue the claims of the class, as more fully defined below.

16.     Plaintiff Layla Patterson is a resident and citizen of the State of Georgia and has standing to pursue the claims of the class, as more fully defined below.

17.     Plaintiff Debra Dockstader is a resident and citizen of the State of Idaho and has standing to pursue the claims of the class, as more fully defined below.

18.     Plaintiff Season Gomez is a resident and citizen of the State of Idaho and has standing to pursue the claims of the class, as more fully defined below.

19.     Plaintiff Conrad Shogren is a resident and citizen of the State of Illinois and has standing to pursue the claims of the class, as more fully defined below.

20.     Plaintiff David and Kathleen Sullivan are residents and citizens of the State of Illinois and have standing to pursue the claims of the class, as more fully defined below.

21.     Plaintiff Tracy McCoy is a resident and citizen of the State of Indiana and has standing to pursue the claims of the class, as more fully defined below.

22.     Plaintiff Cory Fales is a resident and citizen of the State of Maine and has standing to pursue the claims of the class, as more fully defined below.

23. Plaintiff Robert Webber is a resident and citizen of the State of Maryland and has standing to pursue the claims of the class, as more fully defined below.

24. Plaintiff Rick Boscardin is a resident and citizen of the State of Massachusetts and has standing to pursue the claims of the class, as more fully defined below.

25. Plaintiff Cynthia Scaglione is a resident and citizen of the State of Michigan and has standing to pursue the claims of the class, as more fully defined below.

26. Plaintiff Jeffrey Mies is a resident and citizen of the State of Minnesota and has standing to pursue the claims of the class, as more fully defined below.

27. Plaintiff Don Gibson is a resident and citizen of the State of Missouri and has standing to pursue the claims of the class, as more fully defined below.

28. Plaintiff Rose Therrien is a resident and citizen of the State of Montana and has standing to pursue the claims of the class, as more fully defined below.

29. Plaintiff Scott Holbrook is a resident and citizen of the State of Nebraska and has standing to pursue the claims of the class, as more fully defined below.

30. Plaintiff Ed Anderson is a resident and citizen of the State of New Hampshire and has standing to pursue the claims of the class, as more fully defined below.

31. Plaintiff John Riello is a resident and citizen of the State of New Jersey and has standing to pursue the claims of the class, as more fully defined below.

32. Plaintiff Robert Dorgan is a resident and citizen of the State of New Jersey and has standing to pursue the claims of the class, as more fully defined below.

33. Plaintiff Carol Larson is a resident and citizen of the State of New York and has standing to pursue the claims of the class, as more fully defined below.

34.     Plaintiff Ubaldo Fernandez is a resident and citizen of the State of New York and has standing to pursue the claims of the class, as more fully defined below.

35.     Plaintiff James and Joan Leonard are residents and citizens of the State of North Carolina and have standing to pursue the claims of the class, as more fully defined below.

36.     Plaintiff Christopher and Tamela McLamb are residents and citizens of the State of North Carolina and have standing to pursue the claims of the class, as more fully defined below.

37.     Plaintiff Irma Blank is a resident and citizen of the State of Ohio and has standing to pursue the claims of the class, as more fully defined below.

38.     Plaintiff Leasha Dixson is a resident and citizen of the State of Ohio and has standing to pursue the claims of the class, as more fully defined below.

39.     Plaintiff Steven and Gina Cady are residents and citizens of the State of Pennsylvania and have standing to pursue the claims of the class, as more fully defined below.

40.     Plaintiff Lawrence Fredericks is a resident and citizen of the State of Pennsylvania and has standing to pursue the claims of the class, as more fully defined below.

41.     Plaintiff Scott Reinhart is a resident and citizen of the State of Pennsylvania and has standing to pursue the claims of the class, as more fully defined below.

42.     Plaintiff Mark Renzi is a resident and citizen of the State of Rhode Island and has standing to pursue the claims of the class, as more fully defined below.

43.     Plaintiff Paula Rogers is a resident and citizen of the State of Tennessee and has standing to pursue the claims of the class, as more fully defined below.

44.     Plaintiff Dominic Ray Diaz is a resident and citizen of the State of Texas and has standing to pursue the claims of the class, as more fully defined below.

45.   Plaintiff Becki S. Murphy is a resident and citizen of the State of Texas and has standing to pursue the claims of the class, as more fully defined below.

46.   Plaintiff Sharon Ledford is a resident and citizen of the State of Virginia and has standing to pursue the claims of the class, as more fully defined below.

47.   Plaintiff George Reynolds is a resident and citizen of the State of Virginia and has standing to pursue the claims of the class, as more fully defined below.

48.   Plaintiff Michael Allen is a resident and citizen of the State of Washington and has standing to pursue the claims of the class, as more fully defined below.

49.   Plaintiff Carrie McCain is a resident and citizen of the State of Washington and has standing to pursue the claims of the class, as more fully defined below.

50.   Plaintiff Timothy Mueller is a resident and citizen of the State of Wisconsin and has standing to pursue the claims of the class, as more fully defined below.

51.   Plaintiff Thomas Schoenberger is a resident and citizen of the State of Wisconsin and has standing to pursue the claims of the class, as more fully defined below.

**Defendant**

52.   Defendant Rust-Oleum Corporation is an Illinois corporation, with its corporate headquarters is located in Vernon Hills, Illinois. Defendant Rust-Oleum is owned by RPM International, Inc.

<h2 align="center">COMMON FACTUAL ALLEGATIONS</h2>

<h3 align="center">Deck and Patio Restoration</h3>

53.   Millions of Americans have wooden decks and similar structures outside their homes. As time passes, the surfaces of these structures are prone to wear and deterioration. The

wear can consist of scuffing, chipping and peeling paint, decay, cracking, and, for wooden decks, the development of splinters.

54.     There are several options for maintenance of decks and similar structures. First, one can replace the structure in whole or in part; however, that is typically very costly. Second, one can apply a surface coating in the form of paint or stain, which can protect the deck and other structures without the cost of a full replacement. Paints and stains are generally spread over a structure's surface to provide a thin decorative and protective coating (with the stains actually soaking pigment into the fibers themselves).

55.     Over the past few years, consumers have been advised of another option: applying a deck resurfacer. A resurfacer is a relatively new restorative coating that is applied over a deck's surface (similar to paint) and is sold on the promise of a longer-lasting benefit than traditional paint or stain. Indeed, in this case, Restore is marketed to last a longer span of years, thus purporting to eliminate "the endless cycle" of money spent on annual maintenance and reapplication.

**Rust-Oleum and Restore**

56.     Defendant Rust-Oleum is a flagship brand of RPM International, Inc., Rust-Oleum's parent company. A major portion of Defendant's sales are do-it-yourself products for the consumer home improvement market. In particular, Defendant designs, manufactures, markets, advertises, warrants, and sells a variety of deck coatings, including paints, stains, and resurfacers.

57.     In September 2012, RPM International, Inc. acquired Synta, Inc., a producer of wooden deck and concrete coatings.

58.     Synta's primary product line, "Restore," was a deck resurfacer that Synta developed and marketed as protecting and restoring weathered outdoor decks and concrete surfaces. A key aspect of that marketing effort was the very name of the product—"Restore"— which conveys why it is purportedly superior to (and thus worth the extra cost compared to) a traditional paint or stain: it was marketed to *restore* a surface that had begun to degrade and thus to extend that surface's useful life. With the acquisition of Synta, Defendant took over Restore.

**Defendant's Direct Marketing Campaign to Consumers**

59.     A few months after Synta's acquisition, Defendant commenced heavily marketing Restore to consumers. Defendant generally distributes and sells Restore to consumers through retail home improvement stores, such as Home Depot and Lowe's, where Restore is placed by Defendant in the deck and patio restoration sections. These home improvement stores are not end users of Restore, nor do they generally make any changes to the Defendant's marketing materials or warranties.

60.     Initially, Defendant maintained the strategic brand name "Restore" and added its company name to the product (e.g., by adding "Rust-Oleum Deck & Concrete" above "Restore" on the product label). Later, Defendant changed the name of the product to "Restore 10X." Nonetheless, despite these name and ownership changes, Defendant kept the product packaging substantially similar, as seen by comparing the images of Synta's and Defendant's labeling below:

Defendant's labeling:



Synta's labeling:



61.    Throughout all relevant periods, Defendant made numerous (mis)representations to consumers about Restore's purported qualities on product labels and packaging, including, but not limited to the following:

a.    "repairs decking";

b.    "the smart alternative to deck & concrete replacement";

c.    "locks down wood splinters";

d.    "revives wood & broom swept concrete";

e.    "lasting moisture protection"; and

f.    "liquid armor resurfacer."

62.    Examples of Restore labels and packaging appear below:







63.     Restore's packaging also contains a "Limited Lifetime Warranty," stating Defendant "guarantees product performance … as long as you own or reside in your home …" Examples of Restore's warranty are attached as Exhibit 1 and Exhibit 2 to this complaint.

64.     A gallon of Restore retails for approximately $25 and covers 25 square feet, making the application cost significantly higher than ordinary paints or stains.

65.     Defendant admits that "Restore is more expensive than standard paint and stain for your deck" on its Facebook page (and elsewhere). Moreover, Defendant's representations about Restore are geared to induce class members to pay the additional cost of the product in comparison to paint or stain.

66.     Defendant's uniform marketing beyond the product packaging similarly highlights Restore's supposed superiority to paints, stains, and deck replacement. For example,

in an April 1, 2013 press release titled "Rust-Oleum Introduces Inexpensive Alternative to Deck

Replacement," Defendant wrote:

> The price for a deck using hardwoods or composite materials costs upwards of $35 per square foot according to HGTVremodels.com. With the average size deck spanning 300 square feet, the cost to replace or build a new deck can run upwards of $10,000. However, thanks to new innovative technology, there's a solution that is a fraction of the cost of deck replacement — Rust-Oleum Deck and Concrete Restore.
>
> Deck and Concrete Restore is an easy to apply repair coating that revives the surface while offering maximum protection to preserve the deck for years to come. Boasting ten times the thickness of regular paint or stain, it is formulated to resurface most wooden and composite decks and concrete patios. The perfect solution for decks that are structurally sound, but aesthetically unattractive, Deck and Concrete Restore encapsulates splinters and fills cracks, making a safe, beautiful, slip-resistant surface that is barefoot friendly. It is also ideal for concrete surfaces such as walkways, steps, patios, porches and more.

67.     Defendant also makes numerous representations about Restore on its website and

other online and promotional sources, including, representing that Restore:

a.      "lasts 10 to 12 years and in fact it comes with a life time warrantee" (online);

b.      "lasts 3x longer than deck stain with less maintenance" (advertisement);

c.      is a "low-maintenance, long-lasting alternative to the endless cycle of repairing and repainting" (online);

d.      provides "tough, resilient coating over existing decking" which "lasts for years with less maintenance than deck paints or stains! Satisfaction guaranteed" (online);

e.      will "last for years with little maintenance" (online);

f.      can "extend the life" of a deck by providing a "tough, durable coating" (online);

g.      "tested tough for 12+ years" (advertisement);

h.      will "provide lasting protection against moisture and the damaging effects of the sun" (online);

i.      provides a "protective barrier from Mother Nature's harsh elements" (online);

j.      has "superior weather resistance" and "ultimate water repellency" (online); and

k.      "is an easy to apply repair coating that revives the surface while offering maximum protection to preserve the deck for years to come" (press release).

68.    Defendant also publicizes its purported pre-sale "testing" of Restore to demonstrate that Restore is long-lasting and durable. Defendant's website, for example, states that the company performed a "torture test" several years before it began to sell Restore, whereby Defendant applied Restore to a public boardwalk in Fernandina Beach, Florida in the midst of "high winds, salt air, torrential rains, exposure to the hot sun and high foot-traffic." Defendant publicized these field tests to convince consumers that Restore lasts long enough to warrant spending the extra money to purchase it (instead of buying a less expensive paint or stain, or spending more money to replace a deck).

69.    As Defendant's Vice President of Marketing, Mark Wilgen, stated: "Homeowners … don't want to invest time and money on a product that will only hold up for one season. They want a product that [] beautifies while also protect[s] the surface for years to come." [1]

70.    Defendant's Director of Marketing for Restore, Joel Tressler, similarly stated: "[t]he backyard – and the deck – is an important 'room' in our homes" but "[u]nfortunately due to harsh weather conditions decks take a lot of abuse. … Most homeowners think the only solution to revive a battered deck is replacement. Thanks to Deck and Concrete Restore, homeowners can now protect their investment and reclaim this extra 'room' and start enjoying it again without spending a small fortune." [2]

---

[1] https://www.coatingsworld.com/issues/0214/view_features/the-wood-coatings-market-144259/ (last accessed May 15, 2015).

[2] *Id.*

71.     During all relevant periods, Defendant made the above-referenced statements and claims directed at consumers in general and class members in particular.

72.     In fact, Restore does not perform as warranted, and Defendant's representations are false, misleading and fail to disclose material information.

