**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE RUST-OLEUM RESTORE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | No. 1:15-cv-01364<br><br>Judge Amy J. St. Eve |

**ELECTRONICALLY-STORED INFORMATION ("ESI") PROTOCOL**

This protocol shall apply to all discovery of electronically stored information ("ESI"). It may be supplemented or amended by subsequent agreement of the Parties in light of further developments.

**A.     DEFINITIONS**

1.      "Electronically stored information" or "ESI" shall include all electronic files, documents, data and information covered under the Federal Rules of Civil Procedure.

2.      "The Parties" shall refer to the parties in the above-captioned litigation, the named Plaintiffs and Defendant, collectively.

3.      "Producing Party" shall refer to the party producing documents and ESI in response to a discovery request propounded by another party.

4.      "Receiving Party" shall refer to the party receiving documents and ESI in response to a discovery request propounded by the Receiving Party.

5.      "Key persons" means those individuals with the most personal involvement in and substantive knowledge of the facts and circumstances underlying this litigation, including without limitation all individuals identified in the parties' Rule 26 disclosures. The term "key persons" is intended to refer to both the natural person or persons who is/are a "key person(s)",

and any applicable clerical or support personnel who are primarily responsible for preparing, storing, or modifying ESI for that key person or persons, including, but not limited to, the network administrator, custodian of records or records management personnel, and an administrative assistant or personal secretary.

6.      "Native format" means and refers to the format of ESI in which it was generated and/or as used by the Producing Party in the usual course of its business and in its regularly-conducted activities.

7.      "Metadata" means and refers to information about information or data about data, and includes without limitation (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

8.      "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.

9.      "Documents" has the meaning contemplated in the Federal Rules of Civil Procedure and applicable case law and includes, but is not limited to, writings, drawings, graphs, charts, photographs, sound recordings, images, and other data, data records, or data compilations. "Document" also includes any preliminary versions, drafts or revisions of any of the foregoing, and other writings or documents of whatever description or kind, whether produced or authorized by a Party or anyone else, and shall include all non-identical copies and drafts of any of the

foregoing now in the possession, custody or control of a Party.

10.     "Media" means an object or device, including but not limited to a disc, tape, drive, computer or other device, whether or not in the Producing Party's physical possession, on which data is or was stored.

11.     "Parties" means or refers to the named Plaintiff and Defendant in the above-captioned matter, as well as any later added plaintiffs and defendants.

**B.     SCOPE**

11.     **General**.  The procedures and protocols set forth in this Protocol shall govern the production of ESI in this matter, unless the Parties agree in writing to change them or they are changed by the Court.  Without limiting the generality of the foregoing, the Parties will confer in good faith regarding proposed changes to the Protocol in view of specific discovery requests made during the course of this litigation and/or in view of issues arising after a Party commences collection of ESI and other documents and information.  In the absence of agreement between the Parties to change this Protocol, any Party may apply to the Court for relief.  Nothing in this Protocol constitutes the waiver or estoppel of a Party's right to seek amendments to this Agreement for good cause, including changed circumstances not known to the Party at the time the Protocol is entered.  Nor does anything in this Protocol waive the right of any Party to object to the production of certain documents or ESI.

12.     **Disputes**.  The Parties shall meet and confer in good faith on any issues regarding ESI that arise under this Protocol or otherwise, including any relating to custodians and data sources.  In the event the Parties cannot reach an agreement on a disputed matter, the Parties may submit the matter to the Court.  Both sides should be prepared to discuss specifically the relevance of the information sought, other sources of similar information, the burden of

producing the information, and the parameters of the search.

