# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation<br><br>Related To All Actions | Case No. 1:15-cv-01364<br><br>MDL No. 2602<br><br>Judge Amy J. St. Eve |

# PLAINTIFFS' OPPOSITION TO
# RUST-OLEUM'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................. 3

THE PUTATIVE CLASSES ............................................................................. 5

LEGAL STANDARD ........................................................................................ 6

ARGUMENT ...................................................................................................... 6

I.     PLAINTIFFS' BREACH OF WARRANTY CLAIMS ARE WELL-PLEADED. 7

     A.     Rust-Oleum's purported warranty limitations do not preclude Plaintiffs' claims. ................................................................................. 8

          1.     The exclusive remedy fails of its essential purpose. ....................... 8

          2.     The consequential damages exclusion does not bar recovery. ..... 15

          3.     The damages limitations are procedurally unconscionable because they are insufficiently conspicuous. .............................................. 20

          4.     The warranties are procedurally unconscionable ......................... 20

          5.     The remedy offered is really no remedy at all ............................. 21

          6.     Rust-Oleum's knowledge of the latent nature of the defect creates oppression and defeats any argument that the product was improperly applied ....................................................................... 21

     B.     Defendant had adequate notice of Plaintiffs' problems with Restore. ...... 22

          1.     Whether notice is sufficient is a question of fact not suitable for a motion to dismiss. ...................................................................... 22

          2.     The claims of the direct notice Plaintiffs should be sustained. ..... 23

          3.     Plaintiffs sufficiently allege actual notice of breach of warranty. 24

          4.     Serving the Complaint can constitute notice of breach of warranty. ................................................................................... 26

          5.     Defendant's cases on sufficiency of notice are inapposite ........... 26

     C.     Plaintiffs' claims for breach of implied warranty of fitness are well-pleaded. ................................................................................. 27

     D.     Plaintiffs' warranty claims should not be dismissed based on a lack of privity. ................................................................................. 29

     E.     Plaintiffs' breach of express warranty claims are properly pled. .............. 32

i

        1.     Plaintiffs need not plead reliance as to Rust-Oleum's Limited Lifetime Warranty.............................................................................. 32

        2.     Insofar as it is required, plaintiffs sufficiently allege reliance....... 33

   F.    Plaintiffs' claims under the MMWA are well pleaded ............................. 35

II.    PLAINTIFFS' "FRAUD-BASED" CLAIMS SHOULD BE SUSTAINED........ 38

   A.    Plaintiffs' Consumer Fraud Claims (Counts VI-X) Satisfy the Pleading Standard of Fed. R. Civ. P. Rule 9(b). ...................................................... 38

        1.     The Complaint Pleads Actionable Affirmative Misstatements and Omissions, Not Puffery.................................................................. 40

        2.     The Complaint Pleads Reliance and Causation ............................ 42

        3.     The Complaint Adequately Pleads Rust-Oleum's Knowledge of the Defect at the Time of Sale......................................................... 43

   B.    Plaintiffs' Consumer Fraud Claims Do Not "Fail on "State-Specific Grounds"................................................................................................... 49

   C.    The economic loss rule does not require dismissal of claims because Plaintiffs experienced damage to their property as a result of the Restore product. ................................................................................................... 50

        1.     The economic loss rule does not prevent Plaintiffs from pursuing claims for damage to other property. ............................................. 50

        2.     Rust-Oleum's warranty exclusion provisions do not bar claims for damages to Plaintiffs' decks in Michigan. .................................... 53

   D.    Rust-Oleum's Material Representations About the Strength and Durability of its Product Are Not Mere Puffery, and Plaintiffs' Negligent Misrepresentation Claims Should not be Dismissed. ............................... 54

   E.    Plaintiffs State A Viable Claim For Fraudulent Concealment.................. 56

III.   RULE 23 AUTHORIZES PLAINTIFFS' NATIONWIDE CLASS FOR DECLARATORY, INJUNCTIVE RELIEF AND/OR EQUITABLE RELIEF... 60

IV.   PLAINTIFFS' PRE-SEPTEMBER 2012 CLAIMS ARE VIABLE BECAUSE THE COMPLAINT SUFFICIENTLY PLEADS RUST-OLEUM'S LIABILITY FOR CONDUCT PREDATING ITS ACQUISITION OF SYNTA, INC........... 63

V.    PLAINTIFFS' CLAIMS UNDER NEW JERSEY AND OHIO LAW ARE NOT PREEMPTED .................................................................................................... 65

   A.    The New Jersey Product Liability Act Does Not Subsume Plaintiff Riello and Plaintiff Dorgan's Consumer Fraud Act, Negligent Misrepresentation, and Fraudulent Concealment Claims ....................................................... 65

B.      The Ohio Products Liability Act Does Not Abrogate Plaintiff Blank and
        Plaintiff Dixson's Claims for Negligent Misrepresentation, Fraudulent
        Concealment, and Violation of the Ohio Consumer Sales Practices Act . 66

VI.     THE COURT SHOULD NOT DECIDE PLAINTIFFS' ABILITY TO PURSUE

        NATIONWIDE CLAIMS AT THE PLEADINGS STAGE. .............................. 68

CONCLUSION ............................................................................................................. 71

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abbotts v. Campbell*, 551 F.3d 802 (8th Cir. 2008) .......................................................... 43

*Advanced Concepts Chicago, Inc. v. CDW Corp.*, 938 N.E.2d 577 (Ill. App. Ct. 2010) ................................................................................................................. 32

*AES Tech. Sys, Inc. v. Coherent Radiation*, 583 F.2d 933 (7th Cir. 1978) ...................... 16

*Allen v. Steele*, 252 P.3d 476 (Colo. 2011) ....................................................................... 56

*Allstate Ins. Co. v. Pulte Homes*, 2010 WL 4482360 (N.D. Ill. Nov. 1, 2010) ............... 52

*Almaraz v. Haleas*, No. 07-6134, 2009 U.S. Dist. LEXIS 131290 (N.D. Ill. Sept. 1, 2009) ........................................................................................................... 43

*American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592 (Okla. 1981) ...................... 24

*Ansin v. River Oaks Furniture*, 105 F.3d 745 (1st Cir.1997) ............................................ 57

*Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331 (S.D. Fla. 2013) ................ 60

*Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15 (Tenn. Ct. App. 1993) .......................................................................................................... 14

*Arkwright Mut. Ins. Co. v. Bojoirve, Inc.*, No. 93 Civ. 3068 (WK), 1996 U.S. Dist. LEXIS 9013 (S.D.N.Y. June 27, 1996) ......................................................... 51

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................... 6, 23

*B.L. Jet Sales, Inc. v. Alton Packaging Corp.*, 724 S.W.2d 669 (Ct. App. Mo. 1987) ............................................................................................................... 51

*Baba v. Hewlett-Packard Co.*, No. C 09-05946-RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ....................................................................................... 47

*Babb v. Regal Marine Indus., Inc.,* 186 Wash. App. 1003 (2015) .................................... 31

*BAE Sys. Info. & Elecs. Sys. Integration v. SpaceKey Components, Inc.*, 941 F. Supp. 2d 197 (D.N.H. 2013) ................................................................ 9, 10, 14

*Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869, 2012 WL 1570 (S.D. Fla. May 2, 2012) ................................................................................. 21

*Baughn v. Honda Motor Co.*, 107 Wash. 2d 127 (1986) .................................................. 33

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 6

*Bell Sports, Inc. v. Yarusso*, 759 A.2d 582 (Del. 2000) .................................................... 33

*Bernath v. Potato Servs. of Mich.*, 300 F. Supp. 2d 175 (D. Me. 2004) .......................... 11

*Bernick v. Jurden*, 293 S.E.2d 405 (N.C. 1982) ............................................................. 34

*Boelens* v. *Redman Homes, Inc.*, 748 F.2d 1058 (5th Cir. 1984) .............................. 35, 36

*Borowiec v. Gateway 2000. Inc.*, 808 N.E.2d 957 (Ill. 2004) .................................... 35, 36

*Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361 (Tex. App. 2010) ........................................................................................................ 42

*Burdt v. Whirlpool Corp.*, No. C 15-01563, 2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) ...................................................................................................... 45

*Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009) ........................................................... 43

*Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614 (M.D.N.C. 2006) ................... 34

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ....................................... 69

*Camden Nat'l Bank v. D&F Props.*, No. BCD-WB-RE-10-16, 2011 Me. Super LEXIS 244 (Sup. Ct. Me. Oct. 3, 2011) .................................................... 51

*Canal Elec. Co. v. Westinghouse Elec. Corp.*, 756 F. Supp. 620 (D. Mass. 1990) ................................................................................................................... 12

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116 (Cal. Ct. App. 2008) ...................................................................................................... 29

*Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122 (W.D. Wash. 2010) .................................... 59

*Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332 (D.N.J. 2001) ............. 55

*CBS Inc. v. Ziff-Davis Publ'g*, 553 N.E.2d 997 (N.Y. 1992) ........................................... 33

*CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598-CIV, 2009 WL 2136527 (S.D. Fla. July 13, 2009) ......................................................................................... 33

*CCB  Ohio LLC v. Chemque, Inc.*, 649 F.Supp.2d 757 (S.D.Ohio 2009) ....................... 66

*Chubb Group of Ins. Cos. v. C.F. Murphy & Assoc., Inc.*, 656 .W. 2d 766 (Ct. App. Mo. 1983) ...................................................................................................... 51

*Cisneros v. Cisneros*, 430 P.2d 86 (Colo. 1967) ............................................................. 59

*Clancy v. Bromley Tea Co.*, 308 F.R.D. 564 (N.D. Cal. 2013) ....................................... 42

*Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008) ................................ 30

*Cline v. Prowler Industries of Maryland, Inc.*, 418 A.2d 968 (Del. 1980)...................... 29

*Coastal Group, Inc. v. Dryvit Sys., Inc.*, 643 A.2d 649 (N.J. 1994) ................................ 51

*Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 678 F. Supp. 208 (C.D. Ill. 1988) ........................................................................................................... 9

*Cole v. U.S. Capital*, 389 F.3d 719 (7th Cir. 2004) ......................................................... 20

*Computerized Radiological Servs., Inc. v. Syntex Corp.*, 595 F.Supp. 1495 (E.D.N.Y. 1984).......................................................................................................... 8

*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996)......................................... 40, 42

*Cope v. Metro. Life Ins. Co.*, 696 N.E.2d 1001 (Ohio 1998)........................................... 58

*Cosmetique, Inc. v. ValueClick, Inc.*, 753 F. Supp. 2d 716 (N.D. Ill. 2010) ................... 69

*Coss v. Playtex Products*, No. 08 C 50222, 2009 WL 2245657 (N.D. Ill. July 10, 2009) ..................................................................................................................... 46

*Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191 (Wash. Ct. App. 1997).................. 9

*Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390 (4th Cir. 1994) ....................................................................................................................... 13

*Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268 (11th Cir. 2002) ........................ 36

*Deerskin Trading Post, Inc. v. Spencer Press, Inc.*, 495 N.E.2d 303 (Mass. 1986) ....................................................................................................................... 12

*Dei Rossi v. Whirlpool Corp.*, No. 2:12-cv-00125, 2013 WL 5781673 (E.D. CA. Oct. 24, 2013) ..................................................................................................... 47

*Demorato v. Carver Boat Corp.*, 304 Fed. App'x. 100 (3d Cir. 2008) ............................. 9

*DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990)............................................... 39, 43

*DiPetrillo v. Dow Chem. Co.*, 729 A.2d 677 (R.I. 1999) ................................................. 26

*Doe v. SexSearch.com*, 551 F.3d 412 (6th Cir. 2008)...................................................... 56

*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011) ......................................... 46

*Dowty Commc'ns, Inc. v. Novatel Computer Sys. Corp.*, 817 F. Supp. 581 (D. Md. 1992)............................................................................................................... 13, 14

*Drobnak v. Andersen Corp.*, No. 07-cv-02249, 2008 WL 80632 (D. Minn. 2008) ................................................................. 26

*Dunkin' Donuts Franchised Restaurants, LLC v. Claudia I, LLC*, No. CIV.A. 12-2010, 2013 WL 3716525 (E.D. Pa. July 15, 2013) ......................................... 31

*Duxor Inv. Aktiengesellschaft v. Inv. Rarities, Inc.*, No. C9-89-1644, 1990 WL 57549 (Minn. Ct. App. May 1, 1990) .................................. 23

*Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198 (4th Cir.1988)............................. 58

*Elias v. Hewlett-Packard Co.*, No. 12-CV-00421, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ................................................................. 45

*Ellis v. Robert C. Morris, Inc.*, 513 A.2d 951 (N.H. 1986) ............................................... 51

*Estate of Knoster v. Ford Motor Co.*, 200 F. App'x 106 (3d Cir. 2006).......................... 66

*Fahey v. R.J. Reynolds Tobacco Co.*, No. CA 927221, 1995 WL 809837 (Mass. June 12, 1995) ................................................................. 34

*Falk v. GMC*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007) .................................................... 46

*Federal Trade Comm'n v. U.S. Sales Corp.*, 785 F.Supp. 737 (N.D. Ill. 1992).............. 41

*Fiberglass Component Prod., Inc. v. Reichhold Chemicals, Inc.*, 983 F. Supp. 948 (D. Colo. 1997) ................................................................. 23

*Fisher v. Mr. Harold's Hair Lab, Inc.*, 215 Kan. 515 (Kan. 1974).................................. 55

*Fitl v. Strek*, 690 N.W.2d 605 (2005) ............................................................................. 24

*Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543 (D.N.J. 2013)............................................................... 66

*G.A.W., III v. D.M.W.*, 596 N.W.2d 284 (Minn. Ct. App. 1999)..................................... 55

*Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359 (S.D. Fla. 2014) ............................................. 29

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) ................................................................. 64

*Gibson v. City of Chicago*, 910 F.2d 1510 (7th Cir. 1990).................................................. 6

*Giles v. Inflatable Store, Inc.*, No. 07-cv-00401, 2009 WL 961469 (D. Colo. Apr. 6, 2009) ................................................................. 40

*Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343 (6th Cir. 2000)........................... 67

*Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 WL 5513202 (N.D. Ohio Nov. 11, 2011) .................................................................................. 33

*Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807 (N.D. Ill. 2013) ................ 39, 43

*Gordon v. Burr*, 366 F. Supp. 156 (S.D.N.Y.1973) ........................................... 57

*Gorman v. Saf-T-Mate, Inc.*, 513 F. Supp. 1028 (N.D. Ind. 1981) ................................... 35

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568 (W.D. Wash. 2007) ........................................................... 58

*Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 785 S.W.2d 13 (Ark. 1990) ................................................................................ 28

*Greene v. BMW of N. Am.*, No. 2:11-04220, 2014 WL 47940 (D. N.J. Jan. 7, 2014) .......................................................................... 45

*Hainlen v. Atofina Chems., Inc.*, No. IP 00-1689-C, 2001 WL 1781922 (S.D. Ind. Nov. 21, 2001) .............................................................. 12

*Hays v. Gen. Elec.*, 151 F. Supp. 2d 1001 (N.D. Ill. 2001) .............................................. 26

*Hedges v. Earth, Inc.*, No. 14-cv-09858, 2015 WL 1843029 (N.D. Ill. April 21, 2015) ..................................................................... 25

*Held v. Mitsubishi Aircraft International, Inc.*, 672 F. Supp. 369 (D. Minn. 1987) ......................................................................... 9

*Henderson v. Volvo Cars of N. Am., LLC*, No. CIV. 09-4146 (DMC), 2010 WL 2925913 (D.N.J. July 21, 2010) ..................................... 42

*Hendricks v. Pharmacia Corp.*, No. 2:12-cv-00613, 2014 WL 2515478 (S.D. Ohio) ......................................................................... 67

*Hernandez v. Johnson Press Corp.*, 70 Ill. App. 3d 664 (Ill. App. Ct. 1979) ................ 64

*Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277 (M.D. Ala. 2001) ........................... 23

*Hodge v. Craig*, 382 S.W.3d 325 (Tenn. 2012) ................................................... 56

*Hoffman's Double Bar Pine Nursery v. Fyke*, 633 P.2d 516 (Colo. App. 1981) ............. 23

*Hogan v. Maryland State Dental Ass'n*, 843 A.2d 902 (Md. Ct. Spec. App. 2004) ...................................................................... 59

*Hogue v. Pfizer, Inc.*, 893 F. Supp. 2d 914 (S.D. Ohio 2012) ......................................... 67

*Hord v. Envtl. Research Inst. of Michigan*, 463 Mich. 399 (Mich. 2000) ...................... 60

*Horne v. Novartis Pharms. Corp.*, 541 F. Supp. 2d 768 (W.D.N.C. 2008)...................... 23

*Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018
    (S.D.N.Y. May 22, 1996).............................................................................. 22, 23

*Hyundai Motor Am. v. Goodin*, 822 N.E.2d 947 (Ind. 2005) ........................................... 11

*IMI Norgren, Inc. v. D&D Tooling & Mfg.*, 247 F. Supp. 2d 966 (N.D. Ill.
    2002) .......................................................................................................... 16, 17, 18

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015)........................................... 30

*In re Caterpillar, Inc.*, No. 1:14-cv-3722, 2015 WL 4591236 (D.N.J. July 29,
    2015) ............................................................................................................. 10, 32

*In re Chicago Flood Litig.*, 680 N.E.2d 265 (Ill. 1997)..................................................... 51

*In re Coin Phones. Inc.*, 203 B.R. 184 (Bkrtcy. S.D.N.Y. 1996) ..................................... 57

*In re ConAgra Foods, Inc.*, 908 F Supp 2d 1090 (C.D. Cal. 2012)............................ 42, 70

*In re Coordinated Title Ins. Cases*, 784 N.Y.S.2d 919 (Sup. Ct. 2004) .......................... 58

*In re First Merchants Acceptance Corp. Secs. Litig.*, No. 97-2715, 1998 WL
    781118 (N.D. Ill. Nov. 2, 1998).................................................................................. 39

*In re Fruehauf Trailer Corp.*, 250 B.R. 168 (D. Del. 2000)............................................. 59

*In re Horizon Organic Milk Plus DHA Omega-3 Marketing & Sales Practices
    Litig.*, 955 F. Supp. 2d 1311 (S.D. Fla. 2013)....................................................... 34

*In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal.
    2014) .......................................................................................................................... 44

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 831 F.
    Supp. 1354 (N.D. Ill. 1993) ..................................................................................... 50

*In re Masonite Corp. Hardboard Siding Products Liab. Litig.*, 21 F. Supp. 2d
    593 (E.D. La. 1998) .................................................................................................. 31

*In re Milo's Dog Treats Consol. Cases*, 9 F. Supp. 3d 523 (W.D. Pa. 2014)............. 54, 55

*In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014) ........... 29, 32

*In re Porsche Cars North America, Inc.*, 880 F. Supp. 2d 801 (S.D. Ohio
    2012) ..................................................................................................................... 46, 48

*In re Scotts EZ Seed Litig.*, No. 12-cv-4727, 2013 WL 2303727 (S.D.N.Y.
    May 22, 2013).......................................................................................................... 40

*In re Sony PS3 Other OS Litig.*, No. C-10-1811-RS, 2011 WL 672637 (N.D. Cal. Feb. 17, 2011) ................................................................. 31

*In re Tyco In'l, Ltd.*, No. MD-02-1335, 2006 WL 2349338 (D.N.H. Aug. 15, 2006) ............................................................................................. 58

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 684 F. Supp. 2d 942 (N.D. Ohio 2009) ......................................................... 46

*Int'l Tax Advisors, Inc. v. Tax Law Assocs., LLC*, No. 08 C 2222, 2011 WL 612093 (N.D. Ill. Feb. 15, 2011) ......................................................... 37

*Invest Almaz v. Temple-Inland Forest Products Corp.*, 243 F.3d 57 (1st Cir. 2001) ............................................................................................. 60

*IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994 (N.D. Ill. 2008) .................... 48

*Jackson v. Bank of Am. Corp.*, 711 F.3d 788 (7th Cir. 2013) ............................................. 18

*Jamie S. v. Milwaukee Pub. Schs*, 668 F.3d 481 (7th Cir. 2012) .................................... 61

*Jeffries v. Clark's Rest. Enters., Inc.*, 580 P.2d 1103 (Wash. Ct. App. 1978) ................ 23

*Jen–Rath Co. v. Kit Mfg. Co.*, 48 P.2d 659 (Idaho 2002) ............................................. 23

*Jensen v. Seigel Mobile Homes Group*, 668 P.2d 65 (Idaho. 1983) ................................ 33

*Joseph Brazier, Ltd. v. Specialty Bar Prods. Co.*, No. 06-cv-01416, 2008 WL 791942 (D. Colo. Mar. 21, 2008) ......................................................... 26

*Kaplan v. Shure Bros.*, 153 F.3d 413 (7th Cir. 1998) ................................................ 31

*Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883 (7th Cir. Ind. 2011) ......... 61, 63

*Kaufman v. Am. Family Mut. Ins. Co.*, No. CIV-A05CV02311, 2007 WL 437641 (D. Colo. Feb. 5, 2007) ......................................................... 31

*Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012) .................... 45

*Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477 (N.H. 2005) ...................... 50, 52

*Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614 (7th Cir. 2007) ................ 6

*Koch v. Kaz USA, Inc.*, No. 09-CV-02976-LTB-BNB, 2011 WL 2607112 (D. Colo. July 1, 2011) ......................................................... 33

*Kofa Int'l Ltd. v. JC Horizon Ltd.*, No. 98 CV 1324 JBW, 1999 WL 438474 (E.D.N.Y. May 20, 1999) ......................................................... 32

*Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 WL 2147413 (N.D. Cal. May 15, 2013) ................................................................................ 42

*Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) .................................................................... 47

*Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551 (E.D. Va. 2006) ............................................................................ 33

*Krause v. City of Elk River*, No. A14-1575, 2015 WL 3823093 (Minn. Ct. App. June 22, 2015) ...................................................................... 33

*Lady Di Fishing Team, LLC v. Brunswick Corp.*, No. 3:07-cv-402-J-33TEM, 2007 WL 3202715 (M.D. Fla. Oct. 29, 2007) ...................................... 31

*Landstar Inway Inc. v. Samrow*, 181 Wash. App. 109 (Wash. Ct. App. 2014) ............... 60

*Lariviere v. Dayton Safety Ladder Co.*, 525 A.2d 892 (R.I. 1987) .................................. 23

*Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320 (M.D. Ga. 2011) .............................................. 29

*Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F.Supp. 1358 (N.D. Ill 1996) ................................................................................ 20

*Leprino v. Intermountain Brick Co.*, 759 P.2d 835 (Colo. App. 1988) ........................ 9, 14

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) .................................... 60

*Lilly v. Ford Motor Co.,* No. 00-C-7372, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002) ................................................................................ 41

*Limandri v. Judkins*, 52 Cal. App. 4th 326 (Cal. App. 4th Dist. 1997) ........................... 59

*Linc Equipment Svcs., Inc. v. Signal Med. Svcs, Inc.*, 319 F.3d 288 (7th Cir. 2003) ................................................................................ 15

*Long v. Graco Children's Prods.*,  No. 13-CV-01257, 2013 WL 4655763 (N.D. Cal. Aug. 26, 2013) .................................................................... 46

*Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85 (Cal. App. Ct. 2001) ............................... 43

*Lunding v. Biocatalyst Res., Inc.*, No. 03 C 696, 2003 WL 22232831 (N.D. Ill. Sept. 19, 2003) ....................................................................... 61

*Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021 (Ill. Ct. App. 1998) ............................................................................ 22

*Marr Enters., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951 (9th Cir. 1977) ............ 13, 14

*Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078 (Ind. 1993) ................ 11, 12

*Mason v. Chrysler* Corp., 653 So. 2d 951 (Ala. 1995) ..................................................... 60

*McCullough Enters., LLC v. Marvin Windows & Doors*, No. 09-0573, 22010
    WL 5014670 (S.D. Ala. Dec. 1, 2010) .......................................................... 10, 12

*McCullough v. General Motors*, 577 F. Supp. 41 (W.D. Tenn. 1982) ............................ 15

*McGarvey v. Penske Auto Group*, 639 F.Supp.2d 450 (D.N.J. 2009) ............................. 37

*McGarvey v. Penske Auto. Group, Inc.*, No. 08-5610, 2011 WL 1325210
    (D.N.J. March 30, 2011) ............................................................................... 36, 37

*Medallion Products, Inc. v. H.C.T.V., Inc.*, No. 06 C 2597, 2007 WL 1022010
    (N.D. Ill. Mar. 29, 2007) ...................................................................................... 28

*Mednick v. Precor, Inc.*, No. 14-cv-03624, 2014 WL 6474915 (N.D. Ill. Nov.
    13, 2014) ................................................................................................................ 25

*Mickens v. Ford Motor Co.*, No. 10-CV-5842, 2015 WL 5310755 (D.N.J.
    Sept. 10, 2015) ...................................................................................................... 45

*Midland Supply Co., Inc. v. Ehret Plumbing & Heating Co.*, 440 N.E.2d 153
    (Ill. App. Ct. 1982) ................................................................................................ 18

*Midwest Builder Distrib. v. Triangle Pac. Corp.*, 1 No. 97 C 326, 1998 WL
    325260 (N.D. Ill. June 10, 1998) .......................................................................... 38

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992) ....................................... 39

*Miles Homes Div., Insilco Corp. v. Smith*, 790 S.W.2d 382 (Tex. App.
    Beaumont 1990) ..................................................................................................... 55

*Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745 (7th Cir. 2006) ....................................... 69

*Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847 (N.D. Ill. 2006) ...................... 69

*Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. 2013) .......................... 45

*Munch v. Sears Roebuck & Co.*, No. 06-cv-07023, 2007 WL 2461660 (N.D.
    Ill. Aug. 27, 2007) ................................................................................................. 23

*Musgrave v. Breg, Inc.*, No. 2:09–cv–1029, 2011 WL 3876529 (S.D.Ohio
    Sept. 2, 2011) ......................................................................................................... 66

*Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047 (Ill. 2007) ................................... 36

*Myers v. Putzmeister, Inc.*, 596 N.E.2d 754 (Ill. App. Ct. 1992) ................................... 64

*Naparala v. Pella Corp.*, No. 2:14-MN-00001, 2015 WL 2379492 (D.S.C. May 19, 2015) ................................................................. 19

*Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494 (D.N.J. 1999)........................................................... 51, 52

*New Hope Pipe Liners, LLC v. Composites One, LCC*, No. CIV. 09-3222, 2009 WL 4282644 (D.N.J. Nov. 30, 2009) ........................... 66

*Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618 (Ohio Ct. App. 2003) ................ 32

*Oceanside at Pine Point Condominium Owners Assoc. v. Peachtree Doors*, 659 A.2d 267 (Me. 1995).............................................. 51, 52

*Owner-Operator Indep. Drivers Ass'n v. Concord Efs*, 59 S.W.3d 63 (Tenn. 2001) ....................................................................... 30

*P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 803 N.E.2d 1020 (Ill. App. Ct. 2004)................................................ 69

*Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo. 1984) .................................... 27

*Paulino v. Conopco, Inc.*, No. 14-cv-05145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) ............................................................. 26

*PDC Labs., Inc. v. Hach Co.*, No. 09-1110, 2009 WL 2605270 (C.D. Ill. Aug. 25, 2009) .......................................................... 9, 14

*Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268 (M.D. Ala. 1999) ...................... 59

*Peterson v. Bendix Home Sys. Inc.*, 318 N.W.2d 50 (Minn.1982) ..................... 33

*Potomac Constructors, LLC v. EFCO Corp.*, 530 F. Supp. 2d 731 (D. Md. 2008) ....................................................................... 12

*Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971 (Md. 2008)....................... 52, 53

*Purcell & Wardrope Chartered v. Hertz Corp.*, 530 N.E.2d 994 (Ill. App. Ct. 1988) ..................................................................... 70

*Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 254 Mich. App. 372 (Ct. App. 2002) ....................................................... 53

*Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791 (N.D. Ohio 2012) ................ 42

*Regina Grape Products Co. v. Supreme Wine Co.*, 260 N.E.2d 219 (Mass. 1970) ....................................................................... 28

*Regopoulos v. Waukegan P'ship*, 608 N.E.2d 457 (Ill. App. Ct. 1st Dist. 1992) ............. 18

*Rexnord Corp. v. DeWolff Boberg & Assocs.*, 286 F.3d 1001 (7th Cir. Ind. 2002) .................................................................................................. 15, 18

*Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill. App. 2d 362 (Ill. App. Ct. 1966) ................................................................................................ 29

*Rite Aid Corp. v. Levy-Gray*, 894 A.2d 563 (Md. 2006) .................................. 33

*Roneker v. Kenworth Truck Company*, 944 F. Supp. 179 (W.D.N.Y. 1996) .................... 9

*Royal Ins. Co. of Am. v. Insignia Fin. Group, Inc.*, 751 N.E.2d 164 (Ill. App. Ct. 2001) ................................................................................................ 16

*Saber Solutions, Inc. v. Protech Solutions, Inc.*, No. 06-4922, 2009 WL 3128950 (D.N.J. Sept. 25, 2009) ........................................................ 17

*Saltzman v. Pella Corp*, 257 F.R.D. 471 (N.D. Ill. 2009).................................. 69

*Sampson v. MacDougall*, 802 N.E.2d 602 (Mass. App. Ct. 2004) .................................. 55

*Samuel-Bassett v. Kia Motors Am.*, Inc., 34 A.3d 1 (Pa. 2011)........................................ 33

*Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223 (S.D. Fla. 2014) .................. 29

*Savett v. Whirlpool Corp.*, No. 12 CV 310, 2012 WL 3780451 (N.D. Ohio Aug. 31, 2012) .......................................................................................... 30, 31

*Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. Ill. 2004)............................. 37, 38

*Scott v. Honeywell Int'l Inc.*, No. 14-cv-00157, 2015 WL 1517527 (D. Colo. March 30, 2015)........................................................................................ 9

*Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700 (4th Cir. 2007) ................................................................................................ 31

*Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009 (N.D. Ill. 2008)..................... 31

*Sherwin-Williams Co. v. JB Collision Servs.*, Nos. 13-CV-1946-LAB-WVG, 13-CV-1947-LAB-WVG, 2014 WL 5112057 (S.D. Cal. Oct. 9, 2014).............. 54

*Sherwood Brands, Inc. v. Levie*, 2006 U.S. Dist. LEXIS 13099 (D. Md. 2006) ............. 29

*Smith v. Navistar Int'l Transp. Corp.*, 957 F.2d 1439 (7th Cir. 1992)........................ 38, 55

*Soaper v. Hope Indus., Inc.*, 424 S.E.2d 493 (S.C. 1992).................................. 28

*Solomon v. Canon USA, Inc.*, 31 Misc. 3d 30 (N.Y. App. Term 2010)............................ 38

*Stanley v. Select Portfolio*, No. 07-cv-775, 2008, WL 2020509 (S.D. Ill. May 9, 2008) ............................................................................................ 37

*Star-Shadow Prods., Inc. v. Super 8 Sound Sys.*, 730 A.2d 1081 (R.I. 1999) ................. 12

*Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 U.S. Dist. LEXIS 78423 (N.D. Ill. June 9, 2014) .............................................................. 34

*Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ................................................................... 11, 54

*Stratford v. SmithKline Beecham Corp.*, No. 2:07–cv–639, 2008 WL 2491965 (S.D. Ohio June 17, 2008) ............................................................ 66

*StreamCast Networks, Inc. v. IBIS LLC, No. CV 05-04239, 2006 WL 5720345 (C.D. Cal. May 1, 2006)* ............................................................. 61

*Strzakowlski v. GMC*, No. 04-cv-4740, 2005 WL 2001912 (D.N.J. Aug. 16, 2005) .................................................................................... 23, 26

*Swanson v. Ptak*, 682 N.W.2d 225 (Neb. 2004) ............................................ 56

*Taylor v. Am. Chemistry Council*, 576 F.3d 16 (1st Cir. 2009) ........................ 60

*Taylor v. JVC Ams. Corp.*, No. 07-4059 (FSH), 2008 WL 2242451 (D.N.J. May 30, 2008) ................................................................................. 28

*Terrill v. Electrolux Home Products, Inc.*, 753 F. Supp. 2d 1272 (S.D. Ga. 2010) ............................................................................................. 26

*Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783 (N.J. 2005) ................ 49

*Tokyo Ohka Kogyo America, Inc. v. Huntsman Propylene Oxide LLC*, 35 F. Supp. 3d 1316 (D. Or. 2014) .......................................................... 9, 11, 21

*Travelers Commercial Cas. Co. v. Sielfleisch Roofing, Inc.*, No. 4:12 CV 1550 DDN, 2014 WL 636204 (E.D. Mo. Feb. 18, 2014) ............................... 55

*Truesdale v. Friedman*, 132 N.W.2d 854 (Minn. 1965) .................................. 26

*U.S. Bank v. Integrity Land Title Corp.*, 929 N.E. 2d. 742 (Ind. 2010). ............ 50

*Unified School Dist. v. Celotex Corp.*, 6 Kan. App. 2d 346 (Kan. Ct. App. 1981) ........................................................................................ 55

*Universal Underwriters Ins. Grp. v. Pub. Serv. Elec. & Gas Co.*, 103 F. Supp. 2d 744 (D.N.J. 2000) ................................................................. 65

*Urban Dev. v. Evergreen Bldg. Prods.*, 59 P.3d 112 (Wash. Ct. App. 2002) ................. 29

*Van Wyk v. Norden Labs., Inc.*, 345 N.W.2d 81 (Iowa 1984) ........................................... 28

*Varacallo v. Massachusetts Mut. Life Ins. Co*., 752 A.2d 807 (App. Div. 2000)............. 58

*Vickery v. Evelyn V. Trumble Living Trust,* 277 P.3d 864 (Colo. App. 2011) ................. 60

*Viking Yacht Co. v. Composites One LLC*, No. 05-538, 2007 WL 2746713
(D.N.J. Sept. 18, 2007) .......................................................................... 9

*Virginia Energy Co. v. Phibro Energy, Inc*., 711 F. Supp. 870 (W.D. Va.
1989) ................................................................................................. 32