73.     Amon other things, Defendant failed to disclose to class members that:

   a.     Restore in fact separates, cracks, peels, bubbles, flakes, puckers, chips, and otherwise prematurely fails shortly after application;

   b.     Restore is not a superior product to ordinary deck paint or stain;

   c.     Restore does not repair or "restore" decking long-term;

   d.     Restore cannot withstand harsh weather;

   e.     Restore is the subject of numerous consumer complaints; and

   f.     Restore will require ultimately have to be removed from the deck.

74.     After Restore flakes, separates, and degrades, class members must spend even more money on attempting to fix the problem, including but not limited to the following costs for: (1) removing the product (e.g., by sanding or power washing); (2) replacing the product (e.g., with paint, stain, or another resurfacer); and (3) repairing any damages to existing decks and similar property. In other words, while purchasers of Restore expect to prevent future costs by purchasing Restore, consumers end up spending more time and money to repair damages caused by the defective product. Further, as noted in this complaint, Defendant refuses to accept responsibility, financial or otherwise, to the class members and has thus far limited compensation to the cost of the product.

75.     To complicate matters further for class members, Restore contains crystalline silica, which Defendant admits "has been shown to cause lung damage and cancer under long-term exposure." Thus, once Restore begins to deteriorate, proper removal and replacement is a

labor-intensive, expensive, and potentially health hazardous process. In fact, the presence of silica also creates a risk of damaging and deteriorating the underlying substrate during removal.

**Restore Does Not Perform As Marketed By Defendant**

76.     Consumers pay a premium for the product and thus reasonably expect a long-lasting and aesthetically-pleasing protective barrier for decks and other surfaces. However, contrary to Defendant's representations, once Restore is applied to a decking surface, it will prematurely crack, peel, flake, chip, bubble, pucker, separate, delaminate, discolor, and generally degrade, and it has the propensity to cause damage to decks and other property of the class. Based on online complaints alone, Defendant has known about these facts for years.

77.     For example, the following picture was posted on Rust-Oleum's own Facebook page on September 1, 2014, by a consumer who applied Restore approximately one year earlier:



78.     Similarly, the following picture, which depicts massive peeling and chipping away of Restore, is a screenshot from a video in which the poster states that Restore had been applied just six to seven months before the video was shot:[3]



79. Further, the following picture was posted on Rust-Oleum's Facebook page on April 13, 2015, by a consumer who applied Restore to a deck about seven to eight months earlier:



80. Hundreds of online complaints describe similar experiences. The following customer complaints are just a few of over one hundred complaints that appear on Amazon.com:

Would never recommend Restore!: We bought 4 5gal. cans (lots of money). Power sprayed, waited with 4 days of sun to dry. Rolled on first coat. Waited 24 hrs. and rolled on second coat. It is all cracking, peeling off. Wasted big bucks!!! (October 22, 2013 – Fowler007)

STAY AWAY: This product promises a lot (10 years of wear, fill cracks, restore old wood, etc) and delivers NOTHING!!!! I had my deck redone with this product less than 3 months ago and spent well over $200 for the product and all the "special" rollers that they want you to use. I paid for professional painters to apply this and they did exactly as the product states it must be done. I am now looking at a deck that is covered in a flaking, brittle, ugly paint that is going to cost me well over $1000 to have it removed and a new product applied. I was warned prior to buying this product by a friend who stated they tried the old formula from

a few years ago and it did the same thing.... should have listened! My advice to anyone looking at this product is to STAY AWAY!!!!! You will be disappointed if you don't, not to mention the $$$ you will be throwing down the drain. Very disappointed in Rustoleum for putting out such a terrible product. I have contacted their warranty/claims office, but doubt anything will be done to compensate me for my lost $ and time.
(Jan. 19, 2014 – A R)

Horrible. Wasted $200+: I thought I had finally found the perfect product for my concrete porch. Now I have a perfectly chipped up concrete porch. I used 6 cans of this paint, following the instructions, in 60-70 degree fall weather. Three coats in most places. Looked great! Briefly....

Within two months it started flaking. Now 5 months later, it's horrible again.
(April 7, 2014 - Christopher Bryan)

So Disappointed!: I applied Restore to my backyard deck this past Summer 2013. The deck was prepped and I followed the directions exactly. It required 2x the amount of product I had purchased on my first trip to the store and much more energy in the application than I anticipated. My first purchase was based on the coverage the can listed.

The deck looked fantastic and I was absolutely thrilled with the results, even though it was double the cost I estimated. It is now April 2014 and the product is flaking off in large chips and peels. It looks awful! I have been very careful with this product, not using the hose or blower on the deck. Today, I decided to use the blower to clean off the chips and loose peelings lying on the deck. What I noticed is under the areas that are chipping and peeling off, there appears to be moisture. I can't understand this and assure you that every inch of this deck was treated. This product did not live up to its promises. I love the garage coating that Rustoleum sells and have been very happy with that product. This product is definitely a disappointment. Now I have to decide if I want to scrape or put an outdoor rug on my deck until the remaining product peels off.
(April 11, 2014 – JK)

Bad Product: I applied the deck restore to my parents deck in July of 2013. By the time I was back in Pennsylvania for Christmas the product was starting to come off. I followed the directions to a T! I watched the video many times and even talked to a rep from Rustoleum because I had some questions about the weather. My parents did not use the deck for 30 days after the product was applied. By March, after all the snow and rain the product was peeling off in large strips. Rustoleum has offered to replace the product but I will not waste my time again.

21

Now I have to redo the deck, but I won't be using Rustoleum. (<u>May 10, 2014 – Rosanne Bonaventura</u>)[4]

81.     Likewise, the following postings are examples of customer complaints on home improvement websites, such as homedepot.com and lowes.com:

I researched this stuff before I bought it. I followed the instructions to the letter: I washed with the Restore wash, I sanded the parts that needed sanding, I applied it between the optimal temps, I let it dry between coats, I let it dry the specified amount of time before walking on it or placing furniture on it. At first it was perfect! It was a great finish and the best color. Now, less than 3 months later, it is cracking and bubbling and peeling up. This stuff isn't cheap and our deck isn't small. I feel like I threw away time and money with this product!! (<u>November 18, 2013 – "Bass"</u>)[5]

This product applied per instructions, pressure washed first, two coats... Looked great for the first couple weeks, without any traffic on deck the product chipped up upon first freeze. **Worthless stuff now the deck needs replaced rather than repainted.** (<u>December 4, 2013 – "Festus452"</u>)[6]

I wish I could rate this less than one star. As the before and after photo shows, this product is NOT suitable for use in New England. I put this on my deck in September and the photo on the right was taken the following February. The product did not make it through the winter. Three gallons and 2 weekends wasted on this project. DO NOT waste your time or money!!! (<u>February 23, 2014 – "Mazton"</u>)[7]

I bought three buckets of this products and now I am so un-happy! I had a accident three years ago that make it hard for me to walk on smooth surface so I thought this product would be great, I even bought 3 buckets to only be let down, every time it rain or snow the product peals bad, and so now Im am going to have to re-stain again, I was so hoping this product would work. This customer is very disappointed... I hope some might have a better experience than me a person who

---

[4] http://www.amazon.com/Rust-Oleum-49104-Deck-Concrete-1-Gallon/dp/B00BIOBP7Y/ ref=cm_rdp_product (last accessed April 23, 2015).

[5] http://www.homedepot.com/p/Restore-4-gal-Timberline-Deck-and-Concrete-10X-Resurfacer-46558/204109495#customer_reviews (last accessed April 23, 2015).

[6] *Id.* (emphasis added).

[7] http://www.lowes.com/pd_458354-90 49300_4294713162%2B4294963315% 2B4294788459__?productId=50125639&Ns=p_product_qty_sal es_dollar|1&pl=1&currentURL=%3FNs%3Dp_product_qty_sales_dollar%7C1&facetInfo=Rust-Oleum|Restore (last accessed April 23, 2015).

depended on a safe way to walk across a deck. (February 16, 2014 – "Novalover")[8]

**Defendant Has Had Notice That Restore Was (And Is) Defective**

82.    Since or around the time Defendant began selling Restore, it knew or should have known that the product would not meet the claims and promises and representations the company affirmatively made to consumers on product packaging, uniform brochures, online marketing, and through other advertisements.

83.    Pre- and Post-Sale Audits: Major manufacturers like Defendant use a variety of early warning systems and statistical analyses to detect problems before they can affect consumers. Defendant, in particular, has an extensive quality monitoring department that conducts product sampling and testing during production and before sale to ensure product performance, effectiveness, and efficiency. Quality improvement teams in this department also collect and actively monitor performance information in a database and provide feedback and interpretation to management and staff. These teams perform internal corporate quality audits that result in quality improvement initiatives. When problems are detected, Defendant may conduct a root cause analysis and take corrective actions. The results of this testing would have informed Defendant (before it began to sell Restore) that Restore is not suitable for its marketed use.

84.    Field Testing: As Defendant emphasized in its marketing campaign, it conducted field testing designed to simulate long-term exposure to sunlight, temperature, humidity and other environmental factors prior to sale. Given the speed at which Restore begins to fail, the results of this testing would have informed Defendant that Restore is susceptible to peeling and cracking and is not suitable for its marketed use.

---

[8] *Id.*

23

85.     Online Complaints: Shortly after Defendant began to sell Restore, consumers complained in high volume about the product online; there are hundreds of customer complaints on internet forums, numerous YouTube videos detail customer frustrations, and Defendant's Facebook page is filled with complaints.

86.     Direct Complaints About Defendant: Likewise, consumers have complained directly to Defendant through submission of warranty and other claims. Upon information and belief, Defendant and its agents have received over ten thousand consumer complaints about its product. The vast majority of these complaints are about premature peeling or bubbling.

87.     Direct Complaints About Synta: After purchasing Synta, Defendant also had access to Synta's customer complaint files and could review numerous online complaints about Synta's Restore. For example, in mid-2012, a reviewer posted on deckstainhelp.com (a website that provides advice to homeowners regarding wooden deck restoration) that Restore "did not adhere between the boards as the finish curled up here" and "showed some wearing in the high traffic areas."

88.     Similarly, consumers complained online about problems with Synta's Restore product peeling and properly adhering to structures:

> Good visual, poor durability: The advertisements look promising. The delivery on the promise falls far short. For one, as noted by many reviews on line, the estimated coverage is overstated. Plan on requiring 30% more than stated on the directions for use. After three months of "curing", the product is so fragile that dog-paw traffic or an abrupt turn with boots will pull Restore away from the parent wood. The parent wood is a deck that has been in place for ten years. For preparation, the deck was pressure washed one month previous and dried in the summer sun until application day. No oil or old finish unpainted pressure treated wood) was present. For the $1,000.00 spent on this product, I can tell I will be needing to come up with a new plan next for a next summer re-do. Sure looks good though....
> (October 9, 2011 – Dan McNamara)

<u>Dont Use This Product</u>: I used this product on our back deck. Took alot more than the coverage stated on the box. After having it on my deck for about 8 months now the boards underneath the stain are starting to rot and a couple of the boards are rotted clean through. The restore in places is pealing back away from the boards where water is getting trapped underneath. Now in order to get the deck boards off I will have to take a saw and cut the screws from the bottom. Remeber this wonderful product fills all the screw holes. The stain for the railings has held up very well. I will never use the deck board stain again. **Not only was it time consuming to apply the stuff but now i'm going to have to replace all the boards on my deck Because the stain traps water underneath and causes the deck boards to prematurely rott.**
(<u>June 25, 2012 - Dissatisfied Customer</u>) (emphasis added)

<u>Terrible Results – Non adherence after one rain</u>: We applied Restore to a client's front steps. These steps had been painted but we followed company's tech advice and sanded a good portion of the paint off or at least gave the paint some good "tooth". As is well documented in <u>these</u> reviews, the application was a bit tricky, but overall not difficult. We applied during a long summer dry spell. It seemed take forever to cure. We stayed off those stairs for at least 2 weeks. Today we had our first rain and on each tread, the material began to pucker and was clearly non-adherent. How incredibly frustrating. Such a waste of money and time. Although the company rep and the rep at Home Depot assured me that the product could be applied over a prepped previously painted surface, DON'T BELIEVE IT.
(<u>October 14, 2012 – Contractor Matt</u>)[9]

89.     Despite the above notice and other information to Defendant that Restore does not meet Defendant's warranties and in fact fails in many respects to perform consistent with the representations, Defendant continues to hide the facts from consumers and fails to correct the material misrepresentations regarding the defects of its product. Rather, Defendant continues to market and sell Restore as, *inter alia*, "low-maintenance," "long-lasting," "resilient" and a superior alternative to deck paint or stains.

90.     Plaintiffs and the class could not have reasonably discovered these issues before purchasing Restore and experiencing problems. Further, Plaintiffs did not have access to

---

[9] http://www.amazon.com/Restore-49005-Deck-Kit/dp/B002ZH63HA/ref=cm_cr_pr_product_top?ie=UTF8 (last accessed April 23, 2015).

Defendant's internal systems (e.g., internal audits, field test results, and direct complaints) revealing the extent and history of Restore's problems.

91.     As a result of Defendant's material misrepresentations and omissions, consumers continue to spend thousands of dollars on purchasing and applying Restore, and they then spend even more money removing and replacing Restore when it peels, cracks, and causes damages to existing property.