**C.    PROTOCOL FOR PRESERVING ESI**

1.      The Parties shall, without delay, and to the extent not already completed, take such steps as are necessary to advise their respective agents, employees, immediate family members (in the case of the Plaintiffs) and representatives identified as likely custodians of discoverable ESI, including, but not limited to, "key persons" with respect to the facts underlying the litigation, and information systems personnel, of the substantive principles governing the preservation of potentially discoverable ESI while the lawsuit is pending. This Protocol extends to ESI only to the extent such information is in the possession or control of such Party. In an effort to facilitate the implementation of litigation hold policies appropriate to the circumstances, the Parties shall consider the following issues:

      a.      Scope of the "litigation hold," including:

            i.      a determination of the categories of potentially discoverable information to be segregated and preserved;

            ii.      identification of "key persons," likely witnesses, persons with knowledge regarding relevant events, and other persons who are likely to have potentially discoverable ESI within their possession, custody, or control; and

            iii.      the relevant time period for the litigation hold.

      b.      Analysis of what needs to be preserved, including:

            i.      the nature of specific types of ESI, including, email and attachments, word processing documents, spreadsheets, graphics and presentation documents, images, text files, hard drives,

databases, instant messages, transaction logs, audio and video files, voicemail, Internet data, computer logs, text messages, or backup materials, and how each of them should be preserved;

ii.    the extent to which specified Meta-Data, deleted data, or fragmented data, will be subject to the litigation hold;

iii.    paper documents that are exact duplicates of ESI; and

iv.    any preservation of ESI that has been deleted but not purged.

c.    Determination of where ESI subject to the litigation hold is maintained, including:

i.    format, location, structure, and accessibility of active storage, backup, and archives;

1)    servers;

2)    computer systems, including legacy systems;

3)    remote and third-party locations; and

4)    back-up media (for disasters) vs. back-up media for archival purposes/record retention laws;

ii.    network, intranet, and shared areas (public folders and all relevant databases, including, but not limited to, regulatory, marketing and management databases, departmental drives, and shared network folders);

iii.    desktop computers and workstations;

iv.    portable media; laptops; personal computers; and flash drives;

v.      PDAs, paging devices, and mobile telephones, but only to the extent such device is or may be a likely repository of potentially discoverable ESI not duplicated elsewhere from a more readily accessible source;

vi.      tapes, discs, drives, cartridges and other storage media;

vii.      home desktop and laptop computers (to the extent, if any, they are used for business purposes involving potentially discoverable subject matter); and

viii.      paper documents that represent ESI.

d.      Distribution of the notification of the litigation hold:

i.      to all Plaintiffs;

ii.      to all of Defendants' employees identified as likely custodians of potentially discoverable ESI;

iii.      to all administrative assistants of the foregoing employees, to the extent they have or are likely to have potentially discoverable ESI;

iv.      to all Plaintiffs' immediate family members (parents, siblings, or children) identified as likely custodians of potentially discoverable ESI;

v.      to all persons with custody of discoverable information controlled by any Party, including:

1)      appropriate IT personnel; and

2)      designated internal custodian(s) of records.

3)     third-party vendors or contractors who provide IT services or other services to Defendant involving the use, maintenance, or storage of potentially discoverable ESI; and

4)     data storage vendors.

e.     Steps that must ordinarily be taken, by or as applicable to a particular custodian, to implement the preservation of data, including:

i.     that there will be no deletion, modification, or alteration of ESI subject to the litigation hold or of archived, retained, or externally stored ESI subject to the litigation hold, except changes made to Defendant's ESI in the ordinary course of business to permit Defendant to conduct its business;

ii.     that where specified metadata, or data that has been deleted but not purged, is to be preserved because it has been identified as potentially discoverable, either a method to preserve such data before running compression, disk defragmentation or other computer optimization or automated maintenance programs or scripts of any kind ("File and System Maintenance Procedures"), or the termination of all File and System Maintenance Procedures during the pendency of the litigation hold in respect of Native Files subject to preservation;[1]

---

[1] For the elimination of any confusion, this provision does not require the taking of affirmative steps to preserve deleted files occupying "slack space" on local hard drives or network servers, but only the suspension of any disk or file maintenance or optimization routines.

         iii.     reasonably safeguarding and preserving all portable or removable electronic storage media containing potentially discoverable ESI; and

         iv.     reasonable steps to preserve the ability to access discoverable data stored in or utilized by applications or systems that are decommissioned in the normal course of business.

   f.     Monitoring compliance with the notification of litigation hold, including:

         i.     identifying personnel with responsibility to confirm that the preservation requirements of this Order are received and acknowledged by the appropriate recipients;

         ii.     identifying one or more contact persons who will address questions regarding preservation duties;

         iii.     determining whether data of "key persons" requires special handling (e.g., imaging/cloning hard drives);

         iv.     issuing periodic reminders that the litigation hold is still in effect.