*Virginia Transformer Corp. v. P.D. George Co.,* 932 F. Supp. 156 (W.D. Va.
1996) ................................................................................................. 23

*V-M Corp. v. Bernard Distrib. Co.*, 447 F.2d 864 (7th Cir. 1971).................................... 12

*Voelker v. Porsche Cars N. Am., Inc*., 353 F.3d 516 (7th Cir. 2003) .............................. 38

*Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010).................... 43

*Wafra Leasing Corp. v. Prime Capital Corp.*, 247 F. Supp. 2d 987 (N.D. Ill.
2002) ................................................................................................. 44

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................................ 61

*Wal-Mart Stores, Inc. v. Wheeler*, 262 Ga. App. 607 (Ga. Ct. App. 2003)...................... 23

*Wartsila NSD N. Am., Inc. v. Hill Int'l Inc.*, 530 F.3d 269 (3d Cir. 2008) ...................... 17

*Waterford Prods. Co. v. Victor*, No. 98-L-029, 1999 WL 1313664 (Ohio Ct.
App., Dec. 17, 1999)............................................................................ 43

*Watts v. Krebs*, 131 Idaho 616 (1998) .......................................................................... 60

*Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614 (Cal. App. 2010) ........................ 33

*Weisblum v. Prophase Labs, Inc.,* 88 F. Supp. 3d 283 (S.D.N.Y. 2015)......................... 30

*Wendling v. Pfizer, Inc.,* No. A-1807-06T1, 2008 WL 833549 (N.J. Super. Ct.
App. Div. Mar. 31, 2008)..................................................................... 65

*Williams v. Dresser Indus., Inc.,* 120 F.3d 1163 (11th Cir. 1997)................................... 60

*Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445 (D.C. Cir. 1965) ............. 18, 19

*Williams v. Yamaha Motor Corp., U.S.A.*, No. CV 13-05066, 2015 WL
2375906 (C.D. Cal. Apr. 29, 2015).............................................. 45, 47

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012)................................. 46, 47

*Xavier v. Philip Morris USA Inc.,* 787 F. Supp. 2d 1075 (N.D. Cal. 2011) .................... 31

*Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179 (N.D. Fla. 2007) .............................. 31

*Zapka v. Coca-Cola Co.*, No. 99-8238, 2000 WL 804688 (N.D. Ill. June 20, 2000) .......................................................................................................................... 41

## STATUTES

15 U.S.C. § 2301 ....................................................................................................... passim

15 U.S.C. § 2302(a) ......................................................................................................... 38

15 U.S.C. § 2304(a)(3) .................................................................................................... 38

15 U.S.C. § 2308(a) ......................................................................................................... 38

15 U.S.C. § 2308(c) ......................................................................................................... 38

15 U.S.C. § 2310(b) ................................................................................................... 36, 38

15 U.S.C. § 2310(c) ......................................................................................................... 36

15 U.S.C. § 2310(d)(1) ............................................................................................... 35, 38

15 U.S.C. § 45(a)(1) ......................................................................................................... 36

15 U.S.C. §§ 2301-2312 .................................................................................................. 35

28 Ill. Cons. Stat.  § 5/2-313 cmt. 3 ............................................................................... 32

313 Pa. Cons. Stat.  § 2313 cmt. 3 .................................................................................. 32

6 Del. Code § 2-313 cmt. 3 ............................................................................................. 32

810 ILCS 5/2-316 ............................................................................................................ 20

Ala. Code § 7-2-313 cmt. 3 ............................................................................................. 32

Cal. Comm. Code § 2313 cmt. 3 ..................................................................................... 32

Colo. Rev. Stat. § 4-2-313 cmt. 3 ................................................................................... 32

Fed. R. Civ. P. 23(b)(2)............................................................................................. 60, 69

Fed. R. Civ. P. 57 ............................................................................................................ 61

Fed. R. Civ. P. 8(a) ........................................................................................................... 6

Fed. R. Civ. P. Rule 12(b)(6) ...................................................................... 6, 23

Fed. R. Civ. P. Rule 9(b) ........................................................................ passim

Federal Trade Commission Act §5(a), (15 U.S.C. §45(a)(1) .............................. 36

Ga. Code  § 11-2-313 cmt. 3 ............................................................................. 32

Idaho Code § 28-2-313 cmt. 3 ........................................................................... 32

ILCS 5/1-201(b)(10) ......................................................................................... 20

Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 ......... 40

Ind. Code § 26-1-2-313 cmt ............................................................................. 32

Mass. Gen. L. 106 § 2-313 cmt ......................................................................... 32

Mass. Gen. Laws. ch. 93A, § 9(3) .................................................................... 49

Massachusetts Consumer Protection Act, Ma. Gen. Laws Ch 93A §1 *et seq.* ............. 49

Md. Code § 2-313 cmt. 3 ................................................................................... 32

Mich. Comp. L.  § 440.2313 cmt. 3 ................................................................... 32

Minn. Stat.  § 336.2-313 cmt. 3 ......................................................................... 32

N.C. Gen. Stat.  § 25-2-313 cmt. 3 .................................................................... 32

N.H. Rev. Stat.  § 382-A: 2-316 ........................................................................ 20

N.H. Rev. Stat.  § 382-A:1-201 (10) ................................................................. 20

N.H. Rev. Stat. § 382-A:2-313 cmt. 3 ............................................................... 32

N.J.S.A.  § 12A:2-313 cmt. 3 ............................................................................ 32

N.J.S.A. § 2A:58C-1(b)(2) ................................................................................ 52

N.J.S.A. § 56:8-2 ................................................................................................ 65

N.Y. U.C.C. § 2-313 cmt. 3 ............................................................................... 32

Neb. Rev. Stat. U.C.C. § 2-313 cmt. 3 .............................................................. 32

Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 ..................... 66

Ohio Products Liability Act, Ohio Rev. Code §2307.71 ................................... 66

Ohio Rev. Code § 1302.26 cmt. 3 ................................................................... 32

Ohio Rev. Code.§ 2307.71(A)(13) ................................................................ 67

Ohio Rev.Code § 2307.71(B) ....................................................................... 66

Ohio Rev.Code § 2307.71(N) ....................................................................... 67

R.I. Gen. L. § 6a-2-313 cmt. 3 ..................................................................... 32

Tenn. Stat. § 47-2-313 cmt. 3 ...................................................................... 33

Tex. Bus. & Com. Code § 2.313 cmt. 3 ....................................................... 33

The New Jersey Product Liability Act, N.J.S.A. 2A:58C ............................... 65

Va. Code § 9.2-313 cmt. 3 ........................................................................... 33

Vernon's  Mo. Stat. § 400.2-313 cmt. 3 ....................................................... 32

Wash. Rev. Code § 62A.2-313 cmt. 3 .......................................................... 33

## OTHER AUTHORITIES

Black's Law Dictionary 1291 (6th Ed.1990) ................................................. 57

Denicola, The Magnuson-Moss Warranty Act: Making Consumer Product
     Warranty a Federal Case, 44 Fordham L.Rev. 273, 273 (1975) ........................ 35

James J. White & Robert S. Summers, *Uniform Commercial Code,* § 13-10(a) ............. 10

Schroeder, 66 Cal. L. Rev. 1, 2 (1978) ........................................................ 35

SchroederPrivate Actions under the Magnuson-Moss Warranty Act, 66 Cal. L.
     Rev. 1, 3 (1978) ...................................................................................... 35

U.C.C. § 2-307 ............................................................................................ 18

U.C.C. § 2-313(1)(a) ................................................................................... 28

U.C.C. § 2-313(2) ....................................................................................... 29

U.C.C. § 2-315 ..................................................................................... 27, 28

U.C.C. § 2-316 ............................................................................................ 20

U.C.C. § 2-607(3)(a) ................................................................................... 25

U.C.C. § 2-714(2) ....................................................................................... 18

U.C.C. § 2-715 ........................................................................................................ 17

U.C.C. § 2-719 .......................................................................................................... 8

U.C.C. § 2-719(2) ...................................................................................................... 8

White & Summers, *Uniform Commercial Code* (4th ed.)§ 10-4 ..................................... 16

White & Summers, *Uniform Commercial Code* § 13-10(a) ............................................ 12

## INTRODUCTION

The overarching issue on this motion is whether a defendant can deny thousands of persons their day in court, or even the chance to seek discovery to support their claims, when that defendant has deliberately and deceptively sold a product which will not only not perform as promised, but will cause significant harm to the consumer's other property. This case concerns a product that was sold to the members of the putative class as a way to preserve and restore their wooden decks and similar structures to like-new condition. Rust-Oleum Corporation ("Rust-Oleum" or "Defendant") marketed Restore to the public in glowing terms, all the while knowing that this product would not live up to these claims. Rust-Oleum now seeks by its motion to dismiss to throw out claims based on the existence of limitations and alleged exclusions in its warranty, and a remedy which is really no remedy at all. The motion is without merit in all respects.

The motion attacks the Consolidated Amended Complaint ("CAC") on several fronts, for example, by singling out 25 of the 40 named plaintiffs, asserting that they were made whole by the offer of a refund. Plaintiffs' decks and other structures to which they applied Restore have or will suffer from a catastrophic failure of the product to do its job. CAC ¶¶ 73-81.[1] The "exclusive" "refund or replace" remedy that Rust-Oleum offered—replacement of cans of the same defective product, or a refund of the purchase price—is patently insufficient to compensate Plaintiffs for their damages, and fails of its essential purpose. Similarly, for many of the same factual reasons, the purported exclusion for consequential damages is unconscionable—and in any event, these are also clearly "direct" damages. The key fact here, which trumps Rust-Oleum's attempts to hide behind the warranty and its limitations and exclusions, is that Rust-Oleum sold Restore knowing it was a defective product.

---

[1] Plaintiffs recognize that the Defendant's scattershot motion is difficult to follow. Plaintiffs have thus submitted a chart summarizing Plaintiffs' legal and factual responses to Defendant's motion, organized by cause of action, Exhibit A hereto. Furthermore, Defendant's chart that purports to categorize the claims made by various named Plaintiffs (and their supposed deficiencies), contains numerous errors, so Plaintiffs have accordingly prepared a chart logging sum of those errors, Exhibit B hereto.

Rust-Oleum's attempt to have the claims of 15 plaintiffs dismissed for lack of pre-suit notice also fails, for several reasons, including that 1) determination of whether notice was given is a question of fact not to be decided on a motion to dismiss; 2) the "direct notice" plaintiffs plainly allege that they did notify Rust-Oleum; 3) actual notice in some form was given by virtue of the many (over ten thousand) customers informally complaining and seeking reimbursement from Rust-Oleum, and 4) service of the Complaint itself constituted notice. The degree to which Rust-Oleum is flailing in its arguments is illustrated by its inclusion of Plaintiffs Lautigar, Mies and Holbrook in its notice argument; *inter alia*,, these plaintiffs specifically alleged that they "notified Defendant that Restore was prematurely failing" and was "resulting in permanent damage to the deck." CAC ¶¶ 133, 180, 191. Nor do Defendant's attacks on grounds of lack of causation, reliance, knowledge, or actionable representations have any merit under the fact and applicable laws.

Defendants' contentions that there is no claim for the breach of the implied warranty of fitness for a particular purpose, or lack of privity, do not fare any better. Rust-Oleum has claimed that it has abided by its warranty obligations, thereby conceding that privity is not an issue. In addition, Plaintiffs have pleaded sufficient facts that show that exceptions to the requirement of privity are applicable, as Plaintiffs dealt with Rust-Oleum through its agents, and Rust-Oleum directly marketed to Plaintiffs. CAC ¶¶ 115, 309. The allegations supporting the declaratory, injunctive and equitable relief, and state-specific claims of all plaintiffs, are all proof against Defendant's unsupported attacks.

Plaintiffs' allegations are well-pleaded, including those allegations that require specificity under Rule 9(b) of the Federal Rules of Civil Procedure; further, the law is clear that Defendant's knowledge may be generally alleged. Causation and reliance are also pleaded for those claims which require such allegations. Defendant seeks to throw out these claims before discovery, which clearly should be allowed in this case in order to establish the necessary factual record for the Court to properly rule on these issues. Defendant's repeated reference to cases decided on summary judgment underscores the premature nature of these efforts.

- 2 -

Nor can Rust-Oleum hide behind the fact that it acquired Restore from Synta. Inc., in 2012. First, many named Plaintiffs purchased sufficiently after the acquisition that Rust-Oleum had time to learn that its representations were false—even if it did not know this prior to the acquisition, and there is every reason to believe that it either knew about it from its due diligence in the acquisition. Second, there is nothing pleaded which rules out the possibility that Defendant acquired the liabilities of Synta, Inc. in a merger. CAC ¶¶ 57-58. Rust-Oleum seeks to have its cake and eat it too, arguing the case should be dismissed for lack of pleading of internal evidence of its knowledge, while denying Plaintiffs the time to uncover such evidence. The law on pleading fraud does not require such specificity or sanction such a stratagem by a defendant. The "economic loss" rule also does not bar any claims. Plaintiffs have pleaded that Restore causes damage to property other than the product itself.

Despite Rust-Oleum's efforts to cloud the issues, the laws of the various States are substantially similar with respect to the claims being made herein. Rust-Oleum is effectively launching a pre-emptive attack on class certification, which is premature on its face and in light of the absence of a factual record which will allow the parties to properly brief the issues and the Court to have enough information to decide them. The Court need not rule on the issue of whether or not Plaintiffs can represent the interests of Class members residing in States with similar laws at this time.

The Consolidated Amended Complaint is well-pleaded, and Defendant's motion should be denied in its entirety.

## FACTUAL BACKGROUND

Rust-Oleum markets Restore as a miracle product, a less costly alternative to deck replacement that is far superior to traditional paints and stains. "CAC" ¶ 3. Since bringing Restore to market, Rust-Oleum has consistently marketed it as a "new innovative technology" that provides long-lasting, enhanced protection and other benefits, which its competitors cannot match, thereby justifying Restore's premium price. CAC ¶¶ 61-62, 64-67. The very name "Restore" misleads consumers into believing that the product will turn back the clock and essentially restore a deteriorated deck to its former state. CAC ¶ 3. Indeed, the labels affixed to

every container of Restore sold at retail describe the product as "The Smart Alternative to Deck & Concrete Replacement," and claim it effectively "revives wood & broom swept concrete," provides "lasting moisture protection," and "locks down wood splinters," among other things. CAC ¶¶ 61-62.

Rust-Oleum also reiterates these claims in its pervasive (and similarly misleading) marketing materials. In press releases, on its website, and in other online and promotional sites, Rust-Oleum insists that Restore "is an easy to apply repair coating that revives the surface while offering maximum protection to preserve the deck for years to come." CAC ¶ 66. It particularly emphasizes Restore's alleged durability, insisting that Restore "lasts 10-12 years and in fact comes with a lifetime warrantee;" "lasts 3x longer than deck stain with less maintenance;"; will "last for years with little maintenance;" and is "tested tough for 12+ years." CAC ¶ 67. Rust-Oleum also promises that Restore is "tough" and "resilient" and provides a "protective barrier from Mother Nature's harsh elements," including moisture. *Id.*

Consumers' actual experiences tell a far different story, one that belies Rust-Oleum's rosy representations. Rather than providing long-term protection that frees homeowners from the regular cycle of painting or staining their decks or other surfaces, Restore is prone to premature cracking and peeling, which often begins within months of its application. CAC ¶¶ 73, 76-80. The following customer complaint from the Amazon website is indicative of the common experience among Rust-Oleum's consumers:

> This product promises a lot (10 years of wear, fill cracks, restore old wood, etc.) and delivers NOTHING!!!! I had my deck redone with this product less than 3 months ago and spent well over $200 for the product and the "special" rollers that they want you to use…. I am now looking at a deck that is covered in a flaking, brittle, ugly paint that is going to cost me well over $1,000 to have it removed and a new product applied.

CAC ¶ 80.

Another consumer likewise wrote on a home-improvement website:

> I researched this stuff before I bought it. I followed the instructions to the letter…. Now, less than 3 months later, it is

> cracking and bubbling and peeling up. This stuff isn't cheap and our deck isn't small. I feel like I threw away time and money with this product!!"

CAC ¶ 81.

In addition to failing to "last for years with little maintenance," Restore actually exacerbates and accelerates deck deterioration by increasing the deck's exposure to the elements after it cracks and peels, trapping moisture that causes wood structures to rot. CAC ¶¶ 67, 88.

Because Restore does not (and cannot) deliver on its promises, Class Members are left with a few very unappealing options: accept the unsightly appearance of their deck following the premature failure of the Restore product, spend thousands of dollars removing the chipping, flaking, and peeling product, or, in some cases, replacing the entire deck damaged by Restore. CAC ¶¶ 80-81. Although Rust-Oleum has received over 10,000 complaints about its product, it continues to make false and misleading misrepresentations about Restore's purportedly superior and long lasting capabilities. CAC ¶¶ 86, 88-89. And although Rust-Oleum "guarantees product performance…as long as you own or reside in your home…," Rust-Oleum "honors" this warranty only by offering consumers more of what they don't want or need: Restore, an inherently defective product. CAC ¶ 63, Exs. 1 & 2.

## THE PUTATIVE CLASSES

The proposed nationwide declaratory and injunctive relief Class is defined as follows:

> All individuals and entities that have purchased, not for resale, Restore and/or Restore 10X in the territories of the United States.

CAC ¶101.

Plaintiffs also seek to represent the following multistate Class as defined as follows:

> All individuals and entities that have purchased not for resale Restore and/or Restore 10X in the territories of the United States and are residents of the following states: Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada,

New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the District of Columbia.

CAC ¶102.

## LEGAL STANDARD

To survive a motion to dismiss, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The purpose of a Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss is not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Instead, a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Id*. In reviewing a motion to dismiss under Rule 12(b)(6), the court must take as true all factual allegations in plaintiffs' complaint and draw all reasonable inferences in plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (the Court must presume the truth of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff). Dismissal for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the ground on which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

## ARGUMENT

Plaintiffs' well-pleaded allegations set forth in the Consolidated Amended Complaint set forth all required elements for each of their causes of action, as detailed below. Further, to the extent the fraud-based claims must be pled with particularity, Plaintiffs have done so consonant with the law that allegations of knowledge need only be pled generally, and to the best of their ability given the early stage of the case. The common theme in many of Defendant's arguments is that they rely upon cases decided on summary judgment, after discovery. There are reasons for that, and also reasons why the question of what law applies does not need to be decided at this point when there is not an adequate factual record. Similarly, this is not the time for the

Court to rule upon Plaintiffs' request for a nationwide class—that time will come on class certification. Defendant's raising of the issue now is simply an attempt to if not forestall that day, then to at least muddy the waters. There is simply no reason for the Court to decide many of these premature issues now, and certainly no basis for any of these claims to be dismissed.[2] The Motion should be denied in its entirety.

## I.     PLAINTIFFS' BREACH OF WARRANTY CLAIMS ARE WELL-PLEADED.

As to Plaintiffs' breach of express and implied warranty claims and under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq. ("MMWA"), Rust-Oleum's contention that Counts II through V of the CAC should be dismissed as to 25 of the 40 named Plaintiffs who received partial reimbursement because an "exclusive-remedy" provision limits Restore purchasers to "either a refund of the original purchase price or replacement with a product of equal value," Def. Br. at 5, does not overcome Plaintiffs' allegations that those remedies fail of their essential purpose. Further, this defense turns on a question of fact that is incapable of being determined on a motion to dismiss. Rust-Oleum's argument that its "consequential-damages" exclusion precludes recovery of damages by any Plaintiff "such as the costs of applying or removing any product or replacing any structure," is similarly deficient because 1) plaintiffs' damages are direct, not consequential; 2) the "consequential damages" exclusion clause is not conspicuous as required by law; and 3) the limits on "consequential" damages are unconscionable. Rust-Oleum's arguments are also premature in the absence of a factual record, without which the issues of whether Plaintiff's claims are "direct" or "consequential" cannot be determined.

---

[2] Plaintiffs' opposition brief largely tracks the order of Defendant's points for the Court's convenience. However, Plaintiffs do not repeat each and every point for each section after having made it once, and urge the Court to make use of the cross-references provided within the brief and in Plaintiffs' Exhibit A hereto.

A. **Rust-Oleum's purported warranty limitations do not preclude Plaintiffs' claims.**

1. **The exclusive remedy fails of its essential purpose.**

   a. *Whether an exclusive remedy provision fails of its essential purpose is a question of fact, thus making dismissal improper.*

Notwithstanding the extensive damages sustained by every Plaintiff, Rust-Oleum asserts that the claims of 25 Plaintiffs must be dismissed because they received a refund of the original purchase price—contending that is the exclusive remedy to which Plaintiffs are entitled. Defendant's Brief (hereinafter "Def. Brief") at 5.[3] This overly-simplistic analysis ignores the reality that Plaintiffs paid for a product that was inherently defective at the point of sale, causing damages that at all pertinent times Rust-Oleum knew would significantly exceed the original purchase price (i.e., the only remedy) offered by Rust-Oleum.

Under Article 2 of the Uniform Commercial Code, an exclusive remedy may be set aside if it fails of its essential purpose. U.C.C. § 2-719(2). An exclusive remedy fails of its essential purpose "when the circumstances existing at the time of the agreement have changed so that the enforcement of the limited remedy would essentially leave the plaintiff with no remedy at all." *Computerized Radiological Servs., Inc. v. Syntex Corp.*, 595 F.Supp. 1495, 1510 (E.D.N.Y. 1984); , *rev'd on other grounds*, 786 F.2d 72 (2d Cir. 1986); *see also* U.C.C. § 2-719, Official Comment 1 ("[W]here an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article."). A determination that an exclusive remedy has failed of its essential purpose presents unique questions of fact and is inappropriate for resolution on a motion to dismiss.

Under Illinois law, courts routinely deny motions for summary judgment concerning whether an exclusive remedy provision fails of its essential purpose. *See Cole Energy Dev. Co. v.*

---

[3] Defendant's "exclusive remedy" also provides for a product replacement. For obvious reasons, given the inherently defective nature of Restore, none of the Plaintiffs sought a product replacement.

*Ingersoll-Rand Co.*, 678 F. Supp. 208, 210 (C.D. Ill. 1988). Many other jurisdictions have explicitly stated that this determination is generally a fact-based question proper for a jury. *See Demorato v. Carver Boat Corp.*, 304 Fed. App'x. 100, 102, (3d Cir. 2008) (citing *Roneker v. Kenworth Truck Company*, 944 F. Supp. 179 (W.D.N.Y. 1996)). Here, there has been no discovery with respect to the extent to which of those 25 Plaintiffs have been reimbursed, the nature of such reimbursements, or whether such reimbursement accomplishes the essential purpose of the warranty.[4] The Court should deny Rust-Oleum's motion with respect to these 25 Plaintiffs in the absence of a complete factual record.

### b. The exclusive remedy fails of its essential purpose under any applicable test.

Even if this Court chooses to examine the issue of whether the refund remedy fails of its essential purpose issue now, the purpose of a refund remedy, such as the one offered here, "is to make the buyer financially whole, *not* to provide it with conforming goods." *BAE Sys. Info. & Elecs. Sys. Integration v. SpaceKey Components, Inc.*, 941 F. Supp. 2d 197, 208 (D.N.H. 2013) (emphasis added). Simply put, a refund remedy fails "*when a refund alone would leave the buyer in a hole.*" *Id.* at 207 (citing *PDC Labs., Inc. v. Hach Co.*, No. 09-1110, 2009 WL 2605270 (C.D. Ill. Aug. 25, 2009) (emphasis added); *Cox v. Lewiston Grain Growers, Inc.*, 936 P.2d 1191 (Wash. Ct. App. 1997); *Viking Yacht Co. v. Composites One LLC*, No. 05-538, 2007 WL 2746713 (D.N.J. Sept. 18, 2007)).[5] This is *precisely* the situation faced by Plaintiffs—being provided with equally defective cans of Restore, even if they could be re-sold at face value, still

---

[4] Rust-Oleum's assertion that Plaintiffs have been "coy" about providing facts as to the exact details of the refunds of these 25 plaintiffs is both untrue and irrelevant. Plaintiffs have provided some details as to some of them, and Plaintiffs were not required to plead around this supposed defense.

[5] *See also Leprino v. Intermountain Brick Co.*, 759 P.2d 835 (Colo. App. 1988) (same proposition); *Scott v. Honeywell Int'l Inc.*, No. 14-cv-00157, 2015 WL 1517527, at *6-7 (D. Colo. March 30, 2015) (refund remedy fails its essential purpose where there is a latent defect in the product); *Held v. Mitsubishi Aircraft International, Inc.*, 672 F. Supp. 369, 383 (D. Minn. 1987) (same, interpreting Section 2-719 under Texas law); *Tokyo Ohka Kogyo America, Inc. v. Huntsman Propylene Oxide LLC*, 35 F. Supp. 3d 1316, 1325 (D. Or. 2014) ("courts have found that a refund remedy can also fail of its essential purpose, such as when a seller conceals relevant facts or there is a latent defect").

leaves Plaintiffs in the position of still having to pay the substantial costs of purchasing a different, non-defective product and paying to have the damage done by Restore undone and the new product applied. The value of the "replacement" Restore is far smaller than the costs faced by Plaintiffs.

Rust-Oleum relies predominantly on cases involving "repair or replacement" remedies, but the remedies here do not even begin to make Plaintiffs whole in this case.[6] The essential purpose of a repair or replacement remedy, in contrast to the refund remedy, is "to put conforming goods in the hands of the buyer." *BAE*, 941 F. Supp. 2d at 205. Restore is not a conforming good, it is a defective good. Offering to provide replacement Restore is akin to asking someone if they would like another quart of spoiled milk just like the one that made them sick. It is no remedy at all, and even worse than no remedy it would cause further harm if accepted and used. Even putting conformity aside, a repair or replacement remedy may fail of its essential purpose when the seller cannot repair or replace goods within a reasonable time, or the repair or replacement simply cannot be accomplished.[7] *See, e.g., BAE*, 941 F. Supp. at 205 (citing James J. White & Robert S. Summers, *Uniform Commercial Code,* § 13-10(a) at 603 and collecting cases); *In re Caterpillar, Inc.*, No. 1:14-cv-3722, 2015 WL 4591236, at *23 (D.N.J. July 29, 2015) (collecting cases); *McCollough Enters., LLC v. Marvin Windows & Doors*, No. 09-0573, 22010 WL 5014670, at *9 (S.D. Ala. Dec. 1, 2010). Rust-Oleum's cases are inapposite to a proper refund remedy analysis, which seeks to make the buyer plaintiffs whole.

Rust-Oleum nevertheless goes to great efforts to pigeon-hole limited remedy cases into three categories, purportedly organized by a state's test for evaluating whether a remedy fails its essential purpose: benefit of the bargain, abiding by promised remedies, and unanticipated

---

[6] The majority of Defendant's cases were also decided on a full record, rather than on a motion to dismiss, and confirm that Plaintiffs' warranty claims should proceed in discovery.

[7] Even if Rust-Oleum had offered to repair by re-applying Restore to Plaintiffs' decks, Rust-Oleum's warranty still would have failed of its essential purpose given the defective nature of the product.

consequences. *See generally* Def. Brief at 8-11. Irrespective of whether Rust-Oleum's self-serving categorization is correct, Rust-Oleum's arguments fail under each of these theories.[8]

**"Benefit of the Bargain"**:  The bargain struck by Plaintiffs in this case was not simply for a can of paint; rather, it was for a product that, when properly applied, would resurface and "restore" their decks and patios from weather, moisture and temperature-related wear for a "lifetime."  Instead, the product not only swiftly deteriorated, it damaged the precise thing it was designed to protect (neither of which was detectable until sometime after application).  Given the resulting damage, Plaintiffs did *not* obtain the benefit of their bargain.

Again, the majority of Rust-Oleum's "benefit-of- the-bargain" cases involve repair or replacement warranties, which remedies are totally inapposite for the reasons explained above. The few cases that do address refunds involve either commercial parties and/or parties that were made whole by the refund, *i.e.,* situations totally distinguishable from this case.  *Compare, e.g., Martin Rispens & Son v. Hall Farms, Inc.*, 621 N.E.2d 1078, 1086 (Ind. 1993) (commercial plaintiff held to remedy of cost of seeds) *abrogated on other grounds*, *Hyundai Motor Am. v. Goodin*, 822 N.E.2d 947 (Ind. 2005); *Stearns v. Select Comfort Retail Corp.*, No. 08-2746, 2009 WL 1635931, at *5  (N.D. Cal. June 5, 2009) (consumers made whole after receiving a refund on a moldy bed were not entitled to additional remedies).

---

[8] The standards for assessing failure of essential purpose are not as restricted to only specific jurisdictions as Rust-Oleum's argument suggests.  Each test is drawn *directly* from § 2-719 and Official Comment 1, *which each of the jurisdictions at issue has adopted*.  Accordingly, it is not surprising to find, *e.g.*, a court interpreting Texas law (in defendant's so-called "abiding by promised remedies" category) considering "unanticipated circumstances," *see, e.g., Tokyo Ohka Kogyo America*, 35 F. Supp. 3d 1316, 1326 ("court must also focus on the circumstances surrounding the alleged breach of contract and resulting harm to discern whether the harm is one caused by novel circumstances not contemplated by the parties and involved a risk not allocated by the parties"); a Maine court (in defendant's "abiding by promised remedies" category) considering "unanticipated circumstances," *see, e.g., Bernath v. Potato Servs. of Mich.*, 300 F. Supp. 2d 175, 182-83 (D. Me. 2004) ("when novel circumstances not contemplated by the parties make it impossible to carry out the essence of the remedy"); or a Maryland court (in defendant's "abiding by promised remedies category") considering the benefit of the bargain ("[W]here an apparently fair and reasonable clause because of circumstances fails in its essential purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Title."). *Dowty Commc'ns, Inc. v. Novatel Computer Sys. Corp.*, 817 F. Supp. 581, 585 (D. Md. 1992).

This case does not involve commercial purchasers, so Rust-Oleum's cases that do are not on point. Unsurprisingly, courts are loath to upset the allocation of loss between sophisticated commercial people who are in a position to use their experience to anticipate risks and also negotiate an allocation of loss. *See, e.g.*, *Canal Elec. Co. v. Westinghouse Elec. Corp.*, 756 F. Supp. 620, 626 (D. Mass. 1990) (quoting *V-M Corp. v. Bernard Distrib. Co.*, 447 F.2d 864, 869 (7th Cir. 1971)) ("'Section 2-719 was "intended to encourage and facilitate the consensual allocation of risks associated with the sale of goods. This is particularly true where commercial, rather than consumer sales are involved.'").[9]

**"Abiding by Promised Remedies"**: Rust-Oleum cites *McCollough Enterprises, supra,* for the wholly unremarkable proposition that "warranties do not fail of their essential purpose without proof that the seller was unable or unwilling to abide by its promised remedies." 2010 WL 5014670, at *9; Def. Brief at 9. Even a cursory reading of *McCollough Enterprises* indicates that the Alabama court was focused on a repair or replacement warranty, not a refund warranty. Because the focus of a repair or replacement warranty is to "cure the defect," (White & Summers, *Uniform Commercial Code* § 13-10(a) at 603), it makes perfect sense that a buyer must give the seller an opportunity to comply before the seller can claim that the seller breached the warranty. Here, Rust-Oleum could only refund the purchase prices or replace the product with yet a still-defective product. Moreover, the fact that Rust-Oleum refunded 25 Plaintiffs' original purchase price does not make these Plaintiffs whole in light of their injuries. As such, the refund remedy fails, and Plaintiffs are entitled to resort to the general remedy provisions of the U.C.C. Neither *McCollough Enterprises* or the other "abiding by promised remedies" cases

---

[9] *See also, e.g.*, *Hainlen v. Atofina Chems., Inc.*, No. IP 00-1689-C, 2001 WL 1781922, at *6 (S.D. Ind. Nov. 21, 2001) (commercial plaintiff was well aware that refund remedy was part of the bargain); *Deerskin Trading Post, Inc. v. Spencer Press, Inc.*, 495 N.E.2d 303, 307 (Mass. 1986) ("Limiting damages to a refund…where the two parties are sophisticated business entities … is a reasonable business practice…."); *Potomac Constructors, LLC v. EFCO Corp.*, 530 F. Supp. 2d 731, 736 (D. Md. 2008) ("'[I]n commercial settings, the rule that the agreed-upon allocation of risk should not be disturbed is particularly important.'" (quotation omitted)); *Martin Rispens*, 621 N.E.2d 1078 (upholding remedy and noting that commercial plaintiff could have attempted to negotiate a more comprehensive remedy to protect itself); *Star-Shadow Prods., Inc. v. Super 8 Sound Sys.*, 730 A.2d 1081 (R.I. 1999) (upholding remedy and noting that commercial film maker plaintiff could have purchased insurance to protect itself).

cited by Rust-Oleum involve cases where a defective product was found to be an adequate replacement for another defective product, let alone that the *same* defective product provides an adequate remedy under the U.C.C.

With two exceptions, Rust-Oleum's remaining cases are inapposite because they exclusively involve repair or replacement warranties. The first exception, *Marr Enters., Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951 (9th Cir. 1977), involves both a replacement remedy and a refund remedy, and actually *supports* Plaintiffs' position. In *Marr Enters.*, the parties contracted for a refrigeration system on a fishing boat. The plaintiff claimed the system failed and filed suit. Addressing the defendant's motion for summary judgment on appeal, the court noted that "the mere failure [of the defendant] to replace or repair would not cause the court to read in the general remedy provisions of the UCC" because the plaintiff had an alternate refund remedy available to it. *Id.* at 955. The court readily acknowledged, however, that "*[l]imited remedies under the UCC have been held to fail of their essential purpose when defects in the goods are latent and not discoverable on reasonable inspection.*" *Id.* (citing cases) (emphasis added). In *Marr Enters.*, unlike this case, there was no indication that the system contained a latent defect. *Id.* Even under the reasoning in *Marr Enters.*, therefore, Plaintiffs' warranty claims should proceed.