92.     Nonetheless, Defendant has not offered appropriate compensation to the class. Instead, Defendant "enforces" its warranty's limitations, providing no remedy to class members for the significant cost and damage caused by Defendant's conduct.

**ESTOPPEL FROM PLEADING AND
TOLLING OF APPLICABLE STATUTES OF LIMITATIONS**

93.     Plaintiffs and members of the class are within the applicable statute of limitation for the claims presented here. Defendant had non-public information (e.g., internal audits, field test results, and direct complaints about Defendant and Synta) detailing Restore's propensity to prematurely degrade, but failed to disclose this information to consumers; and Plaintiffs and class members therefore could not reasonably have known that Restore would prematurely degrade. Rather, consumers relied upon Defendants misrepresentations and omissions regarding Restore, including advertisements that Restore would last ten to twelve years.

94.     Once Plaintiffs purchased Restore and incurred damages, Plaintiffs promptly notified Defendant of Restore's premature failure and filed this action and related lawsuits. Thus, Defendant is estopped from asserting any statute of limitation defense that might otherwise be applicable to the claims asserted herein.

## UNCONSCIONABILITY OF THE WARRANTY LIMITS OF
## CLASS MEMBERS' REMEDIES

95.     Defendant places a "Limited Lifetime Warranty" on the packaging of Restore, stating that Defendant "guarantees product performance … as long as you own or reside in your home when the product was applied according to label directions." (See attached Exhibits 1 and 2.) Yet, in the actual warranty limits, Defendant limits the remedy for product failure to "either a refund of the original purchase price or replacement with a product of equal value." In addition, Defendant attempts to exclude costs of labor and deck replacement and otherwise limit consequential and incidental damages.

96.     Defendant's warranty begins with the phrase "LIMITED LIFETIME WARRANTY," in all bolded capital letters. (See attached Exhibits 1 and 2.) In certain versions of the warranty, however, the limitations of the warranty are not bolded, highlighted, or otherwise set apart.

97.     At the time of this warranty, Defendant was a merchant in the business of manufacturing, marketing, and selling Restore. Further, Defendant knew or should have known that Restore would prematurely fail and would necessitate extra costs for labor, wood replacement, and consequential and incidental damages: Defendant had internal systems that likely showed Restore's defects, and Defendant had notice of consumer complaints for years, which demonstrated that consumers were needing to repair and/or replace decks and other property.

98.     Plaintiffs, by contrast, were not experts in resurfacing products and did not know about Restore's propensity to fail. At the time Plaintiffs purchased Restore, they expected Restore to perform as marketed and to not damage any other property. As such, Defendant is liable for the damages above and beyond the "limited" warranty of purchase price or product of

"equal value," without any compensation for significant consequential damages incurred by all class members. As of the date of the filing of this complaint, Defendant has not fully compensated class members for the damages caused by Restore.

99.     Accordingly, the limitations on Defendant's warranty, including exclusion of labor costs and replacement of wood structures, are unconscionable under Uniform Commercial Code ("UCC") § 2-302, as adopted by the States listed below.

## CLASS ACTION ALLEGATIONS

100.     This action is brought and may be maintained under Fed. R. Civ. P. 23 as a class action.

101.     The proposed nationwide declaratory and injunctive relief class is defined as follows:

> All individuals and entities that have purchased, not for resale, Restore and/or Restore 10X in the territories of the United States.

102.     Plaintiffs also seek to represent the following multistate class as defined as follows:

> All individuals and entities that have purchased not for resale Restore and/or Restore 10X in the territories of the United States and are residents of the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the District of Columbia.

103.     Excluded from the class are: (1) Defendant, and any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant; (2) Defendant's legal

representatives, assigns and successors; and (3) the judge(s) to whom this case is assigned and any member of the judge's immediate family.

104.    Class members seek relief under both Rule 23(b)(2) and (b)(3). Specifically, class members who need to replace decking material and/or repair decks and other property seek to have the Court declare any limits on full recovery by the class members to be unenforceable and otherwise null and void. This relief is based solely upon Defendant's past and current systematic practices and policy of limiting remedies of the class members, and thus declaratory relief is thus appropriate for the class as whole. Under Rule 23(b)(3), the central issues for each and every class member are the same: whether Restore has the propensity to prematurely fail, whether Defendant acted unlawfully and deceitfully, and whether the class is entitled to common remedies.

105.    Plaintiffs reserve the right to redefine the class(es), and/or requests for relief.

106.    The members of the proposed class are so numerous that joinder of all members is impracticable.

107.    The exact number of class members is unknown. Due to the nature of the trade and commerce involved, as well as the number of online and direct complaints, Plaintiffs believe the class consists of thousands of consumers.

108.    Common questions of law and fact affect the right of each class member, and a common relief by way of damages is sought for Plaintiffs and class members.

109.    Common questions of law and fact that affect class members include, but are not limited to:

        a.     Whether Defendant marketed Restore as a superior, longer-lasting alternative to paint or stain, capable of extending the life of wooden decks and related structures to which it was applied;

b.      Whether Defendant's marketing of Restore was false, deceptive, and/or misleading to reasonable consumers;

c.      Whether Restore is unfit for its ordinary purpose of providing lasting protection to deck surfaces and related structures;

d.      Whether Restore is unfit for its particular purpose of providing protection to deck surfaces and related structures from harsh weather conditions and lasting longer than ordinary deck paints or stains;

e.      When Defendant discovered that Restore was susceptible to premature failure;

f.      Whether Defendant ever disclosed its knowledge that Restore was susceptible to premature failure;

g.      Whether Restore's propensity of premature failure would be important to a reasonable consumer;

h.      Whether Defendant was unjustly enriched by the sale of Restore;

i.      Whether Defendant breached its express and implied warranties;

j.      Whether Defendant's purported express warranty limitations on available remedies are unconscionable and void;

k.      Whether Defendant engaged in fraudulent, unfair, or deceptive conduct with respect to the handling of warranty claims;

l.      Whether members of the proposed class have sustained damages and, if so, the proper measure of such damages; and

m.      Whether Defendant should be declared financially responsible for notifying all class members about Restore's propensity to prematurely fail and for all damages associated with application of the product on class members' decks and similar property.

110.    The claims and defenses of the named Plaintiffs are typical of the claims and defenses of the class. Plaintiffs and all members of the class have purchased Restore and own homes, residences, or other structures on which Restore has been applied. The product has failed and will continue to fail prematurely. The named Plaintiffs, like all class members, have been damaged by Defendant's conduct in that they have incurred or will incur the costs of replacing

Restore and repairing and/or replacing their decks and additional property that was damaged by Restore's premature failure. Additionally, the factual basis of Defendant's conduct is common to all class members and represents a common thread of deliberate and negligent misconduct resulting in injury and damages to all members of the class.

111. The named Plaintiffs will fairly and adequately assert and protect the interests of the class. Specifically, they have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the class; and they have no conflict of interests that will interfere with the maintenance of this class action.

112. A class action provides a fair, efficient, and superior method for the adjudication of this controversy for the following reasons:

     a.    The common questions of law and fact set forth herein predominate over any questions affecting only individual class members;

     b.    The class is so numerous as to make joinder impracticable but not so numerous as to create manageability problems;

     c.    There are no unusual legal or factual issues which would create manageability problems, and depending on discovery, manageability will not be an issue as much information is solely in Defendant's possession;

     d.    Prosecution of separate actions by individual members of the class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

     e.    Adjudications with respect to individual members of the class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

     f.    The claims of the individual class members are small in relation to the expenses of litigation, making a class action the only procedure in which class members can, as a practical matter, recover. However, the claims of individual class members are collectively large enough to justify the expense and effort in maintaining a class action.

113.    Consistent with applicable case law and constitutional standards, Plaintiffs intend to present to the Court at the class certification proceeding, a trial plan and overall proposed method of efficiently presenting to the trier of fact the common law, statutory, and declaratory claims presented in this action. For purposes of the complaint, Plaintiffs note that declaratory relief is appropriate for the entire class and that certain other claims may be grouped together for the trier of fact to resolve. As the case was sent to this Court as an MDL proceeding, Plaintiffs intend to seek to apply the law of the appropriate similar states, with appropriate grouping of certain states with similar laws. Certain states with "unique" issues and with limited number of class Plaintiffs may not be included in the Plaintiffs' motion for class certification. Plaintiffs believe that the majority of class members will be able to proceed with trial in this Court on a class wide basis, with the ultimate trial plan requiring information currently in the exclusive possession of Defendant and third parties.

114.    Defendant is headquartered in, and conducts business relevant to class members' claims from, Illinois. On information and belief, the warranties and promotional activities arise from conduct in the State of Illinois. Further, this complaint is part of a JPML Order, providing this Court with jurisdiction over Plaintiffs' claims.

115.    Defendant is in privity with each of the Plaintiffs and class members by law and fact. First, Plaintiffs have had sufficient direct dealings with Defendant and/or its authorized dealers, franchisees, representatives, and agents to establish privity of contract. Second, Plaintiffs and class members are intended third-party beneficiaries of contracts, including express warranties, between Defendant and its dealers, franchisees, representatives and agents. Third, Defendant's advertisements were aimed at Plaintiffs and class members, and Defendant's warranties were expressly written for the benefit of Plaintiffs and class members as end users of

Restore. Defendant's authorized dealers, franchisees, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of Restore and have no rights under the warranty agreements provided by Defendant. Defendant is estopped from limiting claims by class members for common law and statutory violations based on a defense of lack of privity.

## CLASS REPRESENTATIVES

116. As detailed in the complaint, Defendant's product at issue in this action fails to perform as warranted and in fact ultimately causes damage and injury to any decking material upon which Restore is applied. The following individuals seek to represent the class(es) as proposed in this action. The Plaintiffs, as detailed below, purchased Restore and applied the product in accordance with Defendant's instructions. The product fails after application in a number of respects but, among other common problems, the product deteriorates after application, resulting in chipping, cracking, delamination and discoloration. The product also fails to protect the decking area from the elements, causing damage and injury to decking structures. Ultimately, the product will need to be removed and, potentially, the decking material will need to be replaced. As of the filing of this complaint, Defendant has generally limited compensation to Plaintiffs and the class to the original "purchase price" of Restore or "replacement with a product of equal value," despite the significant out-of-pocket costs incurred by Plaintiffs associated with removing and replacing Restore from decking structures, as well as additional damages. The following Plaintiffs are the proposed class representatives:

117. Plaintiff Angelita Hickman, a resident and citizen of the State of Alabama, purchased and paid for multiple gallons of Restore in or around the Summer of 2010. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

118.    In or around 2011, Plaintiff Hickman notified Defendant that Restore was prematurely failing and resulting in permanent damage to the deck.

119.    Plaintiff Hickman has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Hickman known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

120.    Prior to purchasing Restore, Plaintiff Hickman recalls, generally, seeing and relying on advertisements regarding Restore's high quality and longevity.

121.    Plaintiff Michael Reyes, a resident and citizen of the State of Alabama, purchased and paid for multiple gallons of Restore in or around the Summer of 2012. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

122.    Plaintiff Reyes has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had Plaintiff Reyes known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

123.    Prior to purchasing Restore, Plaintiff Reyes recalls, generally, seeing and relying on advertisements regarding Restore's high quality and longevity

124.    Plaintiff Charles Hoff, a resident and citizen of the State of California, purchased and paid for Restore in or around the Fall of 2014. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

125.    In or around May 2015, Plaintiff Hoff notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

126.    Plaintiff Hoff has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Hoff known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

127.    Prior to purchasing Restore, Plaintiff Hoff recalls, generally, seeing and relying on advertisements regarding Restore's high quality and longevity.

128.    Plaintiff Michael Baden, a resident and citizen of the State of Colorado, purchased and paid for multiple gallons of Restore in or around September 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

129.    Plaintiff Baden notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

130.    Plaintiff Baden has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Baden known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

131.    Prior to purchasing Restore, Plaintiff Baden recalls, generally, seeing and relying on advertisements regarding Restore's high quality and longevity.

132.    Plaintiff Jerry Lautigar, a resident and citizen of the State of Colorado, purchased

and paid for Restore in or around the Summer of 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

133.    Plaintiff Lautigar notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

134.    Plaintiff Lautigar has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Lautigar known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

135.    Prior to purchasing Restore, Plaintiff Lautigar recalls, generally, seeing and relying on advertisements regarding Restore's high quality and long-lasting protection.

136.    Plaintiff John Malloy, a resident and citizen of the State of Delaware, purchased and paid for multiple gallons of Restore in or around the Summer of 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

137.    In or around the Spring of 2014, Plaintiff Malloy notified Defendant that Restore was prematurely failing resulting in permanent damage to the deck.

138.    Plaintiff Malloy has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Malloy known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

139.    Prior to purchasing Restore, Plaintiff Malloy recalls, generally, seeing and relying on advertisements regarding Restore's high quality and ability to last for years.

140.    Plaintiff Hans Shanks, a resident and citizen of the State of Florida, purchased and paid for Restore in or around the Fall of 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

141.    In or around the Spring of 2014, Plaintiff Shanks notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

142.    Plaintiff Shanks has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Shanks known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

143.    Prior to purchasing Restore, Plaintiff Shanks recalls, generally, seeing and relying on advertisements regarding Restore's high quality and ability to last for years.