2.     In connection with the considerations identified in paragraph 1, above, counsel may consider undertaking the following steps:

   a.     Consulting with the information technology or information systems personnel who act as the ESI coordinator(s).

   b.     Determining the identities of those personnel who may be considered "key persons" by the events placed in issue by the lawsuit and determine their ESI practices.

c.     Determining the identity(ies) of the person(s) familiar with the following:

    i.      Email systems, blogs, instant messaging, Short Message Service (SMS) systems, word processing systems, spreadsheet and database systems, system history files, cache files, and cookies, graphics, animation, or document presentation systems, calendar systems, voice mail systems, including specifically, whether such systems include potentially discoverable ESI, data files, program files, internet systems and intranet systems. To the extent reasonably possible, the parties should identify the database program(s) used over the relevant time, its/their database dictionaries, and the manner in which such systems record transactional history in respect to deleted records;

    ii.     storage systems, including whether unique, potentially discoverable ESI is stored on servers, individual hard drives, home computers, "laptop" or "notebook" computers, personal digital assistants, pagers, mobile telephones, or removable/portable storage devices, such as CD-Roms, DVDs, "floppy" disks, zip drives, tape drives, external hard drives, flash, thumb or "key" drives, or external service providers;

    iii.    back-up and archival systems, including those that are onsite, offsite, or maintained using one or more third-party vendors. This protocol may include a reasonable inquiry into the back-up routine, application, and process and location of storage media, and

requires inquiry into whether unique, discoverable ESI is reasonably accessible without undue burden or cost, whether it is compressed, encrypted, and the type of device on which it is recorded (e.g., whether it uses sequential or random access), and whether software that is capable of rendering it into usable form without undue expense is within the client's possession, custody, or control;

iv.  obsolete or "legacy" systems containing potentially discoverable ESI and the extent, if any, to which such ESI was copied or transferred to new or replacement systems;

v.  current and historical website information, including any potentially discoverable statements contained on that or those site(s), as well as systems to back up, archive, store, or retain superseded, deleted, or removed web pages, and policies regarding allowing third parties' sites to archive client website data;

vi.  ESI erasure, modification, or recovery mechanisms, such as metadata scrubbers or programs that repeatedly overwrite portions of storage media in order to preclude data recovery, and policies regarding the use of such processes and software, as well as recovery programs that can defeat scrubbing, thereby recovering deleted, but inadvertently produced ESI which, in some cases, may even include privileged information;

      vii.    policies regarding records management, including the retention or destruction of ESI prior to the client receiving knowledge that the claims at issue were reasonably anticipated;

      viii.    "litigation hold" policies that are instituted when a claim is reasonably anticipated, including all such policies that have been instituted, and the date on which they were instituted;

      ix.    the identity of vendors or subcontractors who store unique, discoverable ESI for the client or a key person; the nature, amount, and a description of the ESI stored by those vendors or subcontractors; contractual or other agreements that permit the client to impose a "litigation hold" on such ESI; whether or not such a "litigation hold" has been placed on such ESI; and, if not, why not.

**D.    SEARCH PROTOCOL FOR ELECTRONIC DOCUMENTS**

13.    Within twenty one days after a Producing Party has served responses and objections to another Party's initial requests for production, the Parties will meet and confer with respect to the requests for production on the subjects in paragraphs a through d below.

      a.    The sources and custodians of data that the Producing Party intends to search for responsive ESI, along with a list of any known sources or custodians likely to contain or possess potentially discoverable information that it does not intend to search.

      b.    The types of programs or systems in which the Producing Party's client's potentially discoverable ESI is generally stored, including whether such

format is anticipated to pose any technological challenges to implementing the search protocols.

c. The categories of ESI—including whether the ESI is kept in certain databases or accessible only via proprietary software—and in which format the ESI shall be produced pursuant to the terms of this Protocol.

d. Mutually-acceptable methods to search for ESI in the Parties' respective computers, databases, and storage facilities—including the search of custodial files and whether search terms may be necessary. Agreement to these terms does not waive either Party's right, upon reviewing documents actually produced in the litigation and conducting other investigation and discovery, to request that files from additional custodians or sources be searched later in the litigation.