Rust-Oleum's other refund case, *Dowty Commc'ns, Inc. v. Novatel Computer Sys. Corp.*, 817 F. Supp. 581 (D. Md. 1992), *aff'd sub nom. Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390 (4th Cir. 1994), involved a repair or replacement remedy as well as a refund remedy negotiated between two commercial entities. In rejecting the argument *on summary judgment* that the remedies failed their essential purposes, the court found that "the alleged breach … is exactly the type of breach, and has generated exactly the type of damages, anticipated when negotiating and signing the [distribution agreement]." *Id.* at 587. Here, of course, the situation is fundamentally different. Plaintiffs are consumers and had no opportunity to negotiate any remedy. Moreover, Plaintiffs certainly never anticipated the product would prove to be defective after application and cause property damage, making the offer of a

replacement of the same product as a remedy to fail of its essential purpose. *Dowty* simply does not apply here.

"**Unanticipated Circumstances**": As to the final group of cases cited by Rust-Oleum, there is no question that "unanticipated circumstances" have developed for Plaintiffs that prevented Rust-Oleum's paltry refund offers from making them whole. *See BAE*, 941 F. Supp. 2d at 208 (purpose of a refund is to make the buyer whole). Rust-Oleum suggests that Plaintiffs, in the face of a latent defect, could have somehow anticipated such significant property damage and bargained it away when they purchased the product. But this is not the reality of a consumer product transaction, and there are no facts in Plaintiffs' complaint that suggest this could have happened.

Moreover, the cases advanced in support of Rust-Oleum's flawed and hypothetical version of the facts once again involve predominantly repair or replacement remedies and sophisticated commercial parties, and thus are not remotely analogous or persuasive. The one case cited that involves a refund remedy (though coupled with an inapposite repair-style remedy), *Arcata Graphics Co. v. Heidelberg Harris, Inc.*, 874 S.W.2d 15 (Tenn. Ct. App. 1993), is distinguishable. *Arcata* involved sophisticated commercial parties, not consumers, and is easily distinguishable on that basis. In any event, the court rejected the plaintiff's claim for breach of express warranty not because the remedies had satisfied their essential purpose (although they had not), but because the buyer had failed to even invoke the remedies. *Id.* at 29. In addition, *Arcata* did not present a latent defect situation, as is the case here. *Compare, e.g., Marr*, 556 F.2d at 955 (acknowledging that latent defect could cause failure of essential purpose of remedy even where alternative refund remedy available); *Leprino*, 759 P.2d 835 (limited refund remedy failed where homeowner did not discover defect in bricks until after installation and contact with moisture).[10] A defect existing at the point of sale, which is not immediately

---

[10] *See also Viking Yacht Co.*, 2007 WL 2746713, at *4-*6 (genuine issue of material fact as to whether refund warranty failed where gel coat used on boats malfunctioned after application and required removal, the cost of which well exceeded the excess of purchase price and was necessary to prevent hull damage); *PDC Labs., Inc.*, 2009 WL 2605270, at *5 (summary judgment denied because refund remedy

detectable by the consumer, that causes a consumer product to utterly fail and which also causes additional damage is certainly an "unanticipated circumstance." Plaintiffs' warranty claims should therefore proceed.

**2. The consequential damages exclusion does not bar recovery.**

The issue of whether Plaintiffs' damages are direct or consequential is premature, for the same reason as is the issue of whether the remedy fails of its essential purpose: discovery has not yet taken place. Should the Court undertake to categorize damages notwithstanding this fact and the above arguments, the damage for which Plaintiffs seek relief is clearly direct in nature. Rust-Oleum's consequential-damages exclusions thus have no bearing on Plaintiffs' warranty claims, and do not support dismissal at this early stage of the litigation. In any event, application of the exclusion to Plaintiffs' claims in the manner urged by Rust-Oleum would be unconscionable.

**a. *Whether Plaintiffs' damages are direct is a question of fact.***

Whether or not Plaintiffs' damages are direct or not is a question of fact, which cannot be decided on a motion to dismiss; however, under the facts as stated in the CAC and as explained *infra*, these damages are clearly direct in nature. "Contract law distinguishes between direct and consequential damages, the difference lying in the degree to which the damages are a foreseeable (that is, a highly probable) consequence of a breach." *Rexnord Corp. v. DeWolff Boberg & Assocs.*, 286 F.3d 1001, 1004 (7th Cir. Ind. 2002) (collecting cases). Direct damages are "utterly foreseeable, indeed certain," *id.*, and, while direct damages may be awarded upon proof of a breach, consequential damages may be awarded only if those damages were 'reasonably foreseeable.'" *Linc Equipment Svcs., Inc. v. Signal Med. Svcs., Inc.*, 319 F.3d 288, 289 (7th Cir. 2003). White & Summers support this characterization of damages and emphasize that damages cannot be mechanically classified as consequential or direct:

---

jury could find that refund remedy failed where testing plates for E. coli originally worked, but then malfunctioned nine months after purchase causing damages in excess of purchase price). *Cf. McCullough v. General Motors*, 577 F. Supp. 41 (W.D. Tenn. 1982) (genuine issue of material fact as to whether time limitation caused the remedy to fail in its essential purpose due to consumer's discovery of latent defect after limitation expired).

Damages that might be consequential under one contract can be direct or ordinary under another. ***Among the circumstances most relevant to the classification is the scope of the broken promise itself.*** If the requirements or needs of the buyer are explicitly incorporated into the subject matter of the promised performance, then at least the immediate damages from the breach will be direct because they flow in the ordinary course of events from the breach.

*Uniform Commercial Code* (4th ed.)§ 10-4 at 573-574 (emphasis added).

In order to categorize Plaintiffs' damages, the Court must first make findings with respect to the foreseeability of damages. Such a determination requires the parties to present evidence regarding the scope of Rust-Oleum's representations, promises, and warranties, as well as the degree to which Plaintiffs' needs are incorporated into the subject matter of Rust-Oleum's promised performance. A sufficient factual record simply does not exist at this stage of the litigation to allow the Court to make any of those findings.[11]

> **b.      *Plaintiffs' damages are properly categorized as "direct" and not excluded by the warranty***

Plaintiffs' damages can only be classified as "direct" under controlling case law. "Under Illinois law, direct damages under § 2-714 are those that 'result from an act without the intervention of any intermediate controlling or self-efficient cause.'" *IMI Norgren, Inc. v. D&D Tooling & Mfg.*, 247 F. Supp. 2d 966, 970 (N.D. Ill. 2002) (*quoting Royal Ins. Co. of Am. v. Insignia Fin. Group, Inc.*, 751 N.E.2d 164, 170 (Ill. App. Ct. 2001)). "Damages that can be labeled as direct 'include all such injurious consequences as proceed from, or have direct causal connection with, such consequences.'" *Id.* (*quoting Royal Ins. Co. of Am.*, 751 N.E.2d at 170). In other words, direct damages "'are those which the law presumes will flow from a particular wrong and which everyone would expect to result in the ordinary course of events.'" *Saber*

---

[11] Even if the Court were persuaded that damages in this matter were consequential, Plaintiffs' claims should still be allowed: "The question of whether consequential damages should be awarded despite a contractual exclusion is a mixed question of law and fact." *Sunny Indus. v. Rockwell Int'l Corp.*, 1999 U.S. App. LEXIS 7001 at *38-39 n. 9 (7th Cir. Wis. 1999) (citing *AES Tech. Sys, Inc. v. Coherent Radiation*, 583 F.2d 933, 942 (7th Cir. 1978).

*Solutions, Inc. v. Protech Solutions, Inc.*, No. 06-4922, 2009 WL 3128950, at *9 (D.N.J. Sept. 25, 2009) (*quoting IMI Norgren Inc.*, 247 F. Supp. 2d at 970).

By contrast, consequential damages under U.C.C. § 2-715 "'are not produced without the concurrence of some other event attributable to the same origin or cause; such damage, loss, or injury as does not flow directly and immediately from the act of the party, but only from the consequences or results of such act.'" *Id.* As such, special or consequential damages are those which are peculiar to a particular plaintiff and would not be expected to occur regularly as a result of a breach. *See Wartsila NSD N. Am., Inc. v. Hill Int'l Inc.*, 530 F.3d 269, 277-80 (3d Cir. 2008).

Rust-Oleum made numerous representations to consumers about Restore's purported qualities on product labels and packaging, including that it repairs decking; is the "smart alternative" to deck and concrete replacement; locks down wood splinters; revives wood and broom swept concrete; provides lasting moisture protection; and performs as a "liquid armor" resurfacer. CAC ¶61. Rust-Oleum also made numerous representations about Restore online and in other advertisements, including that it lasts 10 to 12 years and in comes with a lifetime warranty; lasts three times longer than deck stains with less maintenance; is a low-maintenance, "long-lasting alternative to the endless cycle of repairing and repainting"; provides tough, resilient coating over existing decking which lasts for years with less maintenance than deck paints or stains; and will last for years with little maintenance. *Id.* ¶67.

Consumers pay a premium for the Restore product because they reasonably expect a long-lasting and aesthetically-pleasing protective barrier for their decks and other exterior surfaces. CAC ¶76. But contrary to Rust-Oleum's promises, Restore begins to prematurely crack, peel, flake, chip, bubble, pucker, separate and generally degrade shortly after application and has the propensity to cause damage to decks and other property. *Id.* ¶73. As a result, consumers must expend time and money to clean up the mess and damage to their property by: (1) removing the product (e.g., by sanding or power washing); (2) replacing the product (e.g., with paint, stain, or another resurfacer); and (3) repairing any damages to existing decks and similar property. ¶79. Given Restore's purpose (as described in Defendant's marketing

- 17 -

materials), the claimed damages are "utterly foreseeable, indeed certain."[12] *Rexnord Corp.*, 286 F.3d at 1004. Even without drawing all inferences in Plaintiffs' favor, which the Court is obliged to do on this motion, the unadorned facts themselves here compel a finding that the claimed damages are direct in nature.

### c. The consequential damages limitation is unconscionable

The damages limitation provision sought to be imposed by Rust-Oleum is both procedurally and substantively unconscionable and should not be enforced by this court. More specifically, the damages limitation is substantively unconscionable, because Rust-Oleum was aware of the defective nature of Restore and because there was a fundamental imbalance of bargaining power between Plaintiffs and the Rust-Oleum. *Jackson v. Bank of Am. Corp.*, 711 F.3d 788, 792-93 (7th Cir. 2013).

The leading case on unconscionability of contract clauses is *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 450 (D.C. Cir. 1965) and its holdings apply directly to this case. To determine whether a clause or provision is unconscionable, the terms must be considered "in the light of the general commercial background and the commercial needs of the particular trade or case." *Id* (citing Comment, U.C.C. § 2-307). Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party. *Williams*, 350 F.2d at 450. Whether a meaningful choice is present in a particular case can only be determined by consideration of all the circumstances surrounding the transaction. *Id*. In many cases the meaningfulness of the choice is negated by a gross inequality of bargaining power. *Id*. A limitation on a warranty for a product that the manufacturer allegedly knows is defective is potentially so "one-sided" as to

---

[12] Illinois law allows the costs of repair, replacement, and restoration to be included as direct damages under U.C.C. § 2-714(2). *IMI Norgren, Inc.*, 247 F. Supp. 2d at 971 (*citing Schroeder v. Barth, Inc.*, 969 F.2d 421, 424 (7th Cir. 1992) (cost of repair); *Continental Sand & Gravel, Inc. v. K&K Sand & Gravel, Inc.*, 755 F.2d 87, 91 (7th Cir. 1985) (cost of repair); *Custom Automated Mach. v. Penda Corp.*, 537 F. Supp. 77, 84 (N.D. Ill. 1982) (cost of repair); *Midland Supply Co., Inc. v. Ehret Plumbing & Heating Co.*, 440 N.E.2d 153, 157, (Ill. App. Ct. 1982) (cost of repair and replacement); *Regopoulos v. Waukegan P'ship*, 608 N.E.2d 457, 464 (Ill. App. Ct. 1st Dist. 1992) (cost of restoration)).

give rise to substantive unconscionability. *Naparala v. Pella Corp.*, No. 2:14-MN-00001, 2015 WL 2379492 at *6 (D.S.C. May 19, 2015) (holding that "at least at the pleadings stage", alleging that a defendant had knowledge of a defect in its product at the time of contract is sufficient to surpass a motion to dismiss). Should a court determine that a provision of a contract is unconscionable, it may refuse to enforce it. *Williams*, 350 F.2d at 448-49.

In this case, Plaintiffs have alleged that Rust-Oleum knew or should have known that Restore was fundamentally defective at the time of sale which, *in and of itself*, should result in a finding of substantive unconscionability. CAC ¶¶ 97-98. Further, there is obvious procedural unconscionability, including an inherent imbalance in bargaining power. Rust-Oleum is a large company, which wrote and presented the contract on a take-it-or-leave-it basis. Plaintiffs are individual consumers who had no power to bargain with Rust-Oleum over the terms of sale. The contract was one of adhesion. The terms in the contract are also substantively unconscionable, in that they unfairly limit Plaintiffs' ability to recover damages for injuries, especially considering that the Rust-Oleum knew or should have known of the alleged defects before and during the time of marketing and sale. As such, the consequential damages limitation is an unconscionable provision that should be disregarded in determining the extent of Plaintiffs' recovery.

Ignoring the palpable unconscionability of its damages limitation in the circumstances, Rust-Oleum claims that five "key facts acknowledged by the complaint" preclude Plaintiffs' claims that the damages limitation provision is unconscionable (without denoting which arguments bear on substantive versus procedural unconscionability). Def. Br. at 19-21: 1) the written warranty for Restore appears on the label denoted as a "Limited Lifetime Warranty," thus removing claims of unfair surprise; 2) there are no allegations that Plaintiffs were forced to purchase Restore, "undermining any claims of oppression," 3) the consequential damages exclusion did not leave the plaintiffs without "any remedy," 4) Rust-Oleum has no control over how Plaintiffs use Restore so as to allow a reasonable estimate of the potential consequential damages (again supposedly obviating claims of oppression), and 5) the defect is a latent one, which "would not have been obvious at the time of sale and may never manifest for many

purchasers." None of these arguments pass muster to bar Plaintiffs' assertions of unconscionability.

**3.    The damages limitations are procedurally unconscionable because they are insufficiently conspicuous**

Contrary to Defendant's assertion, the mere fact that the warranty is entitled "Limited Lifetime Warranty" does not render the warranty conspicuous or remove any element of unfair surprise.    In order to be enforceable, (whether in Illinois, New Hampshire, or any other implicated state), warranty disclaimer language (not simply the title) must be conspicuous.  *See, e.g.,* U.C.C. § 2-316; 810 ILCS 5/2-316; N.H. Rev. Stat.  § 382-A: 2-316.  In order for a term or clause to be conspicuous, it should be capitalized or should appear in "larger or other contrasting type or color."  N.H. Rev. Stat.  § 382-A:1-201 (10); *see also* ILCS 5/1-201(b)(10) (defining "conspicuous" as "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it").  The purported warranty limitations are decidedly inconspicuous: they are buried within the warranty and printed in the same size letters as the rest of the agreement.  CAC, ¶ 280.   Inasmuch as the warranty limitations are indistinguishable from the rest of the document, the Court should rule that they are unenforceable.  *See Cole v. U.S. Capital*, 389 F.3d 719, 730 (7th Cir. 2004) (a disclaimer is not conspicuous when it is the same size and typeface as the terms around it or is not in boldface or capital lettering).

**4.    The warranties are procedurally unconscionable**

The argument that there is no oppression because Plaintiffs could have chosen another product instead of Restore does not detract from the fact that this was a contract of adhesion, entered into by parties with unequal bargaining power.   The cases cited by Rust-Oleum are all distinguishable; once again, this case does not deal with sophisticated commercial customers (as do all of the cases it cites). *See, e.g., Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F.Supp. 1358, 1372 (N.D. Ill 1996)( "Both Lefebvre and Sanden are sophisticated commercial businesses").  It is obvious that there is a competitor good available for nearly every purchase a consumer might make, but that does not mean that Plaintiffs, ordinary consuming members of the public, could have negotiated the terms of the warranty.

### 5.     The remedy offered is really no remedy at all

Rust-Oleum argues that because the warranty in question provides <u>some</u> remedy for the defective nature of its product, that means that the warranty as a whole, and the damages limitation provision specifically, cannot be unconscionable.   But this argument is readily defeated when—as here—the Plaintiffs allege that the Rust-Oleum knew of the defect at the time of contract. *See Tokyo Ohka Kogyo Am., Inc.*, 35 F. Supp. 3d at 1334  (holding that "where the seller knows of a latent defect and fails to disclose it to the buyer, any limitations may be unconscionable."); *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869, 2012 WL 1570057 , at *10 (S.D. Fla. May 2, 2012) ("[I]f a product contains a known latent defect then any warranty limits may be unconscionable."). Although the contract at issue does offer *some* remedy, the dramatic difference between the offered remedy and Plaintiffs' actual damages illustrates how much and how unfairly the damages limitation provision favors Rust-Oleum. Simply offering *some* remedy does not prevent a court from finding that the overall effect of a damages limitation provision, in the context of the whole contract, is unconscionable.

### 6.     Rust-Oleum's knowledge of the latent nature of the defect creates oppression and defeats any argument that the product was improperly applied

Rust-Oleum contends that because there is no way to know if a consumer will properly apply Restore, it is reasonable to allocate the risk of damages due to improper application of Restore by the buyer.   Def. Brief at 20-21.  But that goes against the well-pleaded allegations in Plaintiffs' complaint: they specifically alleged that they followed all instructions detailing the proper application of Restore and that Rust-Oleum was aware of the defective nature of the product prior to and during the marketing and selling of Restore. The fact that Plaintiffs were injured, even though they followed the application directions, indicates that the damages limitation constitutes a pretext for shifting the likely costs of marketing a defective product from the Rust-Oleum to the Plaintiffs. Rust-Oleum knowingly sold a defective product, with a latent defect, which was likely to cause damages far exceeding the price of a Restore can, and included a damages limitation provision in its warranty in order to insulate itself against the true costs of

its defective product. Such a provision "shocks the conscience" and should be struck as unenforceable.

Finally, Defendant argues that the latent nature of the defect in Restore gives Defendant a reason to include a consequential damages limitation provision. Def. Brief at 21. However, none of the cases which Defendant cites contemplate circumstances where the defendant was <u>aware</u> of the defective nature of its product prior to imposing a consequential damages provision. *See id.* The latent nature of the defect was only unknown to Plaintiffs—Defendant, in contrast, was aware that its product would likely fail and cause damage to Plaintiffs. Defendant was the only party in a position to know of Restore's defective nature prior to the Plaintiffs' purchase of the product. Rather than being a defense, the very fact of the latent nature of the defect prevents Defendant's consequential damages limitation from being construed as anything but unconscionable.

### B.    Defendant had adequate notice of Plaintiffs' problems with Restore

Defendant contends that Counts II-V should be dismissed for fifteen plaintiffs for lack of pre-suit notice. Def. Brief at 25-28. Those claims should be sustained because 1) determination of whether notice was given is a question of fact not to be decided on a motion to dismiss; 2) the "direct notice" plaintiffs plainly allege that they did notify Rust-Oleum; and 3) actual notice in some form was given by virtue of the many customers informally complaining and seeking reimbursement from Rust-Oleum, and 4) service of the Complaint itself constituted notice.[13]

### 1.    Whether notice is sufficient is a question of fact not suitable for a motion to dismiss.

In Illinois, whether and to what extent notice is sufficient is a question of fact not susceptible to resolution on a motion to dismiss. *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 940 (Ill. Ct. App. 1998) ("Whether sufficient notice has been provided is

---

[13] Alternatively, Plaintiffs should be afforded an opportunity to amend. *See, e.g., Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *7 n.5 (S.D.N.Y. May 22, 1996) (granting leave where the "Plaintiff has indicated that some form of notice may have occurred.").

generally a question of fact to be determined based upon the particular circumstances of each case."). The law is the same in home states of the fifteen Plaintiffs at issue here.[14] Their warranty claims must be sustained for that reason, as further facts may be raised when appropriate.

### 2. The claims of the direct notice Plaintiffs should be sustained.

Inexplicably, Rust-Oleum seeks the dismissal of Plaintiffs Lautigar, Mies, and Holbrook, who <u>specifically alleged</u> that they "notified Defendant that Restore was prematurely failing" and "resulting in permanent damage to the deck." [15] Def. Brief at 27. At the pleading stage, those allegations are sufficient under the law of virtually every state. *See Munch v. Sears Roebuck & Co.*, No. 06-cv-07023, 2007 WL 2461660, at *5 (N.D. Ill. Aug. 27, 2007) (sustaining nationwide warranty claims where, in many states, "[n]othing more is required to give notice of a breach of an implied warranty" than to allege "that they notified Sears that there were problems with their machines."); *Ashcroft*, 556 U.S. at 678 ("Detailed factual allegations" are not required in order to survive a Rule 12(b)(6) motion). It is certainly true in the home states of these three Plaintiffs. *See Hoffman's Double Bar Pine Nursery v. Fyke,* 633 P.2d 516, 518 (Colo. App. 1981)

---

[14] *See id.* (Illinois – Plaintiff Shogren); *see also Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1285 (M.D. Ala. 2001) (Alabama – Plaintiff Reyes); *Fiberglass Component Prod., Inc. v. Reichhold Chemicals, Inc.*, 983 F. Supp. 948, 954 (D. Colo. 1997) (Colorado – Plaintiff Lautigar); *Wal-Mart Stores, Inc. v. Wheeler*, 262 Ga. App. 607, 608 (Ga. Ct. App. 2003) (Georgia – Plaintiff Patterson); *Jen–Rath Co. v. Kit Mfg. Co.,* 48 P.2d 659, 664 (Idaho 2002) (Idaho – Plaintiff Dockstader); *Duxor Inv. Aktiengesellschaft v. Inv. Rarities, Inc.*, No. C9-89-1644, 1990 WL 57549, at *2 (Minn. Ct. App. May 1, 1990) (Minnesota – Plaintiff Mies); *Fitl* , 690 N.W.2d at 608 (Nebraska – Plaintiff Holbrook); *Strzakowlski v. GMC*, No. 04-cv-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005) (New Jersey – Plaintiffs Riello and Dorgan); *Hubbard,* 1996 WL 274018, at *4 (New York – Plaintiff Fernandez); *Horne v. Novartis Pharms. Corp.*, 541 F. Supp. 2d 768, 786-787 (W.D.N.C. 2008) (North Carolina – Plaintiffs McLamb); *Lariviere v. Dayton Safety Ladder Co*., 525 A.2d 892, 898 (R.I. 1987) (Rhode Island – Plaintiff Renzi); *Jeffries v. Clark's Rest. Enters., Inc.*, 580 P.2d 1103, 1105 (Wash. Ct. App. 1978) (Washington – Plaintiff McCain); *Virginia Transformer Corp. v. P.D. George Co.*, 932 F. Supp. 156, 161 (W.D. Va. 1996) (Virginia – Plaintiffs Ledford and Reynolds).

[15] *See* CAC ¶¶118 (Hickman), 125 (Hoff), 129 (Baden), 133 (Lautigar), 137 (Malloy), 141 (Shanks), 157 (Sullivan Plaintiffs), 161 (McCoy), 168 (Webber), 172 (Boscardin), 176 (Scaglione), 180 (Mies), 184 (Gibson), 191 (Holbrook), 195 (Anderson), 205 (Larson), 212 (Leonard Plaintiffs), 219 (Blank), 223 (Dixson), 227 (Cady Plaintiffs), 231 (Fredericks), 235 (Reinhart), 248 (Murphy), 258 (Allen).

(Colorado – Plaintiff Lautigar); *American Fertilizer Specialists*, *Inc. v. Wood,* 635 P.2d 592, 596 (Okla. 1981) (Minnesota – Plaintiff Mies); *Fitl v. Strek*, 690 N.W.2d 605, 608 (2005) (Nebraska – Plaintiff Holbrook).

### 3. Plaintiffs sufficiently allege actual notice of breach of warranty.

Rust-Oleum can only feign ignorance of the fact that its Restore product was wreaking havoc for all its customers, let alone as to the fifteen Plaintiffs singled out here. In addition to the Plaintiffs who allege individual direct notice, twenty-five Plaintiffs allege that they sought and received partial reimbursement for their damages.[16] In total, twenty-eight out of forty Plaintiffs allege pre-suit notice, that they provided enough information to Defendant to occasion partial reimbursement—or they allege that they did both.[17] Those Plaintiffs represent a small fraction of the "*over ten thousand consumer complaints*" they allege were made directly to Defendant about Restore, the vast majority of which are about premature peeling or bubbling. CAC ¶86 (emphasis added). Plaintiffs also allege that Defendant, which purchased Restore from Synta in September 2012, had access to complaint and warranty claim information concerning Restore on a historical basis. *Id.* ¶¶87-88.

Plaintiffs also pled that Defendant had an "extensive quality monitoring department that conducts product sampling and testing during production and before sale to ensure product performance, effectiveness, and efficiency" and that "[t]he results of this testing would have informed Defendant (before it began to sell Restore) that Restore is not suitable for its marketed use." CAC ¶83. Plaintiffs allege further that Defendants featured field testing prominently in

---

[16] *See* Compl. ¶¶119 (Hickman), 126 (Hoff), 130 (Baden), 138 (Malloy), 142 (Shanks), 151 (Gomez), 158 (Sullivan Plaintiffs), 162 (McCoy), 165 (Fales), 169 (Webber), 173 (Boscardin), 177 (Scaglione), 185 (Gibson), 196 (Anderson), 206 (Larson), 213 (Leonard Plaintiffs), 220 (Blank), 224 (Dixson), 228 (Cady Plaintiffs), 232 (Fredericks), 236 (Reinhart), 242 (Rogers), 245 (Diaz), 249 (Murphy), 259 (Allen).

[17] Three Plaintiffs alleged notice without alleging partial reimbursement. *See* Compl. ¶¶133 (Lautigar), 180 (Mies), 191 (Holbrook). Four alleged partial reimbursement without alleging notice. *See* Compl. ¶¶151 (Gomez), 165 (Fales), 242 (Rogers), 245 (Diaz).

Restore marketing materials, which, given the rate at which Restore deteriorated for Plaintiffs, would have put Defendant on actual notice that Restore was a defective product. *Id*. ¶84.

Moreover, Plaintiffs allege that consumers have been complaining about Restore on Rust-Oleum's Facebook page and at other sites on the Internet for years. CAC ¶¶77-81, 85. Plaintiffs included a small fraction of the hundreds of complaints made online in their pleading, including numerous full-color images depicting decking destroyed by Restore. *Id*. ¶¶77-81.

Based on the foregoing, Plaintiffs allege that Rust-Oleum "has known about [Restore's defects] for years," CAC ¶76, and that, "[s]ince or around the time Defendant began selling Restore, it knew or should have known that the product would not meet the claims and promises and representations the company affirmatively made to consumers on product packaging, uniform brochures, online marketing, and through other advertisements." CAC ¶82. Plaintiffs make similar allegations of actual knowledge in the warranty claim counts. *Id*. ¶¶290, 298, 300, 308, 311.

Plaintiffs' allegations are more than sufficient at this early stage of the litigation to establish that Rust-Oleum was on notice that every single purchaser of the Restore product possessed a warranty claim. *See Hedges v. Earth, Inc.*, No. 14-cv-09858, 2015 WL 1843029, at *3 (N.D. Ill. April 21, 2015) (in context of a class action, sustaining warranty claims and finding "actual knowledge" where the alleged defect "necessarily applies to each and every pair of Exer-Walk shoes Earth sold because, according to the Complaint, Earth knows that none of these shoes can possibly do what Earth warrants they can do."); *see also Zingerman v. Nissan N. Am., Inc.*, 2015 U.S. Dist. LEXIS 51339, at *5 (N.D. Ill. Apr. 20, 2015) (N.D. Ill 2015) (same where plaintiff "attempted to obtain the upgrade that supposedly corrected the InTouch system" and that "other putative class members contacted Infiniti about problems with InTouch"); *Mednick v. Precor, Inc.*, No. 14-cv-03624, 2014 WL 6474915, at *6 (N.D. Ill. Nov. 13, 2014) (same where plaintiff alleged that the defendant was aware that the defective part was "riddled with design flaws").

After all, the pre-suit notice rule "is designed to defeat commercial bad faith, ***not to deprive a good faith consumer of his remedy***." U.C.C. § 2-607(3)(a) cmt. 4 (emphasis added)

(stating further that,"[t]he notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched . . . [and] need only be such as informs the seller that the transaction is claimed to involve a breach.").  The objectives of the U.C.C. are clearly met here with respect to the notice provided.

### 4. Serving the Complaint can constitute notice of breach of warranty.

In the home states of Plaintiffs Riello, Dorgan, Patterson, and Renzi, serving a complaint constitutes sufficient notice to preserve the right to seek damages for a breach of warranty claim. *See Strzakowlski* , 2005 WL 2001912 at *3  (New Jersey – Plaintiffs Riello and Dorgan); *Terrill v. Electrolux Home Products, Inc*., 753 F. Supp. 2d 1272, 1287 (S.D. Ga. 2010) (Georgia – Plaintiff Patterson); *DiPetrillo v. Dow Chem. Co.*, 729 A.2d 677, 683 (R.I. 1999) (Rhode Island – Plaintiff Renzi).  Their warranty claims should be sustained for that reason.

### 5. Defendant's cases on sufficiency of notice are inapposite

The cases Defendant relies on to show notice is insufficient as pleaded are inapposite for several reasons. Def. Brief at 26-28. Most involve motions made after fact discovery has taken place. *See, e.g., Joseph Brazier, Ltd. v. Specialty Bar Prods. Co.*,  No. 06-cv-01416, 2008 WL 791942 (D. Colo. Mar. 21, 2008)  (summary judgment– citing deposition); *Hays v. Gen. Elec.*, 151 F. Supp. 2d 1001, 1004 (N.D. Ill. 2001) (summary judgment); *Truesdale v. Friedman*, 132 N.W.2d 854, 856 (Minn. 1965) (post-trial appeal).   As explained above, dismissal is not appropriate at the pleading stage and these cases do not argue for a different rule.

The other case cited is distinguishable on the facts.  In *Drobnak v. Andersen Corp.,* No. 07-cv-02249, 2008 WL 80632 at *6 (D. Minn. 2008), the plaintiffs attempted "to bootstrap their notice requirements onto notices given by other persons ***not clearly similarly situated***." As pleaded, Plaintiffs and the thousands of people they seek to represent are similarly situated. *See Paulino v. Conopco, Inc.*, No. 14-cv-05145, 2015 WL 4895234, at *2  (E.D.N.Y. Aug. 17, 2015) (sustaining warranty claim of plaintiff who provided no direct notice upon finding notice

provided by another plaintiff on behalf of a proposed class "provided the requisite notice to Conopco that a nationwide class of plaintiffs objected to the Products' labeling).

### C.    Plaintiffs' claims for breach of implied warranty of fitness are well-pleaded.

Rust-Oleum accuses the Plaintiffs of "splitting hairs" in pleading their implied warranty of fitness claims.  Def. Brief at 29-30.  In reality, and when viewing the facts in the light most favorable to the Plaintiffs, Rust-Oleum is really the party "splitting hairs" here, by improperly re-framing the allegations in Plaintiffs' Complaint.  Rust-Oleum manufactures and markets "a variety of deck coatings, including paints, stains, and resurfacers."  CAC ¶ 56.  Plaintiffs allege that they purchased Restore not to just paint or stain their decks or other structures (*i.e.*, the product's ordinary purpose), but to *repair* and protect the structures—repairs that would extend their useful lives for a "lifetime."  *Id.* ¶¶ 3, 61, 67, 116.[18]  Rust-Oleum argues that, somehow, this purpose is being plucked out of Restore's ordinary purpose.  Def. Brief at 31.  It is not.  The complaint clearly differentiates between the ordinary purpose of Rust-Oleum's products and the particular purpose for which Restore is purchased.  Indeed, a seller may know that a specific product was selected to be used for a more particular purpose than its general use.[19]

Even if this Court does not recognize repair and protection as the "particular purpose" for which Restore is used (and for which Rust-Oleum knew plaintiffs would use it), case law has

---

[18] This particular purpose did not need to be communicated to Rust-Oleum: "[a] buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended . . . ."  U.C.C. § 2-315 cmt. 1.

[19] The UCC itself provides an example: "shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains."  U.C.C. § 2-315 cmt. 2; *see also Palmer v. A.H. Robins Co.*, 684 P.2d 187, 219 (Colo. 1984) (finding plausible claims for implied warranties of merchantability and fitness and differentiating between the ordinary purpose of pregnancy prevention and the particular purpose of providing plaintiff with a "safe" contraceptive device that averted hazards ).  Here, although Rust-Oleum's deck coatings are generally used for the purpose of painting or staining decks or other structures, Rust-Oleum had reason to know that Restore was selected by Plaintiffs to be used for the particular purpose of repairing and protecting such structures. CAC ¶¶ 67-(a),-(b),-(h) and (i).  .

recognized that ". . . in some cases a buyer's particular purpose will be the same as the ordinary purpose for which a product is furnished. In that case, both types of implied warranty may arise." *Van Wyk v. Norden Labs., Inc.*, 345 N.W.2d 81, 85 (Iowa 1984). In other words, a consumer may recover for a breach of implied warranty of fitness for a particular purpose even if the particular purpose is the same use as the deemed "ordinary" purpose. *Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 785 S.W.2d 13, 17 (Ark. 1990); *Soaper v. Hope Indus., Inc.*, 424 S.E.2d 493, 495 (S.C. 1992) (applying South Carolina law, concluding that under such circumstances these two implied warranties "merge and are cumulative, such that a plaintiff may proceed upon either theory," and collecting cases holding the same). In this case, a defective product like Restore may result in a breach of both the warranty of ordinary purpose (merchantability) *and* particular purpose. *Regina Grape Products Co. v. Supreme Wine Co.*, 260 N.E.2d 219, 221-22 (Mass. 1970).[20]

Finally, it would be improper to engage in fact-finding at this stage of the litigation in order to resolve whether the implied warranty of fitness arises here. U.C.C. § 2-315 cmt. 1 ("Whether or not this warranty arises in any individual case is basically a question of fact to be determined by the circumstances of the contracting."); *Taylor v. JVC Ams. Corp.*, No. 07-4059 (FSH), 2008 WL 2242451, at *6 (D.N.J. May 30, 2008) (noting issues of fact related to an implied warranty of fitness claim that are "not amenable to resolution on a motion to dismiss."); *Medallion Products, Inc. v. H.C.T.V., Inc.,* No. 06 C 2597, 2007 WL 1022010, at *3 (N.D. Ill. Mar. 29, 2007) ("[that]…would require the resolution of factual issues, something not considered in ruling on a motion to dismiss.").