144.    Plaintiff Layla Patterson, a resident and citizen of the State of Georgia, purchased and paid for Restore in or around the Summer of 2014. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

145.    Plaintiff Patterson has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had Plaintiff Patterson known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

146.     Prior to purchasing Restore, Plaintiff Patterson recalls, generally, seeing and relying on advertisements regarding Restore's high quality and longevity.

147.     Plaintiff Debra Dockstader, a resident and citizen of the State of Idaho, purchased and paid for multiple gallons of Restore in or around August 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

148.     Plaintiff Dockstader has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had Plaintiff Dockstader known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

149.     Prior to purchasing Restore, Plaintiff Dockstader recalls, generally, seeing and relying on advertisements regarding Restore's pleasing aesthetic and ability to protect her deck for years to come.

150.     Plaintiff Season Gomez is a resident and citizen of the State of Idaho purchased and paid for multiple gallons of Restore in or around May 2014. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

151.     Plaintiff Gomez has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Gomez known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

152. Prior to purchasing Restore, Plaintiff Gomez recalls, generally, seeing and relying on advertisements regarding Restore's superior quality, protection and longevity.

153. Plaintiff Conrad Shogren, a resident and citizen of the State of Illinois, purchased and paid for multiple gallons of Restore in or around August 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

154. Plaintiff Shogren has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had Plaintiff Shogren known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

155. Prior to purchasing Restore, Plaintiff Shogren recalls, generally, seeing and relying on advertisements regarding Restore's durability and long-lasting protection.

156. Plaintiffs David and Kathleen Sullivan, residents and citizens of the State of Illinois, purchased and paid for multiple gallons of Restore in or around October 2013. Restore was applied to Plaintiffs' deck in accordance with the instructions provided by Defendant. Plaintiffs have incurred damages and have standing to pursue the claims asserted in the complaint.

157. In or around October 2014, the Sullivan Plaintiffs notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

158. The Sullivan Plaintiffs have and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiffs for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had the

Sullivan Plaintiffs known that Restore would not perform as warranted and/or would prematurely fail, Plaintiffs would not have purchased or used the product.

159.   Prior to purchasing Restore, the Sullivan Plaintiffs recall, generally, seeing and relying on advertisements regarding the high quality, longevity, and durability of Restore.

160.   Plaintiff Tracy McCoy, a resident and citizen of the State of Indiana, purchased and paid for multiple gallons of Restore in or around the Summer of 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

161.   Plaintiff McCoy notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

162.   Plaintiff McCoy has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff McCoy known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

163.   Prior to purchasing Restore, Plaintiff McCoy recalls, generally, seeing and relying on advertisements regarding Restore's ability to provide superior protection to her deck for years to come.

164.   Plaintiff Cory Fales, a resident and citizen of the State of Maine, purchased and paid for multiple gallons of Restore in or around July 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

165.    Plaintiff Fales has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Fales known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

166.    Prior to purchasing Restore, Plaintiff Fales recalls, generally, seeing and relying on Defendant advertisements regarding the quality, fitness and superior characteristics of Restore.

167.    Plaintiff Robert Webber, a resident and citizen of the State of Maryland, purchased and paid for multiple gallons of Restore in or around June 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

168.    Plaintiff Webber notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

169.    Plaintiff Webber has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Webber known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

170.    Prior to purchasing Restore, Plaintiff Webber recalls, generally, seeing and relying on advertisements regarding Restore's durability, high quality, and ability to last for years.

171.     Plaintiff Rick Boscardin, a resident and citizen of the State of Massachusetts, purchased and paid for Restore in or around May 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

172.     Plaintiff Boscardin notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

173.     Plaintiff Boscardin has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Boscardin known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

174.     Prior to purchasing Restore, Plaintiff Boscardin recalls, generally, seeing and relying on advertisements regarding Restore's high quality and ability to protect his deck for years.

175.     Plaintiff Cynthia Scaglione, a resident and citizen of the State of Michigan, purchased and paid for multiple gallons of Restore in or around May 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

176.     Plaintiff Scaglione notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

177.     Plaintiff Scaglione has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff

Scaglione known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

178.    Prior to purchasing Restore, Plaintiff Scaglione recalls, generally, seeing and relying on advertisements regarding Restore's durability, high quality, and longevity.

179.    Plaintiff Jeffrey Mies, a resident and citizen of the State of Minnesota, purchased and paid for multiple gallons of Restore in or around the Summer of 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

180.    In or around the Spring of 2015, Plaintiff Mies notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

181.    Plaintiff Mies has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Mies known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

182.    Prior to purchasing Restore, Plaintiff Mies recalls, generally, seeing and relying on advertisements regarding Restore's ability to protect his deck for years.

183.    Plaintiff Don Gibson, a resident and citizen of the State of Missouri, purchased and paid for multiple gallons of Restore in or around the Summer of 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

184.    In or around the Spring of 2014, Plaintiff Gibson notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

185.     Plaintiff Gibson has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Gibson known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

186.     Prior to purchasing Restore, Plaintiff Gibson recalls, generally, seeing and relying on advertisements regarding Restore's ease of application and ability to last for years in all elements.

187.     Plaintiff Rose Therrien, a resident and citizen of the State of Montana, purchased and paid for multiple gallons of Restore in or around May 2014. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

188.     Plaintiff Therrien has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had Plaintiff Therrien known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

189.     Prior to purchasing Restore, Plaintiff Therrien recalls, generally, seeing and relying on advertisements regarding Restore's ability to protect her deck for years.

190.     Plaintiff Scott Holbrook, a resident and citizen of the State of Nebraska, purchased and paid for multiple gallons of Restore in or around the Summer of 2014. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

191.    Plaintiff Holbrook notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

192.    Plaintiff Holbrook has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Holbrook known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

193.    Prior to purchasing Restore, Plaintiff Holbrook recalls, generally, seeing and relying on advertisements regarding Restore's ability to protect his deck for years to come.

194.    Plaintiff Ed Anderson, a resident and citizen of the State of New Hampshire, purchased and paid for multiple gallons of Restore in or around August 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

195.    In or around May 2014, Plaintiff Anderson notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

196.    Plaintiff Anderson has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Anderson known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

197.    Prior to purchasing Restore, Plaintiff Anderson recalls, generally, seeing and relying on advertisements regarding the Restore Product's ease of application, superior performance, and ability to protect his deck for years to come.

198.    Plaintiff John Riello, a resident and citizen of the State of New Jersey, purchased and paid for multiple gallons of Restore in or around the Summer of 2012 and the Summer of 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

199.    Plaintiff Riello has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had Plaintiff Riello known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

200.    Prior to purchasing Restore, Plaintiff Riello recalls, generally, seeing and relying on advertisements regarding Restore's pleasing aesthetic, superior protection, and ability to last for years.

201.    Plaintiff Robert Dorgan, a resident and citizen of the State of New Jersey, purchased and paid for multiple gallons of Restore in or around the Summer of 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

202.    Plaintiff Dorgan has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had Plaintiff Dorgan known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

203.    Prior to purchasing Restore, Plaintiff Dorgan recalls, generally, seeing and relying on advertisements regarding Restore's durability and longevity.

204.    Plaintiff Carol Larson, a resident and citizen of the State of New York, purchased and paid for multiple gallons of Restore in or around the Summer of 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

205.    Plaintiff Larson notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

206.    Plaintiff Larson has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Larson known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

207.    Prior to purchasing Restore, Plaintiff Larson recalls, generally, seeing and relying on advertisements regarding Restore's superior performance and ability protect her deck for years to come.

208.    Plaintiff Ubaldo Fernandez, a resident and citizen of the State of New York, purchased and paid for multiple gallons of Restore in or around the Summer of 2013. Restore was applied to Plaintiff's concrete patio and garage in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

209.    Plaintiff Fernandez has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had Plaintiff Fernandez known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

210.     Prior to purchasing Restore, Plaintiff Fernandez recalls, generally, seeing and relying on advertisements regarding Restore's durability and long-lasting protection.

211.     Plaintiffs James and Joan Leonard, residents and citizens of the State of North Carolina, purchased and paid for multiple gallons of Restore in or around October of 2013. Restore was applied to Plaintiffs' deck in accordance with the instructions provided by Defendant. Plaintiffs have incurred damages and have standing to pursue the claims asserted in the complaint.

212.     In or around the Winter of 2014, the Leonard Plaintiffs notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

213.     The Leonard Plaintiffs have and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiffs for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had the Leonard Plaintiffs known that Restore would not perform as warranted and/or would prematurely fail, Plaintiffs would not have purchased or used the product.

214.     Prior to purchasing Restore, the Leonard Plaintiffs recall, generally, seeing and relying on advertisements regarding Restore's superior performance, durability, and long-lasting protection.

215.     Plaintiffs Christopher and Tamela McLamb, residents and citizens of the State of North Carolina, purchased and paid for multiple gallons of Restore in or around the late Spring or early Summer of 2013. Restore was applied to Plaintiffs' deck in accordance with the instructions provided by Defendant. Plaintiffs have incurred damages and have standing to pursue the claims asserted in the complaint.

216.    The McLamb Plaintiffs have and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had the McLamb Plaintiffs known that Restore would not perform as warranted and/or would prematurely fail, Plaintiffs would not have purchased or used the product.

217.    Prior to purchasing Restore, the McLamb Plaintiffs recall, generally, seeing and relying on advertisements regarding Restore's durability, superior feel, and ability to provide protection that would last for years.

218.    Plaintiff Irma Blank, a resident and citizen of the State of Ohio, purchased and paid for multiple gallons of Restore in or around the Summer of 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

219.    In or around the late Spring or Early Summer of 2014, Plaintiff Blank notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

220.    Plaintiff Blank has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Blank known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

221.    Prior to purchasing Restore, Plaintiff Blank recalls, generally, seeing and relying on advertisements regarding Restore's durability and long-lasting protection.

222.    Plaintiff Leasha Dixson, a resident and citizen of the State of Ohio, purchased and paid for multiple gallons of Restore in or around April 2013. Restore was applied to Plaintiff's

deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

223.    Plaintiff Dixson notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

224.    Plaintiff Dixson has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Dixson known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

225.    Prior to purchasing Restore, Plaintiff Dixson recalls, generally, seeing and relying on advertisements regarding Restore's durability, superior finish, and ability to protect her deck for years to come.

226.    Plaintiffs Steve and Gina Cady, residents and citizens of the State of Pennsylvania, purchased and paid for multiple gallons of Restore in or around the Summer of 2013. Restore was applied to Plaintiffs' deck in accordance with the instructions provided by Defendant. Plaintiffs have incurred damages and have standing to pursue the claims asserted in the complaint.

227.    In or around the Winter of 2013, the Cady Plaintiffs notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

228.    The Cady Plaintiffs have and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiffs for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had the

Cady Plaintiffs known that Restore would not perform as warranted and/or would prematurely fail, Plaintiffs would not have purchased or used the product.

229.    Prior to purchasing Restore, the Cady Plaintiffs recall, generally, seeing and relying on advertisements regarding Restore's durability and long-lasting protection.

230.    Plaintiff Lawrence Fredericks, a resident and citizen of the State of Pennsylvania, purchased and paid for multiple gallons of Restore in or around June 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

231.    In or around May 2014, Plaintiff Fredericks notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

232.    Plaintiff Fredericks has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Fredericks known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

233.    Prior to purchasing Restore, Plaintiff Fredericks recalls, generally, seeing and relying on advertisements regarding Restore's ability to provide superior protection to his deck for years to come.

234.    Plaintiff Scott Reinhart, a resident and citizen of the State of Pennsylvania, purchased and paid for multiple gallons of Restore in or around July 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

235.     In or around April 2014, Plaintiff Reinhart notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

236.     Plaintiff Reinhart has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Reinhart known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

237.     Prior to purchasing Restore, Plaintiff Reinhart recalls, generally, seeing and relying on advertisements regarding Restore's ability to protect his deck from the elements for years to come.

238.     Plaintiff Mark Renzi, a resident and citizen of the State of Rhode Island, purchased and paid for multiple gallons of Restore in or around April 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

239.     Plaintiff Renzi has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had Plaintiff Renzi known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

240.     Prior to purchasing Restore, Plaintiff Renzi recalls, generally, seeing and relying on advertisements regarding Restore's durability and long-lasting protection.

241.     Plaintiff Paula Rogers is a resident and citizen of the State of Tennessee purchased and paid for multiple gallons of Restore in or around May 2014. Restore was applied

to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

242.    Plaintiff Rogers has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Rogers known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

243.    Prior to purchasing Restore, Plaintiff Rogers recalls, generally, seeing and relying on advertisements regarding Restore's superior protection qualities and durability.

244.    Plaintiff Dominic Ray Diaz, a resident and citizen of the State of Texas, purchased and paid for multiple gallons of Restore in or around April, 2014. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

245.    Plaintiff Diaz has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff DIAZ known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

246.    Prior to purchasing Restore, Plaintiff Diaz recalls, generally, seeing and relying on Defendant advertisements regarding the quality, fitness and superior characteristics of Restore.