14. The Parties will continue to meet and confer regarding any search process issues as necessary and appropriate throughout this process. This ESI protocol does not address or resolve any objection to the scope of the Parties' respective discovery requests, and it does not prevent any Party from undertaking additional searches of its own ESI for its own purposes at any time.

**E.  FORMAT OF PRODUCTION**

15. Document Image Format. Unless otherwise agreed to in writing by a requesting Party, the Producing Party may produce the documents either: (1) electronically in native file format (subject to sub-paragraph a, below), or (2) electronically as a single-page Black & White Group IV Tag Image File Format ("TIFF") image that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file, along with the

associated multipage text file representing the extracted, searchable text from the native file or an Optical Character Recognition ("OCR") file in .TXT format as described below, subject to paragraphs 23, 24, and 26 below, and the associated files and fields of metadata set forth below. The  Party electing to produce documents in TIFF format shall bear the costs of producing the TIFF files, with such costs non-reimbursable and non-taxable pursuant to 28 U.S.C. § 1920 or any other state or federal cost-recovery provision.

16.     To the extent a response to discovery requires production of discoverable ESI contained in a database which may only be accessed via proprietary software, the Parties agree that such documents may be produced in Excel format (.xls or .xlsx) for review by the requesting Party or counsel.  Upon review, the requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

17.     If ESI has hidden text (e.g., track changes, hidden columns, comments, notes, markups, etc.) associated with it, the Parties shall produce the ESI in a form showing such hidden text to the extent reasonably practicable.  When processing ESI for review and for production, to the extent reasonably practicable, the Producing Party will instruct its vendor to force off Auto Date and force on hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments.  If producing hidden text is not reasonably practicable, defendant shall produce file in native format.

18.     When processing ESI, GMT or EST should be selected as the time zone and the Producing Party will note the time zone used in its processing.  To the extent that a party has already processed ESI using a different time zone, the producing party will note the time zone used in its processing.  Otherwise, Parties shall consistently produce all ESI processed using the

same time zone.

19.     Accompanying a TIFF production shall be a multipage text (.TXT) file containing searchable text from the native file, including, with regard to email, the email header text, and the metadata as discussed later in this document, unless the text or metadata is otherwise withheld or redacted in accordance with applicable law or Court order .  Where documents maintained in the ordinary course of business contain searchable text, text files shall be produced reflecting the full text that has been electronically extracted from the documents ("Extracted Text"), including any hidden text.  Where such documents are no longer searchable because they have been converted to Static Images by the Producing Party, the Producing Party shall provide OCR text files in .TXT format at its own expense.  With respect to emails, the Extracted Text shall include email header information, including to, from, cc, bcc, subject, date, and the names of attachment files, unless the text or metadata is otherwise withheld or redacted in accordance with applicable law or Court order.

20.     Load files of the Static Images shall be created and produced together with their associated Static Images to facilitate the use of the produced images by a document management or litigation support database system.  Plaintiffs request that such documents are accompanied by load files compatible with Concordance v. 10 and Opticon Image 5.

21.     The Parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

22.     **Production of Native Files**.  Spreadsheets (e.g., Excel, Lotus), video/audio files (e.g., .wav, .mp3, .aiff, .wmv), and such other document types upon which the Parties may agree, will be produced in native format, except where such files are redacted in accordance with

14

applicable law or Court order. If production in native format is necessary to decipher the meaning, context, or content of a document produced in the document image format agreed to, the Producing Party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of the document in native format. All documents produced solely in native format should (i) have an assigned document level Bates number, (ii) be renamed according to the assigned Bates number, and (iii) have a "nativepath" populated along with the metadata load file pursuant to the guidelines outlined herein. To the extent that a Producing Party is also producing TIFF images of certain ESI, native file productions shall also be accompanied by a TIFF placeholder with the Bates number and original filename endorsed ("burned") onto the image, as well as any confidentiality designation associated with that document. The Parties agree that compliance with these provisions shall not constitute spoliation.