---

[20] "A contract may of course include both a warranty of merchantability and one of fitness for a particular purpose." U.C.C. § 2-315 cmt. 2.

### D.    Plaintiffs' warranty claims should not be dismissed based on a lack of privity.

Rust-Oleum proclaims that it "has honored [its express written warranty][21] and will continue to do so." Def. Brief at 33. It has therefore conceded that there is sufficient privity between it and its customers as to the express written warranty. Despite this admission, Rust-Oleum argues that the implied warranties it also makes to those very same intended consumer beneficiaries fail for lack of privity because consumers did not (nor could they) purchase Restore directly from Rust-Oleum. As Rust-Oleum concedes, however, Plaintiffs may allege applicable exceptions to any privity requirement, including direct dealings with Rust-Oleum and its agents or representatives and that as the ultimate users they were the intended third-party beneficiaries. CAC ¶¶ 115, 309.[22]

_____

[21] Rust-Oleum also contends that any statements it made that are not listed within the written warranty warrant dismissal. Def. Memo. At 33-34. This limitation is improper, because the UCC provides, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." U.C.C. § 2-313(1)(a). Moreover, "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty." U.C.C. § 2-313(2).

[22] *See, e.g.*, *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1338-39(11th Cir. 2015) (applying Alabama law, complaint adequately stated an express-warranty claim running in favor of a remote purchaser/third-party beneficiary); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983-85 (N.D. Cal. 2014) (third-party beneficiary exception remains viable in California and North Carolina); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1389 (S.D. Fla. 2014) (breach of express warranty claim survives under Florida law despite the absence of privity); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014) (plaintiff alleged sufficient direct dealings to establish privity under third-party beneficiary law for implied warranty claim); *Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, 1326-28 (M.D. Ga. 2011) (express and implied warranty claims viable due to affirmations of fact or promises, despite no privity of contract); *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 143-44 (Cal. Ct. App. 2008) ("[p]rivity is generally not required for liability on an express warranty because it is deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the product, upon which the remote consumer presumably relies"); *Urban Dev. v. Evergreen Bldg. Prods.*, 59 P.3d 112, 118-19 (Wash. Ct. App. 2002) (noting privity requirements are relaxed when a manufacturer makes express representations in advertising and the defendant could expect to act and rely upon the representations) *Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill. App. 2d 362, 373, 219 N.E.2d 726 (Ill. App. Ct. 1966) (the implied warranty of fitness imposed may be enforced directly against manufacturer by a third-party user, where the manufacturer (1) was aware of the purpose for which the product was to be put, and (2) knew of the third-party user's reliance that the product would be fit for the purpose intended.); *Cline v. Prowler Industries of Maryland, Inc.*, 418 A.2d 968, 976 (Del. 1980) ("In Delaware, privity has largely been abolished."); *Sherwood Brands, Inc. v. Levie*, 2006 U.S. Dist. LEXIS 13099 at * 48 (D. Md. 2006) (third party beneficiary theory is an exception

These privity exceptions are adequately alleged here, including that Rust-Oleum had direct dealings with Plaintiffs and putative class members through agents, dealers and/or representatives. CAC ¶¶ 115, 309. The Complaint further details Rust-Oleum's direct marketing to consumers, including Plaintiffs and the Class, including the exact statements made by Rust-Oleum to consumers on its labels and online advertising. *Id. ¶¶* 59-72. Rust-Oleum distributes and sells Restore products directly "through" retail stores, indicating agency status. CAC ¶ 59. Plaintiffs also clearly allege that they are the known end users of the Restore products and therefore are the intended third-party beneficiaries of the warranties—just as the express warranty was unquestionably given to the end users, not the retail stores. CAC ¶¶ 115, 309. Furthermore, Rust-Oleum directly marketed to the end users such as Plaintiffs and the Class. *Id.* ¶¶ 59-72. Rust-Oleum also did not remove its name or its information from the product labels before selling to consumers. *Id.* Rust-Oleum's public statements were directed at the end users— homeowners and consumers—and specified how its product would provide protection to their investment. *Id.* ¶ 70.

Rust-Oleum's cited authority does not support dismissing any claims based on lack of privity given Plaintiffs' allegations of exceptions to the requirement. For example, the Court of Appeals for the Ninth Circuit in *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008), acknowledged certain exceptions to privity, including "when the plaintiff relies on written labels or advertisements of a manufacturer." Plaintiffs specifically alleged that here. CAC ¶¶ 59-72. These exceptions are also specifically recognized in *In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1106 (N.D. Cal. 2015).

*Savett v. Whirlpool Corp.,* No. 12 CV 310, 2012 WL 3780451, at *10 (N.D. Ohio Aug. 31, 2012) cited by Rust-Oleum, is likewise distinguishable as the court determined the plaintiff there fell "far short of alleging such a [third-party beneficiary] relationship," with the only

---

to the privity rule of contracts); *Weisblum v. Prophase Labs, Inc.,* 88 F. Supp. 3d 283, 295-296 (S.D.N.Y. 2015) (plaintiff need not be in privity to bring express warranty claims under New York law); *Owner-Operator Indep. Drivers Ass'n v. Concord Efs*, 59 S.W.3d 63, 68 (Tenn. 2001) (holding by the Tennessee Supreme Court that third parties may enforce a contract if they are intended beneficiaries).

allegation the plaintiff pointing to being a legal conclusion.[23]   By contrast, the Plaintiffs here alleged numerous details supporting their status as known and intended end users of the Restore products.[24]   Defendant's arguments are unsupported, and this Court should reject all arguments seeking dismissal in light of the applicable exceptions to privity which Plaintiffs have alleged..

Plaintiffs should be allowed to prove—through discovery—that they were in privity with Rust-Oleum based upon its dealings with its agents and representatives or that they are third-party beneficiaries.  A summary dismissal of Plaintiffs' claims at the motion to dismiss stage when they have adequately alleged these relationships would be improper.  *See e.g.*, *Kaplan v. Shure Bros.*, 153 F.3d 413, 419 (7th Cir. 1998) (breach of contract claim sufficient where allegations put defendant on notice of claim of privity); *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1024-25 (N.D. Ill. 2008) ("whether an agency relationship has been established between the parties is one of fact which is not properly resolved on a motion to dismiss"); accord, *Lady Di Fishing Team, LLC v. Brunswick Corp.*, No. 3:07-cv-402-J-33TEM, 2007 WL 3202715, at *6 (M.D. Fla. Oct. 29, 2007).[25]

---

[23] The plaintiff in *Savett* also failed to allege anything beyond an express warranty, so the court held the direct dealings exception inapplicable.  *Id.* Similarly, in *In re Sony PS3 Other OS Litig.*, No. C-10-1811-RS, 2011 WL 672637, at *4 (N.D. Cal. Feb. 17, 2011) the court held that it was a lack of factual support that thwarted the plaintiffs' attempt to establish that an exception to the privity rule, not that the exception did not exist.

[24] All of Rust-Oleum's other cases are factually distinguishable. *See  Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1083 (N.D. Cal. 2011) (plaintiff did not plead any of the recognized exceptions to privity under California law); *In re Masonite Corp. Hardboard Siding Products Liab. Litig.*, 21 F. Supp. 2d 593, 600 (E.D. La. 1998) ("It is undisputed that the homeowners did not receive any of this advertising; thus there is no basis for finding a contractual relationship with them."); *Babb v. Regal Marine Indus., Inc.,* 186 Wash. App. 1003 (2015) (no privity alleged as there were no allegations that the defendant boat manufacturer made any statements to consumers, and the relevant engine warranty came from engine manufacturer not defendant).

[25] *See also Sec'y of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 709 (4th Cir. 2007) ("We recognize that, as we have stated, the inquiry into third-party beneficiary status is fact sensitive and not ordinarily ripe for resolution at the motion-to-dismiss stage." (citations omitted)); *Dunkin' Donuts Franchised Restaurants, LLC v. Claudia I, LLC*, No. CIV.A. 12-2010, 2013 WL 3716525, at *5 (E.D. Pa. July 15, 2013) ("Therefore, dismissing Claudia's third-party beneficiary claim at this stage in the proceedings is premature because the inquiry involves factual questions of intent."); *Kaufman v. Am. Family Mut. Ins. Co.*, No. CIV-A05CV02311, 2007 WL 437641, at *2 (D. Colo. Feb. 5, 2007); *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1183 (N.D. Fla. 2007) (finding issue of whether privity of

**E.**     **Plaintiffs' breach of express warranty claims are properly pled.**

**1.**     **Plaintiffs need not plead reliance as to Rust-Oleum's Limited Lifetime Warranty.**

Rust-Oleum's "Lifetime Limited Warranty," is included on every single can of Restore whereby Rust-Oleum "guarantees product performance . . . as long as you own or reside in your home . . . ." *Id.* at ¶¶ 63, 280 Exs. A & B.  Because this warranty is made part of every purchase, Plaintiffs' claims "do[ ] not require a showing of reliance because it is *presumed* that such a warranty is a basis of the bargain."  *In re Caterpillar Inc.,* 2015 WL 4591236, at *25-26 ("Plaintiffs' pleading is thus consistent with cases where courts have found the basis of the bargain or reliance requirement satisfied because the express warranties at issue were part of the purchase agreement") (emphasis added); *see also, e.g., In re MyFord Touch Consumer Litig.*, 46 F. Supp. at 972-73; *Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 623-24 (Ohio Ct. App. 2003).

Nor are Plaintiffs required to allege that they relied on each misleading (if not outright false) claim included on the product labeling for Restore. CAC ¶¶ 60-61, 280, 286. Per Comment 3 to the Uniform Commercial Code section 2-313—adopted by each state in which Plaintiffs reside [26] —"affirmations of fact made by the seller about the goods during a bargain are regarded

---

contract existed between consumers and manufacturers raised a factual question that could not be resolved on a motion to dismiss); *Kofa Int'l Ltd. v. JC Horizon Ltd.*, No. 98 CV 1324 JBW, 1999 WL 438474, at *2 (E.D.N.Y. May 20, 1999) ("The question of whether an individual is the intended beneficiary of a contract requires a factual inquiry." (citations omitted)); *Virginia Energy Co. v. Phibro Energy, Inc*., 711 F. Supp. 870, 873 (W.D. Va. 1989) ("Moreover, as to whether IM acted as an agent, the court determines that this is an issue of fact and summary judgment is therefore inappropriate."); *Advanced Concepts Chicago, Inc. v. CDW Corp.*, 938 N.E.2d 577, 581 (Ill. App. Ct. 2010) ("In order to determine whether the contracting parties intended to benefit a nonparty to the agreement, courts must look at the terms of the contract and the circumstances surrounding the parties at the time of its execution.").

[26] Ala. Code § 7-2-313 cmt. 3; Cal. Comm. Code § 2313 cmt. 3; Colo. Rev. Stat. § 4-2-313 cmt. 3; 6 Del. Code § 2-313 cmt. 3; Ga. Code  § 11-2-313 cmt. 3; Idaho Code § 28-2-313 cmt. 3; 28 Ill. Cons. Stat.  § 5/2-313 cmt. 3; Ind. Code § 26-1-2-313 cmt. 3; Mass. Gen. L. 106 § 2-313 cmt. 3; Md. Code § 2-313 cmt. 3; Mich. Comp. L.  § 440.2313 cmt. 3; Minn. Stat.  § 336.2-313 cmt. 3; Vernon's  Mo. Stat. § 400.2-313 cmt. 3; N.H. Rev. Stat. § 382-A:2-313 cmt. 3; N.C. Gen. Stat.  § 25-2-313 cmt. 3; Neb. Rev. Stat. U.C.C. § 2-313 cmt. 3; N.J.S.A.  § 12A:2-313 cmt. 3; N.Y. U.C.C. § 2-313 cmt. 3; Ohio Rev. Code  § 1302.26 cmt. 3; 313 Pa. Cons. Stat.  § 2313 cmt. 3; R.I. Gen. L.  § 6A-2-313 cmt. 3; Tenn. Stat.  § 47-2-313 cmt.

as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." [27]   It is unsurprising, therefore, that reliance is not even essential element of an express warranty claim under California, Delaware, Maryland, Minnesota, New York, Pennsylvania, or Washington law.[28]

### 2.     Insofar as it is required, plaintiffs sufficiently allege reliance.

Regardless, even if it were required, Plaintiffs have sufficiently pleaded reliance. Plaintiffs allege that the labels on each every can of Restore were substantially similar and contained the same affirmations of fact regarding Restore's intended use, superiority, and durability. CAC at ¶¶ 60, 286.   These affirmations were consistent with Rust-Oleum's advertising campaign.  *See, e.g.,* CAC at ¶¶ 65-67, 286 (identifying Rust-Oleum's affirmations regarding Restore).  Each Plaintiff alleges that he or she viewed Rust-Oleum's advertisements and purchased the product in reliance on Defendant's representations therein. *See, e.g.,* CAC at ¶ 266 ("Prior to purchasing Restore, Plaintiff Mueller recalls...relying on advertisements regarding Restore's durability and long-lasting protection.").   Each Plaintiff

---

3; Tex. Bus. & Com. Code § 2.313 cmt. 3; Va. Code  § 9.2-313 cmt. 3; Wash. Rev. Code § 62A.2-313 cmt. 3.

[27] *See also, e.g., Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 WL 5513202, at *5 (N.D. Ohio Nov. 11, 2011) (holding that plaintiffs need not plead reliance on assertions included with product at time of sale in order to state express warranty claim); *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 628-29 (Cal. App. 2010); *Koch v. Kaz USA, Inc.*, No. 09-CV-02976-LTB-BNB, 2011 WL 2607112, at *3 (D. Colo. July 1, 2011); *Jensen v. Seigel Mobile Homes Group*, 668 P.2d 65, 71 (Idaho 1983); *Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 570 (E.D. Va. 2006).

[28] *Weinstat* , 103 Cal. Rptr. 3d at 626-27, 629 (holding that "[a]ny affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement"); *Bell Sports, Inc. v. Yarusso*, 759 A.2d 582, 592 (Del. 2000); *CC-Aventura, Inc. v. Weitz Co., LLC*, No. 06-21598-CIV, 2009 WL 2136527, at *4 (S.D. Fla. July 13, 2009); *Rite Aid Corp. v. Levy-Gray*, 894 A.2d 563, 573 (Md. 2006); *Krause v. City of Elk River*, No. A14-1575, 2015 WL 3823093, at *3 (Minn. Ct. App. June 22, 2015) (citing *Peterson v. Bendix Home Sys. Inc.*, 318 N.W.2d 50, 52-53 (Minn.1982)); *CBS Inc. v. Ziff-Davis Publ'g*, 553 N.E.2d 997, 1001 (N.Y. 1992); *Samuel-Bassett v. Kia Motors Am.*, Inc., 34 A.3d 1, 25 (Pa. 2011); *Baughn v. Honda Motor Co.*, 107 Wash. 2d 127, 152, 727 P.2d 655, 669 (1986).

further alleged that but-for Rust-Oleum's affirmations, he or she would not have purchased the product. *See, e.g., id.* at ¶ 265.

Plaintiffs' allegations that they "and the consumers in the Class relied on [the] . . . representation[s] in purchasing the products" are sufficient to withstand dismissal at the pleading stage. *In re Horizon Organic Milk Plus DHA Omega-3 Marketing & Sales Practices Litig.*, 955 F. Supp. 2d 1311 (S.D. Fla. 2013) (general allegation of reliance on advertisements and product labels plausibly alleged reliance for purposes of the laws of states in which "reliance is an essential element of a breach of warranty claim.").[29][30] This is particularly true given that even for claims subject to the heightened standard of Rule 9(b), states of mind may be averred "generally." Plaintiffs' warranty claims are not subject to Rule 9(b)'s particularity requirements and the reliance allegations are plainly sufficient to state claims in accordance with Rule 8. *Stavropoulos v. Hewlett-Packard Co.*, No. 13 C 5084, 2014 U.S. Dist. LEXIS 78423, at *7 (N.D. Ill. June 9, 2014) (breach of warranty claim subject to Rule 8).

---

[29] *Accord, In re Caterpillar, Inc.*, 2015 WL 4591236, at *25-26 & fn. 1 (denying motion to dismiss warranty claims in multistate class action where complaint permitted an inference that "Plaintiffs relied on the express warranties"); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 621 (M.D.N.C. 2006)(allegations that plaintiff "reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of [the product], and that those representations became a basis of the bargain between Defendants and Plaintiff" adequately pled reliance sufficient to withstand a motion to dismiss (internal quotations omitted)); *Fahey v. R.J. Reynolds Tobacco Co.*, No. CA 927221, 1995 WL 809837 (Mass. June 12, 1995) (summary judgement denied as to breach of express warranty claims where plaintiffs submitted evidence that they looked at advertisements which set forth affirmations of fact and relied on those representations); *Bernick v. Jurden*, 293 S.E.2d 405, 413-14 (N.C. 1982) ( "the element of reliance can often be inferred from allegations of mere purchase or use if the natural tendency of the representations made is such as to induce such purchase or use").

[30] While Plaintiffs have sufficiently alleged that they relied on Defendant's affirmations of fact regarding Restore, if the Court were to grant Defendant's motion to dismiss, Plaintiffs respectfully request that the Court grant leave to amend the complaint to further detail their reliance allegations.

### F.     Plaintiffs' claims under the MMWA are well pleaded

Contrary to Rust-Oleum's assertions, it is well-established that the MMWA "provides a statutory private right of action to consumers who are 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract.'" *Borowiec v. Gateway 2000. Inc.*, 808 N.E.2d 957, 964 (Ill. 2004)(quoting 15 U.S.C. § 2310(d)(1)). In fact, "[t]he private enforcement rights conferred by the MMWA are perhaps the most far-reaching aspects of the [MMWA] statute." *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1062 (5th Cir. 1984); *see also* Schroeder Private Actions under the Magnuson-Moss Warranty Act, 66 Cal. L. Rev. 1, 3 (1978).

The MMWA (codified at 15 U.S.C. §§ 2301-2312 (1982)) was Congress's attempt to address pervasive concerns regarding consumer warranties. *See* Denicola, The Magnuson-Moss Warranty Act: Making Consumer Product Warranty a Federal Case, 44 Fordham L.Rev. 273, 273 (1975). "The draftsmen believed that warranties on consumer products often were too complex to be understood, too varied for consumers to make intelligent market comparisons, and too restrictive for meaningful warranty protection." Schroeder, 66 Cal. L. Rev. 1, 2 (1978). "One of the prime concerns addressed in the Act was the warranty wherein the large print giveth but the small print taketh away." *Gorman v. Saf-T-Mate, Inc.,* 513 F. Supp. 1028, 1035 (N.D. Ind. 1981) . The MMWA creates minimum disclosure standards for written consumer product warranties and defines minimum content standards for such warranties. *Id*. The MMWA does not require that a seller give a warranty on a consumer product, but if a warranty is given, it must comply with the terms of the Act. *Id*. Section 2310(d)(1)  states in relevant part:

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief- (1) in any court of competent jurisdiction in any State or the District of Columbia; or (2) in an appropriate district court of the United States.

15 U.S.C. § 2310(d)(1)

In other words, the Act provides a private right of action, including recovery of costs and expenses. *Davis v. Southern Energy Homes, Inc*., 305 F.3d 1268, 1272 (11th Cir. 2002); *Mydlach v. DaimlerChrysler Corp*., 875 N.E.2d 1047, 1054 (Ill. 2007); *Borowiec v. Gateway 2000, Inc.*, 808 N.E.2d at 964 . Rust-Oleum is therefore flat wrong that § 2310(b) of the MMWA precludes Plaintiffs from asserting their statutory private right of action. The specific language of § 2310(b) provides that it shall be a violation of section "of the Federal Trade Commission Act 15 U.S.C. § 45(a)(1) for any person to fail to comply with any requirement imposed on such person by this title [] (or a rule thereunder) or to violate any prohibition contained in this title [] (or a rule thereunder)." 15 U.S.C.§ 2310(b). While it is true that the Federal Trade Commission or the Attorney General may sue to restrain a warrantor from making a deceptive warranty or from violating the Act (*see* § 2310(c)), and the FTC may also treat a violation of the Act as an unfair or deceptive trade practice under the Federal Trade Commission Act (*see* 15 U.S.C. § 45(a)(1)), nothing in § 2310(b) nor any of the statutes or the cases cited by Rust-Oleum precludes Plaintiffs from asserting claims under the MMWA.

Rust-Oleum cites to *Boelens* v. *Redman Homes, Inc*., 748 F.2d at 1058 (5th Cir. 1984),, for the proposition that 15 U.S.C. § 2310(b) confers only public enforcement powers. However, it fails to note that *Boelens* explicitly found a private right of action under § 2310(b) of the MMWA. In fact, the *Boelens* court engaged in an exhaustive examination of the scope of the private enforcement rights under the MMWA and found "[t]he provisions of the MMWA that create a private cause of action permit a consumer to sue a warrantor for (1) a violation of the substantive provisions of the Act, or (2) breach of a written or implied warranty." *Boelens*, 748 F.2d at 1062-63. *Boelens* did find that plaintiffs cannot assert a private action for personal injury under the MMWA. *Id*. at 1068. That limitation is patently inapplicable to the case at bar.

Rust-Oleum's reliance on *McGarvey v. Penske Auto. Group, Inc.*, No. 08-5610, 2011 WL 1325210 (D.N.J. March 30, 2011) (*McGarvey II*) is also misplaced. Rust-Oleum erects a strawman by pointing out that a violation of the MMWA is also a violation of Federal Trade Commission Act §5(a), (15 U.S.C. §45(a)(1)], which is enforceable by the FTC itself. This argument is based on a logical fallacy, as the fact that the violation of the MMWA is a violation

of FTCA §5 does not in turn compel the conclusion that there is no private right of action under the MMWA itself, and none of Rust-Oleum's cases so state. In *McGarvey I* , the court simply "determined that Plaintiffs could not state an independent claim under the MMWA, because they did not meet the requirements for that statute's private right of action." 2011 WL 13210 at \*2 (citing *McGarvey v. Penske Auto Group*, 639 F.Supp.2d 450, 456-457 (D.N.J. 2009)("*McGarvey I*").

In fact, the court in *McGarvey I* court had thrown out the MMWA claim for lack of an allegation of any damage in a previous opinion, and that is all that was being referred to in *McGarvey II*; all the plaintiff had alleged was that he had been given a contract that by its terms otherwise violated the MMWA. *McGarvey v. Penske Auto Group*, 639 F.Supp.2d 450, 456-457. Neither *McGarvey II* nor *McGarvey I* stand for the proposition that plaintiffs never have a private right of action under the MMWA, as Rust-Oleum mistakenly suggests.

Rust-Oleum also cites *Int'l Tax Advisors, Inc. v. Tax Law Assocs., LLC*, No. 08 C 2222, 2011 WL 612093 (N.D. Ill. Feb. 15, 2011); the court there merely found "there is no private right of action under the Federal Trade Commission Act." *Id.* at \*15. The MMWA was not even mentioned. Lastly, Rust-Oleum relies on S*tanley v. Select Portfolio*, No. 07-cv-775, 2008, WL 2020509 (S.D. Ill. May 9, 2008) *modified*, 307 Fed. Appx. 6 (7th Cir. 2009), which similarly, and equally irrelevantly, states that "no private right of action exists under the FTCA." *Id.* at \*3. Neither the *Int'l Tax Advisors* nor the *Stanley* cases address let alone mention the private right of action under the MMWA. Rust-Oleum's attempt to extrapolate from these cases is without any legal or logical foundation and should be rejected.

Rust-Oleum mistakenly claims that Plaintiffs' MMWA claims are all derivative of their state law warranty claims. *See* Def. Brief at 4. While it is true the MMWA *may* borrow state law causes of actions, Plaintiffs' claims under the MMWA are explicitly predicated upon the Act itself. The *Schimmer* case - relied upon exclusively by Rust-Oleum in support of this argument - specifically says "[t]he Magnuson-Moss Act allows a consumer to bring a suit where he claims to be damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this Act or under a written warranty, implied warranty, or service contract."

*Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. Ill. 2004)(*quoting Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (internal quotations omitted)). Plaintiffs have specifically alleged that Rust-Oleum failed to comply with §§ 2302(a), § 2304(a)(3), § 2308(a), and § 2308(c), 2310(b), and 2310(d)(1) of the MMWA. *See* CAC at ¶ 275-280. Moreover, Plaintiffs seek equitable relief and attorneys' fees and costs under the MMWA. *See id.* at ¶ 283-84. Rust-Oleum is wrong that Plaintiffs' claims under the MMWA are all governed by state law.

Rust-Oleum also incorrectly argues that Plaintiffs' breach of warranty claims under the MMWA should be rejected because Plaintiffs seek relief beyond the exclusive remedy offered under the limited Restore warranty. *See* Def. Brief at 6. Rust-Oleum cites to *Solomon v. Canon USA, Inc.*, 31 Misc. 3d 30 (N.Y. App. Term 2010). However, the *Solomon* court did not suggest that the exclusive remedy provision invariably precludes relief beyond that which is offered, as Rust-Oleum mistakenly suggests. Rather, *Solomon* simply found the exclusive remedy was sufficient under the particular facts of that case because the plaintiff was offered a full repair of the damaged good at issue. *Id*. at 32. Here, the Complaint explicitly alleges that the warranty offered by Rust-Oleum "fail[s] its essential purpose." CAC ¶ 297. It is well established that where a "limited warranty fails of its essential purpose, the exclusion of consequential damages is, perforce, unconscionable, has been foreclosed by *Smith v. Navistar Int'l Transp. Corp.*, 957 F.2d 1439 (7th Cir. 1992)." *Midwest Builder Distrib. v. Triangle Pac. Corp.,* 1 No. 97 C 326, 1998 WL 325260, at *1 (N.D. Ill. June 10, 1998).

The MMWA exists precisely so that individuals such as Plaintiffs can seek relief for the conduct asserted in the Complaint. Rust-Oleum is wrong that 15 U.S.C. § 2310(b) and 45(a) precludes Plaintiffs' private enforcement rights under the MMWA.

## II.    PLAINTIFFS' "FRAUD-BASED" CLAIMS SHOULD BE SUSTAINED

### A.    Plaintiffs' Consumer Fraud Claims (Counts VI-X) Satisfy the Pleading Standard of Fed. R. Civ. P. Rule 9(b.

Under Rule 9(b) of the Federal Rules of Civil Procedure, applicable to their consumer fraud claims, Plaintiffs are required to "plead the 'who, what, when, where, and how: the first

paragraph of any newspaper story,' of the 'circumstances constituting fraud.'" *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). The Seventh Circuit permits plaintiffs to simply provide a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role in the fraud" to satisfy Rule 9(b). *Id.* (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)). The CAC more than satisfies these requirements.

The CAC provides the Court the "who, what, when, where, and how" of Rust-Oleum's misconduct. The "who" is Rust-Oleum. The "what" are Rust-Oleum's unlawful and deceptive advertising and labeling claims concerning Restore, as well as Rust-Oleum's refusal to disclose to Class members the pervasive defects plaguing Restore despite its exclusive knowledge of the same. The "when" is during the Class Period. CAC ¶¶101-102. The "where" are Rust-Oleum's packaging and advertising. CAC ¶¶60-68 With respect to "how" Rust-Oleum's statements were misleading, each of the named Plaintiffs allege that: (1) they were deceived by Rust-Oleum's labeling and advertising; (2) they purchased Restore while reasonably relying on Rust-Oleum's misrepresentations; (3) they were injured because they would not have purchased these products had they known Restore does not possess the qualities and attributes Rust-Oleum touted in its false advertising and deceptive labeling, and; (4) Plaintiffs paid money for Restore products that were worthless and they would not have purchased Restore but for Rust-Oleum's dubious claims, and suffered out of pocket loss as a result. CAC ¶¶ 117-222.

Rust-Oleum, ignoring Rule 9(b)'s requirements as interpreted in this Circuit, demands that Plaintiffs plead evidence of exactly what Rust-Oleum knew *internally* about its defective products, including, among other things, that Plaintiffs come forward (without the benefit of discovery) with *Rust-Oleum's* own internal warranty, complaint and testing files. While Rule 9(b) does require that fraud claims be alleged "with particularity," the Rule also specifies that "knowledge, and other conditions of a person's mind may be alleged generally." Plaintiffs here have done more than they are required to do to comply with Rule 9(b), particularly because this case is in its infancy and discovery is just beginning. *See, e.g.*, *In re First Merchants Acceptance Corp. Secs. Litig.*, No. 97-2715, 1998 WL 781118, at *8 (N.D. Ill. Nov. 2, 1998) (stating that the

requirements of Rule 9(b) are relaxed where facts are in the hands of defendants and only obtainable through discovery).

    **1.**    **The Complaint Pleads Actionable Affirmative Misstatements and Omissions, Not Puffery.**

To state a claim under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et seq., Plaintiffs must show (1) a deceptive act or practice; (2) the defendant's intent that the consumer plaintiff rely upon the deception; and (3) that the deception occurred in the course of conduct involving trade of commerce. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). To satisfy the first element—a deceptive act or practice—the CAC identifies and specifically quotes the written fraudulent statements and provides a timeframe— by month and year or by season and year—in which those statements were read and relied on by each Plaintiff before they purchased Restore.

Specifically, each Plaintiff saw representations on the Restore product label that touted the following qualities: "repairs decking;" "the smart alternative to deck & concrete replacement;" "10x thicker than ordinary paint;" "fills up to 1/4″ cracks;" "repairs concrete;" "locks down wood splinters;" "revives wood & broom swept concrete;" "lasting moisture protection;" and "liquid armor resurfacer." CAC ¶¶60, 286. Additionally, Rust-Oleum engaged in a nationwide advertising campaign that represented that Restore was long-lasting, durable, and superior to other similar products. *See, e.g.*, CAC at ¶¶ 65-67, 286 (identifying Rust-Oleum's affirmations regarding Restore).

Rust-Oleum's statements are "specific representations of fact;" they are not puffery and they "can form the basis of a deceptive trade practice claim." *Giles v. Inflatable Store, Inc.*, No. 07-cv-00401, 2009 WL 961469 at *3 (D. Colo. Apr. 6, 2009). That is because the experiences of Plaintiffs demonstrate that Rust-Oleum's statements are objectively false: Restore does not repair decking and concrete, it fails to provide moisture protection, is not long lasting, and in fact, causes extensive damage to the property on which Restore is applied. *See, e.g.*, *In re Scotts EZ Seed Litig.*, No. 12-cv-4727, 2013 WL 2303727 at *9 (S.D.N.Y. May 22, 2013) (finding representations regarding product performance compared to other products and product

durability in harsh weather conditions to constitute actionable misstatements). If there is any doubt as to whether or not these statements are "puffery," such issues should not be resolved on a motion to dismiss, but rather should be presented to the finder-of-fact for a determination of whether the "ads would be likely to mislead reasonable consumers." *Federal Trade Comm'n v. U.S. Sales Corp.*, 785 F.Supp. 737, 745 (N.D. Ill. 1992) *modified on other grounds*, No. 91 C 3893, 1992 WL 104819 (7th Cir. 1992).

Rust-Oleum complains that Plaintiffs cannot rely on misrepresentations made after they purchased their products. Def. Brief at 46. But Plaintiffs' claims are not based on future statements. Rather, each Plaintiff alleges that they purchased in reliance on Rust-Oleum's advertising and the claims made on the products themselves. These statements were obviously made prior to each Plaintiff's purchase. In any event, post-purchase statements made to Plaintiffs are relevant because they are consistent with the statements made to each Plaintiff on the product packaging and confirm that Rust-Oleum *continues to deceive consumers into purchasing it to this day*. Class members' continued reliance on Rust-Oleum's false statements renders those statements relevant to the ongoing harm to the putative classes. *Zapka v. Coca-Cola Co.*, No. 99-8238, 2000 WL 804688, at *2 (N.D. Ill. June 20, 2000) (declining to dismiss consumer fraud claim based on likelihood of future injury due to potential future reoccurrence based in part on defendant's omissions).

Rust-Oleum's myriad omissions are similarly actionable. As discussed at Section II (E) at 58-60, *infra*, Rust-Oleum was duty-bound to disclose the inherent defects plaguing Restore to Plaintiffs and Class members. Rust-Oleum possessed exclusive knowledge of Restore's true capabilities (or lack thereof), yet failed to disclose the same to Class members in order to correct its misrepresentations of fact. *See, e.g., Lilly v. Ford Motor Co.,* No. 00-C-7372, 2002 WL 84603, at *8-9 (N.D. Ill. Jan. 22, 2002) (sustaining fraudulent concealment claims against vehicle manufacturer that had exclusive knowledge of defective part but nevertheless engaged in a widespread advertising campaign about car's safety, which supported inference that that manufacturer was aware of the plaintiffs' reliance on that campaign in making purchase); *see also Henderson v. Volvo Cars of N. Am., LLC*, No. CIV. 09-4146 (DMC), 2010 WL 2925913, at

*1, *4-7 (D.N.J. July 21, 2010); *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 384 (Tex. App. 2010).

### 2.  The Complaint Pleads Reliance and Causation

Though Illinois law does not require Plaintiffs to plead reliance, a "valid claim must show that the consumer fraud proximately caused plaintiff's injury." *Connick*, 675 N.E.2d at 593. Rust-Oleum complains that, under state laws which do require reliance, Plaintiffs have not adequately pled reliance on any particular misrepresentations. Def. Brief at 48.  Plaintiffs need not engage in a state by state analysis of reliance requirements here, because, to the extent that both proximate cause and reliance are required under any other state's law, Plaintiffs have carried their burden.