247.    Plaintiff Becki S. Murphy, a resident and citizen of the State of Texas, purchased and paid for multiple gallons of Restore in or around July 2013. Restore was applied to

Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

248.    In or around October 2014, Plaintiff Murphy notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck. Defendant agreed to refund the purchase price for Restore but would not agree to pay to have her damaged deck repaired or replaced.

249.    Plaintiff Murphy has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Murphy known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

250.    Prior to purchasing Restore, Plaintiff Murphy recalls relying on advertisements regarding the integrity and longevity of Restore she saw on television, on Defendant's website and on promotional materials she read at both Lowe's and Home Depot, where she purchased Restore.

251.    Plaintiff Sharon Ledford, a resident and citizen of the State of Virginia, purchased from Lowe's and paid for multiple gallons of Restore in November 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

252.    Plaintiff Ledford has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Ledford

known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

253.    Prior to purchasing Restore, Plaintiff Ledford recalls generally seeing and relying on advertisements regarding the integrity and longevity of Restore.

254.    Plaintiff George Reynolds, a resident and citizen of the State of Virginia, purchased from Lowe's and paid for Restore in March 2014. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

255.    Plaintiff Reynolds has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Reynolds known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

256.    Prior to purchasing Restore, Plaintiff Reynolds recalls generally seeing and relying on advertisements regarding the integrity and longevity of Restore.

257.    Plaintiff Michael Allen, a resident and citizen of the State of Washington, purchased and paid for multiple gallons of Restore in or around May 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

258.    Plaintiff Allen notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck.

259.    Plaintiff Allen has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these

damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Allen known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

260.    Prior to purchasing Restore, Plaintiff Allen recalls, generally, seeing and relying on advertisements regarding Restore's durability and long-lasting protection.

261.    Plaintiff Carrie McCain, a resident and citizen of the State of Washington, purchased and paid for multiple gallons of Restore in or around April 2013. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

262.    Plaintiff McCain has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Had Plaintiff McCain known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

263.    Prior to purchasing Restore, Plaintiff McCain recalls, generally, seeing and relying on advertisements regarding Restore's durability and long-lasting protection.

264.    Plaintiff Timothy Mueller, is a resident and citizen of the State of Wisconsin, purchased and paid for multiple gallons of Restore in or around June 2014. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

265.    Plaintiff Mueller has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff

Mueller known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

266.    Prior to purchasing Restore, Plaintiff Mueller recalls, generally, seeing and relying on advertisements regarding Restore's durability and long-lasting protection.

267.    Plaintiff Thomas Schoenberger, is a resident and citizen of the State of Wisconsin, purchased and paid for multiple gallons of Restore in or around January 2015. Restore was applied to Plaintiff's deck in accordance with the instructions provided by Defendant. Plaintiff has incurred damages and has standing to pursue the claims asserted in the complaint.

268.    Plaintiff Schoenberger has and/or will incur out of pocket expenses to repair damage caused by Restore's premature failure. Defendant has not fully reimbursed Plaintiff for these damages and/or the concomitant costs of repair and/or replacement of the deck. Had Plaintiff Schoenberger known that Restore would not perform as warranted and/or would prematurely fail, Plaintiff would not have purchased or used the product.

## CAUSES OF ACTION

### COUNT I

**Claim For Declaratory And Injunctive And/Or Equitable Relief**
**(On Behalf of Residents of the United States and its Territories)**

269.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein. The Plaintiffs listed above assert the following claims for themselves and the class.

270.    An actual controversy exists between Defendant and Plaintiffs concerning:

      a.    Whether Defendant marketed Restore as a superior, longer-lasting alternative to paint, capable of extending the life of wooden decks and related structures to which it was applied;

b.  Whether Defendant's marketing of Restore was false, deceptive, and/or misleading to reasonable consumers;

c.  Whether Restore is unfit for its ordinary purpose of providing lasting protection to deck surfaces and related structures;

d.  Whether Restore is unfit for its particular purpose of providing protection to deck surfaces and related structures from harsh weather conditions and lasting longer than ordinary deck paints or stains;

e.  When Defendant discovered that Restore was susceptible to premature failure;

f.  Whether Defendant ever disclosed its knowledge that Restore was susceptible premature failure;

g.  Whether Restore's propensity of premature failure would be important to a reasonable consumer;

h.  Whether Defendant was unjustly enriched by the sale of Restore;

i.  Whether Defendant breached its express and implied warranties;

j.  Whether Defendant's purported express warranty limitations regarding available remedies are unconscionable and void;

k.  Whether Defendant engaged in fraudulent, unfair, or deceptive conduct with respect to the handling of warranty claims;

l.  Whether members of the proposed class have sustained damages and, if so, the proper measure of such damages; and

m.  Whether Defendant should be declared financially responsible for notifying all class members about Restore's propensity to prematurely fail and for all damages associated with application of the product on class members' decks and similar property.

271.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The declaratory relief sought here does not fall within any of the exemptions set forth in that Act.

272.    Accordingly, Plaintiffs pray this Court declare that:

a. Defendant's "warranty" remedy limited to a "refund of the original purchase price" or "replacement with a product of equal value" is declared unconscionable;

b. Restore has a propensity to prematurely fail, which causes consumers to suffer damages, including to other property;

c. Defendant knew and/or should have known that Restore had a propensity to prematurely fail, which would cause consumers to suffer damages;

d. Defendant is required to disclose to consumers, at its own cost, that Restore's propensity to prematurely fail causes damages, including to other property;

e. Defendant's express warranty fails its essential purpose and Defendant's purported warranty limitations are void and unconscionable as a matter of law;

f. Defendant is required to review and re-audit all prior warranty claims, including claims previously denied in whole or in part.

273. The requested declaratory relief will generate common answers that will resolve controversies that lie at the heart of this litigation and will allow Plaintiffs to obtain relief that directly redresses the injury suffered. Resolving these issues in this class action will eliminate the need for continued and repeated litigation.

## COUNT II

### Violation of Nationwide Magnuson-Moss Warranty Act

### (On Behalf of Residents of the United States and its Territories)

274. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein. The Plaintiffs listed above assert the following claims for themselves and the class, and Plaintiffs seek to represent the proposed nationwide class.

275. Congress enacted the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (the "Magnuson-Moss Act") in response to widespread consumer complaints regarding

misleading and deceptive warranties. The Magnuson-Moss Act imposes civil liability on any "warrantor" for, *inter alia*, failing to comply with any obligation under written and implied warranties. 15 U.S.C. § 2310(d)(1).

276.    Restore is a "consumer product" as defined by § 2301(1).

277.    Plaintiffs and class members are "consumers" as defined by § 2301(3).

278.    Defendant is a "warrantor" and "supplier" as defined by §§ 2301(4) and (5).

279.    Defendant has failed to remedy Restore's propensity to prematurely fail, despite its knowledge and notice of Restore's propensity to prematurely crack, peel, flake, chip, bubble, pucker, separate, delaminate, discolor, and generally degrade shortly after application, and its propensity to cause damage to decks and other property.

280.    Defendant places a written "limited lifetime warranty" on the packing of Restore, stating that Defendant "guarantees product performance." However, warranty terms purportedly limit liability to a refund or replacement of the product and limit consequential and incidental damages. In certain versions of the warranty, the limitations are not sufficiently set apart by underlining or highlighting. This lack of conspicuousness violates the Act and fails to meet minimum federal warranty standards; thus, the warranty limitations are not enforceable. *See* §§ 2302(a), 2304(a)(3), 2308(a), and 2308(c). The warranty limitations are also unconscionable as a matter of law under UCC § 2-302, as adopted by the states.

281.    At the time Defendant issued the written warranty for Restore, Defendant knew and had notice that Restore had the propensity to prematurely fail. Defendant's continued misrepresentations and omissions concerning Restore, as well as Defendant's failure to abide by its written and implied warranties, are "[u]nfair methods of competition in or affecting

commerce, and unfair or deceptive acts or practices in or affecting commerce," and, accordingly, are unlawful under 15 U.S.C. §§ 2310(b), 45(a)(1).

282. Plaintiffs seek to recover damages caused as a direct result of Defendant's breach of its written and implied warranties and its deceitful and unlawful conduct. Damages include, *inter alia*, labor and other costs associated with removing Restore and replacing decking structures and similar structures.

283. The Magnuson-Moss Act also provides for "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1). As such, Plaintiffs seek reformation of Defendant's written warranty to comport with Defendant's obligations under the Act and consumers' reasonable expectations. Additionally, Plaintiffs seek to enjoin Defendant from acting unlawfully as further alleged herein, including discouraging Plaintiffs to seek all available remedies.

284. The Magnuson-Moss Act also provides for an award of costs and expenses, including attorneys' fees, to prevailing consumers in the Court's discretion. 15 U.S.C. § 2310(d)(2). Plaintiffs intend to seek such an award as prevailing consumers at the conclusion of this case.

## COUNT III

### Breach of Express Warranty

### (On Behalf of Residents of the United States and its Territories)

285. Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein. The Plaintiffs listed above assert the following claims for themselves and the class.

286. Defendant made several express warranties and representations constituting warranties regarding Restore, including, but not limited to, the following warranties that:

a.  Defendant "guarantees product performance . . . as long as you own or reside in your home when our product was applied according to label directions" (warranty on product labels);

b.  Restore "lasts 10 to 12 years and in fact it comes with a life time warrantee" (online);

c.  Restore "lasts 3x longer than deck stain with less maintenance" (advertisement);

d.  Restore is a "low-maintenance, long-lasting alternative to the endless cycle of repairing and repainting" (online);

e.  Restore "lasts for years with less maintenance than deck paints or stains! Satisfaction guaranteed" (online);

f.  Restore "tested tough for 12+ years" (advertisement); and

g.  Restore will "provide lasting protection against moisture and the damaging effects of the sun" (online).

287.  These representations and promises became part of the basis of the bargain between the parties and created a collective "express warranty" that Restore would conform to Defendant's affirmations and promises. Defendant is obligated under the terms of this express warranty to repair and/or replace Restore sold to Plaintiffs as well as to repair and/or replace any structural damages caused by the product.

288.  Defendant has breached the express warranty by supplying Restore in a condition that does not satisfy warranty obligations and by failing to compensate Plaintiffs for damages caused by its product.

289.  Defendant's conduct described in this complaint constitutes a breach of express warranties under UCC § 2-313, as adopted by the following state statutes:

Ala. Code § 7-2-313, *et seq.*; Alaska Stat. § 45.02.313, *et seq.*;
Ariz. Rev. Stat. § 47-2313, *et seq.*; Ark. Code § 4-2-313, *et seq.*;
Cal. Com. Code § 2313, *et seq.*; Colo. Rev. Stat. § 4-2-313, *et seq.*;
Conn. Gen. Stat. § 42a-2-313, *et seq.*; 6 Del. C. § 2-313, *et seq.*;
D.C. Code § 28:2-313, *et seq.*; Fla. Code § 672.313, *et seq.*;

O.C.G.A. § 11-2-313, *et seq.*; Haw. Rev. Stat. § 490:2-313, *et seq.*; Idaho Code § 28-2-313, *et seq.*; 810 Ill. Comp. Stat. 5/2-313, *et seq.*; Ind. Code § 26-1-2-313, *et seq.*; Iowa Code § 554.2313, *et seq.*; Kan. Stat. § 84-2-313, *et seq.*; Ky. Rev. Stat. § 355.2-313, *et seq.*; La. Rev. Stat § 9:2800.53(6) , *et seq.*; 11 M.R.S.A. § 2-313, *et seq.*; Md. Code Ann., Com. Law § 2-313, *et seq.*; Mass. Code 106, § 2-313, *et seq.*; Mich. Comp. Laws 440.2313, *et seq.*; Minn. Stat. § 336.2-313, *et seq.*; Miss. Code § 75-2-313, *et seq.*; Mo. Rev. Stat. § 400.2-313, *et seq.*; Mont. Code § 30-2-313, *et seq.*; Neb. U.C.C. § 2-313, *et seq.*; Nev. Rev. Stat. § 104.2313, *et seq.*; N.H. Rev. Stat. § 382-A:2-313, *et seq.*; N.J. Stat. § 12A:2-313, *et seq.*; N.M. Stat. § 55-2-313, *et seq.*; N.Y. U.C.C. § 2-313, *et seq.*; N.C. Gen. Stat. § 25-2-313, *et seq.*; N.D. Cent. Code § 41-02-30, *et seq.*; Ohio Rev. Code § 1302.26, *et seq.*; Okla. Stat. Tit. 12A, § 2-313, *et seq.*; Or. Rev. Stat. § 72.3130, *et seq.*; 13 Pa. Cons. Stat. § 2313, *et seq.*; R.I. Gen. Laws § 6A-2-313, *et seq.*; S.C. Code § 36-2-313, *et seq.*; S.D. Codified Laws § 57A-2-313, *et seq.*; Tenn. Code § 47-2-313, *et seq.*; V.T.C.A., Bus. & C. § 2.313, *et seq.*; Utah Code § 70A-2-313, *et seq.*; Vt. Stat. Tit. 9A, § 2-313, *et seq.*; Va. Code § 8.2-313, *et seq.*; Wash. Rev. Code § 62A.2-313, *et seq.*; W. Va. Code § 46-2-313, *et seq.*; Wis. Stat. § 402.313, *et seq.*; and Wyo. Stat. § 34.1-2-313, *et seq.*

290.    Plaintiffs have complied with the warranty terms, including application instructions. Defendant, after notice of the problems, has failed to comply with the warranty terms.