23. **Production of Hard-Copy Document**s. Documents or records which either were originally generated as or converted into ESI but now only exist in physical hard-copy format, or documents or records that were originally generated in hard-copy format, shall be converted to single page image files (Black & White Group IV Tiff or Medium Quality Color JPEG) and produced following the same protocols set forth herein or otherwise agreed to by the parties.

24. **Document Unitization.** For files produced as either Black & White Group IV TIFF or Medium Quality Color JPEG images, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files.

The Producing Party shall produce a Load/Unitization file for all produced documents in accordance with the following formatting:

**<u>OCR and Extracted Text Files (.TXT Files)</u>**:

ESI shall be produced with multi-page searchable Extracted Text. For ESI from which text cannot be extracted, OCR will be produced instead. Any such Extracted Text or OCR will be produced on a document level in the following format:

- Produce a single text file per document containing all the document's pages
- Pages separated by form feed character (decimal 12, hex 0xC)
- Filenames must be matched bates number in this form: <Bates num>.txt
- Where <Bates num> is the BATES number of the first page in the document.
- Text must be encoded in UTF-8.
- Text files will be located in a directory named "TEXT" that is separate from the TIFF image.

**<u>Images Files</u>**:

- Single page per image
- Black and White Group IV TIFF and Medium Quality Color JPEG are the default formats
- Filenames for images must be matched bates number in this form: <Bates num>.<ext>
- Where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif).

**<u>Load/Unitization Files</u>**:

- "Concordance Default" delimited text file utilizing the following characters:

  ƒ The "comma" delimiter is "" (ASCII character 020)

  ƒ The "quote" delimiter is "þ" (ASCII character 254)

  ƒ The "new line" delimiter is "®" (ASCII character 174)

- First line must contain the column/field names (set forth in Paragraph 1(c) herein)

- Every row must have the same number of columns/fields (empty values are acceptable)

- Text must be encoded in UTF-8

- OPT OPTICON LOAD FILE with relative pathing to the images files

25.     **Duplicates**.  The Producing Party shall endeavor to produce ESI that has been de-duplicated either globally or by custodian prior to production in a manner that does not break up document families (such as e-mails and attachments), but the original ESI shall be preserved. ESI duplicates shall be identified by using standard MD5 or SHA-1 algorithms only to create and compare hash values for exact matches (bit-for-bit) only.  Any other methodology for identification of duplicates must be discussed with the Receiving Party and approved in writing before implementation.

26.     **Color**.  Documents kept in color in the ordinary course of business shall be produced in color either as Native Files or in TIFF or Color Medium Quality JPEG format where the color of a document contributes to the meaning, context, or content of the document.

27.     **Bates Numbering and Other Unique Identifiers**.  Each page of a produced document, at the sole option and non-reimbursable and non-taxable cost of the Producing Party unless otherwise agreed to in writing by a requesting Party, shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image in such a manner that information from the source document is not obliterated, concealed, or interfered with.  There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of a protective order entered by this Court in this litigation, or has been redacted in accordance with applicable law or Court order.  In the case of confidential information as defined in a protective order, or materials redacted in accordance

17

with applicable law or Court order, a designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document.

28. **Production Media**. Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), via secure file transfer protocol, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon. Each item of Production Media shall include: (1) the type of materials on the media (e.g., "Images," "OCR Text," "Native Files," etc.), (2) the production date, and (3) the Bates number range of the materials contained on such Production Media item. The Producing Party shall accompany all document productions with a transmittal cover letter identifying by Bates number the custodial files from which the documents were produced

29. **Metadata**. The Parties agree to produce the following metadata fields (to the extent available) to accompany each produced ESI file. Unless otherwise specified, by producing metadata, the Producing Party affirms that such metadata came from its records, with the exception of vendor-entered source/custodian and document/production number fields.