Plaintiffs plead in the CAC that they sought to buy Rust-Oleum's Restore to "restore" their decks. CAC ¶¶59, 60. Plaintiffs reasonably relied on Rust-Oleum's affirmative representations (that, among other things, Restore would perform as a "liquid armor resurfacer," and was durable and long-lasting) in deciding to purchase Restore.  CAC ¶¶61, 62.  But Plaintiffs bought Restore not knowing that Rust-Oleum concealed important and material information concerning the product's defective nature, and which directly contradicts representations Rust-Oleum made.  ¶¶73.  Thus, the "cause and effect relationship between defendant's acts and the plaintiff's injuries" required for proximate causation exists here, as any individual's motivation for purchasing a resurfacing product—to effectively resurface their decking and provide durable and long-lasting protection—would have been negated had Rust-Oleum been forthcoming about Restore's propensity to fail.  *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 (N.D. Ohio 2012).

Most courts reject similar 9(b) challenges and allow claims for consumer fraud to proceed where misrepresentations are contained on product labeling, as they are here.  *See, e.g., Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 576  (N.D. Cal. 2013) (Rule 9(b) satisfied in labeling case); *Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 WL 2147413, at *15 (N.D. Cal. May 15, 2013) (same); *In re ConAgra Foods, Inc.*, 908 F Supp 2d 1090, 1100 (C.D. Cal. 2012) (plaintiffs' complaint satisfied Rule 9(b) where the representation at issue "appeared

on product labels throughout the class period"); *Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (Rule 9 (b) was satisfied where plaintiff alleged that "between March 4, 2005 and March 4, 2009," defendant's product label contained alleged misrepresentations). Again, Plaintiffs need not allege any more to establish reliance because "states of mind may be pleaded generally[,]"*DiLeo* 901 F.2d at 627. Plaintiffs allege that they purchased Restore in reliance on Rust-Oleum's direct representations and without knowledge of the material facts concealed by Rust-Oleum's. This is all that is necessary.

Rust-Oleum's assertion that Plaintiffs are somehow required to but have not "tied their purchasing decision to any particular representation," Def. Brief at 46, is similarly unavailing. "[A] finding of proximate cause will turn upon whether it can be said that, but for the concealment" of material facts, the plaintiffs would not have gone through with the transaction. *Waterford Prods. Co. v. Victor*, No. 98-L-029, 1999 WL 1313664, at *6 (Ohio Ct. App., Dec. 17, 1999); *see also Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 96 (Cal. App. Ct. 2001). Because of this, "proximate cause is generally a fact question for the jury." *Abbotts v. Campbell*, 551 F.3d 802, 806 (8th Cir. 2008).

### 3. The Complaint Adequately Pleads Rust-Oleum's Knowledge of the Defect at the Time of Sale

#### a. *Defendants' Knowledge May be Pled Generally in this Jurisdiction.*

Rust-Oleum argues that Plaintiffs inadequately plead Rust-Oleum's knowledge of the defective nature of its Restore. Def. Brief at 49. "While the circumstances constituting fraud must be pleaded with particularity, a defendant's '[m]alice, intent, knowledge [or] other condition of mind . . . may be averred generally.'" *Goldberg*, 929 F. Supp. 2d at 815 (citing *DiLeo*, 901 F.2d at 627); *see also*, *Almaraz v. Haleas*, No. 07-6134, 2009 U.S. Dist. LEXIS 131290, at *20 (N.D. Ill. Sept. 1, 2009) ("Knowledge and intent, in particular, need not be covered in detail . . . .") (citing *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)).

The CAC contains numerous facts that support Plaintiffs' allegations that Rust-Oleum designed, marketed, and sold the Products with knowledge of their defects. Plaintiffs pled that

Rust-Oleum acquired knowledge of the defects afflicting Restore Products through: (1) pre- and post-sale audits routinely performed by its quality improvement teams (CAC ¶82); field testing performed *before* Rust-Oleum began selling Restore (CAC ¶83); online complaints made in various internet forums, including Rust-Oleum's own Facebook page (CAC ¶84); direct complaints to Rust-Oleum (CAC ¶85); and complaints to Synta, Inc., the predecessor manufacturer of Restore, which Rust-Oleum acquired in 2012 (CAC ¶86). Indeed, customer complaints are numerous and the earliest date to 2011 (CAC ¶87), years before any Plaintiff in this case purchased the product. Taking all of these allegations together and viewing them in the light most favorable to Plaintiffs, it is clear that Plaintiffs adequately allege that Rust-Oleum knew of the defects plaguing Restore but continued to sell the product unabated.

An example of the proper approach to viewing facts as a whole in the light most favorable to plaintiffs, was this Court's analysis in *Wafra Leasing Corp. v. Prime Capital Corp.*, 247 F. Supp. 2d 987 (N.D. Ill. 2002) (St. Eve, J.), a decision on which Rust-Oleum relies. Def Brief at 39-40, 42. This Court held that allegations the individual defendants "knew or, in the alternative, should have known" about the fraudulent scheme, taken together with the other allegations of the complaint and relevant exhibits, plausibly alleged an ICFA fraud claim. *Wafra Leasing* , 247 F. Supp. 2d at 1001. The Court further deemed plaintiffs' general allegation that both of the individual defendants served on committees which "had critical roles in overseeing Prime Capital's business and accounting practices" sufficient, and concluded they supported the claim that they "knew or should have known about the kiting scheme that the 10-K reports failed to disclose." *Id*. Significantly, the Court did not require the degree of specificity that Rust-Oleum suggests as to Plaintiffs' knowledge allegations.[31]

_____

[31] *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 655-656 (S.D. Cal. 2014) also relied on by Rust-Oleum at Def. Brief at 40, is not remotely applicable either. In that matter, the court ordered plaintiffs to file a more definite statement concerning allegations against retailer defendants, finding that plaintiffs impermissibly "lump[ed]" the retailers with the manufacturer defendants and the retailers' role in the fraud was not particularized. *Id*. at 656. Significantly, the *Hydroxycut* court denied the manufacturer defendants' motion to dismiss, and this Court should do the same as to Rust-Oleum.

Rust-Oleum's attacks upon Plaintiffs' consumer protection claims rely primarily from the decisions of two jurisdictions—California and New Jersey—that have sometimes required far more detailed allegations of knowledge than required by other states. The inapposite California precedent on which Rust-Oleum relies is premised, at least in part, on an element unique to California consumer protection law—namely, the requirement that a defendant manufacturer have "exclusive knowledge" of the undisclosed facts at issue. *See Burdt v. Whirlpool Corp.*, No. C 15-01563, 2015 WL 4647929, at *3 (N.D. Cal. Aug. 5, 2015); *Williams v. Yamaha Motor Corp., U.S.A.*, No. CV 13-05066, 2015 WL 2375906, at *4, n.9 (C.D. Cal. Apr. 29, 2015). In New Jersey, some courts have required knowledge to be alleged "with certainty." *See, e.g., Mickens v. Ford Motor Co.*, No. 10-CV-5842, 2015 WL 5310755, at *8 (D.N.J. Sept. 10, 2015).

The degree of specificity needed to meet these purportedly heightened requirements under California or New Jersey, however, law remains an open question. Many of their sister courts have sustained claims premised on generalized allegations about the source of defendant's knowledge. *See, e.g., Elias v. Hewlett-Packard Co.*, No. 12-CV-00421, 2014 WL 493034, at *7 (N.D. Cal. Feb. 5, 2014) ("[T]hese allegations go to HP's knowledge of the defect … and therefore need only be alleged generally." (quotations omitted)); *see also Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. 2013); *Greene v. BMW of N. Am.*, No. 2:11-04220, 2014 WL 47940, at *3 (D. N.J. Jan. 7, 2014) (sustaining "information and belief" allegation that BMW knew its tires would fail). Moreover, even if California and New Jersey reflects a different view of Rule 9(b) rather than substantive differences in those states' consumer protection laws—the law of those states does not control. When faced with a conflict in federal procedural law, courts generally apply the law of the forum. *See* Restatement (Second) of Conflict of Laws § 127 (1971) ("The local law of the forum governs rules of pleading"); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 957 (C.D. Cal. 2012) (applying local law regarding Rule 9(b)'s applicability to Florida consumer protection law).

As confirmed in *Coss v. Playtex Products*, No. 08 C 50222, 2009 WL 2245657, at *5 (N.D. Ill. July 10, 2009), the law of *this* jurisdiction is that "[u]nder Rule 9(b) knowledge can be pled generally." [32]

> **b.      Even if the Court Applies a Heightened Pleading Standard, the CAC Adequately Pleads Knowledge.**

If this Court does chose to analyze Plaintiffs' claims under a heightened pleading standard, Plaintiffs' allegations of Rust-Oleum's knowledge are still sufficient. Indeed, California courts have found that customer complaints on the internet can be used to establish a defendant's knowledge. *See e.g. Falk v. GMC*, 496 F. Supp. 2d 1088, 1096 (N.D. Cal. 2007) ("[t]he amassed weight of these complaints suggests that plaintiffs' speedometer failures were not isolated cases. Instead, when viewed in the light most favorably to the plaintiffs, these collected complaints suggest strongly that there was a defect in the design of certain GM speedometers in the years from 2003 to 2007, which caused the speedometers to fail unexpectedly and without warning."); *Long v. Graco Children's Prods.*, No. 13-CV-01257, 2013 WL 4655763, at *7 (N.D. Cal. Aug. 26, 2013) ("defendants are incorrect in arguing that Long's allegations of consumer complaints are 'insufficient' to sustain his complaint").

Even *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012), relied on by Rust-Oleum, acknowledged "allegations of consumer complaints posted on a defendant's own customer support website *may be sufficient* to raise a reasonable inference that the defendant knew of a product defect." (Emphasis added). *Wilson* is also distinguishable, however, because the consumer complaints were not alleged to have been made on defendant's website, many

---

[32] Numerous courts outside this district concur with this test as the proper standard. *See In re Porsche Cars North America, Inc.*, 880 F. Supp. 2d 801, 817 (S.D. Ohio 2012) (knowledge may be alleged generally, and reasoning that further details "are likely within [Porsche's] control and are best addressed after the close of discovery"); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545-546 (D. Md. 2011) (applying law of Illinois, Maryland, Florida, Maine, Pennsylvania, and New York and sustaining generalized allegations that "Ford knew the vehicles were defective and intended for the Plaintiffs to rely on its concealment of these material facts, thereby misleading its customers."); *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) (finding general allegations that Whirlpool knew of defects but failed to disclose them sufficient under Rule 9(b)).

complaints were undated, and many complaints were made more than two years *after* the plaintiffs purchased the relevant products. *Id*. at 1148.[33] Conversely, the CAC refers to ubiquitous consumer complaints made across the internet and directly to Rust-Oleum and its predecessor-in-interest and that pre-date Plaintiffs' purchase of Restore.[34]

Plaintiffs here also go further and allege that Rust-Oleum became aware of Restore's defective nature through internal pre-release testing *prior* to selling these products to Plaintiffs. CAC ¶ 68 (describing "torture" testing, independent lab tests and field tests before Rust-Oleum began selling Restore). *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176, 2011 WL 3501715, at *5 (N.D. Cal. Aug. 10, 2011) ("the testing here, coupled with the consumer complaints, raises a reasonable inference that HP was aware of the 8500 printer's defect and, not withstanding, made claims to the contrary").

Indeed, as even California courts recognize, Plaintiffs are "not required to plead the 'who, what, when, where, and how' as to the alleged testing of [Restore] because these allegations go to [Rust-Oleum]'s knowledge of the defect, and therefore need only be alleged 'generally.'" *Id*., at *13; *see also Dei Rossi v. Whirlpool Corp.*, No. 2:12-cv-00125, 2013 WL 5781673, at *10 (E.D. CA. Oct. 24, 2013) (sustaining generalized allegations that "Whirlpool either (a) tested the Mislabeled Refrigerators before marketing them and, at all times relevant hereto, knew that the models were non-compliant … or, in the alternative (b) affixed ENERGY STAR® labels to the Mislabeled Refrigerators without testing them, and thus knew the representation … was baseless."). And because Plaintiffs allege Rust-Oleum and its predecessor Synta performed their own testing (or had testing performed at their direction), Rust-Oleum's purported authorities to the contrary are inapposite. *See, e.g., Williams v. Yamaha Motor Corp., U.S.A.*, 2015 WL

---

[33] In *Baba v. Hewlett-Packard Co.*, No. C 09-05946-RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011), on which Rust-Oleum also relies, plaintiff could point to only three customer complaints on the defendant's website that pre-dated the plaintiff's purchase.

[34] Rust-Oleum's argument on the merits that it could not possible be responsible to know prior to 2012 that the product is defective because of information acquired from Synta (Def. Brief at 52) is totally inappropriate given that no discovery on this issue has taken place. Such proprietary information is uniquely in Defendant's possession and it should be produced to Plaintiffs.

2375906, at *9   (holding that "tests that a *manufacturer* must perform that may reveal a defect cannot establish presale knowledge on behalf of a distributor such as Yamaha USA.")(emphasis in original).

Though couched in terms of the procedural requirements of Rule 9(b) Rust-Oleum attacks the merits of Plaintiffs' testing allegations before any discovery has been taken or expert reports submitted.  Rust-Oleum argues that "[a]ll manufacturers test their products," Def. Brief at 51, such that Plaintiffs' allegations that Rust-Oleum knew of the defect through pre-sale testing are illogical.  But precisely what Rust-Oleum knew, and when the company knew it, are questions "best addressed after close of discovery." *In re Porsche Cars*, 880 F. Supp. 2d at 817 While Rust-Oleum laments a purported lack of detailed allegations concerning the testing methodologies it employed and the results thereof, such details are in Rust-Oleum's exclusive control.  And the Seventh Circuit recognizes that a plaintiff's "pleading burden should be commensurate with the amount of information available to them." *Runnion ex rel. Runnion v. Girl Scouts*, 786 F.3d 510,  528 (7th Cir. 2015). *See also*, *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1004 (N.D. Ill. 2008) (despite specificity required by Rule 9(b) sustaining consumer fraud claim, despite "somewhat unclear" allegations because "the Court acknowledges that this might be information to be uncovered during discovery").

Finally, it must be noted that ***most*** of the named Plaintiffs bought Restore in 2013 or 2014, over a year after Rust-Oleum purchased Sytna and began manufacturing Restore.[35] No argument justifies dismissing Plaintiffs' claims on lack of knowledge grounds where Rust-

---

[35] *See* CAC ¶124 (Hoff, Fall 2014), ¶128 (Baden, Sept. 2013); ¶132 (Lautigar, Summer 2013); ¶136 (Malloy, Summer 2013); ¶140 Shanks (Fall 2013); ¶144 (Patterson, Summer 2014); ¶147 (Dockstader, Aug. 2013); ¶150 (Gomez, May 2014); ¶153 (Shogren, Aug. 2013); ¶156 (Sullivan Oct. 2013); ¶160 (McCoy, Summer 2013); ¶164 (Fales, July 2013); ¶167 (Webber, June 2013); ¶171 (Boscardin, May 2013); ¶175 (Scaglione, May 2013); ¶179 (Mies, Summer 2013); ¶183 (Gibson, Summer 2013); ¶190 (Holbrook, Summer 2014); ¶194 (Anderson, Aug. 2013); ¶198 (Riello, Summer 2012 and Summer 2013); ¶201 (Dorgan, Summer 2013); ¶208 (Fernandez, Summer 2013); ¶211 (The Leonards, Oct. 2013); ¶215 (The McLambs, Summer 2013); ¶218 (Blank, Summer 2013); ¶222 (Dixson, April 2013); ¶226 (The Cadys, Summer 2013); ¶230 (Fredericks, June 2013); ¶234 (Reinhart, July 2013); ¶238 (Renzi, April 2013); ¶241 (Rogers, May 2014); ¶244 (Diaz, April 2014); ¶247 (Murphy July 2013); ¶251 (Ledford Nov. 2013); ¶254 (Reynolds, March 2014); ¶257 (Allen May 2013); ¶261 (McCain April 2013).

Oleum had sufficient time to discover the pervasive defects and correct them accordingly. Rust-Oleum's self-serving and disingenuous claims to the contrary are unavailing.

**B.    Plaintiffs' Consumer Fraud Claims Do Not "Fail on "State-Specific Grounds"**

Rust-Oleum argues that pre-suit notice is required under the Massachusetts Consumer Protection Act, Ma. Gen. Laws Ch 93A §1 *et seq*., Def. brief at 54, and that Plaintiff Boscardin cannot proceed for this reason. Rust-Oleum fails to recognize, however, that the Massachusetts statute provides in relevant part: "The demand requirements of this paragraph shall not apply if . . . *the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth . . . .*" Mass. Gen. Laws. ch. 93A, § 9(3) (emphasis added). As is alleged in the CAC, Rust-Oleum is an "Illinois Corporation with its corporate headquarters is located in Vernon Hills, Illinois." CAC ¶52. Because Plaintiffs do not allege that Rust-Oleum maintains a place of business or assets in Massachusetts, the demand requirement does not apply.

Rust-Oleum further argues that under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:82-2, plaintiffs have not adequately "quantified" an ascertainable loss and thus, Plaintiffs Dorgan and Riello have no cognizable claims. Def. Brief at 54. This is wrong. Both Plaintiffs have alleged that they *would not have purchased* Restore had they known about the defect and that they suffered out of pocket loss as a result. CAC ¶202 (Dorgan); ¶199 (Riello). Such allegations are sufficient at the pleadings stage because they demonstrate how damages may ultimately computed. This is not a case based on a price inflation theory where Plaintiffs allege that there is a price disparity between Restore and a comparable non-defective product. Though the New Jersey Supreme Court in *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 793 (N.J. 2005), held that ascertainable loss must ultimately be *proven* to withstand a motion for summary judgment, that court recognized that proof of damage is properly the subject of expert testimony.

To the extent that district courts in New Jersey have required Plaintiffs to plead ascertainable loss in greater detail, there is no such requirement for pleading damage in Illinois. As set forth herein, where there is a conflict with respect to rules of pleading, this Court should

apply the law of this jurisdiction, under which "[l]itigants in federal court do not need to plead their theories of damages," but [i]nstead they may ask generally for whatever relief the court deems appropriate." *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 831 F. Supp. 1354, 1387 (N.D. Ill. 1993). Rust-Oleum also points out that negligent misrepresentation claims have been generally limited in Indiana, but urges this Court to continue limiting the doctrine despite evidence of its recent expansion, based upon Seventh Circuit authority which counselled caution in the absence of just such an expansion, *22 years earlier.* Def. Brief at 60. Clearly, the Indiana courts have moved on, and this Court should recognize that. *See U.S. Bank v. Integrity Land Title Corp.*, 929 N.E. 2d. 742, 745-50 (Ind. 2010).

### C. The economic loss rule does not require dismissal of claims because Plaintiffs experienced damage to their property as a result of the Restore product.

Rust-Oleum is incorrect that the economic loss rule bars some of Plaintiffs' negligent misrepresentation claims.[36]  While the rule generally prohibits recovery in tort for economic loss, Plaintiffs have not brought this lawsuit for pure economic losses, alone.  Not only does the lawsuit seek damages for the loss of the benefit of the bargain related to the product, itself, but the lawsuit *also* seeks damages to other, existing property that was damaged by the Restore product.  This is not a case of Plaintiffs attempting to recover damaged for diminished expectations on tort theories.  This case also involves thousands of dollars of additional property damage *per person* that was caused by the application of the Restore product onto Plaintiffs' decks.

### 1. The economic loss rule does not prevent Plaintiffs from pursuing claims for damage to other property.

One of the accepted exceptions to the economic loss rule involves damage to other property. [37]  *See Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 496-97 (N.H. 2005);

---

[36] Defendant challenges the claims for plaintiffs in the states of Illinois, Maine, Maryland, Michigan, Missouri, New Hampshire, New Jersey, and New York.  Def. Brief at 62.

[37] Exceptions for the economic loss doctrine have also been recognized in Maine, Illinois, and New Jersey when Plaintiffs have stated claims for misrepresentation.  *See Camden Nat'l Bank v. D&F Props.*, No.

*Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 504 (D.N.J. 1999); *Arkwright Mut. Ins. Co. v. Bojoirve, Inc.*, No. 93 Civ. 3068 (WK), 1996 U.S. Dist. LEXIS 9013, **10-12 (S.D.N.Y. June 27, 1996)(applying New York law); *Oceanside at Pine Point Condominium Owners Assoc. v. Peachtree Doors*, 659 A.2d 267, 270 (Me. 1995); *B.L. Jet Sales, Inc. v. Alton Packaging Corp.*, 724 S.W.2d 669, 671 (Ct. App. Mo. 1987); *Ellis v. Robert C. Morris, Inc.*, 513 A.2d 951 (N.H. 1986); *Chubb Group of Ins. Cos. v. C.F. Murphy & Assoc., Inc.*, 656 .W. 2d 766, 781 n.10 (Ct. App. Mo. 1983). Rust-Oleum brushes off this exception in its brief, arguing that Plaintiffs' negligent misrepresentation claims should be dismissed because Plaintiffs did not specifically allege that Restore has caused damage to their property beyond the Restore product, itself. But this is plain wrong. While Plaintiffs allege that the Restore product, itself, degrades and needs to be replaced, they also allege that the product, when applied to their property, damages their property. *See, e.g.,* CAC ¶ 4 ("even after proper application, damage will result to class members' decks. . . . Class members have and will continue to expend considerable costs and time in attempts to repair the problems, [and] will likely end up having to pay for a total replacement of the product and the deck itself at some point."); ¶ 91 ("consumers continue to spend thousands of dollars on purchasing and applying Restore, and they then spend even more money removing and replacing Restore when it peels, cracks, and causes damages to existing property."); ¶ 98 ("At the time Plaintiffs purchased Restore, they expected Restore to perform as marketed and to not damage any other property."); ¶ 116 ("Defendant's product at issue in this action fails to perform as warranted and in fact ultimately causes damage and injury to any decking material upon which Restore is applied."). Thus, Plaintiffs' claims in these States

---

BCD-WB-RE-10-16, 2011 Me. Super LEXIS 244, **15-16 (Sup. Ct. Me. Oct. 3, 2011) (upholding negligent misrepresentation claim, and finding that "even if the Court were to apply the economic loss doctrine, which prohibits recovery for economic losses in the absence of personal injury or property damage, in this case, the Court would not dismiss all of Defendants' tort claims as the doctrine does not apply to claims of misrepresentation."); *In re Chicago Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997) (recognizing exceptions to the economic loss rule where damages are proximately caused by a negligent misrepresentation or fraud); *Coastal Group, Inc. v. Dryvit Sys., Inc.*, 643 A.2d 649, 652-53 (N.J. 1994) (court committed error in dismissing claim for fraud and misrepresentation). Here, Plaintiffs claim that Rust-Oleum made material misrepresentations concerning their product, which proximately caused Plaintiffs' property damage. *See* CAC ¶¶ 89, 91, 93, 281.

are not barred because damage to other property is clearly alleged.

When examining whether the product caused damage to itself or to other property, courts "look to the product purchased by the plaintiff, as opposed to the product sold by the defendant, to determine whether a product has injured only itself." *Oceanside at Pine Point*, 659 A.2d at 270. For example, if a consumer decided to purchase a condominium, that consumer could not allege that defective concrete had caused damage to "other property" if it damaged component parts within the condominium, because the consumer had contracted to purchase the condominium as a whole. *Id.* Here, consumers *resurfaced* their existing decks and porches with Rust-Oleum Restore to protect those already-existing structures. Thus, because the Restore product caused damage to other property, Plaintiffs' claims in New Hampshire are plainly not barred, *Kelleher*, 891 A.2d at 496-97 (damage to home caused by leaking windows installed into existing home not barred by economic loss); nor are they barred in New Jersey. *Naporano*, 79 F. Supp. 2d at 504 (citing to N.J.S.A. § 2A:58C-1(b)(2), codifying that damages are available when injury occurs to property "other than to the product itself"), Illinois, or Maine.[38]

Rust-Oleum's reliance on *Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971 (Md. 2008) is also misplaced. First, Plaintiffs here have alleged that they were in privity with Rust-Oleum, unlike the plaintiffs in *Pulte Home*--the defendant was two levels removed from the homeowner, and "'the product reached the first user 'as a part of the finished product' -- the entire home -- and was not separate or "other" property.'" Here, the Plaintiffs purchased Restore themselves. Second, the product in *Pulte Home*, stucco, was found to have been integrated into the "finished product," a house, because of the nature of the product itself, stucco which was part of an.entire "barrier cladding system" that included fiberglass mesh, insulation board, and flashing." *Pulte*

---

[38] *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E. 2d 443, 450 (Ill. 1982). Contrary to Defendant's assertions, the CAC does allege that Restore does damaged each Plaintiffs' structure to which it was applied. Even if it did not, it could be amended to so allege. *Allstate Ins. Co. v. Pulte Homes*, 2010 WL 4482360 (N.D. Ill. Nov. 1, 2010) is also distinguishable, as it deals with the "dangerous occurrence" exception to the economic loss rule, whereas Plaintiffs herein are relying upon the exception under *Chicago Flood*, *see* n.37, *supra*, and also quoted in *Allstate Inc. Co.*, "where the plaintiff's damages were proximately caused by a defendant's intentional, false representation."

*Home*, 923 A.2d at 739.  This is far different from a product like Restore that is applied singly to a completely separate piece of property.

### 2. Rust-Oleum's warranty exclusion provisions do not bar claims for damages to Plaintiffs' decks in Michigan.

Rust-Oleum also argues that, because its warranty excludes payment for "replacement of any wood structure" or "consequential, incidental damages," it was thus somehow "foreseeable" that Restore could damage a deck.  Def. Brief at 63-64.  Therefore, Rust-Oleum argues, this is another reason to dismiss Plaintiffs' negligent misrepresentation claims.[39]  But this argument ignores the reality of the warranty offered by Rust-Oleum: the Plaintiffs did not have an opportunity to negotiate for additional coverage.  When such property damage occurs, and a plaintiff does not have an opportunity to negotiate for additional protection beyond the warranty offered on the product to protect his property interests, the economic loss doctrine does not apply.  *See Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 254 Mich. App. 372, 381-82  (Ct. App. 2002) ("in order for the economic loss doctrine to bar recovery in tort, there must be a transaction that provides an avenue by which the parties are afforded the opportunity to negotiate to protect their respective interests.").  Furthermore, Rust-Oleum's representation that its warranty exclusions somehow make it "foreseeable" that Restore could cause damage to Plaintiffs' decking is contradicted by the well-pleaded facts of the CAC, which the Court must accept as true at this stage of the litigation.  *See* CAC ¶ 74 (consumers expected to avoid future costs because the Restore product would preserve, not damage, their decks), ¶76 (consumers paid a price premium for the product, expecting that it would form a "protective barrier for decks and other surfaces"); ¶98 ("At the time Plaintiffs purchased Restore, they expected Restore to perform as marketed and to not damage any other property.").

---

[39] Although Rust-Oleum's motion to dismiss does not specify to which Plaintiff this argument applies, based upon the cases cited, it appears this argument is made with regard to Michigan Plaintiff Scaglione.

**D.    Rust-Oleum's Material Representations About the Strength and Durability of its Product Are Not Mere Puffery, and Plaintiffs' Negligent Misrepresentation Claims Should not be Dismissed.**

Rust-Oleum seeks dismissal of the negligent misrepresentation, characterizing the numerous representations as "mere puffery" and predictions of the product's future performance. Plaintiffs do not contest that statements that are mere puffery are not actionable. "The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Stearns,* 2009 WL 1635931 at *11.   The representations alleged here are the latter—specific factual assertions.

As noted above in Section II A (1), Rust-Oleum made actionable misrepresentations.  For example, Rust-Oleum represented that the Restore is "tested tough for 12+ years," will "provide lasting protection against moisture and the damaging effects of the sun," "lasts 10 to 12 years and in fact it comes with a life time warrantee," and "is an easy to apply repair coating that revives the surface while offering maximum protection to preserve the deck for years to come." CAC ¶341. These statements are "verifiable facts and sufficiently specific to induce customer reliance. Consequently, they do not constitute 'mere puffery.'"  *In re Milo's Dog Treats Consol. Cases*, 9 F. Supp. 3d 523, 541 (W.D. Pa. 2014) (citations omitted) (collecting examples of actionable representations); *see also Sherwin-Williams Co. v. JB Collision Servs.*, Nos. 13-CV-1946-LAB-WVG, 13-CV-1947-LAB-WVG, 2014 WL 5112057, at *9 (S.D. Cal. Oct. 9, 2014) (finding statements that products were "tested, proven, and perfected" actionable).   Indeed, discovery would allow Plaintiffs to verify whether Rust-Oleum had in fact tested the product for twelve years and whether the results showed it would last for 10 to 12 years. Moreover, whether a lifetime warranty is offered and in fact honored is easily confirmed. Finally, discovery into the testing, installation instructions and customer feedback would allow substantiation of whether the product is indeed easy to apply and revives a deck surface.   Similarly, these statements concern existing facts, not just statements of future conduct.  Specifically, Rust-Oleum maintains that it: (1) Tested the product for 12+years performance (past tense); (2) Offers a lifetime warranty (present tense); (3) Product is easy to apply and revives (present tense); (4) Offers a protective barrier (present tense); and (5) It extends the life of a deck (present tense). CAC ¶67.

All of these statements speak to the current condition or known characteristics of the Restore products. As such, and contrary to Rust-Oleum's assertions otherwise, the alleged misrepresentations are actionable. *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 335-36 (D.N.J. 2001) (collecting cases and discussing how claims linked to specific attributes of a product cannot be deemed mere puffery).[40] Moreover, where at least some actionable statements have been pled, a claim cannot be dismissed on the ground that other statements constitute mere puffery. *In re Milo's*, 9 F. Supp. 3d at 541.[41]

Rust-Oleum next asks this Court to stray from well recognized principles and dismiss the negligent misrepresentation on what it contends are grounds recognized by various states. First, Rust-Oleum misleads and misconstrues what the "business transaction" requirement actually entails. It is not that a consumer has to purchase the goods for use in his or her own business but rather if the defendant makes the misrepresentation "in the course of his business, profession or employment . . ." and that the sale/purchase of the Restore products constitutes a "business transaction." *See G.A.W., III v. D.M.W.*, 596 N.W.2d 284, 290 (Minn. Ct. App. 1999). Indeed, none of the cases cited by Rust-Oleum demand that the consumer actually uses the product for commercial or business purposes; instead, the requirement merely calls for a business transaction.[42]

---

[40] Rust-Oleum's argument that Plaintiffs' cannot proceed on their causes of action based upon "pure predictions" of a product's performance are also false. These were material misrepresentations which any reasonable consumer would consider prior to purchasing the products. They are actionable. *See, e.g., Fisher v. Mr. Harold's Hair Lab, Inc.*, 215 Kan. 515, 525-526 527 P.2d 1026, 1035 (Kan. 1974) (actionable fraud found where defendant seller made false representations assuring plaintiff buyer of hair piece business that return would be at least $25,000); *Miles Homes Div., Insilco Corp. v. Smith*, 790 S.W.2d 382, 384 (Tex. App. Beaumont 1990) (actionable fraud found where plaintiffs purchased build-it-yourself home from defendant who represented that their product builds equity; plaintiffs would be able to obtain permanent financing on the completed home; and monthly payments would not exceed $400); *Unified School Dist. v. Celotex Corp.*, 6 Kan. App. 2d 346, 358-359 629 P.2d 196, 208-09 (Kan. Ct. App. 1981) (judgment against roof manufacturer affirmed where manufacturer knew of its product's limitations and represented that a roof had a certain longevity when it did not). .

[41] *See also supra* Section II. A 1.

[42] *Id.*; *see Sampson v. MacDougall*, 802 N.E.2d 602, 608 (Mass. App. Ct. 2004) ("Our cases have not recognized a cause of action for negligent misrepresentation based on comments made during a *purely social interaction*, and we decline to do so now.") (emphasis added); *Travelers Commercial Cas. Co. v. Sielfleisch Roofing, Inc.*, No. 4:12 CV 1550 DDN, 2014 WL 636204, at *9 (E.D. Mo. Feb. 18, 2014)

Furthermore, under Minnesota law, Plaintiffs are not barred from bringing a common-law misrepresentation claim. Specifically, Plaintiffs alleged that these statements were made intentionally and/or recklessly based on the knowledge possessed by Rust-Oleum:

> At the time of sale, Defendant knew or should have known about Restore's propensity to prematurely fail, by and through, inter alia, internal audits, field testing, online complaints, and internal warranty and complaint data. Thus, Defendant either knew its representations were false or had no reasonable grounds for believing that its representations were true.

CAC ¶343; *see also* ¶¶76, 82, 97. Additionally, any privity requirement would not bar a negligent misrepresentation claim here as privity has been established as discussed in Section I (D) *supra*.

### E. Plaintiffs State A Viable Claim For Fraudulent Concealment

While ancillary to Plaintiffs' statutory consumer fraud claims, *see* Section II (A) and (B), *infra,* Plaintiffs have nevertheless pleaded facts sufficient to sustain their fraudulent concealment claims. Nonetheless, Rust-Oleum seeks dismissal of all Plaintiffs' claims for Fraudulent Concealment based on applying stricter legal standards than actually required and incorrect factual conclusions.