291.    The purported limitations in the warranty, including for the "exclusive remedy" of a refund or replacement, are procedurally and substantively unconscionable and thus fail under UCC § 2-302, as adopted by the States. Defendant knew or should have known that Restore was susceptible to premature failure, Defendant had unequal bargaining power and misrepresented Restore's reliability, and the limited remedies unreasonably favor Defendant and fail Plaintiffs' reasonable expectations for a "lifetime warranty" for product performance.

292.    As a direct and proximate result of the breach of the express warranty, Plaintiffs have suffered damages, injury in fact and/or ascertainable loss in an amount to be determined at trial, including repair and replacement costs and/or damages to other property.

## COUNT IV

### Breach of Implied Warranty

**(On Behalf of Residents of the Following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; Washington; West Virginia; Wyoming)**

293.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein. Plaintiffs Charles Hoff, Michael Baden, Jerry Lautigar, John Malloy, Hans Shanks, Tracy McCoy, Cory Fales, Robert Webber, Rick Boscardin, Cynthia Scaglione, Jeffrey Mies, Don Gibson, Rose Therrien, Scott Holbrook, Ed Anderson, John Riello, Robert Dorgan, Irma Blank, Leasha Dixson, Steve and Gina Cady, Lawrence Fredericks, Schott Reinhart, Mark Renzi, Dominic Ray Diaz, Becki S. Murphy, Sharon Ledford, George Reynolds, Michael Allen, and Carrie McCain have standing to pursue this cause of action on behalf of the class.

294.    Defendant is in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and selling Restore, which has been applied to Plaintiffs' decks and other similar structures. Defendant impliedly warranted to Plaintiffs (and to Plaintiffs' agents) that Restore was of a certain quality, was free from defects, was fit for its ordinary purpose of resurfacing decks and similar structures, and was fit for its particular purpose of providing protection to deck structures form harsh weather conditions and lasting longer than ordinary deck paints or stains.

295.    Restore was unfit for its ordinary use and was not of merchantable quality, as warranted by Defendant, because it was defective and had the propensity to crack, peel, flake, chip, bubble, pucker, separate and generally degrade. Prior to purchase, Plaintiffs could not have

readily discovered that the product was not fit for its ordinary purpose as a deck resurfacer, was not of the same quality as those generally acceptable in the trade, and did not conform to the quality previously represented.

296.     Restore was similarly unfit for its particular purpose. At the time Plaintiffs purchased Restore, Defendant knew, or should have known, that the product would be used as an exterior resurfacing product for decks and related structures subject to certain extreme conditions, including high temperature and humid weather in the summer and freezing temperatures, ice, snow, and dry air in the winter. Plaintiffs (and Plaintiffs' agents) reasonably relied on the skill and judgment of Defendant in selecting and furnishing a suitable product for this purpose. However, Defendant's product was not suitable for this purpose at the point of sale because it had the propensity to prematurely fail, did not withstand harsh weather, and did not last longer than ordinary deck paint or stain.

297.     Defendant has failed to provide adequate remedies under its written express warranty, which has caused the express warranty to fail its essential purpose, thereby permitting remedies under implied warranties.

298.     Defendant has not sufficiently disclaimed the implied warranty of merchantability (specifically and conspicuously) or the implied warranty of fitness (in writing and conspicuously). Further, the purported limitations in the warranty, including limiting the "exclusive remedy" to a refund or replacement, are procedurally and substantively unconscionable and thus fail under UCC § 2-302, as adopted by the States. Defendant knew or should have known that Restore susceptible to premature failure, Defendant had unequal bargaining power and misrepresented Restore's reliability, and the limited remedies

unreasonably favor Defendant and fail Plaintiffs' reasonable expectations for a "lifetime warranty" for product performance.

299.    Defendant's conduct described in this complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted by the following state statutes:

> Alaska Stat. §§ 45.02.314 and 45.02.315, *et seq.*; Ark. Code Ann. §§ 4-2-314 and 4-2-315, *et seq.*; Cal. Com. Code §§ 2314-2315, *et seq.*, and Cal. Civ. Code § 1790, *et seq.*; Colo. Rev. Stat. Ann. §§ 4-2-314 and 4-2-315, *et seq.*; Conn. Gen. Stat. §§ 42a-2-314 and 42a-2-315, *et seq.*; Del. Code Ann. Tit. 6, §§ 2-314 and 2-315, *et seq.*; D.C. Code §§ 28:2-314 and 28:2-315, *et seq.*; Fla. Stat. Ann. §§ 672.314 and 672.315, *et seq.*; Haw. Rev. Stat. §§ 490:2-314 and 490:2-315, *et seq.*; Ind. Code §§ 26-1-2-314 and 26-1-315, *et seq.*; Kan. Stat. Ann. §§ 84-2-314 and 84-2-315, *et seq.*; La. Civ. Code Ann. Art. 2520, *et seq.*; Me. Rev. Stat. Ann. Tit. 11, §§ 2-314 and 2-315, *et seq.*; Md. Code Ann., Com. Law §§ 2-314 and 2-315, *et seq.*; Mass. Gen. Laws ch. 106, §§ 2-314 and 2-315, *et seq.*; Mich. Comp. Laws Ann. §§ 440.2314 and 440.2315, *et seq.*; Minn. Stat. §§ 336.2-314 and 336.2-315, *et seq.*; Miss. Code Ann. §§ 75-2-314 and 75-2-315, *et seq.*; Mo. Rev. Stat. §§ 400.2-314 and 400.2-315, *et seq.*; Mont. Code Ann. §§ 30-2-314 and 30-2-315, *et seq.*; Neb. Rev. Stat. Ann. §§ 2-314 and 2-315, *et seq.*; Nev. Rev. Stat. §§ 104.2314 and 104.2315, *et seq.*; N.H. Rev. Stat. Ann. §§ 382-A:2-314 and 382-A:2-315, *et seq.*; N.J. Stat. Ann. §§ 12A:2-314 and 12A-315, *et seq.*; N.M. Stat. Ann. §§ 55-2-314 and 55-2-315, *et seq.*; N.D. Cent. Code §§ 41-02-31 and 41-02-32, *et seq.*; Ohio Rev. Code Ann. §§ 1302.27 and 1302.28, *et seq.*; Okla. Stat. Tit. 12A, §§ 2-314 and 2-315, *et seq.*; 13 Pa. Stat. Ann. §§ 2314 and 2315, *et seq.*; R.I. Gen. Laws §§ 6A-2-314 and 6A-2-315, *et seq.*; S.C. Code Ann. §§ 36-2-314 and 36-2-315, *et seq.*; S.D. Codified Laws §§ 57A-2-314 and 57A-2-315, *et seq.*; Tex. Bus. & Com. Code Ann. §§ 2.314 and 2.315, *et seq.*; Utah Code Ann. §§ 70A-2-314 and 70A-2-315, *et seq.*; Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2-315, *et seq.*; Va. Code Ann. §§ 8.2-314 and 8.2-315, *et seq.*; Wash. Rev. Code §§ 62A.2-314 and 62A.2-315, *et seq.*; W. Va. Code §§ 46-2-314 and 46-2-315, *et seq.*; and Wyo. Stat. Ann. §§ 34.1-2-314 and 34.1-2-315, *et seq.*

300.    Actual and/or constructive notice was duly given to Defendant of the breaches of these warranties, and Defendant has yet failed to cure.

301.    As a direct and proximate result of the breaches of these warranties, Plaintiffs have suffered damages, injury in fact and/or ascertainable loss in an amount to be determined at trial, including repair and replacement costs and/or damages to other property.

302.    Plaintiffs demand judgment against Defendant for compensatory damages for themselves and each member of the class, for the establishment of a common fund, plus additional remedies as requested by Plaintiffs.

## COUNT V

### Breach of Implied Warranty

**(On Behalf of Residents of the Following States: Alabama; Arizona; Georgia; Idaho; Illinois; Iowa; Kentucky; New York; North Carolina; Oregon; Tennessee; Wisconsin)**

303.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein. Plaintiffs Angelita Hickman, Michael Reyes, Layla Patterson, Debra Dockstader, Season Gomez, Conrad Shogren, David and Kathleen Sullivan, Carol Larson, Ubaldo Ferndandez, James and Joan Leonard, Christopher and Tamela McLamb, Paula Rogers, Timothy Mueller, and Thomas Schoenberger have standing to pursue this cause of action on behalf of the class.

304.    Defendant is in the business of manufacturing, designing, supplying, marketing, advertising, warranting, and selling Restore, which has been applied to Plaintiffs' decks and other similar structures. Defendant impliedly warranted to Plaintiffs (and to Plaintiffs' agents) that Restore was of a certain quality, was free from defects, was fit for its ordinary purpose of resurfacing decks and similar structures, and was fit for its particular purpose of providing protection to deck structures form harsh weather conditions and lasting longer than ordinary deck paints or stains.

305.     Restore was unfit for its ordinary use and was not of merchantable quality, as warranted by Defendant, because it was defective and had the propensity to crack, peel, flake, chip, bubble, pucker, separate and generally degrade. Prior to purchase, Plaintiffs could not have readily discovered that the product was not fit for its ordinary purpose as a deck resurfacer, was not of the same quality as those generally acceptable in the trade, and did not conform to the quality previously represented.

306.     Restore was similarly unfit for its particular purpose. At the time Plaintiffs purchased Restore, Defendant knew, or should have known, that the product would be used as an exterior resurfacing product for decks and related structures subject to certain extreme conditions, including high temperature and humid weather in the summer and freezing temperatures, ice, snow, and dry air in the winter. Plaintiffs (and Plaintiffs' agents) reasonably relied on the skill and judgment of Defendant in selecting and furnishing a suitable product for this purpose. However, Defendant's product was not suitable for this purpose at the point of sale because it had the propensity to prematurely fail, did not withstand harsh weather, and did not last longer than ordinary deck paint or stain.

307.     Defendant has failed to provide adequate remedies under its written express warranty, which has caused the express warranty to fail its essential purpose, thereby permitting remedies under implied warranties.

308.     Defendant has not sufficiently disclaimed the implied warranty of merchantability (specifically and conspicuously) or the implied warranty of fitness (in writing and conspicuously). Further, the purported limitations in the warranty, including limiting the "exclusive remedy" to a refund or replacement, are procedurally and substantively unconscionable and thus fail under UCC § 2-302, as adopted by the States. Defendant knew or

should have known that Restore susceptible to premature failure, Defendant had unequal bargaining power and misrepresented Restore's reliability, and the limited remedies unreasonably favor Defendant and fail Plaintiffs' reasonable expectations for a "lifetime warranty" for product performance.

309.    Defendant was and is in privity with each of the Plaintiffs and class members by law and/or by fact. First, Plaintiffs have had sufficient direct dealings with Defendant and/or its authorized dealers, franchisees, representatives, and agents to establish privity of contract. Alternatively, Plaintiffs and class members are intended third-party beneficiaries of contracts, including express warranties, between Defendant and its dealers, franchisees, representatives and agents; Defendant's advertisements were aimed at Plaintiffs and class members, and Defendant's warranties were expressly written for the benefit of Plaintiffs and class members as end users of Restore. Defendant's authorized dealers, franchisees, representatives, and agents, on the other hand, were not intended to be the ultimate consumers of Restore and have no rights under the warranty agreements provided by Defendant; these intermediary entities made no changes to Defendant's product, nor made any additions to the warranties issued by Defendant. Further, Defendant is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

310.    Defendant's conduct described in this complaint constitutes a breach of implied warranties under UCC §§ 2-314, 2-315, and 2-318, as adopted by the following state statutes:

> Ala. Code §§ 7-2-314, 7-2-315 and 7-2-318, *et seq.*; Ariz. Rev. Stat. Ann. §§ 47-2314, 47-2315 and 47-2318, *et seq.*; Ga. Code Ann. §§ 11-2-314, 11-2-315 and 11-2-318, *et seq.*; Idaho Code Ann. §§ 28:2-314, 28:2-315 and 28:2-318, *et seq.*; 810 Ill. Comp. Stat. 5/2-314, 5/2-315 and 5/2-318, *et seq.*; Iowa Code §§ 554.2314, 554.2315 and 554.2318, *et seq.*; Ky. Rev. Stat. Ann. §§ 355.2-314, 355.2-315 and 355.2-318, *et seq.*; N.Y. U.C.C. Law §§ 2-314, 2-315 and 2-318, *et seq.*; N.C. Gen. Stat. §§ 25-2-314,

25-2-315 and 25-2-318, *et seq.*; Ore. Rev. Stat. §§ 72.3140, 72.3150 and 72.3180, *et seq.*; Tenn. Code Ann. §§ 47-2-314, 47-2-315 and 47-2-318, *et seq.*; and Wis. Stat. §§ 402.314, 402.315 and 402.318, *et seq.*

311.    Actual and/or constructive notice was duly given to Defendant of the breaches of these warranties, and Defendant has yet failed to cure.