- BegDoc (beginning Bates number of the first page of a document)
- EndDoc (ending Bates number of the last page of the document)
- BegAttach (Bates number associated with the first page of a parent document)
- EndAttach (Bates number associated with the last page of the last attachment to a parent document)
- Attach Count (number of attachments to an email or e-doc)
- DocTitle (e-docs only)
- ThreadID (emails only)
- ParentID (beginning Bates number for the parent email or e-doc)
- Attchids (beginning Bates number(s) for the attachment(s) associated with a parent e-mail of e-doc)

- FamilyID (An ID that is unique to the entire family group (email and attachments)

- Family Date (for emails and attachments only, corresponding to the sent or received date of the email to which the attachment is linked)

- MessageID (emails only)

- Sent Date (for emails and calendar invitations)

- Sent Time (for emails and calendar invitations)

- Last Modified Date (all documents)

- Last Modified Time (all documents)

- Created Date (all documents)

- Created Time (all documents)

- Received Date (for emails only)

- Received Time (for emails only)

- Call Start Date (start date of a calendar or appointment)

- Call Start Time (start time of a calendar or appointment)

- Last Accessed Date (all documents)

- Last Accessed Time (all documents)

- Last Print Date (for e-docs)

- Author (e-docs only)

- From ("From" field in emails)

- To ("To" field in emails)

- CC (for emails only)

- BCC (for emails only)

- Subject ("Subject" field in emails)

- Attach Filename (email attachments title list)

- Application (type of application used to generate the document)

- Custodian

- Duplicate custodian (if global deduplication is utilized, the name of any custodian whose duplicate file was removed during production, in list form, separated by semi-colon)

- MD-5 or SHA-1Hash Value

- Page Count (number of pages in a document)

- Original File Path

- Original File Name (the original file name of an e-doc or attachment to an email)

- Doc extension (the file extension of a document)

- NativeLink (the full path to the native file produced)

Notwithstanding the foregoing, the Parties will meet and confer in good faith prior to the production of documents, with technical experts as needed, to clarify or resolve any issues (e.g., definitions of metadata fields, inconsistencies, burden) concerning the production of metadata.

30. **Attachments**.  Email attachments and embedded files or links must be mapped to their parent by the Document or Production number.  If attachments and embedded files are combined with their parent documents, then "BeginAttach" and "EndAttach" fields (or the functional equivalent, depending on the production format chosen) listing the unique beginning and end number for each attachment or embedded document must be included, when possible.

**F.     OBJECTIONS TO ESI PRODUCTION**

29. Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) shall be promptly identified and disclosed to the requesting Party; the Parties shall then meet and confer to attempt to resolve those problems.

30. If either Party objects to producing the requested ESI on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or

cost, the Party, at or before the time the production is due under the Federal Rules of Civil Procedure, agreement of the Parties, or order of the Court, shall describe the nature of the objection with reasonable particularity and indicate whether the Producing Party is willing to offer an alternative. The Parties will promptly meet and confer in an attempt to resolve the objections.

31.     If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business or not occurring in accordance with the Party's document retention policies, the Producing Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

32.     Each Party will review its documents, including ESI, for privileged information prior to production. Responsive documents withheld, or produced documents redacted, on privilege grounds will be identified in a privilege log consistent with the protective order entered in this matter. So long as one copy of a document is produced or identified on a privilege log, identical duplicates of that document need not be produced or logged.

### G.     Applicability of the Federal Rules of Civil Procedure

33.     This Order is not intended to function in lieu of Federal Rule 34 or any other applicable Federal Rule of Civil Procedure or Local Civil Rule for the Northern District of Illinois. The agreements set forth by the Parties herein are without prejudice to the right of a

requesting Party to request additional searches or additional information about specific ESI if it can demonstrate that material, relevant, and responsive information that is not otherwise cumulative of information already produced can be found through such additional efforts. The Parties will negotiate in good faith with regard to whether such additional efforts are reasonably required, and will jointly seek assistance from the Court to resolve such disputes if an agreement cannot be reached.

IT IS SO ORDERED.

Dated: June 15, 2015

_____
United States District Judge
Amy J. St. Eve