First, Rust-Oleum argues yet again that Plaintiffs have failed to show the supposed required causation and direct reliance. Plaintiffs have sufficiently rebutted this argument in Section II A.(3) above. Importantly, as particularly pled in the Complaint: (1) Defendant "knowingly and intentionally" omitted its knowledge that true nature and quality of the Restore

---

(statement concerning on-going litigation is not a business transaction for purposes of negligent misrepresentation); *Swanson v. Ptak*, 682 N.W.2d 225, 228 (Neb. 2004) (estate personal representative did not have a duty in his individual capacity to advise heirs on division of estate, therefore, there was no a business transaction); *Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008) (plaintiff used the allege misrepresentation in his decision to engage in a personal encounter with another member); *Allen v. Steele*, 252 P.3d 476, 483 (Colo. 2011) (citing the requirement that the misrepresentation be made for the guidance of others in their business transactions); *Hodge v. Craig*, 382 S.W.3d 325, 346 (Tenn. 2012) (negligent misrepresentation claim does not "apply to private communications between a woman and a man regarding the paternity of a child.").

products, including that it will prematurely fail and does not repair decking long-term and that Rust-Oleum knew it was omitting material facts when it sold its product to Plaintiffs(*see* CAC ¶¶73, 82-92, 327, 347-48); (2) Plaintiffs and other customers relied on the misrepresentations and omissions in the warranty, advertisements and promotions related to longevity and product performance (*see* CAC ¶¶93, 120, 123, 127, 131, 135, 139, 143, 146, 149, 152, 155, 159, 163, 166, 170, 174, 178, 182, 186, 189, 193, 197, 200, 203, 207, 210, 214, 217, 221, 225, 229, 233, 237, 240, 243, 246, 250, 253, 256, 259, 263, 266, 350-51); (3) the omissions were of a nature and quality upon which a reasonable person would rely (*see* ¶¶65-70, 82-93); and (4) the Plaintiffs and the Class incurred specific damage, including out of pocket expenses (*see* ¶¶76, 91, 94, 110, 351). Based on the above, Plaintiffs have sufficiently pled direct reliance and causation.[43]

Second, Rust-Oleum's motion is silent as to the fact that Plaintiffs' fraudulent concealment claim is based mainly on ***omissions.*** "Where [a] case involves primarily a failure to disclose, positive proof of reliance is not a prerequisite for recovery; all that is necessary is that the facts withheld be material in [the] sense that [a] reasonable [consumer] might have considered them important in making of such decision." *In re Coin Phones. Inc*., 203 B.R. 184, 203 n.7 (Bkrtcy. S.D.N.Y. 1996); *Gordon v. Burr*, 366 F. Supp. 156, 165 (S.D.N.Y.1973), *rev'd in part on other grounds*, 506 F.2d 1080 (cited in Black's Law Dictionary 1291 (6th Ed.1990). *See also In re Lehman Bros. Secs. and ERISA Litig.*, 903 F.Supp.2d 152, 190 (S.D.N.Y. 2012) (applying California law) (under common law of fraud, plaintiff pleads reliance on an omission by pleading that "had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently")[44] In other words, where fraudulent concealment is alleged, actual

---

[43] Defendant makes a short, one sentence argument that Plaintiff has not pleaded knowledge of the defects by Rust-Oleum. This is not only unsupported, but also untrue, especially in light of the pleading standards applicable at the procedural posture of this case. *See* ¶¶82-93; 345-351. *See also* Section II B.2.

[44] Several state courts, and federal courts sitting in diversity, have also recognized the presumption of reliance as to state law claims and extended the federally recognized presumption in securities law to such claims. *See Ansin v. River Oaks Furniture,* 105 F.3d 745, 754 (1st Cir.1997) ("Because of the logical impossibility of proving that plaintiffs relied on information that they did not have, '[p]ositive proof of reliance on omissions is not necessary where materiality has been established.'") ; *Edens v. Goodyear*

reasonable reliance on the omission need not be shown, only that the omission was material. *See id.*

Here, it cannot be argued in good faith that the alleged omissions are ***not*** material. Plaintiffs alleged that Rust-Oleum knowingly omitted information that was in direct contrast to the represented characteristics, quality and purpose of its Restore Products. For instance, Rust-Oleum chose a name for its product ("Restore") that communicates a specific purpose for its products- that it will repair and extend the life of any deck surface. CAC ¶3. Rust-Oleum's advertisements and promotional materials further highlight this supposedly capability of any Restore product- "repairs decking," "the smart alternative to deck and concrete replacement," can "extend the life" of a deck, and form a "protective barrier from Mother Nature's harsh elements." CAC ¶¶ 61, 67. At the same time it was promoting and representing the Restore products in this manner, Rust-Oleum knowingly omitted critical and material facts that it in fact: (1) does not repair of restore any decking long-term; (2) cannot withstand harsh elements; and (3) otherwise prematurely fails. CAC ¶¶ 73, 347. Thus, as the alleged omissions speak directly to considerations (*eg* purpose and quality) important to any reasonable consumer in purchasing the Restore product, there is a presumption of reliance here.

---

*Tire & Rubber Co.,* 858 F.2d 198, 207 (4th Cir.1988) (extending presumption of reliance to a common law action for fraudulent breach of contract); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.,* 242 F.R.D. 568, 573 (W.D. Wash. 2007) (in addressing an omissions claim under state consumer protection law: "Proof of the omissions will *not* be based upon information each class member received about the furnaces, but on what Carrier allegedly concealed in light of what consumers reasonably expect."); *In re Tyco In'l, Ltd.*, No. MD-02-1335, 2006 WL 2349338, at *6 (D.N.H. Aug. 15, 2006); ("presumption of reliance" is available in "cases involving primarily omissions"); *In re Coordinated Title Ins. Cases,* 2 Misc. 3d 1007(A), 784 N.Y.S.2d 919 (Sup. Ct. 2004) ("However, while reliance is a key element of common law fraud, reliance has been presumed in certain cases involving material omissions."); *Varacallo v. Massachusetts Mut. Life Ins. Co*., 752 A.2d 807, 817 (App. Div. 2000) ("The presumption or inference of reliance and causation, where omissions of material fact are common to the class, has been extended in the context of both common law and statutory fraud."); *Cope v. Metro. Life Ins. Co.,* 82 Ohio St. 3d 426, 435-437 (Ohio 1998) ("When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance.")

Finally, and contrary to Rust-Oleum's contentions otherwise, the Complaint sufficiently alleges that Rust-Oleum was duty-bound to Plaintiffs and the Class members to disclose Restore's true qualities. Courts are largely in agreement that a defendant is under a duty to disclose when it possesses exclusive knowledge concerning a product or if they conceal facts that contradict or qualify representations. *See, e.g., Hogan v. Maryland State Dental Ass'n*, 843 A.2d 902, 908 (Md. Ct. Spec. App. 2004) ("[W]e recognized an exception, specifically, absent a duty to disclose, "'[o]ne who conceals facts that materially qualify affirmative representations may be liable for fraud.'" ); *Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010)("w]hen such a manufacturer has superior information regarding defects that are not readily ascertainable to customers, it has a duty to disclose that information."); *Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268 (M.D. Ala. 1999) (allegations that defendants were in superior position of power and knowledge in relation to plaintiffs, and that they suppressed important facts was sufficient to allege duty to disclose, under Alabama, Massachusetts, Florida and Mississippi law of fraudulent concealment or suppression."); *Limandri v. Judkins,* 52 Cal. App. 4th 326, 336-37 (1997) (duty to disclose arises "when the defendant had exclusive knowledge of material facts not known to the plaintiff"); *Cisneros v. Cisneros,* 430 P.2d 86 (Colo. 1967) (liability for failure to disclose facts material to a transaction can be created when on party has superior knowledge or means of knowledge.); *In re Fruehauf Trailer Corp.,* 250 B.R. 168, 186 (D. Del. 2000)(A plaintiff may prove  fraudulent concealment by either showing that the defendants knew of the wrongdoing and affirmatively concealed it from plaintiff, or by showing that the defendants breached their duty to disclose the wrongdoing.) Here, as discussed above, Plaintiffs have specifically alleged that the omissions contradict the representations made concerning the Restore Products. Moreover, Rust-Oleum retained not only superior knowledge concerning the true nature of the Restore products but also exclusive knowledge. As such, Rust-Oleum had a duty to disclose the alleged omissions to Plaintiffs and the Class and its failure to do so establishes Rust-Oleum's liability for fraudulent concealment.[45]

---

[45] The cases cited by Defendant do not alter this conclusion. *See Mason v. Chrysler* Corp., 653 So. 2d

Rust-Oleum was obligated to disclose to Plaintiffs and the Class Restore's true nature, but instead chose to engage in a pervasive and deceptive marketing campaign on which it knew their customers would rely.  Plaintiffs therefore state claims for fraudulent concealment.

## III.  RULE 23 AUTHORIZES PLAINTIFFS' NATIONWIDE CLASS FOR DECLARATORY, INJUNCTIVE RELIEF AND/OR EQUITABLE RELIEF

Rule 23 explicitly authorizes classwide declaratory, injunctive and injunctive remedies where the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The Seventh Circuit has held that "[s]ubsumed in [Rule 23(b)(2)] are at least two independent requirements: The contemplated equitable relief must be

---

951, 954 (Ala. 1995)(holding that whether one has a duty to speak is a factual inquiry and "the [plaintiffs] presented no evidence suggesting that [defendants] owed them a duty to disclose information."); *Vickery v. Evelyn V. Trumble Living Trust*, 277 P.3d 864, 870 (Colo. App. 2011)(acknowledging Colorado is guided by the Restatement in establishing a duty and stating: "One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated… matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading…"); *Aprigliano v. Am. Honda Motor Co*., 979 F. Supp. 2d 1331, 1343 (S.D. Fla. 2013)(no discussion on whether the duty to disclose was properly pled, instead the court found plaintiff failed to properly plead the extended scheme of fraud); *Williams v. Dresser Indus., Inc.,* 120 F.3d 1163, 1165 (11th Cir. 1997)(finding that the selling company did not have a confidential relationship sufficient to establish a duty to disclose to the buying "sophisticated business executives");*Watts v. Krebs*, 131 Idaho 616, 621, (1998) ("A duty to disclose may arise when…disclosure would be necessary to prevent a partial or ambiguous statement of fact from becoming misleading; or (c) subsequent information has been acquired which a party knows will make a previous representation untrue or misleading");*Taylor v. Am. Chemistry Council*, 576 F.3d 16, 31 (1st Cir. 2009); ("Such a duty exists where…'there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction.' " ) *Hord v. Envtl. Research Inst. of Michigan*, 463 Mich. 399, 406 (Mich. 2000) (employee failed to show legal duty to disclose financial health where the evidence does not support the document provided was offered to demonstrate company's financial health"); *Invest Almaz v. Temple-Inland Forest Products Corp*., 243 F.3d 57, 77 (1st Cir. 2001) ("While there is precedent in New Hampshire case law for the proposition that a vendor offering a deceptive opinion as to value may be liable in fraud, nothing in the deposition testimony indicates that Taylor gave an opinion of value, or, indeed, even knew the sale price of the plant."); *Lightning Lube, Inc. v. Witco Corp*., 4 F.3d 1153, 1185 (3d Cir. 1993)(court finding a "detached business relation" does not create a duty to disclose); *Landstar Inway Inc. v. Samrow*, 181 Wash. App. 109, 124 (Wash. Ct. App. 2014)(analyzing whether a duty to disclose is owed amongst companies and stating that "A duty to disclose material information can arise in arm's-length contract negotiations because of the contractual duty of good faith.")

(1) 'appropriate respecting the class as a whole' and (2) 'final.'" *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. Ind. 2011); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (U.S. 2011)(Rule 23(b)(2) "applies only to requests for such injunctive or declaratory relief…"); *Jamie S. v. Milwaukee Pub. Schs*, 668 F.3d 481, 499 (7th Cir. 2012) ("The injunctive or declaratory relief sought must be 'final' to 'the class as a whole.'")

Rust-Oleum is wrong that Plaintiffs' first cause of action for declaratory, injunctive and/or equitable relief on behalf of a nationwide class is derivative of, and thus barred, by their prayer for relief. In fact, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed. R. Civ. P. 57. Declaratory relief is appropriate when the other claims will not settle all of the issues concerning which plaintiff seeks declaratory relief. *See, e.g., StreamCast Networks, Inc. v. IBIS LLC,* No. CV 05-04239, 2006 WL 5720345 *3-*4 (C.D. Cal. 2006). In *Lunding v. Biocatalyst Resources, Inc*., the Court found:

> [P]laintiff seeks a declaration that defendants' rescission of the preferred stock was invalid. Defendants say that the claim for declaratory relief is redundant of plaintiff's breach of contract claim and, thus, must be dismissed. The Court disagrees. If plaintiff prevails on his breach of contract claim, his remedy would be damages, not reinstatement of the preferred stock. A declaration that the rescission was invalid, however, might induce defendants to reinstate the stock voluntarily or, if necessary, support a request for injunctive relief. Defendants' motion to dismiss Count II is, therefore, denied.

*Lunding v. Biocatalyst Res., Inc*., No. 03 C 696, 2003 WL 22232831, at *3 (N.D. Ill. Sept. 19, 2003) (internal citation omitted)).

Here, Plaintiffs have alleged that Rust-Oleum's Restore product begins to peel away within months of application and damages consumers' decks and similar structures. *See, e.g*., CAC at ¶¶ 4, 73, 75, 77, 87. Thus, instead of ending the cycle of repainting and replacing, Restore hastens it; and those who buy Restore often waste considerable time and money first applying Restore and then removing it and replacing damaged property. *See id.* at ¶ 4. Plaintiffs have further alleged that Restore does not meet Rust-Oleum's warranties and representations,

Rust-Oleum did not reformulate the product, pull Restore from the market, or disclose Restore's lack of functionality; rather, Rust-Oleum continues to market and sell Restore as "low-maintenance," "long-lasting," "resilient" and a superior alternative to deck paint or stains. *See* CAC at ¶ 99. As a result of Rust-Oleum's misrepresentations and omissions, consumers continue to spend thousands of dollars on purchasing and applying Restore, and they then spend even more money removing and replacing Restore when it peels, cracks, and causes damages to existing property in mere months to a year. *See* CAC at ¶ 91.

In the Prayer for Relief, Plaintiffs also seek declaratory and injunctive relief, as well as damages (*see*, *e.g.,* CAC at ¶ 352), but they do so only on behalf of certain specific states.[46] The relief requested in Plaintiffs' first cause of action under the Declaratory Relief Act is both broader and more specific than the general relief sought in Plaintiffs' Prayer for Relief. *See* CAC at ¶ 352. For example, while the Prayer for Relief requests that the Court declare that Rust-Oleum's limits on class members' remedies in the warranty are unconscionable and void (*see id.*), Plaintiffs' first cause of action seeks a declaration for broader and more specific relief, as follows: (a) Restore has a propensity to prematurely fail, which causes consumers to suffer damages, including to other property; (b) Rust-Oleum knew and/or should have known that Restore had a propensity to prematurely fail, which would cause consumers to suffer damages; (c) Rust-Oleum is required to disclose to consumers, at its own cost, that Restore's propensity to prematurely fail causes damages, including to other property; (d) Rust-Oleum's express warranty fails of its essential purpose and purported warranty limitations are void and unconscionable as a matter of law; and (e) Rust-Oleum is required to review and re-audit all prior warranty claims, including claims previously denied in whole or in part. CAC at ¶ 276.

_____

[46] Plaintiffs also seek to represent a multistate Class composed of residents of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the District of Columbia.

Unlike Plaintiffs' first cause of action, the Prayer for Relief does not include a request that the Court declare  Restore has a propensity to prematurely fail or that Rust-Oleum knew and/or should have known that Restore had a propensity to prematurely fail. CAC at ¶ 352. Although the Prayer for Relief does include a request that the Court require Rust-Oleum to notify all class members about the problems with Restore, it does not ask that the Court declare Restore's propensity to prematurely fail causes damage to other property, as is requested in Plaintiffs' first cause of action. CAC at ¶¶ 276, 352.

In sum, Plaintiffs' first cause of action for nationwide declaratory and injunctive relief is appropriate here because (a) it applies to the entire class, and (b) it is final. *See Kartman*, 634 F.3d at 892. Moreover, the requested relief under the Declaratory Relief Act is broader than that set forth in Count I, in that it applies nationwide, and is more specific, as described above. Consequently, there is no question that Plaintiffs may seek to certify a nationwide class for declaratory and injunctive relief while at the same time seeking damages on behalf of the proposed Colorado, Illinois and Kentucky classes. As set forth below, there are no choice of law or other obstacles to certification of the proposed nationwide declaratory and injunctive relief class.

## IV. PLAINTIFFS' PRE-SEPTEMBER 2012 CLAIMS ARE VIABLE BECAUSE THE COMPLAINT SUFFICIENTLY PLEADS RUST-OLEUM'S LIABILITY FOR CONDUCT PREDATING ITS ACQUISITION OF SYNTA, INC.

While Rust-Oleum accurately sets forth the general rule under Illinois law[47] that "a corporation which merges with another corporation takes on the latter corporation's obligations and liabilities while a successor corporation which purchases the business assets of another corporation does not become liable for the debts of the seller in the absence of an express agreement to assume the seller's debt," *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128

---

[47] Defendant assumes that its acquisition of Synta is governed by Illinois law, however it has not produced any documentation regarding that acquisition and there is no way, at this point, for Plaintiffs to know which State's law actually governs the transaction (or, for that matter, any of the terms of the transaction, as discussed further below).

F.3d 1074, 1083 (7th Cir. 1997), this recitation alone does not demonstrate that Rust-Oleum can escape all liability for Synta, Inc.'s fraudulent marketing of the Restore Products prior to its September 2012 acquisition by Rust-Oleum (the "Acquisition").

As an initial matter, Rust-Oleum's motion offers no basis to conclude that the Acquisition was *not* a merger between the two companies. Plaintiffs' allegations that Rust-Oleum "acquired" Synta and "took over" Restore, CAC ¶¶ 57-58, do not foreclose this possibility, and Rust-Oleum – making only a facial attack on Plaintiffs' pleading – sets forth no evidence suggesting that the Acquisition was a mere asset purchase.

But even if it was an acquisition and not a merger, Rust-Oleum ignores the fact that there are "several exceptions to the general rule" governing a purchaser corporation's assumption of liabilities from the seller. *Myers v. Putzmeister, Inc.,* 596 N.E.2d 754, 755-56 (Ill. App. Ct. 1992). Specifically, liability may attach where:

> (1) there is an express or implied agreement of assumption;
>
> (2) the transaction amounts to a consolidation or merger of the purchaser or seller corporation;
>
> (3) the purchaser is merely a continuation of the seller; or
>
> (4) the transaction is for the fraudulent purpose of escaping liability for the seller's obligations.

*Id.* (citing *Hernandez v. Johnson Press Corp*., 70 Ill. App. 3d 664, 667 (Ill. App. Ct. 1979)).

Neither Plaintiffs nor the Court currently have enough information regarding the terms and implementation of the Acquisition to determine, as a matter of law, that Rust-Oleum did not assume Synta's liability for the Restore Products. This determination can only be made after Rust-Oleum produces the appropriate discovery, including all documents related to the Acquisition. *See Ordonez v. Akorat Metal Fabricators, Inc*., No. 10 C 5708, 2011 WL 6379290, at *3 (N.D. Ill. Dec. 20, 2011) ("The remainder of Shale's motion, in which it argues that

plaintiffs cannot prove successor liability, is premature. Plaintiffs have not had an adequate opportunity to conduct discovery on their claims against Shale").

Regardless, Rust-Oleum concedes that Plaintiff Riello's 2013 purchase of the Restore Products occurred after the Acquisition. Moreover, both Plaintiffs Riello and Reyes allege that they purchased Restore "in *or around* the Summer of 2012." CAC ¶¶ 121, 198 (emphasis added). Even assuming, *arguendo*, that Rust-Oleum is not liable for any pre-Acquisition conduct relating to the Restore Products, these allegations do *not* establish that Plaintiffs Riello and Reyes purchased Restore before the Acquisition here at the pleadings stage where all inferences are to be drawn in Plaintiffs' favor.

## V.      PLAINTIFFS' CLAIMS UNDER NEW JERSEY AND OHIO LAW ARE NOT PREEMPTED

Rust-Oleum incorrectly argues that certain state law claims are preempted under New Jersey and Ohio state law. As established below, Rust-Oleum is expanding the grasp of the relevant state statutes far beyond what is actually covered.

### A.      The New Jersey Product Liability Act Does Not Subsume Plaintiff Riello and Plaintiff Dorgan's Consumer Fraud Act, Negligent Misrepresentation, and Fraudulent Concealment Claims

The New Jersey Product Liability Act, N.J.S.A. 2A:58C *et seq*. (NJPLA) may subsume certain causes of action related to harm caused by a product. *Universal Underwriters Ins. Grp. v. Pub. Serv. Elec. & Gas Co*., 103 F. Supp. 2d 744, 746-47 (D.N.J. 2000). Rust-Oleum attempts to extend this principle well beyond the confines of New Jersey law, urging the Court to extend the reach of the NJPLA such that it would subsume claims asserting violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 *et seq*. negligent misrepresentation, and fraudulent concealment. Def. Brief at 69.

This position is untenable. Courts have consistently ruled that the NJPLA does not preclude such claims. *See e.g*. *Wendling v. Pfizer, Inc.,* No. A-1807-06T1, 2008 WL 833549, at *7-8 (N.J. Super. Ct. App. Div. Mar. 31, 2008) (NJPLA did not bar CFA or negligent misrepresentation claims); *Estate of Knoster v. Ford Motor Co.*, 200 F. App'x 106, 116 (3d Cir.

2006) (NJPLA does not subsume CFA claim); *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 556 (D.N.J. 2013) (allowing NJPLA and CFA claims to go forward); *New Hope Pipe Liners, LLC v. Composites One, LCC*, No. CIV. 09-3222, 2009 WL 4282644, at *3 (D.N.J. Nov. 30, 2009) (finding "fraud, negligent misrepresentation, violation of the Consumer Fraud Act, promissory estoppel, and breach of the implied warranty of fitness for a particular purpose" are not subsumed by the NJPLA).

### B. The Ohio Products Liability Act Does Not Abrogate Plaintiff Blank and Plaintiff Dixson's Claims for Negligent Misrepresentation, Fraudulent Concealment, and Violation of the Ohio Consumer Sales Practices Act

Rust-Oleum erroneously contends that the Ohio Products Liability Act, Ohio Rev. Code §2307.71 *et seq.* (OPLA) subsumes Plaintiff Blank and Plaintiff Dixson's claims for negligent misrepresentation, fraudulent concealment, and violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et seq.* (OCSPA).

While the OPLA may "abrogate all common law product liability claims or causes of action," Ohio Rev.Code § 2307.71(B), courts have held that actions for fraud, like those at issue here, are outside of the scope of OPLA's abrogation. *Musgrave v. Breg, Inc.,* No. 2:09–cv–1029, 2011 WL 3876529, at *10 (S.D.Ohio Sept. 2, 2011) (fraud claims are outside the scope of OPLA's abrogation); *modified on other grounds*, 2011 WL 5299489 (Nov. 4, 2011); *CCB Ohio LLC v. Chemque, Inc.,* 649 F. Supp. 2d 757, 763–64 (S.D.Ohio 2009) (same), *Stratford v. SmithKline Beecham Corp.,* No. 2:07–cv–639, 2008 WL 2491965, at *8 (S.D. Ohio June 17, 2008) (OPLA only abrogates fraud claims arising from duty to warn—not fraud claims which are based on a general duty not to actively deceive).

Plaintiffs Blank's and Dixson's claims sounding in fraud survive because they are based on conduct that constitutes active fraud based on a general duty not to deceive, rather than mere failure to warn. Specifically, Plaintiffs allege that Rust-Oleum made numerous material representations regarding Restore which are false and misleading, *see e.g.* CAC at ¶341 (listing misrepresentations), and "failed to disclose that the product does not work as marketed and degrades after application." *Id.* at ¶347 (listing material facts that Rust-Oleum knowingly and

intentionally concealed). Indeed, Plaintiffs Blank's and Dixson's fraud claims are predicated on Rust-Oleum's campaign of deception and misstating the characteristics of Restore and not grounded upon allegations that amount to mere failure to warn. Rust-Oleum's motion should, accordingly, be denied. *See Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 348–49 (6th Cir. 2000) (fraudulent misrepresentation and concealment claims preempted only to the extent that they are based on a duty to issue additional or clearer warnings but "fraud claims premised on a general 'duty not to deceive' rather than a 'duty based on smoking and health' are not preempted by the Act."); *Hogue v. Pfizer, Inc.*, 893 F. Supp. 2d 914, 919 (S.D. Ohio 2012) (applying same reasoning but holding that because substance of claims was "unmistakable failure to warn" they were abrogated).

OCSPA claims that are "primarily rooted in product liability claims" may be preempted by the OPLA. Def.'s Brf. at 69 (*citing Hendricks v. Pharmacia Corp.*, No. 2:12-cv-00613, 2014 WL 2515478, *5 (S.D. Ohio)). However, Plaintiffs' claims are not so rooted. The OPLA defines "representation" as "an express representation of a material fact concerning the character, quality, or safety of a product." Ohio Rev.Code § 2307.71(N). Plaintiffs' OCSPA claim is premised upon conduct beyond that encompassed by the OPLA—namely, the omission of material information about Restore that Rust-Oleum was legally obligated to disclose, the failure to inform consumers that the Restore would prematurely fail shortly after application, and the wrongful refusal to pay for resulting expenses. *See* CAC at ¶317. Only if Plaintiffs were seeking "identical compensatory and injunctive relief[ would] their claim[s] under the OCSPA [be] precluded." *Schnell v. Am. Home Products Corp.*, No. 3:00 CV 7228, 2000 WL 35777837, at *2 (N.D. Ohio July 11, 2000). Where, as here, that is not the case, dismissal is improper.

Moreover, Rust-Oleum asks the Court to dismiss Plaintiffs' OCSPA claim to the extent Plaintiffs decks are "property other than the product in question" within the meaning of Ohio Rev. Code.§ 2307.71(A)(13). *See* Def. Brief at 69. However, Plaintiffs seek "monetary costs of purchasing, removing and replacing Restore" as well as "other consequential and incidental damages resulting from Restore's propensity to prematurely fail." CAC at ¶320. Thus, inasmuch as Rust-Oleum's motion is limited to damages associated with physical damage to

Plaintiffs' decks, it does not encompass the whole of Plaintiffs' claims for relief and, on this basis alone, should be denied.

## VI. THE COURT SHOULD NOT DECIDE PLAINTIFFS' ABILITY TO PURSUE NATIONWIDE CLAIMS AT THE PLEADINGS STAGE.

Rust-Oleum's next attack against Plaintiffs' complaint concerns what it dubs "the 24 no-plaintiff states." Def. Brief at 70. Plaintiffs have alleged that the state laws are substantially similar enough to allow the named Plaintiffs to represent putative class members from other states. CAC ¶¶ 113 ("Plaintiffs intend to seek to apply the law of the appropriate similar states, with appropriate grouping of certain states with similar laws.").

Rust-Oleum prematurely asks the Court to dismiss causes of action based upon these states' laws at the pleadings stage of litigation. Def. Brief at 70-73. Oddly, Rust-Oleum frames its argument as a challenge to the extraterritorial application of the laws of the "the 24 no-plaintiff states" to the named Plaintiffs, themselves. *Id*. at 70. But that argument ignores *why* Plaintiffs have included those states' laws:

> Consistent with applicable case law and constitutional standards, Plaintiffs intend to present to the Court at the class certification proceeding, a trial plan and overall proposed method of efficiently presenting to the trier of fact the common law, statutory, and declaratory claims presented in this action. For purposes of the complaint, Plaintiffs note that declaratory relief is appropriate for the entire class and that *certain other claims may be grouped together for the trier of fact to resolve. As the case was sent to this Court as an MDL proceeding, Plaintiffs intend to seek to apply the law of the appropriate similar states, with appropriate grouping of certain states with similar laws*. Certain states with "unique" issues and with limited number of class Plaintiffs may not be included in the Plaintiffs' motion for class certification. Plaintiffs believe that the majority of class members will be able to proceed with trial in this Court on a class wide basis, with the ultimate trial plan requiring information currently in the exclusive possession of Defendant and third parties.

CAC ¶ 113.

Plaintiffs do not ask the Court to apply the laws of these 24 states to their experiences[48]; rather, Plaintiffs anticipate grouping the laws of various similar states into classes or subclasses for other similarly-situated individuals at the class certification stage.

Rust-Oleum conflates standing with Rule 23, engaging in a thinly-veiled class certification attack, when the sufficiency of class allegations should be confronted at the certification stage, *not* on a motion to dismiss. *See e.g. Butler v. Sears, Roebuck & Co.* ("*Butler II*"), 727 F.3d 796, 798-99 (7th Cir. 2013). In Rust-Oleum's previous motion to dismiss, it complained that Plaintiffs' nation-wide class allegations cast too broad a net, and that a nationwide class would be unmanageable because of differences in state laws, or that no single state law applied. Dkt. 30 at 20, 31-35.[49] When Plaintiffs identified the state laws they would proceed upon, along with a preliminary trial plan, Rust-Oleum pivoted to this new argument— that Plaintiffs could not group together similar states and represent absent class members with similar state laws. Def. Brief at 70. Both of these arguments are premature. Indeed, after discovery is allowed to proceed and the parties develop a record on class certification, the Court may reach the same conclusion as other courts, including those sitting in this District, that have *certified* claims based upon materially similar state laws on behalf of multi-state classes. *See, e.g., Saltzman v. Pella Corp*, 257 F.R.D. 471, 480 (N.D. Ill. 2009), *aff'd*, 606 F.3d 391 (7th Cir. 2010) ("courts have permitted named plaintiffs to represent class members from other states in which the representatives did not reside or make purchases."); *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 803 N.E.2d 1020, 1030 (Ill. App. Ct. 2004) ("that some class members

---

[48] Plaintiffs also note that engaging in a choice of law analysis at this point of the litigation would be premature. *See Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 750 (7th Cir. 2006) ("choice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at [any] early stage in the litigation"); *Cosmetique, Inc. v. ValueClick, Inc*., 753 F. Supp. 2d 716, 723 (N.D. Ill. 2010) ("whether there is other evidence to show that the disputed transaction occurred primarily and substantially in Illinois can be properly assessed at the summary judgment stage, but it is premature to engage in such a factual analysis at the pleadings stage.").

[49] It is worth noting that courts routinely find even *nationwide* class allegations for claims of unjust enrichment, implied warranty of merchantability and statutory consumer fraud sufficient to pass muster. *See Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847 (N.D. Ill. 2006).

reside outside Illinois or that the laws of different states may apply to the transactions at issue does not ordinarily prevent certification of the class").

The dispositive question is whether the factual and legal differences among the class members will make a multi-class or group of subclasses unmanageable. This determination is case-specific, and can only be made after such differences are sufficiently developed through the process of discovery and certainly not at this early stage of litigation. *See Purcell & Wardrope Chartered v. Hertz Corp.*, 530 N.E.2d 994, 998 (Ill. App. Ct. 1988). As the court aptly noted in *Purcell*:

> [E]ven questions…concerning whether the laws of different states apply to the various transactions will not ordinarily prevent the certification of a class action proceeding. *A class action may, nevertheless, still be maintained, despite these conflicting or differing state laws, and the court may simply choose to divide the class into subclasses.*

*Id.* (internal citations omitted).

Mere variations in state law are not enough to overcome certification of a multi-state warranty (or contract) class if the facts make clear that the variation is immaterial. *See e.g. In re ConAgra Foods Inc.*, 908 F. Supp. 2d at 1109 (allowing multi-state warranty class, as plaintiffs adequately alleged element of reliance irrespective of any differences among the states with regard to that element). *See also Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 431 (N.D. Ill. 2007) (certification of breach of contract action finding that the "relevant states' breach of contract laws [were] sufficiently similar to allow for certification"), *modified on other grounds*, 242 F.R.D. 434. Put simply, it is too early to engage in a process of determining whether sub-classes will be appropriate, or if Plaintiffs' claims can be grouped together with the claims from the class members of other states. Rust-Oleum will have ample opportunity to defend this position at a more appropriate stage in the proceedings. *See Purcell*, 530 N.E.2d at 998. If genuine differences become apparent on class certification, the Court can always certify state sub-classes on Plaintiffs' claims as it sees fit. *Id.*

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Rust-Oleum's motion to dismiss in its entirety. Should the Court find that any of the allegations are lacking, however, Plaintiffs request leave to amend.