312.    As a direct and proximate result of the breaches of these warranties, Plaintiffs have suffered damages, injury in fact and/or ascertainable loss in an amount to be determined at trial, including repair and replacement costs and/or damages to other property.

313.    Plaintiffs demand judgment against Defendant for compensatory damages for themselves and each member of the class, for the establishment of a common fund, plus additional remedies as requested by Plaintiffs.

## COUNT VI

### Violation of State Consumer Laws

**(On Behalf of Residents of the Following States: Alaska; Arizona; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Idaho; Illinois; Indiana; Iowa; Kansas; Maine; Maryland; Massachusetts; Michigan; Minnesota; Missouri; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Rhode Island; South Dakota; Texas; Utah; Vermont; Virginia; Washington; West Virginia; Wisconsin; Wyoming)**

314.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein. Plaintiffs Charles Hoff, Michael Baden, Jerry Lautigar, John Malloy, Hans Shanks, Debra Dockstader, Season Gomez, Conrad Shogren, David and Kathleen Sullivan, Tracy McCoy, Cory Fales, Robert Webber, Rick Boscardin, Cynthia Scaglione, Jeffrey Mies, Don Gibson, Scott Holbrook, Ed Anderson, John Riello, Robert Dorgan, Carol Larson, Ubaldo Ferndandez, James and Joan Leonard, Christopher

and Tamela McLamb, Irma Blank, Leasha Dixson, Steve and Gina Cady, Lawrence Fredericks, Schott Reinhart, Mark Renzi, Dominic Ray Diaz, Becki S. Murphy, Sharon Ledford, George Reynolds, Michael Allen, Carrie McCain, Timothy Mueller, and Thomas Schoenberger have standing to pursue this cause of action on behalf of the class.

315.    Defendant markets and sells goods, including Restore, to consumers throughout the United States, including to Plaintiffs and the class. Defendant's acts and omissions regarding Restore affect trade and commerce across all fifty (50) states and the District of Columbia.

316.    Plaintiffs and statewide class members are consumers who purchased and used Restore primarily for personal, family and/or household purposes.

317.    Defendant has violated state consumer protection laws by engaging in unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices, including without limitation, by defective design and manufacture of Restore as well as misleading marketing, advertising, selling, and warranting of Restore to consumers. In connection with these sales, Defendant omitted material information about Restore that it was legally obligated to disclose. Defendant never informed Plaintiffs or class members, at the point of sale or otherwise, that Restore would prematurely fail shortly after application. It failed to disclose this information well after it was aware of these conditions. Defendant has also failed or refused to pay for resulting expenses that consumers have incurred.

318.    Among other things, Defendant made numerous deceptive statements, including the following misrepresentations that Restore:

> a.    "lasts 10 to 12 years and in fact it comes with a life time warrantee" (online);
>
> b.    "lasts 3x longer than deck stain with less maintenance" (advertisement);
>
> c.    is a "low-maintenance, long-lasting alternative to the endless cycle of repairing and repainting" (online);

71

d.    provides "tough, resilient coating over existing decking" which "lasts for years with less maintenance than deck paints or stains! Satisfaction guaranteed" (online);

e.    will "last for years with little maintenance" (online);

f.    can "extend the life" of a deck by providing a "tough, durable coating" (online);

g.    "tested tough for 12+ years" (advertisement);

h.    will "provide lasting protection against moisture and the damaging effects of the sun" (online);

i.    provides a "protective barrier from Mother Nature's harsh elements" (online);

j.    has "superior weather resistance" and "ultimate water repellency" (online);

k.    "is an easy to apply repair coating that revives the surface while offering maximum protection to preserve the deck for years to come" (press release); and

l.    lasting moisture protection.

319.    Through its conduct, Defendant has violated the following state consumer laws prohibiting unfair methods of competition and unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices:

> The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471 through 45.50.561, *et seq.*; the Arizona Consumer Fraud Act, A.R.S. § 44-1522, *et seq.*; the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, § 17200, *et seq.* ; the Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), *et seq.*; the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110(b), *et seq.*; the Delaware Consumer Fraud Act, Del. Code Ann. Title 6 § 2513, *et seq.*; the District of Columbia Consumer Protection Act, D.C. Code §§ 28-3904(a), (d), (e), (f) and (r), *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), *et seq.*; the Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), *et seq.*, and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), *et seq.*; the Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), *et seq.*, and Idaho Code § 48-

603C, *et seq.*; the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, *et seq.*, and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. § 510/2(a)(5), (7) and (12), *et seq.*; the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), *et seq.*; The Iowa Consumer Fraud Act, I.C.A. §§ 714H.3 and 714H.5, *et seq.* Plaintiffs have obtained the approval of the Iowa Attorney General for filing this class action lawsuit as provided under I.C.A § 714H.7; the Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), *et seq.*; the Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1212(1)(E) and (G), *et seq.*, and the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 207, *et seq.*; the Maryland Consumer Protection Act, Md. Code Commercial Law, § 13-301(1) and (2)(i), and (iv) and (9)(i), *et seq.*; the Massachusetts Consumer Protection Act, Ma. Gen. Laws Ann. Ch. 93A § 2(a), *et seq.*; the Michigan Consumer Protection Act, M.C.P.L.A. § 445.903(1)(c)(e), (s) and (cc), *et seq.*; the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), *et seq.*, the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat.§ 8.31, subd. 3(a), *et seq.*; the Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020(1), *et seq.*; the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), *et seq.*; the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. § 598.0915(5) and (7), *et seq.*; the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2(v) and (vii), *et seq.*; the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.*; the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12- 2(D)(5)(7) and (14) and 57-12-3, *et seq.*; New York Business Law, N.Y. Gen. Bus. Law § 349(a), *et seq.*; The North Carolina Unfair Trade Practices Act, N.C.G.S.A. § 75-1.1(a), *et seq.*; the North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, *et seq.*; the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02(A), (B)(1) and (2), *et seq.* Pursuant to Ohio Rev. Code Ann. § 1345.09(B); the Oklahoma Consumer Protection Act, 15 Okl. Stat. Ann. § 753(5), (7) and (20), *et seq.*; the Oregon Unfair Trade Practices Act, Or. Rev. Stat. §§ 646.608(1)(e)(g) and (u), *et seq.*; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, *et seq.*; the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1(6)(v), (vii), (xii), (xiii) and (xiv), *et seq.*; the South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), *et seq.*; the Texas Deceptive Trade Practices-

Consumer Protection Act, V.T.C.A., Bus. & C. § 17.46(a), (b)(5) and (7), *et seq.*; the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1) and (2)(a) and (b); the Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), *et seq.*; the Virginia Consumer Protection Act, Va. Code Ann. § 59.1- 200(A)(5)(6) and (14), *et seq.*; the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, *et seq.*; The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, *et seq.*; the Wisconsin Deceptive Trade Practices Act, W.S.A. §100.20(1), *et seq.*; and the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-105(a), (i), (iii) and (xv), *et seq.*

320.    As a direct and proximate result of Defendant's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices, Plaintiffs and the class have suffered ascertainable losses and injuries, including without limitation: (1) monetary costs of purchasing, removing, and replacing Restore, which was susceptible to premature failure; (2) monetary costs of repairing and replacing decks and other property upon which defective Restore was applied; and (3) other consequential and incidental damages resulting from Restore's propensity to prematurely fail.

321.    Plaintiffs bring this action on behalf of themselves and all similarly situated persons for the relief requested and to promote the public interests in the provision of truthful, non-deceptive information to allow consumers to make informed purchasing decisions and to protect Plaintiffs, the class, and the public from Defendant's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful practices. Defendant's wrongful conduct has had widespread impact on the public at large, as demonstrated by the believed thousands of complaints about its product.

322.    Defendant has long had notice of Plaintiffs' allegations, claims and demands, including from internal audits, field testing, online complaints, and direct complaints regarding Restore.

## COUNT VII

### Violation of State False Advertising Laws

### (On Behalf of Residents of the Following States: California; Florida; Mississippi; Utah)

323.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein. Plaintiff Charles Hoff and Plaintiff Hans Shanks have standing to pursue this cause of action on behalf of the class.

324.    Plaintiffs bring this claim pursuant to California's False Advertising Law, California Business and Professions Code § 17500, *et seq.*, Florida's False Advertising Statute, Fla. Stat. Ann. § 817.40, *et seq.*, Mississippi's False Advertising Statute, Miss. Code Ann. § 97-23-3, *et seq.*, and Utah's Truth in Advertising Act, Utah Code Ann. § 13-11a-1, *et seq.* (collectively, "False Advertising Laws"), which prohibit deceptive, misleading and/or false advertising.

325.    Defendant violated False Advertising Laws by advertising and representing – on product labels, advertisements, and warranties – that Restore was dependable and reliable when in fact it was not. Defendant's violations include, but are not limited to, advertising and representing to Plaintiffs in California, Florida, Mississippi, and Utah that Restore was "low-maintenance," had "superior weather resistance," and would last for ten to twelve years. As alleged, these representations were false, misleading, and likely to deceive Plaintiffs, members of the class, and other reasonable consumers.

326.    In connection with these sales, Defendant also omitted material information about Restore that it was legally obligated to disclose. Defendant never informed Plaintiffs or the class, at the point of sale or otherwise, that Restore would prematurely fail shortly after application. It

failed to disclose this information well after it was aware of these conditions. Defendant has also failed or refused to pay for resulting expenses that consumers have incurred.

327.     At the time of sale, Defendant knew, or by the exercise of reasonable care should have known – given internal data and consumer complaints – that its representations and omissions were false and misleading; or Defendant had insufficient information or knowledge to make such representations truthfully.

328.     Defendant made these representations and omissions for the purpose of inducing, and did induce, Plaintiff consumers to purchase Restore.

329.     Plaintiffs reviewed and reasonably relied on Defendant's representations and omissions regarding Restore and incurred damages as a direct and proximate result.

330.     As a direct and proximate result of Defendant's violation of False Advertising Laws, Plaintiffs and the class have suffered ascertainable losses and injuries, including without limitation: (1) monetary costs of purchasing, removing, and replacing Restore, which was susceptible to premature failure; (2) monetary costs of repairing and replacing decks and other property upon which defective Restore was applied; and (3) other consequential and incidental damages resulting from Restore's propensity to prematurely fail.

## COUNT VIII

### Violation of California Consumers Legal Remedies Act

### (On Behalf of Residents of California)

331.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein. Plaintiff Charles Hoff has standing to pursue this cause of action on behalf of the class.

332.    Plaintiffs bring this claim pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*, which prohibits unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result, or which does result, in the sale or lease of goods or services to any consumer.

333.    Plaintiffs are "consumers" and Restore is a "good" as defined by the CLRA. Further, Plaintiffs' purchases of Restore constitute "transactions," and Defendant's conduct described in this complaint occurred in several states, including the State of California.

334.    Defendant has violated the CLRA by engaging in unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful acts or practices in connection with transactions—namely the sale of Restore to Plaintiffs and the proposed class members— that were intended to result and did result in the sale of Restore to consumers.

335.    In connection with these sales, Defendant omitted material information about Restore that it was legally obligated to disclose. Defendant never informed Plaintiffs class members, at the point of sale or otherwise, that Restore would prematurely fail shortly after application. It failed to disclose this information well after it was aware of these conditions. Defendant has also failed or refused to pay for resulting expenses that consumers have incurred.

336.    Defendant has also violated the CLRA by making misrepresentations to Plaintiffs and members of the proposed class that were intended to result, and which did result, in the sale of Restore, including: (1) that Restore is reliable and will last for years when in fact it degrades prematurely within months; (2) that Restore is a superior product when in fact it is not; (3) that Restore is available with an extended warranty when Defendant has the intent not to compensate Plaintiffs for complete damages; and (4) that sales have been supplied in accordance with representations about Restore which, as outlined in this complaint, are not true.

337.     Plaintiffs reviewed and reasonably relied on Defendant's omissions and misrepresentations regarding Restore and incurred damages as a direct and proximate result, in an amount to be determined at trial. For example, Plaintiff Charles Hoff reviewed Defendant's advertising regarding Restore's high quality and longevity, and in reasonable reliance of those statements, incurred out of pocket costs for damages caused by Restore's premature failure and/or the concomitant costs of repair and/or replacement of his deck.

338.     Pursuant to § 1780(d) of the CLRA, Plaintiff Hoff will provide Defendant with notice of Defendant's CLRA violations, accompanied by a demand that Defendant correct, repair, replace and/or otherwise rectify the prohibited practices.  At this juncture, Plaintiffs only seek equitable and declaratory relief under the CLRA.

## COUNT IX

## Negligent Misrepresentation

## (On Behalf of Residents of the United States and its Territories)

339.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein. The Plaintiffs listed above assert the following claims for themselves and the class.