Respectfully submitted,

Date: November 16, 2015
*s/ William M. Audet*
William M. Audet
Joshua C. Ezrin
Theodore H. Chase
AUDET & PARTNERS, LLP
221 Main St., Ste. 1460
San Francisco, California 94105
Tel. (415)568-2555
waudet@audetlaw.com
jezrin@audetlaw.com
tchase@audetlaw.com

*s/ Katrina Carroll*
Katrina Carroll
Kyle A. Shamberg
LITE DePALMA GREENBERG LLC
211 W. Wacker Drive, Suite 500
Chicago, Illinois 60606
Tel. (312) 750-1265
kcarroll@litedepalma.com
kshamberg@litedepalma.com

**Interim Co-Lead Counsel for Plaintiffs**

*Additional Plaintiffs' Counsel:*

Daniel Levin
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
dlevin@lfsblaw.com

Kevin Daniel Bloom
Bloom and Bloom, P.C
530 Blooming Grove Turnpike

P.O. Box 4323
New Windsor, NY 12550
Tel: (845)-561-6920
Kbloom@bloombloompc.com

Robert N. Isseks, Esq.
6 North Street
Middletown, NY 10940
Tel: (845)-344-4322
Isseks@isseksandsmith.com

Charles LaDuca
Brendan Thompson
Cuneo Gilbert and LaDuca LLP
8120 Woodmont Ave Ste. 810
Bethesda, MD 20814
Tel: (202) 789-3960
charles@cuneolaw.com
brendant@cuneolaw.com

Joel R. Rhine
Rhine Law Firm, P.C.
1612 Military Cutoff Road Suite 300
Wilmington, NC 28403
Tel: (910) 777-7651
jrr@rhinelawfirm.com

Joseph G. Sauder
Chimicles & Tikellis LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Tel: (610) 645-4717
JosephSauder@chimicles.com

Bryan L. Clobes
Cafferty Clobes Meriwether & Sprengel LLP
1101 Market Street
Philadelphia, PA 19107
Tel: (215) 864-2800
bclobes@caffertyclobes.com

Edward Anthony Wallace
Amy Elisabeth Keller
Wexler Wallace LLP
55 West Monroe, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
eaw@wexlerwallace.com
aek@wexlerwallace.com

Jonathan Shub
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100

Philadelphia, PA 19107
Tel: (215) 238-1700
info@kohnswift.com

Robert K. Shelquist
Lockridge Grindal Nauen PLLP
100 Washington Ave., S., Suite 2200
Minneapolis, MN 55401-2179
Tel: (612) 339-6900
rkshelquist@locklaw.com

Eric Gibbs
Gibbs Law Group LLP
One Kaiser Plaza, 11th Floor
Oakland, CA 94612
Tel: (510) 350-9710
ehg@classlawgroup.com

Richard J. Burke
Quantum Legal LLC
1010 Market Street
Suite 1310
St. Louis, MO St. Louis
Tel: (847) 433-4500, Ext 2603
richard@Qulegal.com

# Exhibit A

## COUNT I
### Claim for Declaratory and Injunctive and/or Equitable Relief

| Contested Issues | Factual Support | Legal Authority |
|---|---|---|
| **(i) Appropriateness** | Relief sought is appropriate because it is more broad and specific than that sought in the prayer for relief. *See* Consolidated Amended Complaint ("CAC") ¶ 276. *See also* Plaintiffs' Opposition to Motion to Dismiss ("Opp. Brief") § III. | Rule 23 explicitly allows for the declaratory and injunctive remedies sought by Plaintiffs so long as they are appropriate for the class as a whole and final.[1] |
| **(ii) Not Derivative Nor Overlapping** | Count I is neither derivative or nor overlapping with the Prayer for Relief. CAC ¶ 276. *Contra* CAC ¶ 352. *See also* Opp. Brief § III. | "Existence of another adequate remedy does not preclude a judgment for declaratory relief…" Fed. R. Civ. P. 57.[2] |

---

[1] *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011) ("Subsumed in [Rule 23(b)(2)] are at least two independent requirements: The contemplated equitable relief must be (1) 'appropriate respecting the class as a whole' and (2) 'final.'"); *Jamie S. v. Milwaukee Pub. Schs*, 668 F.3d 481, 499 (7th Cir. 2012) ("The injunctive or declaratory relief sought must be 'final' to 'the class as a whole.'"); *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (U.S. 2011) (Rule 23(b)2 "applies only to requests for such injunctive or declaratory relief…")

[2] *See also StreamCast Networks, Inc. v. IBIS LLC*, 2006 U.S. Dist. LEXIS 97607, at *9-14 (C.D. Cal. 2006) ("Declaratory relief is appropriate when the other claims will not settle all of the issues concerning which plaintiff seeks declaratory relief."); *Lunding v. Biocatalyst Res., Inc.*, 2003 U.S. Dist. LEXIS 25412 (N.D. Ill. 2003) (denying motion to dismiss, the court disagreed with defendant's argument that declaratory relief was redundant because a declaration might induce certain desirable behavior).

## COUNT II
## Violation of Nationwide Magnuson-Moss Warranty Act ("MMWA")

| CONTESTED ISSUES | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| (i) **Private Right of Action under MMWA § 2310(b)** | Plaintiffs harmed by Defendant's defective products and seek damages and other equitable relief under the MMWA. *See* CAC ¶ 282-283. *See also* Opp. Brief § I(F). | • **Statutory Private Right of Action Allowed**. The MMWA explicitly provides for a statutory private right of action when a consumer suffers damages as a result of a defendant's actions.[3]<br><br>• **Defendant Misconstrues Cited Case Law**. Defendant's legal authorities are (i) not on point because they failed to discuss MMWA's private right of action;[4] (ii) misconstrued beyond its narrow scope;[5] and/or (iii) related to personal injuries and thus not applicable to the instant case.[6] |
| (ii) **Count II Predicated Upon the MMWA (not derivative of state warranty law)** | Plaintiffs' claims under the MMWA are explicitly predicated upon the Act itself. CAC ¶¶ 275-280, 283-284. *See also* Opp. Brief § I(F). | • **Claims can be Predicated Directly upon the Act**. MMWA claims may be predicated upon the Act itself. The *Schimmer* case, cited by Defendant held "[the MMWA] allows a consumer to bring a suit where he claims to be damaged by the failure of [the defendant] to comply with any obligation under this Act *or* under a written warranty, implied warranty, or service contract." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. Ill. 2004) (*quoting Voelker v. Porsche Cars N. Am., Inc*., 353 F.3d 516, 525 (7th Cir. 2003) (emphasis added). |

---

[3] 15 U.S.C. § 2310(d)(1) ("[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief.").

[4] *Int'l Tax Advisors, Inc. v. Tax Law Assocs., LLC*, 2011 U.S. Dist. LEXIS 15018 (N.D. Ill. 2011).

[5] *McGarvey v. Penske Auto. Group, Inc.*, 2011 U.S. Dist. LEXIS 35408 (D.N.J. 2011).

[6] *Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1068 (5th Cir. 1984).

## COUNT II (Cont'd)
### Violation of Nationwide Magnuson-Moss Warranty Act ("MMWA")

| CONTESTED ISSUES | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| **(iii) Exclusive Remedy Clause does not Bar MMWA Claims** | The "exclusive remedy" offered by Defendant does not bar MMWA claims because it fails of its essential purpose. CAC ¶ 297; *see also* Opp. Brief §§ I(F), I(A)(1). | • **Question of Fact Which Cannot be Decided on Motion to Dismiss**. The examination of an exclusive remedy clause is a highly fact intensive question, inappropriate even for a motion for summary judgment. *See Cole Energy Dev. Co. v. Ingersoll-Rand Co.*, 678 F. Supp. 208, 210 (C.D. Ill. 1988).[7]<br><br>• **Failure of Essential Purpose of Exclusive Remedy Clause**. Where a "limited warranty fails of its essential purpose, the exclusion of consequential damages is, perforce, unconscionable, [and] has been foreclosed by *Smith v. Navistar Int'l Transp. Corp.*, 957 F.2d 1439 (7th Cir. 1992)." *Midwest Builder Distrib. v. Triangle Pac. Corp.*, 1998 U.S. Dist. LEXIS 9092 * 11 (N.D. Ill. June 10, 1998). |

---

[7] Other jurisdictions have explicitly stated that the determination of whether an exclusive remedy clause fails its essential purpose is generally a fact-based question proper for a jury. *See Demorato v. Carver Boat Corp.*, 304 Fed. Appx. 100, 102 (3d Cir. 2008) (citing *Roneker v. Kenworth Truck Company*, 944 F. Supp. 179 (W.D.N.Y. 1996)).

## COUNT III
### Breach of Express Warranty

| CONTESTED ELEMENTS[8] | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| **(i) Privity** | Privity exists because (1) Plaintiffs had sufficient dealings with Defendant and/or its agents; (2) Plaintiffs are third-party beneficiaries; and/or, (3) Defendant is estopped from asserting privity to limit claims. *See* CAC ¶¶ 115, 309. *See also* Plaintiffs' Opposition to Motion to Dismiss ("Opp. Brief") § I(D). | **Question of Fact Which Cannot be Decided on a Motion to Dismiss**. A motion to dismiss at this stage is improper because the question of agency is one of fact.[9] <br><br> **Privity Not Needed Or Exception Applies**. Of the seven (7) states at issue, privity either is not required or an exception applies:[10] <br><br> • **Alabama**. *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1338-39 (11th Cir. Ala. 2015) (holding that the complaint adequately states an express-warranty claim based on it running in favor of a remote purchaser/third-party beneficiary). <br> • **Delaware**. *Cline v. Prowler Industries of Maryland, Inc.*, 418 A.2d 968 (Del. 1980) ("In Delaware, privity has largely been abolished.") <br> • **Florida**. *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1389 (S.D. Fla. 2014) (concluding that a breach of express warranty claim survives under Florida law despite the absence of privity). <br> • **Indiana**. *Deckard v. GMC*, 307 F.3d 556, 561 (7th Cir. 2002) (recognizing third-party beneficiary contracts under Indiana law). <br> • **Maryland**. *Sherwood Brands, Inc. v. Levie*, 2006 U.S. Dist. LEXIS 13099 (D. Md. 2006) (third party beneficiary theory is an exception to the privity rule of |

---

[8] Breach of express warranty, generally, includes the essential elements of: (i) sale; (ii) promise; (iii) basis of bargain; (iv) breach; and (v) injury. *See* Uniform Commercial Code ("UCC") § 2-313 cmt. 3 (Every state in which Plaintiffs reside have adopted the UCC); *see also* Consolidated Amended Complaint ("CAC") ¶¶ 55-56, 117-268 (sale), ¶ 286 (promise), ¶ 287 (basis of bargain), ¶ 288 (breach), ¶ 292 (injury). Only the contested elements are displayed in this Exhibit. Defendant argues that seven (7) states (AL, DE, FL, IN, MD, NY and TN) require privity in a breach of express warranty claim. *See* Defendant's Motion to Dismiss ("Def. Brief") at 33-34.

[9] *See e.g., Kaplan v. Shure Bros.*, 153 F.3d 413, 419 (7th Cir. 1998) (breach of contract claim sufficient where allegations put defendant on notice of claim of privity); *Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1024 (N.D. Ill. 2008) ("whether an agency relationship has been established … is one of fact which is not properly resolved on a motion to dismiss."); *See also* Opp. Brief at 31 n.25.

[10] *See* Opp. Brief at 33 n.28.

## COUNT III (Cont'd)
### Breach of Express Warranty

| CONTESTED ELEMENTS[8] | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| | | contracts).<br>• **New York**. *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283 (S.D.N.Y. 2015) (plaintiff need not be in privity to bring express warranty claims under New York law).<br>• **Tennessee**. *Owner-Operator Indep. Drivers Ass'n v. Concord Efs*, 59 S.W.3d 63, 68 (Tenn. 2001) (holding by the Tennessee Supreme Court that third parties may enforce a contract if they are intended beneficiaries). |
| **(ii) Reliance**[11] | Plaintiffs reasonably relied upon the warranties. CAC ¶¶ 93, 329, 337, 345, 350-351; *see generally id.* at ¶¶ 120-266; *see also* Opp. Brief § I(E). | • **Reliance Presumed**. Reliance is subsumed into the "basis of bargain" element and presumed present. *In re Caterpillar, Inc., C13 & C15 Engine Products Liab. Litig.*, 2015 WL 4591236, at *25-26 (D.N.J. 2015) (slip copy) ("[C]ourts have found the basis of the bargain or reliance requirement satisfied because the express warranties at issue were part of the purchase agreement"); *see also* Opp. Brief at 34 n.29.<br><br>• **Reliance Not Essential**. Reliance is not an essential element of express warranty claims in CA, DE, MD, MN, NY, PA and WA. *See* Opp. Brief at 32-33.<br><br>• **Plaintiffs' Allegations of Reliance Sufficient**. Even if reliance is required, Plaintiffs have sufficiently pled reliance. *In re Horizon Organic Milk Plus DHA Omega-3 Marketing & Sales Practices Litig.*, 955 F. Supp. 2d 1311 (S.D. Fla. 2013) (holding that general allegation of reliance on ads and labels plausibly alleged reliance for purposes of the laws of states in which "reliance is an essential element"); *see also* Opp. Brief at 34. |

---

[11] Defendant argues that sixteen (16) states (CA, DE, FL, ME, MD, MA, MN, NE, NY, NC, OH, PA, RI, TN, TX and WA) require reliance by buyer in a breach of express warranty claim. *See* Def. Brief at 35-37.

## COUNT III (Cont'd)
### Breach of Express Warranty

| CONTESTED ELEMENTS[8] | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| **(iii) Notice[12]** | Plaintiffs incurred damages and promptly notified Defendant of the product's premature failure. CAC ¶¶ 94, 97, 279, 281, 290, 300, 311, 322, 338; *see generally id.* at ¶¶ 118-258; *see also* Opp. Brief § I(B). | • **Pre-suit Notice Requirements Do Not Warrant Dismissal of Claims**. The applicable law provides that (1) pre-suit notice not strictly required[13]; (2) filing of complaint provides sufficient notice[14]; (3) notice challenges are questions of fact not of law[15]; and (4) leave to amend freely granted.[16] *See* Opp. Brief at 22-26. |

---

[12] Defendant argues that pre-suit notice bars claims in fifteen (15) states (AL, CO, GA, ID, IL, ME, MN, NJ, NY, NC, RI, TN, TX, VA and WA).
[13] CO, GA, MN, NC, NJ, VA and WA. *See* Opp. Brief § I(B).
[14] RI. *Id.*
[15] AL, CO, ID, IL, MN, NJ, NY, RI, VA and WA. *Id.*
[16] NY. *Id.*

## COUNT IV-V
## Breach of Implied Warranty

**COUNT IV** On Behalf of Residents of the Following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; Washington; West Virginia; Wyoming.

**COUNT V** On Behalf of Residents of the Following States: Alabama; Arizona; Georgia; Idaho; Illinois; Iowa; Kentucky; New York; North Carolina; Oregon; Tennessee; Wisconsin.

| CONTESTED ELEMENTS | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| **(i) Particular Purpose**[17] | Defendant's product has an ordinary purpose to paint/stain decks (CAC ¶ 56); it also has a particular purpose to repair/protect decks and extend usefulness for a lifetime. *See* CAC ¶¶ 3, 61, 67, 116. *See also* Opp. Brief § I(C). | • Particular purpose of a product need not be distinct from its ordinary purpose.[18]<br>• Whether Plaintiffs' use of the product fits into its ordinary purpose is a question of fact, not of law, which is inappropriate to decide at the dismissal stage.[19] |
| **(ii) Privity**[20] | Privity exists because (1) plaintiffs had sufficient dealings with | • Plaintiffs adequately pled privity exceptions; i.e., sufficient dealings with Defendant's agents, which is a question of fact not suitable for |

---

[17] This contested element is only relevant in so far as it relates to implied warranty of fitness for a particular purpose; all other implied warranties are unaffected.

[18] *Van Wyk v. Norden Labs., Inc.*, 345 N.W.2d 81, 85 (Iowa 1984) ("[I]n some cases a buyer's particular purpose will be the same as the ordinary purpose for which a product is furnished. In that case, both types of implied warranty may arise."); *See also Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 301 Ark. 436, 443 (1990); *Soaper v. Hope Indus., Inc*., 309 S.C. 438, 424 (1992).

[19] *Medallion Products, Inc. v. H.C.T.V., Inc.*, 2007 WL 1022010, at *3 (N.D. Ill. 2007) ("[that]…would require the resolution of factual issues, something not considered in ruling on a motion to dismiss.")

[20] Defendant argues that twelve (12) states (AL, CA, FL, GA, ID, IL, IN, NY, NC, OH, TN and WA) require privity in an implied warranty claim. *See* Def. Brief at 32. With respect to Count IV of the CAC, only privity requirements in five (5) states will be addressed (CA, FL, IN, OH and WA). The other seven (7) states are addressed in Count V.

## COUNT IV-V (Cont'd)
## Breach of Implied Warranty

**COUNT IV** On Behalf of Residents of the Following States: Alaska; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Mississippi; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; North Dakota; Ohio; Oklahoma; Pennsylvania; Rhode Island; South Carolina; South Dakota; Texas; Utah; Vermont; Virginia; Washington; West Virginia; Wyoming.

**COUNT V** On Behalf of Residents of the Following States: Alabama; Arizona; Georgia; Idaho; Illinois; Iowa; Kentucky; New York; North Carolina; Oregon; Tennessee; Wisconsin.

| CONTESTED ELEMENTS | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| | Defendant and/or its agents; (2) Plaintiffs are the third-party beneficiaries; or, (3) Defendant is estopped from using privity to limit claims. *See* CAC ¶¶ 115, 309. *See also* Opp. Brief § I(D). | dismissal.[21]  • Privity Does Not Apply and/or Exceptions Applicable. *See e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983-85 (N.D. Cal. 2014) (finding third-party beneficiary still viable in California and North Carolina; also citing another California exception – reliance upon labels or ads).[22] |
| **(iii) Notice** | Plaintiffs suffered damages and Defendant put on notice of product failure. CAC ¶¶ 94, 97, 279, 281, 290, 300, 311, 322, 338; *see generally id.* at ¶¶ 118-258; *see also* Opp. Brief § I(B). | **Pre-suit Notice Requirements do not Warrant Dismissal of Claims**. *See supra*, Exhibit A [This document]("Ex. A"), Count III: Breach of Express Warranty, at 6. |

---

[21] *See* Opp. Brief at 28.
[22] *See* Opp. Brief at 29 n.22, 32-33.

## COUNT VI-VII
## Violation of State Consumer Laws & State False Advertising Laws

| Contested Issues | Factual Support | Legal Authority |
|---|---|---|
| **(i) Representations & Omissions** | Defendant made product representations ("repairs deckings," "repairs concrete," "revives wood & broom swept concrete," etc.) that Plaintiffs saw and that future consumers will continue to see. *See* CAC ¶¶ 60, 65-67, 286. *See also* Opp. Brief § II(A)(1). | • **Beyond Puffery**. Defendant's statements are specific representations of fact, not puffery, and form the basis of a deceptive trade practice claim.[23] <br><br> • **Predictions are Actionable**. Actionable predictions exist if they are taken into consideration by a reasonable consumer prior to purchase.[24] <br><br> • **Omissions Actionable**. Defendant is duty-bound to disclose material omissions. *See infra*, Ex. A, Count X: Fraudulent Concealment, at 17. These omissions are actionable. *See* Opp. Brief § I(D). |
| **(ii) Reliance & Causation** | Plaintiffs reasonably relied upon representations made by Defendants which caused the damages suffered. | • **Reliance Not Required**. Reliance need not be demonstrated in Illinois. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 599 (Ill. 1996). <br><br> • **Reliance Presumed**. In cases involving deceptive or fraudulent product labeling, courts reject 9(b) challenges couched as reliance |

---

[23] *Giles v. Inflatable Store, Inc.*, 2009 U.S. Dist. LEXIS 28382, at *7 (D. Colo. 2009); *see also Zapka v. Coca-Cola Co.*, 2000 U.S. Dist. LEXIS 8733, at *6-7 (N.D. Ill. 2000) (declining to dismiss consumer fraud claim based on likelihood of future injury due to potential future reoccurrence of defendant's omissions).

[24] *See, e.g., Fisher v. Mr. Harold's Hair Lab, Inc*., 215 Kan. 515, 525-526 (Kan. 1974) (actionable fraud found where seller made prediction of returns totaling at least $25,000); *Miles Homes Div., Insilco Corp. v. Smith*, 790 S.W.2d 382, 384 (Tex. App. Beaumont 1990) (predictions of monthly payments); *Unified School Dist. v. Celotex Corp*., 6 Kan. App. 2d 346, 358-359 (Kan. Ct. App. 1981) (predictions of product longevity).

## COUNT VI-VII (Cont'd)
### Violation of State Consumer Laws & State False Advertising Laws

| CONTESTED ISSUES | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| | CAC ¶¶ 61-62; *see generally, id.* at ¶¶ 93, 120-266, 329, 337, 345, 350-351; *see also* Opp. Brief § II(A)(2). | arguments.[25]<br><br>• **Reliance May Be Pleaded Pled**. Plaintiffs' state of mind in relying on Defendant's product may be pleaded generally. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).<br><br>• **Causation Turns on Whether Concealment Occurred**. *See Waterford Prods. Co. v. Victor*, 1999 Ohio App. LEXIS 6121, *20 (Ohio Ct. App., 1999); *see also Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 (N.D. Ohio 2012); *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 96 (Cal. App. Ct. 2001). |
| **(iii) Defendant's Knowledge** | Defendant possessed knowledge of its product's defect(s) at the time of sale. *See* CAC ¶¶ 82-87; *see generally id.* at ¶¶ 120-266; *see also* Opp. Brief § II(A)(3). | • **Pleadings Sufficiently Detailed to Plausibly Show Knowledge**. *Wafra Leasing Corp. v. Prime Capital Corp.*, 247 F. Supp. 2d 987 (N.D. Ill. 2002) (St. Eve, J.) (holding that allegations defendants "knew or, in the alternative, should have known" about a fraud scheme, taken together with the other allegations of the complaint and relevant exhibits, satisfied the pleading requirements).<br><br>• **Plaintiffs assert that knowledge may be generally alleged[26]** |

---

[25] *See e.g.*, *In re ConAgra Foods, Inc.*, 908 F Supp. 2d 1090, 1100 (C.D. Cal. 2012) (plaintiffs' complaint satisfied 9(b) where the representation at issue "appeared on product labels throughout the class period"); *Von Koenig v. Snapple Bev. Corp.*, 713 F.Supp.2d 1066, 1077 (E.D. Cal. 2010) (holding that Rule 9(b) satisfied where plaintiff alleged that "between March 4, 2005 and March 4, 2009," defendant's product label contained alleged misrepresentations); *Clancy v. The Bromley Tea Co.*, 2013 U.S. Dist. LEXIS 112722, 2013 WL 4081632, at *10-11 (N.D. Cal. 2013) (Rule 9(b) satisfied in labeling case); *Kosta v. Del Monte Corp.*, 2013 U.S. Dist. LEXIS 69319, at *14-15 (N.D. Cal. 2013) (same).

<u>COUNT VI-VII</u> (Cont'd)
**Violation of State Consumer Laws & State False Advertising Laws**

| CONTESTED ISSUES | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| | | • **Even if heightened pleading standards applied, Plaintiffs' allegations are sufficiently detailed**[27] |
| **(iv) Massachusetts's Notice Requirement & New Jersey's Quantify Damage Requirement** | MA's notice requirement inapplicable (CAC ¶ 52), and NJ's quantifying requirement satisfied. *Id.* at ¶¶ 199, 202. *See also* Opp. Brief § II(B). | • **Defendant Incorporated/Headquartered in Illinois**. Mass. Gen. Laws. ch. 93A, § 9(3) states that "requirements of [notice] shall not apply if … the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth…" <br><br> • **Quantifying Damages Subject to Expert Testimony**. *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 249 (N.J. 2005) |

---

[26] *See Coss v. Playtex Products*, 2009 WL 2245657, at *5 (N.D. Ill. 2009) ("[u]nder Rule 9(b), knowledge can be pled generally."); *See also*, *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)); *Almaraz v. Haleas*, 2009 U.S. Dist. LEXIS 131290, at *20 (N.D. Ill. 2009) ("Knowledge and intent, in particular, need not be covered in detail") (citing *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("9(b) provides that '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.' It is enough to lay out a plausible grievance")).

[27] *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 528 (7th Cir. Ill. 2015) ("plaintiffs' pleading burden should be commensurate with the amount of information available to them"); *see also*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("allegations of consumer complaints posted on a defendant's own customer support website *may be sufficient* to raise a reasonable inference that the defendant knew of a product defect.") (Emphasis added).

## COUNT VIII
### Violation of California Consumer Legal Remedies Act ("CLRA")

| CONTESTED ELEMENTS | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| **(i)  Representations** | Defendant made product representations and omissions regarding the likelihood of premature failure. *See* CAC ¶¶ 60, 65-67, 286, 335. *See also* Opp. Brief § II(A)(1). | • **Defendant's Representations & Omissions Violated the CLRA**. Conduct that is "likely to mislead a reasonable consumer" violates the CLRA. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140-1141 (9th Cir. Cal. 2012) (citing *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 680 (Cal. Ct. App. 2006)). |
| **(ii)  Reliance & Causation** | Plaintiffs reasonably relied upon Defendant's representations which caused the damages suffered. CAC ¶¶ 61-62; *see generally, id.* at ¶¶ 93, 120-266, 329, 337, 345, 350-351; *see also* Opp. Brief § II(A)(2). | • **Reliance Adequately Pled**. Under the CLRA, Plaintiffs need only plead, and have pled, (1) what the representations were and (2) but for the misrepresentation, they would not have purchased the product sold.[28]<br><br>• **Causation Turns on Whether Concealment Occurred**. *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 96 (Cal. App. Ct. 2001). |
| **(iii)  Defendant's Knowledge** | Defendant possessed knowledge of its product's defect(s) at the | • **Pleadings Sufficiently Detailed to Plausibly Show Knowledge**. *See supra*, Ex. A, Count VI-VII: Violation of State Consumer Laws and State False Advertising Laws, at 10-11. |

---

[28] *See In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1108 (C.D. Cal. 2012) ("As noted, the complaint alleges what plaintiffs believed the representation meant … [c]oupled with the plaintiffs' explicit allegation that they would not have purchased [product] absent [defendant's] [mis]representation … plaintiffs have adequately alleged reliance.")

## COUNT VIII (Cont'd)
## Violation of California Consumer Legal Remedies Act ("CLRA")

| CONTESTED ELEMENTS | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| | time of sale. *See* CAC ¶¶ 82-87; *see generally id.* at ¶¶ 120-266; *see also* Opp. Brief § II(A)(3). | |

## COUNT IX
### Negligent Misrepresentation

| CONTESTED ISSUES | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| **(i) Reliance & Causation** | Plaintiffs' reliance upon Defendant's misrepresentations caused the harm. CAC ¶¶ 61-62; *see generally, id.* at ¶¶ 93, 120-266, 329, 337, 345, 350-351; *see also* Opp. Brief §§ II(A)(2), II(C). | • **Reliance & Causation Adequately Pled**. *See supra*, Ex. A, Count VI-VII: Violation of State Consumer Laws and State False Advertising Laws, at 10-11. |
| **(ii) Representations** | Defendant made product representations ("repairs deckings," "repairs concrete," "revives wood & broom swept concrete," etc.) *See* CAC ¶¶ 60, 65-67, 286, 335. *See also* Opp. Brief §§ II(A)(1), II(C). | • **Factual Representations**. The misrepresentations made by Defendant went beyond mere puffery,[29] and were also not simply predictions[30] of performance. *See supra*, Ex. A, Count VI-VII: Violation of State Consumer Laws and State False Advertising Laws, at 10-11. |
| **(iii) Omissions** | Defendant failed to disclose that its product prematurely fails. CAC ¶¶ 339-345. *See also* Opp. Brief §§ II(A)(1), II(C). | • **Omissions Appropriate**. Defendant possessed a duty to disclose material omissions, and their failure to do so is actionable. *See* Opp. Brief § II(D).<br>• **Knowledge of Facts Omitted**. *See supra*, Ex. A, Count VI-VII: Violation of State Consumer Laws and State False Advertising |

[29] *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *11 (N.D. Cal. 2009) ("The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions."); *See also In re Milo's Dog Treats Consol. Cases*, 9 F. Supp. 3d 523, 532 (W.D. Pa. 2014) (holding that "verifiable facts" … sufficiently specific to induce customer reliance do not constitute "mere puffery.")
[30] *See* Opp. Brief at 55 n.40.

## COUNT IX (Cont'd)
### Negligent Misrepresentation

| CONTESTED ISSUES | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| | | Laws, at 10-11. <br> • **Duty to Disclose Omitted Facts**. *See infra*, Ex. A, Count X: Fraudulent Concealment, at 17-18. |
| **(iv) State-Specific Grounds Do Not Bar Claims** | *See* Opp. Brief § II(C). | • **Business Transaction Relationship Misconstrued**. Defendant misinterprets the business transaction requirement.[31] *G.A.W., III v. D.M.W.*, 596 N.W.2d 284, 290 (Minn. Ct. App. 1999) (explaining the business transaction requirement). <br> • **Minnesota**. Minnesota's requirement that misrepresentations be "intentional and/or reckless" has been met. *See* CAC ¶¶ 76, 82, 97, 343. |

---

[31] **Cases Cited by Defendant and Distinguished As Follows:** *Sampson v. MacDougall*, 802 N.E.2d 602, 608 (2004)("Our cases have not recognized a cause of action for negligent misrepresentation based on comments made during a *purely social interaction*, and we decline to do so now.") (Emphasis added); *Travelers Commercial Cas. Co. v. Sielfleisch Roofing, Inc.*, 2014 WL 636204, at *9 (E.D. Mo. 2014) (statement concerning on-going litigation is not a business transaction for purposes of negligent misrepresentation); *Swanson v. Ptak*, 682 N.W.2d 225, 228 (2004) (estate personal representative did not have a duty in his individual capacity to advise heirs on division of estate, therefore, was not a business transaction); *Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008) (plaintiff used the allege misrepresentation in his decision to engage in a personal encounter with another member); *Allen v. Steele*, 252 P.3d 476, 483 (Colo. 2011) ("First, the requirement that the misrepresentation was made 'for the guidance of others in their business transactions'"); *Hodge v. Craig*, 382 S.W.3d 325, 346 (Tenn. 2012) (negligent misrepresentation claim does not "apply to private communications between a woman and a man regarding the paternity of a child.").

## COUNT IX (Cont'd)
### Negligent Misrepresentation

| CONTESTED ISSUES | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| **(v) Economic Loss Rule** | Plaintiffs have not brought this lawsuit for pure economic losses alone. CAC ¶ 79; *see also* Opp. Brief § II(C). | • **Exception Applies**. Damage to other property, a well-recognized exception to the economic loss rule, applies here.[32] |

---

[32] *See Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 496-97 (N.H. 2005); *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 504 (D.N.J. 1999); *Arkwright Mut. Ins. Co. v. Bojoirve, Inc.*, No. 93 Civ. 3068 (WK), 1996 U.S. Dist. LEXIS 9013, **10-12 (S.D.N.Y. June 27, 1996) (applying New York law); *see also* Opp. Brief § II(C).

## COUNT X
## Fraudulent Concealment

| Contested Issues | Factual Support | Legal Authority |
|---|---|---|
| **(i) Reliance & Causation** | Plaintiffs' reasonable reliance upon Defendant's misrepresentations caused harm. CAC ¶¶ 61-62; *see generally, id.* at ¶¶ 93, 120-266, 329, 337, 345, 350-351; *see also* Opp. Brief §§ II(A)(2), II(D). | • **Reliance & Causation Adequately Pled**. *See supra*, Ex. A, Count VI-VII: Violation of State Consumer Laws and State False Advertising Laws, at 10-11.<br><br>• **Reliance Presumed when Omissions Material**. Defendant's omissions were material. *In re Coin Phones. Inc.*, 203 B.R. 184, 203 n.7 (Bkrtcy. S.D.N.Y. 1996) (**"**Where [a] case involves primarily a failure to disclose, positive proof of reliance is not a prerequisite for recovery; all that is necessary is that the facts withheld be material in [the] sense that [a] reasonable [consumer] might have considered them important in making of [a] decision.").**[33]** |
| **(ii) Defendant's Knowledge** | Defendant possessed knowledge of its product's defect(s) at the time of sale and fraudulently concealed/omitted material information. *See* CAC ¶¶ 82-87, 345-351; *see generally id.* at ¶¶ 120-266; *see also* Opp. Brief §§ II(A)(3), II(D). | • **Defendant Possessed Knowledge of Defects**. *See supra*, Ex. A, Count VI-VII: Violation of State Consumer Laws and State False Advertising Laws, at 10-11. |
| **(iii) Duty to Disclose** | Defendant possessed superior and exclusive knowledge of its product's defect(s) and therefore possessed an | • **Defendant Duty-Bound to Disclose Truth**. When a defendant with superior and exclusive knowledge concerning a product, or conceals facts contradicting representations, a |

---

**[33]** *See* Opp. Brief at 57 n.44 for additional case law.

### COUNT X (Cont'd)
### Fraudulent Concealment

| CONTESTED ISSUES | FACTUAL SUPPORT | LEGAL AUTHORITY |
|---|---|---|
| | affirmative duty to disclose. *See* CAC ¶¶ 82-85, 345-351; *see also* Opp. Brief § II(D). | duty to disclose arises. *Hogan v. Maryland State Dental Ass'n*, 155 Md. App. 556, 567 (2004); *see also Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) ("When such a manufacturer has superior information regarding defects that are not readily ascertainable to customers, it has a duty to disclose that information.")[34] <br><br> • **Defendant's Cases are Distinguishable**.[35] |

---

[34] *See* Opp. Brief at 58-60 for additional case law.
[35] *See* Opp. Brief at 59 n.45 to see opposing cases distinguished.

# Exhibit B

**ANGELITA HICKMAN (Alabama)**
**(no claims under Counts IV, VI, VII, and VIII)**

| Grounds For Dismissal | COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | IX | X |
| No recognized cause of action | X[A] | | | | X | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | |
| Barred by consequential-damages exclusion | | X | X | X[B] | X[C] | X | X | X | | |
| No pre-suit notice | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | |
| No privity | | | X | X | | X | X | X | | |
| No reliance | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X |
| No causation | | | | | | | | | X | X |
| No knowledge | | | | | | | | | X | X |
| No actionable misrepresentations | | | | | | | | | X | |
| Failure to quantify loss | | | | | | | | | | |
| No business transaction | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | X | X |
| Barred by economic loss rule | | | | | | | | | | |
| No duty to disclose | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | X | X | X | X | X | X | X | X | X | X |
| Preempted by product liability statute | | | | | | | | | | |

[A] Contrary to Defendant's assertion, Plaintiffs have a recognized cause of action for declaratory relief: "The existence of another adequate remedy does not preclude a judgment for declaratory relief where it is appropriate." Fed. R. Civ. P. 57.
[B] Plaintiffs may recover consequential damages for both express warranty and implied warranty of fitness for purpose even when those purposes are the same "ordinary purpose." *Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 301 Ark. 436, 443 (1990).
[C] Whether damages are direct or consequential is a fact-specific inquiry inappropriate for the motion-to-dismiss stage: "Damages that might be consequential under one contract can be direct or ordinary under another. Among the circumstances most relevant to the classification is the scope of the broken promise itself." White & Summers, Uniform Commercial Code (4th ed.) § 104-4 at 573-574.