340.     Defendant manufactured, marketed, advertised, sold, and warranted Restore to Plaintiffs as a deck resurfacer.

341.     Among other things, Defendant made numerous material misrepresentations regarding Restore, including, but not limited to, the following representations that Restore:

     a.    "lasts 10 to 12 years and in fact it comes with a life time warrantee" (online);

     b.    "lasts 3x longer than deck stain with less maintenance" (advertisement);

     c.    is a "low-maintenance, long-lasting alternative to the endless cycle of repairing and repainting" (online);

  d.  provides "tough, resilient coating over existing decking" which "lasts for years with less maintenance than deck paints or stains! Satisfaction guaranteed" (online);

  e.  will "last for years with little maintenance" (online);

  f.  can "extend the life" of a deck by providing a "tough, durable coating" (online);

  g.  "tested tough for 12+ years" (advertisement);

  h.  will "provide lasting protection against moisture and the damaging effects of the sun" (online);

  i.  provides a "protective barrier from Mother Nature's harsh elements" (online);

  j.  has "superior weather resistance" and "ultimate water repellency" (online);

  k.  "is an easy to apply repair coating that revives the surface while offering maximum protection to preserve the deck for years to come" (press release); and

  l.  lasting moisture protection.

342. These representations are false and misleading. In addition, Defendant failed to disclose that the product does not work as marketed and degrades after application, and Defendant made other material omissions as set forth in the complaint.

343. At the time of sale, Defendant knew or should have known about Restore's propensity to prematurely fail, by and through, *inter alia*, internal audits, field testing, online complaints, and internal warranty and complaint data. Thus, Defendant either knew its representations were false or had no reasonable grounds for believing that its representations were true.

344. Defendant also failed to disclose, concealed, suppressed and omitted material information concerning Restore, including that Restore was inherently susceptible to cracking, peeling, flaking, chipping, bubbling, puckering, discoloring, separating, generally degrading and otherwise prematurely failing.

345.    Defendant intended that Plaintiffs rely upon its material misrepresentations and omissions to purchase more Restore; and Plaintiffs generally reviewed and reasonably relied upon Defendant's misrepresentations and omissions and incurred damages as a direct and proximate result, in an amount to be determined at trial, including repair and replacement costs and/or damages to other property.

## COUNT X

### Fraudulent Concealment
### (On Behalf of Residents of the United States and its Territories)

346.    Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this complaint, as though set forth fully herein.  The Plaintiffs listed above assert the following claims for themselves and the class.

347.    Defendant knowingly and intentionally concealed material facts regarding Restore, including, but not limited to, the following facts that Restore:

    a.    separates, cracks, bubbles, flakes, chips, and otherwise prematurely fails shortly after application;

    b.    is not a superior product to ordinary deck paint or stain;

    c.    does not repair or "restore" decking long-term;

    d.    cannot withstand harsh weather;

    e.    was the subject of numerous consumer complaints; and

    f.    will require removal and repair shortly after application.

348.    Defendant knew it was omitting material facts at the time it sold Restore to Plaintiffs and at a time it had a duty to disclose these facts.

349.    In omitting these facts, Defendant had the intent to defraud Plaintiffs and the intent for Plaintiffs to rely upon its omissions to purchase more Restore.

350. Plaintiffs reviewed and reasonably relied on Defendant's representations and omissions regarding Restore and incurred damages as a direct and proximate result, in an amount to be determined at trial, including repair and replacement costs and/or damages to other property. Any limitation on economic loss is precluded by Defendant's fraudulent misrepresentations.

351. Plaintiffs, in reasonable reliance of those statements made by Defendant, incurred out of pocket costs.

## PRAYER FOR RELIEF

352. WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and for judgment to be entered upon Defendant Rust-Oleum Corporation as follows:

A. Enter an order certifying the proposed class (and subclasses, if applicable), designating Plaintiffs as the class representatives, and designating the undersigned as class counsel;

B. Declare that Defendant is financially responsible for notifying all class members of the problems with Restore;

C. Declare that Defendant's limits on class members' remedies in the "warranty" are unconscionable and void;

D. Declare that Defendant must disgorge, for the benefit of the class, all or part of the ill-gotten profits it received from the sale of Restore, or order Defendant to make full restitution to Plaintiffs and the members of the class;

E. Defendant shall re-audit and reassess all prior warranty claims regarding Restore, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds;

F. For economic and compensatory damages on behalf of Plaintiffs and all members of the class;

G. For actual damages sustained and/or treble damages;

H. For punitive or exemplary damages;

I. For injunctive and declaratory relief;

J.      For reasonable attorneys' fees and reimbursement of all costs for the prosecution of this action; and

K.      For such other and further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so properly triable thereby.

Respectfully submitted,

Date: May 19, 2015

 *s/ William M. Audet*
William M. Audet
Joshua C. Ezrin
Theodore H. Chase
AUDET & PARTNERS, LLP
221 Main St., Ste. 1460
San Francisco, California 94105
Tel. (415)568-2555
waudet@audetlaw.com
jezrin@audetlaw.com
tchase@audetlaw.com

 *s/ Katrina Carroll*
Katrina Carroll
Kyle A. Shamberg
LITE DePALMA GREENBERG LLC
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Tel. (312) 750-1265
kcarroll@litedepalma.com
kshamberg@litedepalma.com

*Interim Co-Lead Counsel for Plaintiffs*

*Additional Plaintiffs' Counsel:*

Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
dlevin@lfsblaw.com

Kevin Daniel Bloom
Bloom and Bloom, P.C
530 Blooming Grove Turnpike
P.O. Box 4323
New Windsor, NY 12550
Tel: (845)-561-6920
Kbloom@bloombloompc.com

Robert N. Isseks, Esq.
6 North Street
Middletown, NY 10940
Tel: (845)-344-4322
Isseks@isseksandsmith.com

Charles LaDuca
Brendan Thompson
Cuneo Gilbert and LaDuca LLP
8120 Woodmont Ave Ste. 810
Bethesda, MD 20814
Tel: (202) 789-3960
charles@cuneolaw.com
brendant@cuneolaw.com

Joel R. Rhine
Rhine Law Firm, P.C.
1612 Military Cutoff Road Suite 300
Wilmington, NC 28403
Tel: (910) 777-7651
jrr@rhinelawfirm.com

Joseph G. Sauder
Chimicles & Tikellis LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 645-4717
JosephSauder@chimicles.com

Bryan L. Clobes
Cafferty Clobes Meriwether & Sprengel LLP
1101 Market Street
Philadelphia, PA 19107
Tel: (215) 864-2800
bclobes@caffertyclobes.com

Edward Anthony Wallace
Amy Elisabeth Keller
Wexler Wallace LLP
55 West Monroe, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
eaw@wexlerwallace.com
aek@wexlerwallace.com

Jonathan Shub
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Tel: (215) 238-1700
info@kohnswift.com

Robert K. Shelquist
Lockridge Grindal Nauen PLLP
100 Washington Ave., S., Suite 2200
Minneapolis, MN 55401-2179
Tel: (612) 339-6900
rkshelquist@locklaw.com

Eric Gibbs
Gibbs Law Group LLP
One Kaiser Plaza, 11th Floor
Oakland, CA 94612
Tel: (510) 350-9710
ehg@classlawgroup.com

Richard J. Burke
Quantum Legal LLC
1010 Market Street
Suite 1310
St. Louis, MO St. Louis
Tel: (847) 433-4500, Ext 2603
richard@Qulegal.com

# Exhibit 1

# DECK & CONCRETE RESTORE 10X INSTRUCTIONS

## READ ALL INSTRUCTIONS THOROUGHLY PRIOR TO BEGINNING

For more information and helpful tips on preparation, deck application, concrete application, and maintenance; visit www.rustoleumrestore.com

TINT BASE: MUST BE TINTED BEFORE USE / FOR EXTERIOR USE ONLY
USE OF THE RESTORE ROLLER IS REQUIRED FOR PROPER APPLICATION (one roller for every 8 gallons)

## WHERE TO USE

**FOR DECKS:** For horizontal wood and most composite decks. New wood decks need to age at least six months before application. Follow specific manufacturer's recommendation before applying to any composite decking.

**FOR CONCRETE:** For use on broom swept or porous concrete surfaces. Do not use on smooth or floated concrete. Not recommended for driveways, garages, or other areas with vehicular traffic. Visit www.rustoleumrestore.com for concrete preparation and application information.

**COVERAGE:** Approximately 25 square feet per gallon (volume after tinting). Two coats required.

## PREPARATION

LONG-TERM ADHESION AND DURABILITY CAN BE IMPAIRED BY A POORLY PREPARED SURFACE.

**STEP 1 - LIGHT REPAIRS:** Secure raised nail heads, deck screws or loose deck boards. Prime nail and screw heads with a water-based metal primer for rust. Remove loose splinters and replace severely damaged or rotting boards. Fill cracks, more than ¼" with RESTORE CRACK FILLER™ or similar acrylic, non-silicone filler. Allow to dry.

**STEP 2 - CLEAN:** The surface must be porous, clean and free of dirt, grease, mildew and organic growth. Clean the surface using a brush and RESTORE DECK & CONCRETE CLEANER™. For tough stains, grease spots and embedded dirt, a pressure washer may provide the best results. Loose paint needs to be scraped then sanded (use 50 grit sand paper).

**STEP 3 - TEST SURFACE FOR APPLICATION:** PREVIOUS SEALERS may be present on the deck and are not always visible. ALL EXISTING SEALERS, PAINTS, STAINS, WATER REPELLENTS OR FINISHES MUST BE REMOVED for Restore 10X to adhere properly. To check for these, conduct a splash test by sprinkling water on multiple areas of the surface. If the water absorbs rapidly into the surface, the surface is ready to be coated. If the water beads, puddles or is not absorbed, the surface is sealed and not ready to coat. Remove the sealer/coating with a deck stripper or sand paper (use 50 grit). Clean again, let the surface dry and conduct the splash test again. Continue this process until the water is absorbed by the wood in all test areas. Let the surface dry completely before application. Failure to follow this process will result in poor adhesion and possible coating failure.

**PRECAUTIONS & TEMPERATURE SAFEGUARDS:** DO NOT APPLY IF RAIN IS EXPECTED WITHIN 48 HOURS OF APPLICATION. Apply when surface and air temperature is between 50 and 90 degrees F for a full 72 hours (day and night). For information on application during extreme climate conditions, visit www.rustoleumrestore.com.

**TRIM AND VERTICAL SURFACES:** For posts, railings, balusters, and/or around edges and between boards use RESTORE SOLID ACRYLIC STAIN or DECK & CONCRETE RESTORE 4X.

## APPLICATION

TWO THICK COATS OF DECK & CONCRETE RESTORE 10X ARE REQUIRED.

**STEP 1:** Thoroughly stir material before and during project. When using more than one container, combine all containers to ensure color consistency.

**STEP 2:** Fill cracks up to ¼" using a heavily loaded brush to dab these areas until filled.

**STEP 3:** Using either a 4" or 9" RESTORE ROLLER® saturate the roller cover and roll in ONE DIRECTION, with a slight downward pressure to maintain texture and to push material into cracks and voids. Work to a wet edge at all times. Avoid rolling back into coated areas where drying has begun. Coat 1 to 2 boards at a time.

**STEP 4:** Use a putty knife or other straight edge to remove excess coating between boards. Difficult areas such as warped or cupped boards will require rolling across the narrow width of board as well as the length to ensure complete coverage.

**STEP 5:** Allow first coat to dry 4-6 hours. Extend drying time if the surface is tacky or soft. Drying times may vary depending on temperature and humidity.

**STEP 6:** Apply second coat using the same method as in STEP 2 and STEP 3.

**STEP 7:** Allow second coat to dry 24 hours before light foot traffic and 3-5 days before replacing furniture. If surface is tacky or soft, extend drying time before putting heavy objects back in place. Full cure to a hard finish will take approximately 3-4 weeks.

**FOR SMOOTHER TEXTURE:** While the second coat is still wet, use a brush and lightly brush the product in the opposite direction as rolled.

**CLEAN UP:** Use mild soap and water.

KEEP FROM FREEZING / CLOSE CONTAINER AFTER EACH USE TO PRESERVE THE PRODUCT

**LIMITED LIFETIME WARRANTY:** Rust-Oleum Corporation guarantees product performance for the product in this can only as long as you own or reside in your home when our product was applied according to the label directions. You will receive as your exclusive remedy either a refund of the original purchase price or replacement with a product of equal value. We do not guarantee the product against factors beyond our control, such as damage to the product by others, poor condition of the substrate, structural defects, improper application, etc. We will not be responsible for labor or the cost of labor for removal or application of any product, or replacement of any wood structure.

**CUSTOMER SERVICE:** For questions, help and general product support please call 1-800-373-6333

# Exhibit 2



## LIMITED LIFETIME WARRANTY

Rust-Oleum Corporation warrants your complete satisfaction with the performance of this product for as long as you own or reside in your home when our product has been applied to the label directions. We do not warrant problems with the product which are caused by factors beyond our control, such as damage to the product by others, poor condition of the substrate, structural defects, improper application, etc. If not satisfied as warranted, return any unused portion along with sales receipt to place of purchase. You will receive as your exclusive remedy either a refund of the original purchase price or replacement with a product of equal value. **THIS WARRANTY SPECIFICALLY EXCLUDES LABOR OR COST OF LABOR FOR THE APPLICATION OF ANY PAINT AND CONSEQUENTIAL, INCIDENTAL DAMAGES.** Some states do not allow the exclusion of incidental or consequential damages, so the limitation or exclusion contained in the above warranty may not apply to you. This warranty gives you specific legal rights and you may also have other rights which vary from state to state.