## MICHAEL REYES (Alabama)
### (no claims under Counts IV, VI, VII, and VIII)

| Grounds For Dismissal | COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | IX | X |
| No recognized cause of action | X | | | | X | | | | | |
| Barred by exclusive-remedy provision | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X[D] | X | X | X[E] | X | X | X | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | |
| No particular purpose alleged | | | | X | | | | X | | |
| No privity | | | X | X | | X | X | X | | |
| No reliance | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X |
| No causation | | | | | | | | | X | X |
| No knowledge | | | | | | | | | X | X |
| No actionable misrepresentations | | | | | | | | | X | |
| Failure to quantify loss | | | | | | | | | | |
| No business transaction | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | |
| No duty to disclose | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | X[F] | X | X | X | X | X | X | X | X | X |
| Preempted by product liability statute | | | | | | | | | | |

[D] The consequential-damages exclusion is unconscionable because a limitation on a warranty for a product that the manufacturer allegedly knows is defective is potentially so "one-sided" as to give rise to substantive unconscionability. *Naparala v. Pella Corp.*, 2015 U.S. Dist. LEXIS 65025, at *16 (D.S.C. May 19, 2015).
[E] Contrary to Defendant's assertion, *Solomon v. Canon USA, Inc.*, 31 Misc. 3d 30 (N.Y. App. Term 2010) does not preclude the possibility of relief under the MMWA; rather, the court found an exclusive remedy sufficient where a plaintiff had already received a full repair of a damaged good.
[F] Defendant may be liable for pre-September 2012 because "a corporation may be liable for the debts of another corporation acquired for business assets." *Myers v. Putzmeister, Inc.*, 232 Ill. App. 3d 419 (Ill. App. Ct. 1992).

**CHARLES HOFF (California)**
**(no claims under Count V)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | VII | VIII | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | | | X | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | | | |
| No pre-suit notice | | | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | | | |
| No privity | | | X | X | | | X | X | | | | | |
| No reliance | | X^G | | | | X | | | X | X | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X | X | X |
| No causation | | | | | | | | | X | X | X | X | X |
| No knowledge | | | | | | | | | X | X | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | X | X | |
| Failure to quantify loss | | | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | | | | |
| No liability for pre-September 2012 conduct | | | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | | | |

---

[G] Plaintiff Charles Hoff was not required to plead reliance in California: "Any affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement." *Weinstat v. Dentsply Intern. Inc.*, 103 Cal. Rptr. 3d 614, 626, 629 (Cal. App. 2010).

**MICHAEL BADEN (Colorado)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
| No recognized cause of action | X | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X[H] | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | X | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[H] *See Giles v. Inflatable Store, Inc.*, No. 07-cv-00401, 2009 WL 961469 at *3 (D. Colo. Apr. 6, 2009).

## JERRY LAUTIGAR (Colorado)
### (no claims under Counts V, VII, and VIII)

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | COUNTS | | | | | |
| No recognized cause of action | X[1] | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X[1] | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | X | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[1] Declaratory relief is needed in this case to induce desirable behavior and is "not redundant." *See Lunding v. Biocatalyst Res., Inc.*, 2003 U.S. Dist. LEXIS 25412, at *8-9 (N.D. Ill. Sept. 19, 2003) (internal citation omitted)).

[1] The Consolidated Amended Complaint has pleaed proximate causation—a "cause and effect relationship between defendant's acts and the plaintiff's injuries"—because any individual's motivation for purchasing a resurfacing product, such as to effectively resurface their decking and provide durable and long-lasting protection, would have been negated had Rust-Oleum been forthcoming about Restore's propensity to fail. *See Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 (N.D. Ohio 2012).

**JOHN MALLOY (Delaware)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | VI | IX | X |
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | X | | | | | |
| No reliance | | X[K] | | | | X | | | | X[L] | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[K] Plaintiff John Malloy was not required to plead reliance because it is not an essential element of express warranty claims in Delaware. *See Bell Sports, Inc. v. Yarusso*, 759 A.2d 582, 592 (Del. 2000).

[L] Plaintiffs have done more than they are required to do at this procedural stage to comply with Rule 9(b), especially because this case is in its infancy and discovery is just beginning. *See, In re First Merchants Acceptance Corp. Secs. Litig.*, No. 97-2715, 1998 U.S. Dist. LEXIS 17760, at *25 (N.D. Ill. Nov. 2, 1998) (stating that the requirements of Rule 9(b) are relaxed where facts are in the hands of defendants and only obtainable through discovery).

**HANS SHANKS (Florida)**
**(no claims under Counts V and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | VII | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | | |
| No pre-suit notice | | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | | | | | |
| No privity | | | X | X | | X | X | X | | | | |
| No reliance | | X | | | | X | | | X | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X | X |
| No causation | | | | | | | | | X | X | X | X |
| No knowledge | | | | | | | | | X[M] | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | X | |
| Failure to quantify loss | | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | | |

---

[M] Generalized allegations of knowledge are enough to allege various consumer protection claims. *Doll v. Ford Motor Co.,* 814 F. Supp. 2d 526, 545-546 (D. Md. 2011) (applying law of Illinois, Maryland, Florida, Maine, Pennsylvania, and New York and sustaining generalized allegations that "Ford knew the vehicles were defective and intended for the Plaintiffs to rely on its concealment of these material facts, thereby misleading its customers.").

**LAYLA PATTERSON (Georgia)**
**(no claims under Counts IV, VI, VII, and VIII)**

| Grounds For Dismissal | COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | IX | X |
| No recognized cause of action | X | | | | X | | | | X | |
| Barred by exclusive-remedy provision | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X[N] | X | X[O] | X | X | X | X | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | |
| No particular purpose alleged | | | | X | | | | X | | |
| No privity | | | X | X | | | X | X | | |
| No reliance | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X |
| No causation | | | | | | | | | X | X |
| No knowledge | | | | | | | | | X | X |
| No actionable misrepresentations | | | | | | | | | X | |
| Failure to quantify loss | | | | | | | | | | |
| No business transaction | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | |
| No duty to disclose | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | |

---

[N] The consequential-damages exclusion is unconscionable because a limitation on a warranty for a product that the manufacturer allegedly knows is defective is potentially so "one-sided" as to give rise to substantive unconscionability. *Naparala v. Pella Corp.*, 2015 U.S. Dist. LEXIS 65025 at *16 (D.S.C. May 19, 2015).
[O] Plaintiffs may recover consequential damages for both express warranty and implied warranty of fitness for purpose even when those purposes are the same "ordinary purpose." *Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 301 Ark. 436, 443 (1990).

**DEBRA DOCKSTADER (Idaho)**
**(no claims under Counts IV, VII, and VIII)**

| Grounds For Dismissal | I | COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | VI | IX | X |
| No recognized cause of action | X[P] | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | | | | |
| No privity | | | X | X | | | X | X | | | |
| No reliance | | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X[Q] | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | X | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[P] Here, declaratory relief is appropriate in conjunction with other kinds of relief because "the other claims will not settle all of the issues concerning which plaintiff seeks declaratory relief." *StreamCast Networks, Inc. v. IBIS LLC*, 2006 U.S. Dist. LEXIS 97607, 9-14 (C.D. Cal May 1, 2006).
[Q] The Consolidated Amended Complaint has plead with sufficient particularity: plaintiffs are merely required to "plead the 'who, what, when, where, and how: the first paragraphs of any newspaper story' of 'the circumstances constituting fraud.'" *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

**SEASON GOMEZ (Idaho)**
**(no claims under Counts IV, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | $X^R$ | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | $X^S$ | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | X | X | | | X | X | | | |
| No reliance | | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | X | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[R] Contrary to Defendant's assertion, Plaintiffs have a recognized cause of action for declaratory relief: "The existence of another adequate remedy does not preclude a judgment for declaratory relief where it is appropriate." Fed. R. Civ. P. 57.
[S] Whether damages are direct or consequential is a fact-specific inquiry inappropriate for the motion-to-dismiss stage: "Damages that might be consequential under one contract can be direct or ordinary under another. Among the circumstances most relevant to the classification is the scope of the broken promise itself." White & Summers, Uniform Commercial Code (4th ed.) § 104-4 at 573-574.

## CONRAD SHOGREN (Illinois)
### (no claims under Counts IV, VII, and VIII)

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | X | X | | | X | X | | | |
| No reliance | | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X[T] | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X[U] |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[T] The Consolidated Amended Complaint more than satisfies the requirements of Rule 9(b). The Seventh Circuit requires plaintiffs to simply provide a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role in the fraud" to satisfy Rule 9(b). *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013) (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)).

[U] A defendant's "[m]alice, intent, knowledge [or] other condition of mind . . . may be averred generally" in bringing allegations of fraud. *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

**DAVID AND KATHLEEN SULLIVAN (Illinois)**
**(no claims under Counts IV, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X[v] | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | X | X | | | X | X | | | |
| No reliance | | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X[w] |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[v] Under Illinois law, the courts treat the question of whether an exclusive remedy provision that proscribes repair or replacement fails its essential purpose as a question of fact to be determined by the jury. *See* Cole *Energy Dev. Co. v. Ingersoll-Rand Co.*, 678 F. Supp. 208, 210 (C.D. Ill. 1988).

[w] Defendant attempts to sidestep its obligations by incorrectly asserting that Illinois courts impose on manufacturers a duty to disclose material facts only where fiduciary or confidential relationships exist. Dkt. 32 at 109. But, to the contrary, the Illinois Supreme Court has held that a duty to disclose material arises "out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (1996).

**TRACY MCCOY (Indiana)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X[X] | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | X | | X | | X | | | |
| No reliance | | | | | | | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X[Y] | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | X | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[X] The consequential-damages exclusion is unconscionable because a limitation on a warranty for a product that the manufacturer allegedly knows is defective is potentially so "one-sided" as to give rise to substantive unconscionability. *Naparala v. Pella Corp.*, 2015 U.S. Dist. LEXIS 65025 at *16 (D.S.C. May 19, 2015).

[Y] The Consolidated Amended Complaint has plead proximate causation—a "cause and effect relationship between defendant's acts and the plaintiff's injuries"—because any individual's motivation for purchasing a resurfacing product, such as to effectively resurface their decking and provide durable and long-lasting protection, would have been negated had Rust-Oleum been forthcoming about Restore's propensity to fail. *See Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 (N.D. Ohio 2012).

**CORY FALES (Maine)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X$^Z$ | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | X | | | | X | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X$^{AA}$ | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

Headers under COUNTS span columns II–IV.

$^Z$ Whether damages are direct or consequential is a fact-specific inquiry inappropriate for the motion-to-dismiss stage: "Damages that might be consequential under one contract can be direct or ordinary under another. Among the circumstances most relevant to the classification is the scope of the broken promise itself." White & Summers, Uniform Commercial Doe (4th ed.) § 104-4 at 573-574.

$^{AA}$ Generalized allegations of knowledge are enough to allege various consumer protection claims. *Doll v. Ford Motor Co.,* 814 F. Supp. 2d 526, 545-546 (D. Md. 2011) (applying law of Illinois, Maryland, Florida, Maine, Pennsylvania, and New York and sustaining generalized allegations that "Ford knew the vehicles were defective and intended for the Plaintiffs to rely on its concealment of these material facts, thereby misleading its customers.").

## ROBERT WEBBER (Maryland)
### (no claims under Counts V, VII, and VIII)

| Grounds For Dismissal | | COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
| No recognized cause of action | X | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | X | | | | | |
| No reliance | | X[BB] | | | | X | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X[CC] | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[BB] Contrary to Defendant's assertion, reliance is not an essential element of express warranty claims brought pursuant to the laws of Maryland. *Rite Aid Corp. v. Levy-Gray*, 894 A.2d 563, 573 (Md. 2006).

[CC] Generalized allegations of knowledge are enough to allege various consumer protection claims. *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545-546 (D. Md. 2011) (applying law of Illinois, Maryland, Florida, Maine, Pennsylvania, and New York and sustaining generalized allegations that "Ford knew the vehicles were defective and intended for the Plaintiffs to rely on its concealment of these material facts, thereby misleading its customers.").

**RICK BOSCARDIN (Massachusetts)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | COUNTS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | X[DD] | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | X | |
| No reliance | | X | | | | X[EE] | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | X | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[DD] Pre-suit notice is not required under the Massachusetts Consumer Protection Act if "*the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth . . . .*" Mass. Gen. Laws. ch. 93A, § 9(3) (emphasis added). Plaintiffs do not allege that Rust-Oleum maintains a place of business or assets in Massachusetts.

[EE] Plaintiffs need not allege reliance on each misleading (if not outright false) product claim. "Affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." Comment 3 to the Uniform Commercial Code § 2-313 (adopted by each state in which Plaintiffs reside).

**CYNTHIA SCAGLIONE (Michigan)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | COUNTS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
| No recognized cause of action | X | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | | | | | | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X[FF] | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X[GG] | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[FF] Plaintiffs have done more than they are required to do at this procedural stage to comply with Rule 9(b), especially because this case is in its infancy and discovery is just beginning. *See, e.g.*, *In re First Merchants Acceptance Corp. Secs. Litig.*, No. 97-2715, 1998 U.S. Dist. LEXIS 17760, at *25 (N.D. Ill. Nov. 2, 1998) (stating that the requirements of Rule 9(b) are relaxed where facts are in the hands of defendants and only obtainable through discovery).

[GG] Rust-Oleum made "specific representations of fact," not puffery; as such, they "can form the basis of a deceptive trade practice claim." *Giles v. Inflatable Store, Inc.*, No. 07-cv-00401, 2009 U.S. Dist. LEXIS 28382, at *7 (D. Colo. Apr. 6, 2009). The experiences of Plaintiffs demonstrate that Rust-Oleum's statements are objectively false: Restore does not repair decking and concrete, it fails to provide moisture protection, is not long lasting, and in fact, causes extensive damage to the property on which Restore is applied.

**JEFFREY MIES (Minnesota)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | X[HH] | | | | X | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | X[II] | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

[HH] Reliance is not an essential element of breach of express warranty claims pleaded in Minnesota. *Krause v. City of Elk River*, No. A14-1575, 2015 WL 3823093, at *3 (Minn. Ct. App. June 22, 2015) (citing *Peterson v. Bendix Home Sys,. Inc.*, 318 N.W.2d 50, 52-53 (Minn. 1982)).

[II] Defendant misconstrues "business transaction": a business transaction has occurred not when a consumer purchases goods for use in his own business, but rather when defendant makes a misrepresentation "in the course of his business, profession, or employment." *See G.A.W., III v. D.M.W.*, 596 N.W.2d 284, 290 (Minn. Ct. App. 1999).

**DON GIBSON (Missouri)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X[JJ] | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X[KK] | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | X | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

[JJ] Declaratory relief is needed in this case to induce desirable behavior and is "not redundant." *See Lunding v. Biocatalyst Res., Inc.*, 2003 U.S. Dist. LEXIS 25412, at *8-9 (N.D. Ill. Sept. 19, 2003) (internal citation omitted)).
[KK] Plaintiffs may recover consequential damages for both express warranty and implied warranty of fitness for purpose even when those purposes are the same "ordinary purpose." *Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 301 Ark. 436, 443 (1990).

**SCOTT HOLBROOK (Nebraska)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X[LL] | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | X | | | | X | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X[MM] | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | X | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

[LL] Contrary to Defendant's assertion, Plaintiffs have a recognized cause of action for declaratory relief: "The existence of another adequate remedy does not preclude a judgment for declaratory relief where it is appropriate." Fed. R. Civ. P. 57.
[MM] The Consolidated Amended Complaint has plead proximate causation—a "cause and effect relationship between defendant's acts and the plaintiff's injuries"—because any individual's motivation for purchasing a resurfacing product, such as to effectively resurface their decking and provide durable and long-lasting protection, would have been negated had Rust-Oleum been forthcoming about Restore's propensity to fail. *See Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 (N.D. Ohio 2012).

**ED ANDERSON (New Hampshire)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | COUNTS | | | | | |
| No recognized cause of action | X[NN] | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X[OO] | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[NN] Defendant misconstrues "business transaction": a business transaction has occurred not when a consumer purchases goods for use in his own business, but rather when defendant makes a misrepresentation "in the course of his business, profession, or employment." *See G.A.W., III v. D.M.W.*, 596 N.W.2d 284, 290 (Minn. Ct. App. 1999).

[OO] Whether damages are direct or consequential is a fact-specific inquiry inappropriate for the motion-to-dismiss stage: "Damages that might be consequential under one contract can be direct or ordinary under another. Among the circumstances most relevant to the classification is the scope of the broken promise itself." White & Summers, Uniform Commercial Code (4th ed.) § 104-4 at 573-574.

**JOHN RIELLO (New Jersey)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | COUNTS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | I | II:<br>WW | II:<br>IW-M | II:<br>IW-F | II:<br>2310(b) | III | IV:<br>IW-M | IV:<br>IW-F | VI | IX | X |
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | X[PP] | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | X | X[QQ] | X | X | X | X | X | X | X | X | X |
| Preempted by product liability statute | | | X | X | | | X | X | X | X | X |

---

[PP] Quantifying loss is not necessary at this stage. Though the New Jersey Supreme Court in *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 249 (N.J. 2005) held that ascertainable loss must ultimately be proven to withstand a motion for summary judgment, that court recognized that proof of damage is properly the subject of expert testimony.

[QQ] Neither Plaintiffs nor the Court currently have enough information regarding the terms and implementation of the Acquisition to determine, as a matter of law, that Defendant did not assume Synta's liability for the Restore Products. This determination can only be made after Defendant produces the appropriate discovery, including all documents related to the Acquisition. *See Ordonez v. Akorat Metal Fabricators, Inc*., 2011 U.S. Dist. LEXIS 145868, at *10 (N.D. Ill. Dec. 20, 2011) (A motion is premature where "Plaintiffs have not had an adequate opportunity to conduct discovery on their claims against Shale").

**ROBERT DORGAN (New Jersey)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | | | | | | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X$^{RR}$ | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | X | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | X | X | | | X | X | X | X | X |

---

[RR] In New Jersey, some courts have required knowledge to be alleged "with certainty." *See, e.g., Mickens v. Ford Motor Co.*, No. 10-CV-5842, 2015 WL 5310755, at *8 (D.N.J. Sept. 10, 2015). However, the degree of specificity necessary to make heightened showings of knowledge under New Jersey consumer protection law remains an open question, with some courts finding fairly generalized allegations about the source of defendant's knowledge to be sufficient. *See Greene v. BMW of N. Am.*, No. 2:11-04220, 2014 WL 47940, at *3 (D. N.J. Jan. 7, 2014) (sustaining "information and belief" allegation that BMW knew its tires would fail).

**CAROL LARSON (New York)**
**(no claims under Counts IV, VII, and VIII)**

| Grounds For Dismissal | | COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | VI | IX | X |
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | X | X | | X | X | X | | X | |
| No reliance | | X[SS] | | | | X | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

[SS] Reliance is generally not required in a breach of express warranty claim in New York state. Reliance in an action for breach of express warranty "require[es] no more than reliance on the express warranty as being a part of the bargain between the parties," not a belief in the truth of the representation. *CBS, Inc. v. Ziff-Davis Publ. Co.*, 75 N.Y.2d 496, 503 (1992). "If . . . the buyer has purchased the seller's promise as to the existence of the warranted facts, the seller should not be relieved of responsibility because the buyer, after agreeing to make the purchase, forms doubts as to the existence of those facts." *Id.*

**UBALDO FERNANDEZ (New York)**
**(no claims under Counts IV, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | X | X | | X | X | X | | X | |
| No reliance | | X[TT] | | | | X | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X[UU] | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | X | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

[TT] Plaintiffs have sufficiently pleaded reliance on Defendant's misstatements of fact. Each Plaintiff alleges that she viewed Defendant's advertisements and labels, purchased the product in reliance on Defendant's uniform misrepresentations therein, and that, but-for Defendants' affirmations, he or she would not have purchased Restore. (*See, e.g.*, Compl. ¶¶ 265-66.)

[UU] Generalized allegations of knowledge are enough to allege various consumer protection claims. *Doll v. Ford Motor Co.,* 814 F. Supp. 2d 526, 545-546 (D. Md. 2011) (applying law of Illinois, Maryland, Florida, Maine, Pennsylvania, and New York and sustaining generalized allegations that "Ford knew the vehicles were defective and intended for the Plaintiffs to rely on its concealment of these material facts, thereby misleading its customers.").

**JAMES AND JOAN LEONARD (North Carolina)**
**(no claims under Counts IV, VII, and VIII)**

| Grounds For Dismissal | I | COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | VI | IX | X |
| No recognized cause of action | X | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | | X | | | X | | | |
| No privity | | | X | X | | | X | X | | | |
| No reliance | | X | | | | X | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X[vv] | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X[ww] |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

[vv] Plaintiffs have done more than they are required to do at this procedural stage to comply with Rule 9(b), especially because this case is in its infancy and discovery is just beginning. *See, e.g.*, *In re First Merchants Acceptance Corp. Secs. Litig.*, No. 97-2715, 1998 U.S. Dist. LEXIS 17760, at *25 (N.D. Ill. Nov. 2, 1998) (stating that the requirements of Rule 9(b) are relaxed where facts are in the hands of defendants and only obtainable through discovery).

[ww] Plaintiffs have sufficiently pleaded knowledge in the Consolidated Amended Complaint: "Fed. R. Civ. P. 9(b) provides that '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.' It is enough to lay out a plausible grievance." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)

## CHRISTOPHER AND TAMELA MCLAMB (North Carolina)
### (no claims under Counts IV, VII, and VIII)

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | X | X[XX] | | | X | X | | | |
| No reliance | | X[YY] | | | | X | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[XX] Exceptions to privity requirements exist "when the plaintiff relies on written labels or advertisements of a manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).

[YY] Plaintiffs have sufficiently pleaded reliance on Defendant's misstatements of fact. Each Plaintiff alleges that she viewed Defendant's advertisements and labels, purchased the product in reliance on Defendant's uniform misrepresentations therein, and that, but-for Defendants' affirmations, he or she would not have purchased Restore. *See, e.g.*, Compl. ¶¶ 265-66.

**IRMA BLACK (Ohio)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | COUNTS | | | | | |
| No recognized cause of action | X | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | X[ZZ] | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | X | X | | | X | X | | | |
| No reliance | | X | | | | X | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X[AAA] | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | X | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | X | X | X |

---

[ZZ] Plaintiff Irma Black does not need to demonstrate reliance, because in Ohio, "reliance is not an element in a claim for breach of an express written warranty." *Norcold, Inc. v. Gateway Supply Co.*, 154 Ohio App. 3d 594 (Ohio Ct. App. 2003) (claims for breach of express warranty against a manufacturer and distributor of refrigerator parts were not barred by the fact that a plaintiff allegedly did not rely on the warranties at issue.)

[AAA] General allegations that a company knew of defects but failed to disclose them is sufficient under Rule 9(b). *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009).

**LEASHA DIXON (Ohio)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | X | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X[BBB] | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | X | X | | | X | X | | | |
| No reliance | | X | | | | X | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X[CCC] | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | X | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | X | X | X |

---

[BBB] Plaintiffs may recover consequential damages for both express warranty and implied warranty of fitness for purpose even when those purposes are the same "ordinary purpose." *Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 301 Ark. 436, 443 (1990).

[CCC] Rust-Oleum's misrepresentations are comparable to those of those of the defendants in *In re Scotts EZ Seed Litig.*, No. 12-cv-4727, 2013 U.S. Dist. LEXIS 73808, at *28 (S.D.N.Y. May 22, 2013), where representations regarding product performance compared to other products and product durability in harsh weather conditions to constituted actionable misstatements.

**STEVEN AND GINA CADY (Pennsylvania)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X[DDD] | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | X[EEE] | | | | X | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[DDD] The consequential-damages exclusion is unconscionable because a limitation on a warranty for a product that the manufacturer allegedly knows is defective is potentially so "one-sided" as to give rise to substantive unconscionability. *Naparala v. Pella Corp.*, 2015 U.S. Dist. LEXIS 65025, at *16 (D.S.C. May 19, 2015).

**LAWERENCE FREDRICKS (Pennsylvania)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | **ROW TITLES** | | |
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | X | | | | X | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X[FFF] | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[FFF] Many courts allow claims for consumer fraud to proceed where misrepresentations are contained on product labeling, as they are here. *See, e.g., In re ConAgra Foods, Inc.*, 908 F Supp 2d 1090, 1100 (C.D. Cal. 2012) (plaintiffs' complaint satisfied 9(b) where the representation at issue "appeared on product labels throughout the class period"); *Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (holding that Rule 9(b) was satisfied where plaintiff alleged that "between March 4, 2005 and March 4, 2009," defendant's product label contained alleged misrepresentations); *Clancy v. The Bromley Tea Co.*, 12-CV-03003-JST, 2013 WL 4081632, at *10-11 (N.D. Cal. Aug. 9, 2013) (Rule 9(b) satisfied in labeling case); *Kosta v. Del Monte Corp.*, 12-CV-01722-YGR, 2013 U.S. Dist. LEXIS 69319, at *14-15 (N.D. Cal. May 15, 2013) (same).

## SCOTT REINHART (Pennsylvania)
### (no claims under Count V, VII, and VIII)

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X[GGG] | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | X | | | | X | | | X | X | X[HHH] |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X[III] | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[GGG] Declaratory relief is needed in this case to induce desirable behavior and is "not redundant." *See Lunding v. Biocatalyst Res., Inc.*, 2003 U.S. Dist. LEXIS 25412, at *8-9 (N.D. Ill. Sept. 19, 2003) (internal citation omitted)).

[HHH] Plaintiffs have pleaded reliance: "states of mind may be pleaded generally." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990).

[III] Generalized allegations of knowledge are enough to allege various consumer protection claims. *Doll v. Ford Motor Co.,* 814 F. Supp. 2d 526, 545-546 (D. Md. 2011) (applying law of Illinois, Maryland, Florida, Maine, Pennsylvania, and New York and sustaining generalized allegations that "Ford knew the vehicles were defective and intended for the Plaintiffs to rely on its concealment of these material facts, thereby misleading its customers.").

**MARK RENZI (Rhode Island)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | X | | | | X | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X[JJJ] | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[JJJ] Defendant contends its statements were "mere puffery," but Defendant represented that Restore products are "tested tough for 12+ years," will "provide lasting protection against moisture and the damaging effects of the sun," "lasts 10 to 12 years and in fact it comes with a life time warranty," and "is an easy to apply repair coating that revives the surface while offering maximum protection to preserve the deck for years to come." ¶341. These statements are "verifiable facts and sufficiently specific to induce customer reliance. Consequently, they do not constitute "mere puffery." *In re Milo's Dog Treats Consol. Cases,* 9 F. Supp. 3d 523, 532 (W.D. Pa. 2014) (citations omitted).

**PAULA ROGERS (Tennessee)**
**(no claims under Counts IV, VI, VII, AND VIII)**

| Grounds For Dismissal | ROW TITLES | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | V: IW-M | V: IW-F | IX | X |
| No recognized cause of action | X | | | | X | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | |
| No pre-suit notice | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | |
| No privity | | | X | X | | X | X | X | | |
| No reliance | | X | | | | X | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X |
| No causation | | | | | | | | | X | X |
| No knowledge | | | | | | | | | X | X |
| No actionable misrepresentations | | | | | | | | | X | |
| Failure to quantify loss | | | | | | | | | | |
| No business transaction | | | | | | | | | X[KKK] | |
| No accountant or employment relationship | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | |
| No duty to disclose | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | |

---

[KKK] None of the cases cited by Defendant demand that the consumer actually uses the product for commercial or business purposes; instead, the purchase of the Restore product was a business transaction. *E.g., G.A.W., III v. D.M.W.,* 596 N.W.2d 284, 290 (Minn. Ct. App. 1999) (It is not that a consumer has to purchase the goods for use in his or her own business but rather if the defendant makes the misrepresentation "in the course of his business, profession or employment…"); *Sampson v. MacDougall,* 802 N.E.2d 602, 608 (2004) ("Our cases have not recognized a cause of action for negligent misrepresentation based on comments made during a *purely social interaction*, and we decline to do so now.") (emphasis added); *Travelers Commercial Cas. Co. v. Sielfleisch Roofing, Inc.*, No. 4:12 CV 1550 DDN, 2014 WL 636204, at *9 (E.D. Mo. Feb. 18, 2014) (statement concerning on-going litigation is not a business transaction for purposes of negligent misrepresentation).

**DOMINIC RAY DIAZ (Texas)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | COUNTS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | X | | | | X | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X[LLL] | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

[LLL] A determination of proximate cause is premature at the motion to dismiss stage: proximate cause is generally a fact question for the jury." *Abbotts v. Campbell*, 551 F.3d 802, 806 (8th Cir. 2008). "[A] finding of proximate cause will turn upon whether it can be said that, but for the concealment" of material facts, the plaintiffs would not have gone through with the transaction. *Waterford Prods. Co. v. Victor*, No. 98-L-029, 1999 Ohio App. LEXIS 6121, at *20 (Ohio Ct. App., 1999); *see also Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 96 (Cal. App. Ct. 2001).

**BECKI S. MURPHY (Texas)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X[MMM] | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | X[NNN] | | | | X | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[MMM] Whether damages are direct or consequential is a fact-specific inquiry inappropriate for the motion-to-dismiss stage: "Damages that might be consequential under one contract can be direct or ordinary under another. Among the circumstances most relevant to the classification is the scope of the broken promise itself." White & Summers, Uniform Commercial Doe (4th ed.) § 104-4 at 573-574.

**SHARON LEDFORD (Virginia)**
**(No claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X[OOO] | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X[PPP] | X | X[QQQ] | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | | | | | | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[OOO] Declaratory relief is needed in this case to induce desirable behavior and is "not redundant." *See Lunding v. Biocatalyst Res., Inc.*, 2003 U.S. Dist. LEXIS 25412, at *8-9 (N.D. Ill. Sept. 19, 2003) (internal citation omitted)).

[PPP] The consequential-damages exclusion is unconscionable because a limitation on a warranty for a product that the manufacturer allegedly knows is defective is potentially so "one-sided" as to give rise to substantive unconscionability. *Naparala v. Pella Corp.*, 2015 U.S. Dist. LEXIS 65025 at *16 (D.S.C. May 19, 2015).

[QQQ] Plaintiffs may recover consequential damages for both express warranty and implied warranty of fitness for purpose even when those purposes are the same "ordinary purpose." *Great Dane Trailer Sales, Inc. v. Malvern Pulpwood, Inc.*, 301 Ark. 436, 443 (1990).

**GEORGE REYNOLDS (Virginia)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X[RRR] | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X[SSS] | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | | | | | | | | | |
| No reliance | | | | | | | | | X | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[RRR] Contrary to Defendant's assertion, Plaintiffs have a recognized cause of action for declaratory relief: "The existence of another adequate remedy does not preclude a judgment for declaratory relief where it is appropriate." Fed. R. Civ. P. 57.
[SSS] Whether damages are direct or consequential is a fact-specific inquiry inappropriate for the motion-to-dismiss stage: "Damages that might be consequential under one contract can be direct or ordinary under another. Among the circumstances most relevant to the classification is the scope of the broken promise itself." White & Summers, Uniform Commercial Code (4th ed.) § 104-4 at 573-574.

**MICHAEL ALLEN (Washington)**
**(no claims under Counts V, VII, and VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | COUNTS | | |
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | X | X | X | X | X | X | X | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | | | | | | | | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | X | X | | | X | X | | | |
| No reliance | | X | | | | X | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | X[TTT] | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

---

[TTT] None of the cases cited by Defendant demand that the consumer actually uses the product for commercial or business purposes; instead, the purchase of the Restore product was a business transaction. *E.g., Swanson v. Ptak,* 682 N.W.2d 225, 228 (2004) (estate personal representative did not have a duty in his individual capacity to advise heirs on division of estate, therefore, there was not a business transaction); *Doe v. SexSearch.com,* 551 F.3d 412, 416 (6th Cir. 2008) (plaintiff used the alleged misrepresentation in his decision to engage in a personal encounter with another member); *Allen v. Steele,* 252 P.3d 476, 483 (Colo. 2011) ("First, the requirement that the misrepresentation was made 'for the guidance of others in their business transactions'"); *Hodge v. Craig,* 382 S.W.3d 325, 346 (Tenn. 2012) ( negligent misrepresentation claim does not "apply to private communications between a woman and a man regarding the paternity of a child.").

**CARRIE MCCAIN (Washington)**
**(no claims under Counts V, VII, AND VIII)**

| Grounds For Dismissal | I | II: WW | II: IW-M | II: IW-F | II: 2310(b) | III | IV: IW-M | IV: IW-F | VI | IX | X |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No recognized cause of action | X | | | | X | | | | | | |
| Barred by exclusive-remedy provision | | | | | | | | | | | |
| Barred by consequential-damages exclusion | | X | X | X | X | X | X | X | | | |
| No pre-suit notice | | X | X | X | X | X | X | X | | | |
| No particular purpose alleged | | | | X | | | | X | | | |
| No privity | | | X | X | | | X | X | | | |
| No reliance | | X[UUU] | | | | X | | | | X | X |
| Failure to comply with Rule 9(b) | | | | | | | | | X | X | X |
| No causation | | | | | | | | | X[VVV] | X | X |
| No knowledge | | | | | | | | | X | X | X |
| No actionable misrepresentations | | | | | | | | | X | X | |
| Failure to quantify loss | | | | | | | | | | | |
| No business transaction | | | | | | | | | | X | |
| No accountant or employment relationship | | | | | | | | | | | |
| Barred by statute of limitations | | | | | | | | | | | |
| Barred by economic loss rule | | | | | | | | | | | |
| No duty to disclose | | | | | | | | | | X | X |
| No liability for pre-September 2012 conduct | | | | | | | | | | | |
| Preempted by product liability statute | | | | | | | | | | | |

[UUU] Reliance is not an essential element of breach of warranty claims in the state of Washington. *Baughn v. Honda Motor Co.*, 107 Wash. 2d 127, 152 (1986).
[VVV] The Consolidated Amended Complaint has plead proximate causation—a "cause and effect relationship between defendant's acts and the plaintiff's injuries"—because any individual's motivation for purchasing a resurfacing product, such as to effectively resurface their decking and provide durable and long-lasting protection, would have been negated had Rust-Oleum been forthcoming about Restore's propensity to fail. *See Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 798 (N.D. Ohio 2012).