**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|                                                                 |     |                 |
|-----------------------------------------------------------------|-----|-----------------|
| In re Rust-Oleum Restore Marketing, Sales                       | )   |                 |
| Practices and Products Liability Litigation,                    | )   |                 |
|                                                                 | )   | No. 15 C 1364   |
| Related To All Actions.                                         | )   |                 |
|                                                                 | )   | MDL No. 2602    |
|                                                                 | )   |                 |

**<u>MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

In this consolidated, multi-district litigation ("MDL"), Plaintiffs[1] are purchasers and users

of a paint product called "Deck & Concrete Restore" or "Restore 10X" (collectively "Restore"),

manufactured by Defendant Rust-Oleum Corporation ("Rust-Oleum"). Plaintiffs allege that

Restore contains latent defects that result in premature degradation upon application. Plaintiffs

contend that Rust-Oleum knew that Restore was defective prior to and during its marketing,

selling, and warranting the product to Plaintiffs. Before the Court is Rust-Oleum's motion to

dismiss Plaintiffs' Consolidated Amended Class Action Complaint under Federal Rule of Civil

---

[1] The Plaintiffs in this action consist of the following: Angelita Hickman (Alabama); Michael Reyes (Alabama); Charles Hoff (California); Michael Baden (Colorado); Jerry Lautigar (Colorado); John Malloy (Delaware); Hans Shanks (Florida); Layla Patterson (Georgia); Debra Dockstader (Idaho); Season Gomez (Idaho); Conrad Shogren (Illinois); David and Kathleen Sullivan (Illinois); Tracy McCoy (Indiana); Cory Fales (Maine); Robert Webber (Maryland); Rick Boscardin (Massachusetts); Cynthia Scaglione (Michigan); Jeffrey Mies (Minnesota); Don Gibson (Missouri); Scott Holbrook (Nebraska); Ed Anderson (New Hampshire); John Riello (New Jersey); Robert Dorgan (New Jersey); Carol Larson (New York); Ubaldo Fernandez (New York); James and John Leonard (North Carolina); Christopher and Tamela McLamb (North Carolina); Irma Blank (Ohio); Leasha Dixon (Ohio); Steven and Gina Cady (Pennsylvania); Lawrence Fredricks (Pennsylvania); Scott Reinhart (Pennsylvania); Mark Renzi (Rhode Island); Paula Rogers (Tennessee); Dominic Ray Diaz (Texas); Becki S. Murphy (Texas); Sharon Ledford (Virginia); George Reynolds (Virginia); Michael Allen (Washington); Carrie McCain (Washington). (*See* R.16; R.32-1.)

Procedure 12(b)(6). (*See* R.30.) For the reasons discussed in detail below, the Court grants the motion in part, grants the motion in part without prejudice, and denies the motion in part.

## BACKGROUND

On February 6, 2015, the United States Judicial Panel on Multidistrict Litigation (the "MDL Panel") transferred this MDL litigation to the undersigned, with the parties' unanimous support. (*See* R.1.) At that time, the litigation consisted of individual actions pending in this District,[2] the District of Maryland, the Southern District of New York, the Eastern District of North Carolina, and the Eastern District of Pennsylvania.[3] The MDL Panel found that:

> [T]hese actions involve common questions of fact, and that centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. These actions share factual questions arising out of allegations that the deck and concrete resurfacing paint products manufactured and sold by the Rust Oleum Corporation under the Restore brand name are defective because they allegedly bubble, flake, chip, peel, or otherwise degrade prematurely, contrary to the representations in defendant's marketing, labeling, and product warranty. Plaintiffs in all actions further allege that defendants knew or should have known of the purported defects. The common questions of fact will include the design, manufacture, and testing of Restore products; the representations in the products' marketing and labeling; Rust-Oleum's policies and practices with respect to the warranties; and the measure of damages.

(R.1, at 1.)

---

[2] Prior to consolidation by the MDL Panel, the Executive Committee of the Northern District of Illinois consolidated and reassigned a second action, *Shogren et al. v. Rust-Oleum Corp.*, 14 C 8058 (N.D. Ill.), to the Court as a related case to *McCain, et al. v. Rust-Oleum Corp*, Case No. 14 C 4852 (N.D. Ill.) (*See Shogren,* No. 14-8058, R.14, Executive Committee Order Finding of Relatedness Pursuant to Local Rule 40.4, Nov. 10, 2014.)

[3] To date, the individual actions consolidated with *McCain, et al. v. Rust-Oleum Corp*, Case No. 14-04852 (N.D. Ill.) or conditionally transferred to become part of the MDL are: *Webber, et al. v. Rust-Oleum Corp.*, Case No. 1:14-02248 (D. Md.) (*see* R.1), *Fernandez v. Rust-Oleum Corp.*, Case No. 7:14-08857 (S.D.N.Y.) (*see* R.1), *Leonard, et al. v. Rust-Oleum Corp*, Case No. 7:14-00259 (E.D.N.C.) (*see* R.1), *Cady et al. v. Rust-Oleum Corp.*, Case No. 5:14-06156 (E.D. Pa) (*see* R.1), *Sullivan et al. v. Rust-Oleum Corp.*, Case No 15cv1497 (S.D. Ill.) (*see* R.2); *Baden, et al. v. Rust-Oleum Corp.*, No 15-2892 (N.D. Ill.) (*see* R.11; R.15). Although not a named plaintiff in the Plaintiffs' Complaint, the MDL Panel transferred the case of *Howell v. Rust-Oleum Corp.*, No. 15-08379 (D.N.J.) to the MDL. (*See* R.76).

## I.     The Complaint & Rust-Oleum's Motion to Dismiss

On April 7, 2015, Plaintiffs filed their Consolidated Amended Class Action Complaint (the "Complaint") naming 40 Plaintiffs from 27 states[4] alleging that sometime between 2010 and 2015 they each purchased and applied to a deck or other surface, a paint product called "Deck & Concrete Restore" or "Restore 10X" (collectively "Restore") that Rust-Oleum has manufactured since September 2012. (*See, e.g.,* R.16, ¶¶ 3, 9-51, 56-58, 116-268.)  Plaintiffs further allege that, sometime after applying Restore, the product began to prematurely fail by chipping, peeling, or otherwise deteriorating. (*Id.*, ¶¶ 4, 116-268.)  According to Plaintiffs, those alleged results directly conflict with marketing and warranty promises made in connection with Restore's sales. (*Id.*, ¶¶ 59-73.)  Plaintiffs further assert that Rust-Oleum knew or should have known that Restore would not live up to those promises. (*Id.*, ¶¶ 82-92.)

Based on these allegations, Plaintiffs bring a putative class action against Rust-Oleum on behalf of all individuals and entities that purchased Restore, not for resale, "in the territories of the United States." (*Id.*, ¶¶ 101-02.)  Plaintiffs' ten-count Complaint asserts various claims under the laws of all 50 states and the District of Columbia in addition to individual state law claims.  Count I seeks declaratory, injunctive, or equitable relief under the Declaratory Judgment Act. (*Id.*, ¶¶ 269-73.)  Count II alleges a failure to comply with obligations under written and implied warranties, in violation of the Magnuson-Moss Warranty Act. (*Id.*, ¶¶ 274-84.)  Count III alleges breach of express warranties under the laws of every state. (*Id.*, ¶¶ 285-92.)  Counts IV and V allege breaches of the implied warranty of merchantability and the implied warranty of

---

[4] Plaintiffs' Complaint as originally filed listed 47 plaintiffs residing in 29 different states. (*See* R.16, ¶¶ 10-51.)  Eight plaintiff couples (the Sullivans, the Leonards, the McLambs, and the Cadys, *id.*, ¶¶ 20, 35, 36, 39) share a single set of claims and are treated as single plaintiffs for the purposes of Rust-Oleum's motion to dismiss.  In addition, Plaintiffs voluntarily dismissed three of the named plaintiffs (Timothy Mueller, Thomas Schoenberger, and Rose Therrien) and as a result, no remaining plaintiff resides in Montana or Wisconsin. (*See* R.23-25; R.29.)

fitness for a particular purpose under the laws of every state. (*Id.*, ¶¶ 293-313.) Count VI asserts violations of various state consumer-fraud statutes. (*Id.*, ¶¶ 314-22.) Count VII claims violations of the false-advertising statutes of four states. (*Id.*, ¶¶ 323-30.) Count VIII claims a violation of the California Consumer Legal Remedies Act. (*Id.*, ¶¶ 331-38.) Count IX alleges negligent misrepresentation. (*Id.*, ¶¶ 339-45.) Lastly, Count X claims fraudulent concealment. (*Id.,* ¶¶ 346-51.)

Rust-Oleum argues that Plaintiffs' Complaint fails to state a claim for relief under each of the alleged bases and that dismissal of each claim asserted by each Plaintiff is warranted here. (*See* R.32, at 2; R.32-1, Ex. A, Summary of Plaintiffs' Claims and Alleged Grounds for Dismissal.) Specifically, Rust-Oleum argues that the Court should dismiss Plaintiffs' claim for declaratory, injunctive, or equitable relief in Count I because it is a request for relief rather than an independent cause of action. (R.21, Part III.) Rust-Oleum also argues that the breach of warranty claims in Counts II-V, depending on the plaintiff and the claim, are barred by the written warranties' exclusive-remedy provision, the warranties' consequential-damages exclusion, a lack of proper pre-suit notice, the failure to plead a particular purpose for Restore, a lack of privity with Rust-Oleum, or the failure to plead reliance. (R.32, Part I.) In addition, Rust-Oleum argues that Plaintiffs' misrepresentation and omission claims in Counts VI through X do not plead fraud with the requisite particularity, nor do they adequately plead causation, reliance, knowledge, or actionable misrepresentations or omissions. (*Id.*, Part II.) Rust-Oleum further argues that various state-specific requirements and defenses also bar those claims, depending on the plaintiff. (*Id.*, Part II.) Applicable to all claims, Rust-Oleum asserts that Plaintiffs cannot base any claims on conduct before Rust-Oleum began manufacturing Restore in September 2012. (*Id.*, Part IV.) Finally, as to state specific issues, Rust-Oleum argues that the

4

New Jersey and Ohio product liability statutes preempt most of Plaintiffs' claims and that the laws of the 24 states in which no Plaintiff either resides or purchased Rust-Oleum have no extraterritorial effect that could support any of Plaintiffs' claims. (*Id.*, Parts V & VI.)

## II. Facts Alleged[5]

Rust-Oleum sells do-it-yourself products for the consumer home improvement market. In particular, Rust-Oleum manufactures, markets, advertises, warrants, and sells a variety of deck coatings, including paints, stains, and resurfacers. (R.16, ¶ 56.) In September 2012, Rust-Oleum's parent company, RPM International, Inc., acquired Synta, Inc. ("Synta"), a producer of wooden deck and concrete coatings. (*Id.*, ¶ 57.) Synta's primary product line, which Rust-Oleum took over upon acquisition, included a deck resurfacer developed by Synta and marketed as "Restore" to protect and restore weathered outdoor decks and concrete surfaces. (*Id.*, ¶ 58.) Rust-Oleum sells Restore to consumers through retail home improvement stores which generally sell Restore without making any changes to its marketing materials or warranties. (*Id.*, ¶ 59.)

### A. Warranty

Restore's packaging contains a "Limited Lifetime Warranty" which states:

> **LIMITED LIFETIME WARRANTY:** Rust-Oleum Corporation guarantees product performance for the product in this can only as long as you own or reside in your home when our product was applied according to the label directions. You will receive as your exclusive remedy either a refund of the original purchase price or replacement with a product of equal value. We do not guarantee the product against factors beyond our control, such as damage to the product by others, poor condition of the substrate, structural defects, improper application, etc. We will not be responsible for labor or the cost of labor for removal or application of any product, or replacement of any wood structure.

---

[5] The Court provides this summary taking the facts in the light most favorable to Plaintiffs, with additional facts related to the parties' various arguments discussed in the relevant sections.

(R.16, ¶¶ 63, 95, 96, 280, Exs. 1, 2.)  The packaging and labeling surrounding the buckets or cans of Restore sold to Plaintiffs also allegedly includes a "LIMITED LIFETIME WARRANTY" which states:

> **LIMITED LIFETIME WARRANTY**
> Rust-Oleum Corporation warrants your complete satisfaction with the performance of this product for as long as you own or reside in your home when our product has been applied to the label directions.  We do not warrant problems with the product which are caused by factors beyond our control, such as damage to the product by others, poor condition of the substrate, structural defects, improper application, etc.  If not satisfied as warranted, return any unused portion along with sales receipt to place of purchase.  You will receive as your exclusive remedy either a refund of the original purchase price or replacement with a product of equal value.  THIS WARRANTY SPECIFICALLY EXCLUDES LABOR OR COST OF LABOR FOR THE APPLICATION OF ANY PAINT AND CONSEQUENTIAL, INCIDENTAL DAMAGES.  Some states do not allow the exclusion of incidental or consequential damages, so the limitation or exclusion contained in the above warranty may not apply to you.  This warranty gives you specific legal rights and you may also have other rights which vary from state to state.

(R.16, ¶¶ 63, 95, 96, 280; *id.*, attached to Compl. as Ex. 2.)

### B.    Alleged Misrepresentations

In marketing and selling Restore, Plaintiffs allege that Rust-Oleum made numerous misrepresentations to consumers about Restore's purported qualities on product labels and packaging, including, for example: "repairs decking", "the smart alternative to deck and concrete replacement", "locks down wood splinters", "revives wood and broom swept concrete", "lasting moisture protection", and "liquid armor resurfacer".  (R.16, ¶ 61.)  Rust-Oleum also provides information about Restore on its website and in other advertising and promotional materials that Plaintiffs allege constitute misrepresentations that Restore:

- "lasts 10 to 12 years and in fact it comes with a life time warrantee";

- "lasts 3x longer than deck stain with less maintenance";

- is a "low-maintenance, long-lasting alternative to the endless cycle of repairing and repainting";

6

- is "tough, resilient coating over existing decking" which "lasts for years with less maintenance than deck paints or stains!  Satisfaction guaranteed";

- "last[s] for years with little maintenance";

- "extend[s] the life" of a deck by providing a "tough, durable coating";

- "tested tough for 12+ years";

- "provide[s] lasting protection against moisture and the damaging effects of the sun";

- provides a "protective barrier from Mother Nature's harsh elements";

- has "superior weather resistance" and "ultimate water repellency"; and

- "is an easy to apply repair coating that revives the surface while offering maximum protection to preserve the deck for years to come."

(R.16, ¶ 67; *see also id.*, ¶¶ 68-71.)

## C.   Restore's Performance

According to Plaintiffs, Restore does not perform as warranted, and Rust-Oleum's representations are false, misleading and fail to disclose material information.  (R.16, ¶ 72.) Plaintiffs allege that Rust-Oleum failed to disclose that Restore (1) separates, cracks, peels, bubbles, flakes, puckers, chips, and otherwise prematurely fails shortly after application; (2) is not a superior product to ordinary deck paint or stain; (3) does not repair or restore decking long-term; (4) cannot withstand harsh weather; (5) is the subject of numerous consumer complaints; and (6) will ultimately have to be removed from the deck.  (R.16, ¶ 73; *see also id.*, ¶¶ 74, 76-79.)  Customers voiced complaints online indicating that they "[w]ould never recommend Restore" and to "STAY AWAY" and that the product left them "So Disappointed" and feeling as if they "Wasted $200+".  (*See* R.16, ¶ 80; *see also id.*, ¶¶ 81, 88.)  Plaintiffs allege that Rust-Oleum knew about Restore's defective performance based on various methods, including pre- and post-sale audits, field testing, online complaints, direct complaints about Rust-Oleum and Synta.  (R.16, ¶¶ 83-87.)  Despite this knowledge, according to Plaintiffs,

7

Restore continued to market and sell its product based on misrepresentations of its performance. (R.16, ¶ 89.)  Plaintiffs further allege that they could not have reasonably discovered the issues and problems with Restore prior to purchasing and using the product.  (R.16, ¶ 90.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted."  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).  Under Rule 12(b)(6), a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).  A district court's analysis under Rule 12(b)(6) "rests on the complaint, and [the court] construe[s] it in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor."  *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014); *see also Teamsters Local Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 823 (7th Cir. 2014); *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013).  In considering a Rule 12(b)(6) motion, courts may consider evidence incorporated by reference in the complaint.  *See, e.g., 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Rosenblum v. Travelbyus.com Ltd.,* 299 F.3d 657, 661 (7th Cir. 2002) (holding that the court may consider "documents attached to a motion to dismiss ... [as] part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim") (internal quotation marks omitted).

Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation omitted). "[T]he complaint must supply 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). "A claim must be plausible rather than merely conceivable or speculative, meaning that the plaintiff must include 'enough details about the subject-matter of the case to present a story that holds together.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826-27 (7th Cir. 2014) (citations omitted). A plaintiff's pleading burden "should be commensurate with the amount of information available" to him. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100 (7th Cir. 2015).

Under Rule 9(b), a party pleading fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Moreover, in pleading fraud in federal court, Rule 9(b) imposes a higher pleading standard than that required under Rule 8(a)(2). *See Bank of America, N.A. v. Knight,* 725 F.3d 815, 818 (7th Cir. 2013); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 446 (7th Cir. 2011). Thus, "[t]he requirement of pleading fraud with particularity includes pleading facts that make the allegation of fraud plausible." *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.,* 772 F.3d 1102, 1106 (7th Cir. 2014). Specifically, Rule 9(b) requires a pleading to state with particularity: "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.* (citations omitted). "[T]he particularity requirement of Rule 9(b) is designed to

9

discourage a 'sue first, ask questions later' philosophy." *Pirelli,* 631 F.3d at 441 (citation omitted).

## ANALYSIS

Plaintiffs' Complaint asserts various claims under the laws of all 50 states and the District of Columbia in addition to individual state law claims. Count I seeks declaratory, injunctive, or equitable relief under the Declaratory Judgment Act. (R.16, ¶¶ 269-73.) Count II alleges a failure to comply with obligations under written and implied warranties, in supposed violation of the Magnuson-Moss Warranty Act. (*Id.*, ¶¶ 274-84.) Count III alleges breach of express warranties under the laws of every state. (*Id.*, ¶¶ 285-92.) Counts IV and V allege breaches of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose under the laws of every state. (*Id.*, ¶¶ 293-313.) Count VI asserts violations of various state consumer-fraud statutes. (*Id.*, ¶¶ 314-22.) Count VII claims violations of the false-advertising statutes of four states. (*Id.*, ¶¶ 323-30.) Count VIII claims a violation of the California Consumer Legal Remedies Act. (*Id.*, ¶¶ 331-38.) Count IX alleges negligent misrepresentation. (*Id.*, ¶¶ 339-45.) Lastly, Count X claims fraudulent concealment. (*Id.,* ¶¶ 346-51.) The Court addresses each count in turn.

## I.  Rust-Oleum's Challenge to Count I is Premature

In Count I, Plaintiffs assert a claim for "declaratory and injunctive and/or equitable relief." (R.16, ¶¶ 269-273.) Rust-Oleum argues that Plaintiffs' claim fails as a matter of law because declaratory, injunctive, and equitable relief are remedies, not independent causes of action and that the claim is duplicative of its prayer for relief. Plaintiffs respond that Rule 23 authorizes a nationwide class to seek declaratory, injunctive relief and/or equitable relief where the defendant "has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

The Federal Declaratory Judgment Act ("DJA") provides that, subject to certain exceptions, "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201; (*see* R.16, ¶ 271). "The goal of the [DJA] is to allow for the efficient resolution of disputes by an early adjudication of the rights of the parties." *Med. Assur. Co., Inc. v. Hellman,* 610 F.3d 371, 377 (7th Cir. 2010). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the [DJA], even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* (quoting *Wilton v. Seven Falls Co.,* 515 U.S. 277, 282, 115 S.Ct. 2137, 2140, 132 L.Ed.2d 214 (1995)).

Plaintiffs allege Count I on behalf of a putative class: residents of the United States and its Territories. (*See* R.16, ¶¶ 269-273.) Plaintiffs further indicate that they seek to represent a multistate class composed of residents of all 50 states and the District of Columbia. (*See* R.66, at 62.) Indeed, the allegations in Count I state that "[t]he requested relief will generate common answers that will resolve controversies that lie at the heart of this litigation and will allow Plaintiffs to obtain relief that directly redresses the injury suffered. Resolving these issues will eliminate the need for continued and repeated litigation." (R.16, ¶ 273.) The injunctive relief sought in Count I is not identical to the relief sought in Plaintiffs' Prayer for Relief because the relief in Count I is broader and more specific. While the Prayer for Relief, for example, echoes the requests in Count I that the Court declare the Rust-Oleum warranty limits unconscionable, that Restore has a propensity to prematurely fail, and that Rust-Oleum knew and/or should have

11

known that Restore had a propensity to prematurely fail, the injunctive relief in Count I further

seeks a declaration that Rust-Oleum is required to disclose to consumers that Restore's

propensity to prematurely fail causes damage, including to other property.  (*See* R.16, ¶ 276.)[6]

As such, Plaintiffs' Prayer for Relief and claim for injunctive relief are not strictly duplicative.

     Furthermore, Plaintiffs' claim for injunctive relief is sought on behalf of a putative class.

The Seventh Circuit teaches that "[b]y virtue of its requirement that the plaintiffs seek to redress

a common injury properly addressed by a class-wide injunctive or declaratory remedy, Rule

23(b)(2) operates under the presumption that the interests of the class members are cohesive and

homogeneous such that the case will not depend on adjudication of facts particular to any subset

of the class nor require a remedy that differentiates materially among class members."  *Lemon v.*

*Int'l Union of Operating Eng'rs, Local No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000).

Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if:

… (2) the party opposing the class has acted or refused to act on grounds that apply generally to

the class, so that final injunctive relief or corresponding declaratory relief is appropriate

respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2); *Warnell v. Ford Motor Co.,* 189

F.R.D. 383, 386 (N.D. Ill. 1999) (citing *Isby v. Bayh*, 75 F.3d 1191, 1194 (7th Cir. 1996))

(explaining that the district court "certified the case as a class action 'for purposes of injunctive

relief' pursuant to Fed. R. Civ. P. 23(b)(2)"); *Yu v. Int'l Bus. Machines, Inc.*, No. 98 C 8241,

1999 WL 104159, at *1 (N.D. Ill. Feb. 24, 1999) (citing *In re Brand Name Prescription Drugs*

*Antitrust Litigation*, 123 F.3d 599, 610 (7th Cir. 1997)) ("The Seventh Circuit has held that, in a

class action seeking injunctive relief, the defendant 'is deemed to face multiple claims for

---

[6] For these same reasons, this case is distinguishable from *Frazier v. U.S. Bank Nat'l Ass'n*, No. 11 C 8775, 2013 WL 1337263, at *12 (N.D. Ill. Mar. 29, 2013) because Plaintiffs' declaratory judgment action is not duplicative of its underlying claims for substantive relief.

injunctive relief, each of which must be separately evaluated ....'"); *see also Webb v. Carter's Inc.,* 272 F.R.D. 489, 501 (C.D. Cal. 2011) ("[p]laintiffs also seek certification under Federal Rule of Civil Procedure 23(b)(2), which allows class actions for claims for injunctive relief").

The Court, therefore, finds Rust-Oleum's arguments premature at this stage as it has not raised an issue of standing and the proper inclusion and scope of injunctive relief for a class action is more appropriately addressed in regard to class certification—including a determination of whether Count I, as alleged, redresses a common injury and is the predominate form of relief sought. *See, e.g., Santiago v. RadioShack Corp.*, No. 11 C 3508, 2012 WL 934524, at *4 (N.D. Ill. Feb. 10, 2012) (denying the defendants' motion to dismiss the plaintiffs' request for injunctive relief in a class action where the named plaintiffs, former employees, had standing to maintain their suit and the class, once defined, would likely include current employees entitled to injunctive relief); *see also Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011) (addressing the requirements for certification of an injunction class under Rule 23(b)(2)); *Lewis v. Washington*, 197 F.R.D. 611, 613 (N.D. Ill. 2000) (certifying the class based on the requirements of Rule 23 as one in which "injunctive and declaratory relief is clearly the predominant form of relief sought"). Indeed, Plaintiffs' response to Rust-Oleum's motion characterizes the issues similarly, arguing "there are no … other obstacles to certification of the proposed nationwide declaratory and injunctive relief class." (R.66, at 63.) Accordingly, the Court denies Rust-Oleum's motion to dismiss Count I without prejudice as premature.[7]

---

[7] For the same reasons, the Court denies Rust-Oleum's motion to dismiss Plaintiffs' allegations in Counts III-VII citing violations of the laws of 24 states in which no Plaintiff resides or is alleged to have purchased Restore. (*See* R.32, at 70-73) This argument is more appropriately addressed in Plaintiffs' class certification motion when the putative class of plaintiffs and their locations are identified. Indeed, as this motion was pending, an additional group of plaintiffs associated with a New Jersey case have been transferred into this MDL, only serving to further highlight the premature nature of Rust-Oleum's argument. As such, the Court denies without prejudice as premature, Rust-Oleum's motion to dismiss based on this argument.

## II.     Counts II – V: Breach of Warranty Claims

Counts II through V assert a series of breach of warranty claims.  Count II alleges breaches of written and implied warranties under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.  ("MMWA").  Count III alleges breaches of written and other express warranties under Section 2-313 of the U.C.C., as variously adopted by all 50 states and the District of Columbia.  For those same jurisdictions, Counts IV and V allege breaches of the implied warranty of merchantability under U.C.C. § 2-314 and the implied warranty of fitness for a particular purpose under U.C.C. § 2-315, with Count IV covering states that allegedly do not require privity and Count V covering those states that do.

### A.     MMWA & State Law Claims for Breach of Warranty

State law governs the U.C.C. claims and, with narrow exceptions, also governs the MMWA claim.  (*See* R.16, ¶¶ 289, 299, 310); *see, e.g., Illinois Wholesale Cash Register, Inc. v. PCG Trading Inc.*, No. 08 C 363, 2008 WL 4924817, at *3 (N.D. Ill. Nov. 13, 2008) (analyzing claims based on the U.C.C. under state law because the relevant states—Illinois and Massachusetts—both adopted Article 2 of the U.C.C.); *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (explaining that the MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action").  In addition, under Illinois choice-of-law rules, the place of purchase and injury governs breach of warranty claims. *See, e.g., Gray v. Abbott Labs, Inc.*, No. 10 cv 6377, 2011 WL 3022274, at *3, *6 (N.D. Ill. July 22, 2011).

Rust-Oleum contends that under the various state laws that apply to Plaintiffs' individual breach of warranty claims, roughly six grounds for dismissal exist that to varying degrees cut across the four relevant counts and collectively require dismissal of each breach of warranty claim asserted by each Plaintiff.  The Court addresses each argument below and notes a common

14

thread weaved into its analysis: the issues Rust-Oleum argues are fact intensive and generally not appropriate for resolution on a motion to dismiss.

Plaintiffs allege two warranties relating to Rust-Oleum's Restore products. Specifically, the Restore Instructions included a "Limited Lifetime Warranty" which states:

> **LIMITED LIFETIME WARRANTY:** Rust-Oleum Corporation guarantees product performance for the product in this can only as long as you own or reside in your home when our product was applied according to the label directions. You will receive as your exclusive remedy either a refund of the original purchase price or replacement with a product of equal value. We do not guarantee the product against factors beyond our control, such as damage to the product by others, poor condition of the substrate, structural defects, improper application, etc. We will not be responsible for labor or the cost of labor for removal or application of any product, or replacement of any wood structure.

(R.16, ¶¶ 63, 95, 96, 280; R.16, attached to Compl. as Ex. 1.)[8] The packaging and labeling surrounding the buckets or cans of Restore sold to Plaintiffs also allegedly included a "LIMITED LIFETIME WARRANTY" which states:

> **LIMITED LIFETIME WARRANTY**
> Rust-Oleum Corporation warrants your complete satisfaction with the performance of this product for as long as you own or reside in your home when our product has been applied to the label directions. We do not warrant problems with the product which are caused by factors beyond our control, such as damage to the product by others, poor condition of the substrate, structural defects, improper application, etc. If not satisfied as warranted, return any unused portion along with sales receipt to place of purchase. You will receive as your exclusive remedy either a refund of the original purchase price or replacement with a product of equal value. THIS WARRANTY SPECIFICALLY EXCLUDES LABOR OR COST OF LABOR FOR THE APPLICATION OF ANY PAINT AND CONSEQUENTIAL, INCIDENTAL DAMAGES. Some states do not allow the exclusion of incidental or consequential damages, so the limitation or exclusion contained in the above warranty may not apply to you. This warranty gives you specific legal rights and you may also have other rights which vary from state to state.

---

[8] The Court considers both the Limited Lifetime Warranties attached to Plaintiffs' Complaint as they are referred to in the Complaint and are central to Plaintiffs' claims. (*See* R.16, ¶¶ 63, 95, 96, 280; R.16, attached to Compl. as Exs. 1, 2); *Rosenblum.,* 299 F.3d at 661 (holding that the court may consider "documents attached to a motion to dismiss ... [as] part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim") (internal quotation marks omitted).

(R.16, ¶¶ 63, 95, 96, 280; *id.*, attached to Compl. as Ex. 2.)

According to Rust-Oleum, each bucket or can of Restore sold to Plaintiffs came with this written warranty that includes two independent limitations on the relief available with respect to any breach of warranty claim. First, the written warranty contains an exclusive-remedy provision that Rust-Oleum argues limits any unsatisfied Restore customer to "either a refund of the original purchase price or replacement with a product of equal value." (R.32, at 5 (citing R.16, Exs. 1, 2).) Rust-Oleum contends that the Court should dismiss the breach of warranty claims for the 25 Plaintiffs who either received or were offered a refund based on the exclusive-remedy provision. Second, the written warranty also contains a consequential-damages exclusion, which differs in the two warranties attached to the complaint, but either of which, Defendant argues, separately precludes recovery of consequential damages such as the costs of applying or removing any product or replacing any structure. (*Id.*) This exclusion, Rust-Oleum argues, requires the Court to dismiss all of Plaintiffs' breach of warranty claims seeking consequential damages.

Plaintiffs respond that Rust-Oleum's argument based on the exclusive-remedy provision does not overcome Plaintiffs' allegations that those remedies fail of their essential purpose and that this defense turns on a question of fact that is inappropriate for resolution on a motion to dismiss. (*See* R.66, at 7.) Plaintiffs further argue that Rust-Oleum's argument regarding the consequential-damages exclusion is similarly deficient because Plaintiffs' damages are direct, the exclusion clause is not conspicuous, and the limits on any consequential damages are unconscionable. (*Id.*) Furthermore, Plaintiffs reiterate that these issues are premature in the absence of a factual record.

### 1. Breach of Warranty Claim

An explicit promise by the seller with respect to the quality of the goods and that is part of the bargain between the parties creates an express warranty "that the goods shall conform to the affirmation or promise." U.C.C. § 2-313. "To state a breach of express warranty claim, a plaintiff 'must allege the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the warranty's terms, a failure by the defendant to do so, compliance with the terms of the warranty by the plaintiff, and damages measured by the terms of the warranty.'" *Disher v. Tamko Bldg. Products, Inc.*, No. 14-CV-740-SMY-SCW, 2015 WL 4609980, at *3 (S.D. Ill. July 31, 2015) (citing *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 949 (Ill. App. Ct. 2005)); *see also Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *4 (N.D. Cal. June 5, 2009) (citations omitted) ("To plead a claim for breach of express warranty, the buyer must allege that the seller '(1) made an affirmation of fact of promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff'"). In at least some states, e.g., California, and Colorado, the buyer must also plead "that notice of the alleged breach was provided to the seller within a reasonable time after discovering the breach." *Stearns*, 2009 WL 4723366, at *4 (citing U.C.C. § 2-607(3)); *see also Scott v. Honeywell Int'l Inc.*, No. 14-CV-00157-PAB-MJW, 2015 WL 1517527, at *3 (D. Colo. Mar. 30, 2015) (citations omitted) ("To state a claim for breach of express warranty, the plaintiff must prove (1) the existence of a warranty, (2) breach of the warranty, (3) the breach proximately caused the losses claims as damages, and (4) defendant received timely notice of the breach").

Plaintiffs sufficiently plead a claim for breach of warranty. Plaintiffs allege that Rust-Oleum made several express warranties and representations regarding Restore that became

part of the basis of the bargain between the parties, including various statements on the product labels, online, and in advertising. (*See* R.16, ¶¶ 286, 287.) Plaintiffs further allege that Rust-Oleum breached the express warranty by providing Restore in a condition that did not satisfy the warranty obligations of e.g., "guarantee[d] product performance … when our product was applied according to label directions", "low maintenance, long-lasting", "lasts for years …", "tested tough for 12+ years", and "provide lasting protection …". (*Id.*, ¶¶ 286, 288.) Plaintiffs also allege that they have complied with the warranty obligations, including application instructions, but that Rust-Oleum has failed to comply with the warranty terms, after receiving notice of the problems. (*Id.*, ¶ 290.) Further, Plaintiffs allege that after applying Restore "to decking surfaces, it will prematurely crack, peel, flake, chip, bubble, pucker, separate, delaminate, discolor, and generally degrade, and it has the propensity to cause damage to decks and other property of the class." (*Id.*, ¶ 76.) Lastly, Plaintiffs allege that Rust-Oleum has known about consumer complaints for years, at least through its online complaints and photos posted on its Facebook pages in addition to the internal systems Plaintiffs allege Rust-Oleum uses to monitor product performance and consumer complaints. (*See id.*, ¶¶ 76-78, 82-92.)

Rust-Oleum does not challenge Plaintiffs' breach of warranty claims based on the above allegations, but instead challenges Plaintiffs' allegations as deficient based on their failure to overcome the limitations placed on their remedies by two provisions in the express warranty: the exclusive-remedy provision and the consequential-damages exclusion provision.

### 2. Plaintiffs Have Sufficiently Pled a Breach of Warranty Claim Despite the Lifetime Warranty's Exclusive-Remedy Provision

The U.C.C., as adopted in each of the Plaintiffs' home states, expressly provides that a warranty can "limit[] the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts" by describing the limited remedy as

"exclusive." *See* U.C.C. § 2-719.[9]  Plaintiffs' Complaint alleges that Rust-Oleum "ha[s] not

fully reimbursed" 25 Plaintiffs, "has not reimbursed" another 5 Plaintiffs, and is silent as to the

remaining 10 Plaintiffs.  (*See, e.g.,* R.16, ¶¶ 119, 126, 130,134, 138, 142, 151, 158, 162, 165,

169, 173, 177, 181, 185, 192, 196, 206, 213, 220, 224, 228, 232, 236, 242, 245, 249, 252, 255,

259, 265, 268; R.32, at 7.)  Rust-Oleum argues that the only reasonable inference is that

Rust-Oleum provided or offered full refunds to, at a minimum, those Plaintiffs who allegedly

were "not fully reimbursed."  (R.32, at 7.)  The Court disagrees that this is the only reasonable

inference, especially at this stage where all reasonable inferences must be taken in favor of

Plaintiffs.  Indeed, the inquiry becomes a factual determination as to what Rust-Oleum offered

each Plaintiff, whether Rust-Oleum offered partial reimbursement or a replacement product, and

the level of reimbursement, if any, received.  These factual issues preclude a determination at

this early stage of the litigation.[10]

   Furthermore, Rust-Oleum asserts that the breach of warranty claims (Count II-V) asserted

by various Plaintiffs "must be dismissed so long as the exclusive-remedy provision is valid and

---

[9] *See* Ala. Code § 7-2-719(1); Cal. Com. Code § 2719(1); Colo. Rev. Stat. § 4-2-719(1); Del. Code tit. 6, § 2-719(1); Fla. Stat. § 672.719(1); Ga. Code § 11-2-719(1); Idaho Code § 28-2-719(1); 810 ILCS 5/2- 719(1); Ind. Code § 26-1-2-719(1); Me. Rev. Stat. tit. 11, § 2-719(1); Md. Code, Com. Law § 2-719(1); Mass. Gen. Laws ch. 106, § 2-719(1); Mich. Comp. Laws § 440.2719(1); Minn. Stat. § 336.2-719(1); Mo. Rev. Stat. § 400.2-719(1); Neb. Rev. Stat. U.C.C. § 2-719(1); N.H. Rev. Stat. § 382-A:2-719(1); N.J. Stat. § 12A:2-719(1); N.Y. U.C.C. Law § 2-719(1); N.C. Gen. Stat. § 25-2-719(1); Ohio Rev. Code § 1302.93(A); 13 Pa. Cons. Stat. § 2719(a); R.I. Gen. Laws § 6A-2-719(1); Tenn. Code § 47-2-719(1); Tex. Bus. & Com. Code § 2.719(1); Va. Code § 8.2-719(1); Wash. Rev. Code § 62A.2-719(1).

[10] Many of the cases upon which Rust-Oleum relies address the issues surrounding an exclusive-remedy provision's failure of its essential purpose on motions for summary judgment or after a trial. *See, e.g., Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 890 (E.D. Pa. 1996) (summary judgment); *Cessna Aircraft Co. v. Avior Techs, Inc.*, 990 So. 2d 532, 538 (Fla. Dist. Ct. App. 2008) (jury trial); *Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 315 Ill. App. 3d 248, 257-58, 722 N.E.2d 718, 248 Ill. Dec. 43 (Ill. App. Ct. 2000) (summary judgment); *Transport Corp. of America, Inc. v. Int'l Bus. Machs. Corp., Inc.*, 30 F.3d 953, 959 (8th Cir. 1994) (summary judgment); *BOC Grp., Inc. v. Chevron Chem. Co. LLC*, 359 N.J. Super. 135, 148-149 (N.J. Super. Ct. App. Div. 2003) (summary judgment).

enforceable. Which it is." (R.32, at 7-8.) Rust-Oleum proceeds to address—under the relevant state's laws—the validity of the exclusive-remedy provision, arguing that it does not fail of its essential purpose. (*Id*. at 8-14.) Plaintiffs respond substantively, but also assert that the inquiry of whether an exclusive-remedy provision fails of its essential purpose is fact-driven and inappropriate for resolution at this stage. The Court agrees. Courts in many of the relevant states have routinely characterized a determination of whether an exclusive-remedy provision fails of its essential purpose as a question of fact. *See, e.g., Demorato v. Carver Boat Corp.*, 304 F. App'x. 100, 102 (3d Cir. 2008) (citing *Roneker v. Kenworth Truck Co.*, 944 F. Supp.179 (W.D.N.Y. 1996) (applying New York law) (noting that whether a remedy failed of its essential purpose is "typically a question of fact for the jury")); *see also Delhomme Indus., Inc. v. Houston Beechraft, Inc.,* 669 F.2d 1049, 1063 (5th Cir. 1982) ("the question whether the circumstances in this case justify a [state analogous section 2719] action ... is a question of fact"); *Rothbaum v. Samsung Telecomms. Am., LLC,* 52 F. Supp. 3d 185, 205 (D. Mass. 2014) (citations omitted) ("[w]hether a remedy has failed of its essential purpose is a question of fact"); *Lincoln Elec. Co. v. Technitrol, Inc.*, No. 1:08 CV 2346, 2010 WL 2219341, at *4 (N.D. Ohio June 2, 2010) ("Whether a limited remedy has failed of its essential purpose is a question of fact"); *Xerox Corp. v. Graphic Mgmt. Servs. Inc.,* 959 F. Supp. 2d 311, 320 (W.D.N.Y. 2013) (noting that whether a remedy has failed of its essential purpose is "generally" a question of fact for the jury); *accord,* Howard Foss*, When to Apply the Doctrine of Failure of Essential Purpose to an Exclusion of Consequential Damages,* 25 Duq. L. Rev.. 551, 575 (1987) (motion to dismiss is inappropriate to decide "the fate of an exclusion of consequential damages upon a failure of a limited remedy").

Indeed, factual inquiries—such as whether Restore had any latent defects present—will not be adequately determined absent discovery, and underlie the determination of whether an express warranty failed of its essential purpose. As alleged, Plaintiffs' Complaint supplies "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" supporting the allegations of a latent defect. *See Indep. Trust Corp.*, 665 F.3d at 935; *see also e.g., Scott*, 2015 WL 1517527, at *7 (citing *Advanced Tubular Prods, Inc. v. Solar Atmospheres, Inc.,* 149 F. App'x. 81, 85 (3d Cir.2005) (unpublished) (collecting cases)) ("courts typically consider whether latent defects cause a remedy's essential purpose to fail when the limited remedy provides for a refund of the purchase price …"); *Lincoln Elec.,* 2010 WL 2219341, at *4 ("A purchaser can be deprived of the value of its bargain where the goods purchased under the contract contain latent defects, which are defects that are "not detectable until it is impractical to effectuate the exclusive remedy"); *PDC Labs., Inc. v. Hach Co.,* No. 09–1110, 2009 WL 2605270, at *12, (C.D. Ill. Aug. 24, 2009) ("[W]hen a contract limits remedy to return of the purchase price, the limited remedy fails of its essential purpose 'when goods have latent defects which are not discoverable upon receipt and reasonable inspection.'" (applying Colorado law)); *Petri Paint Co. v. OMG Ams., Inc.,* 595 F. Supp. 2d 416, 423–425 (D.N.J. 2008) (applying case law pertaining to latent seed defects to a chemical products suit in which chemical defects were not readily discoverable); *Neville Chem. Co. v. Union Carbide Corp.,* 294 F. Supp. 649, 655 (W.D. Pa. 1968) ("[A] time limitation of a few days after receipt of shipment renders any warranties ineffective as to defects not discoverable on ordinary inspection.... Such limitations on time and damages, when the defect is latent, are illusory and under the circumstances of this case represent no remedy at all"). Indeed, as Rust-Oleum notes, although "there is no blanket rule", there are "a handful of cases from a few states concluding that a refund remedy failed its

essential purpose where the alleged defect was latent." (R.77, at 3.) In particular, as noted by the district court in *Petri Paint*, while there may be a trend to enforce limitations clauses in contracts for machinery, "the process of applying such legal reasoning to facts of the instant case is awkward, at best. While a mechanical part can be replaced or repaired, and reinserted into a machine, chemicals, once introduced into another substance or chemical process, cannot readily be extracted for easy replacement or repair." 595 F. Supp. 2d at 423. The Court agrees and finds that based on Plaintiffs' allegations, they have satisfied the pleading standard for their claim that the Limited Lifetime Warranty failed of its essential purpose.

Rust-Oleum argues that once a determination of latency is made, the Court must also look at any unanticipated circumstances because "it may be that the parties bargained for an allocation of risk relating to latent defects." (*Id.* at 4.) The Court does not need to make a determination at this stage, however, as to whether this additional step in its analysis is required, but merely notes that if it is, it only serves to weaken Rust-Oleum's position in its motion to dismiss, as such a determination relies on additional factual inquiries relevant to the relationship of the parties and the anticipated circumstances surrounding use of the product to determine whether the exclusive-remedy provision had a preclusive effect on Plaintiffs' breach of express warranty claim.[11]

_____

[11] The cases upon which Rust-Oleum relies for the proposition that factual questions do not prevent dismissal of breach of warranty claims on a motion to dismiss are distinguishable. *See* (R.77, at 5, n. 7); *Adelman v. Rheem Mfg. Co.*, No. 2:15-cv-00190 JWS, 2015 WL 4874412, at *2 (D.Ariz. Aug. 14, 2015) (finding the plaintiffs' arguments at odds with the facts alleged in the complaint and that the defendants' actions did fix the defect as of a specific date); *Fowler v. Goodman Mfg. Co. LP*, No. 2:14-CV-968-RDP, 2014 WL 7048581, at *4-5 (N.D. Ala. Dec. 12, 2014) (no factual disputes existed that the defendant repaired the alleged defective air conditioning unit and replaced the defective parts as promised in the limited warranty); *Asp v. Toshiba Am. Consumer Prods., LLC*, 616 F. Supp. 2d 721, 731 (S.D. Ohio 2008) (finding the plaintiff did not dispute that he gave the defendant no opportunity to repair his DVR or provide him with a replacement); *Against Gravity Apparel, Inc. v. Quarterdeck Corp.*, 699 N.Y.S.2d 368, 369-70 (App. Div. 1999) (cursory analysis finding that the software's Y2K noncompliance is latent defect could not have been discovered during the 90 day warranty period); *Maltz v. Union Carbide Chems. &*

Because of the presence of numerous factual issues surrounding Rust-Oleum's breach of warranty argument based on its exclusive-remedy provision, the Court finds that a decision at this early stage of the litigation is inappropriate. Accordingly, the Court denies Rust-Oleum's motion to dismiss Counts II and III based on the exclusive-remedy provision.

### 3. Plaintiffs Have Sufficiently Pled a Breach of Warranty Claim, Despite the Warranty's Consequential-Damages Exclusion Provision

Rust-Oleum contends that even if the exclusive-remedy provision is enforceable, the separate provision in its Restore express warranty excluding consequential damages independently requires dismissal of all of Plaintiffs' claims for consequential damages under Counts II-V. (R.32, at 15.) Specifically, Rust-Oleum argues that Plaintiffs' Complaint does not adequately plead which warranty—of the two versions attached to the complaint—each Plaintiff received, but that regardless, the plain language of either version precludes recovery for the costs of removing Restore from structures to which it is applied and the costs of repairing or replacing those structures. (*See id.*) Plaintiffs reply that a determination as to whether Plaintiffs' damages are direct or consequential is premature for the same reason that the issue of whether the remedy fails of its essential purpose is premature—because it is a factual determination that requires development of the factual record and the allegations presented raise a reasonable expectation that discovery will reveal supporting evidence. Specifically, Plaintiffs argue that a determination as to the foreseeability of the damages must be conducted first, and such a determination requires an understanding of Rust-Oleum's representations, promises, and warranties, as well as the degree to which Plaintiffs' needs are incorporated into such promised performance—inquiries that require a sufficient factual record that does not yet exist. In addition, Plaintiffs argue that

---

*Plastics Co., Inc.*, 962 F. Supp. 286, 304 (S.D.N.Y. 1998) (finding the plaintiff alleged no facts that suggest enforcement of the limited remedy clause would effectively deprive them of a remedy).

23

even if the damages are consequential, the consequential-damages exclusion is unenforceable because it is unconscionable.

### a.        Direct vs. Consequential Damages

"Contract law distinguishes between direct and consequential damages, the difference lying in the degree to which the damages are a foreseeable (that is, a highly probable) consequence of a breach." *Rexnord Corp. v. DeWolff Boberg Assocs.*, 286 F.3d 1001, 1004 (7th Cir. 2002) (collecting cases). Damages are awarded upon proof of a breach as direct damages where they were "utterly foreseeable, indeed certain," *id.* and as consequential damages when they were "reasonably foreseeable". *Linc Equip. Scvs., Inc. v. Signal Med. Svcs, Inc.*, 319 F.3d 288, 289 (7th Cir. 2003). The distinction between damages as direct or consequential "is relative not absolute." *IMI Norgren Inc. v. D&D Tooling & Mfg., Inc.*, 247 F. Supp. 2d 966, 970-71 (N.D. Ill. 2002); *see also U.S. Plastic Lumber, Ltd. v. Strandex Corp.*, No. 02-C-211-C, 2003 WL 23144861, at *12 (W.D. Wis. Feb. 7, 2003) (applying Wisconsin law on summary judgment regarding the distinction between direct and consequential damage).

Section 2-715(2) of the U.C.C. defines "consequential damages" to include "(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty." U.C.C. § 2-715(2). Section 2-714(2) of the U.C.C. defines direct damages more narrowly as "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." The definitions are not alone definitive, however, as "[d]amages that might be consequential under one contract can be direct or ordinary under another." *Biovail Pharms, Inc.*

24

*v. Eli Lilly & Co.*, 5:01-CV-352-BO(3), 2003 WL 25901513, at *3 (E.D.N.C. Feb. 28, 2003)
(citing U.C.C. (4th ed.) § 10-4 at 573-74).  In addition, "among the circumstances most relevant
to the classification is the scope of the broken promise itself.  If the requirements or needs of the
buyer are explicitly incorporated into the subject matter of the promised performance, then at
least the immediate damages from the breach will be direct because they flow in the ordinary
course of events from the breach."  *Id.*  In practice, despite some variation among jurisdictions,
courts generally treat "damages that would follow any breach of similar character in the usual
course of events" as direct damages, but treat "damages that, although not an invariable result of
every breach of this sort, were reasonably foreseeable or contemplated by the parties" as
consequential damages.  *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 530 F.3d 269, 277 (3d Cir.
2008).

Rust-Oleum argues that the allegations make clear that the removal, replacement, and
repair costs Plaintiffs seek qualify as consequential damages.  First, Rust-Oleum contends that
Plaintiffs expressly plead that the alleged compensatory damages beyond a refund are
consequential damages, e.g., costs of removing Restore, replacing it with another product, and
repairing any damage to decks.  In particular, Rust-Oleum points to Plaintiffs' Complaint that
alleges they incurred "significant consequential damages" … "above and beyond the 'limited'
warranty".  (R.16, ¶ 98; *see also id.*, ¶¶ 320, 330 (requesting repair costs, replacement costs, and
"other consequential and incidental damages").)  Plaintiffs' Complaint also, however, "seek[s] to
recover damages caused as a direct result of Defendant's breach of its written and implied
warranties and its deceitful and unlawful conduct.  Damages include, *inter alia*, labor and other
costs associated with removing Restore and replacing decking structures and similar structures."
(*Id.*, ¶ 282; *id.*, ¶ 292 ("[a]s a direct and proximate result of the breach of the express warranty,

Plaintiffs have suffered damages, injury in fact and/or ascertainable loss in an amount to be

determined at trial, including repair and replacement costs and/or damages to other property");

*accord id.*, ¶¶ 301, 312, 320, 329, 330, 337, 345, 350.) As such, Plaintiffs' Complaint does not

dictate a characterization of damages in this case as direct or consequential.

 Rust-Oleum further asserts that Plaintiffs' damages are not direct because the costs

depend entirely on each Plaintiff's individual deck materials, deck conditions, product

application, weather conditions, and product degradation, and thus would not follow every

breach in the ordinary course. (*See* R.77, at 7.) Rust-Oleum further notes that based on the

presence of individual factors such as these, courts have repeatedly held that similar demands for

removal, replacement, and repair costs seek consequential, not direct, damages. (*Id.*) As with

many other cases upon which Rust-Oleum relies, these cases dealt with consequential damages

on summary judgment and/or did not address the distinction between direct or consequential

damages. In addition, many of these cases also addressed issues of unconscionability, which as

discussed *infra*, present factual inquiries rendering resolution on a motion to dismiss

inappropriate. *See, e.g., Farrar & Farrar Farms v. Miller-StNazianz, Inc.*, 477 F. App'x. 981,

988-89 (4th Cir. 2012) (unpublished) (not addressing a distinction between alleged damages as

direct or consequential and finding on summary judgment that the defendant's disclaimer for

payment of consequential damages valid, in part, because it was not unconscionable); *Stearns*,

2009 WL 4723366, at *9-10 (finding damages of replacement consequential and that the

warranty excluded such costs because it was not unconscionable); *Am. Abrasive Metals Co. v.

Assoc. Paint & Supply Co., Inc.*, No. 86-531 (CSF), 1987 WL 16358, at *2 (D.N.J. Aug. 10,

1987) (not addressing a distinction between alleged damages as direct or consequential in

granting motion for summary judgment to preclude claim for loss profits or for costs incurred "in connection with warranty and/or repair work").

Similarly, Rust-Oleum's argument that the plain language of the provision itself makes clear that the damages are consequential is not persuasive. The warranty excludes payment for "labor or costs of labor for removal or application of any product, or replacement of any wood structure" or "labor or cost of labor for the application of any paint and consequential, incidental damages". (R.16, Exs. 1 & 2.) Indeed, taking the facts and reasonable inferences in the light most favorable to Plaintiffs, this language does not show an intent to treat removal, replacement and repair costs as consequential damages because it lists consequential and incidental damages separately, in addition to labor or cost of labor for removal or application of the product or replacement of the wood structure. This differs from the language used in the cases upon which Rust-Oleum relies. *See City of New York v. Bell Helicopter Textron, Inc.*, No. 13 CV 6848(RJD)(SMG), 2015 WL 3767241, at *3, *6 (E.D.N.Y. June 16, 2015) (noting warranties at issue disclaimed consequential and incidental damages "including without limitation, damage to the helicopter or other property"); *McNally Wellman Co., a Div. of Boliden Allis v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1193 (2d Cir. 1995) (warranty provision stated "[c]ontractor shall not be liable for all or any part of any of the following, no matter how claimed ...: loss of profit or revenue, ... cost of capital, ... loss or reduction of use or value of any facilities ... or increased costs of operations or maintenance"); *Farrar & Farrar Farms*, 477 F. App'x at 983 (warranty provision stated that the defendant "maintains no obligations or liabilities for consequential damages arising out of, or in connection with[,] use of this product, including but not limited to inconvenience, loss of profit, commercial use, food loss of any type, or costs o[f] removal, installation or reinstallation").

27

Plaintiffs have alleged that the express warranty promised that Rust-Oleum "guarantees product performance for the product in this can only as long as you own or reside in your home when our product was applied according to the label directions." (*See* R.16, ¶ 95; *id.*, Exs. 1, 2.) Plaintiffs have also alleged that Plaintiffs and many of those authoring consumer complaints applied Restore "in accordance with the instructions provided by Defendant". (*See, e.g.,* R.16, ¶¶ 80, 81, 116, 117, 121, 124, 128, 132, 136, 140, 144, 147, 150, 153, 156, 160, 164, 167, 171, 175, 179, 183, 187, 290.) Taking all the reasonable inferences in Plaintiffs' favor, they have alleged factual support for a finding that the damages resulting from application of Restore to surfaces following the instructions, constitute direct damages which were bargained for as expressly embodied in Rust-Oleum's own warranty provision. Accordingly, Plaintiffs have sufficiently alleged a factual basis supporting a finding of direct damages which precludes dismissal of their claim at this early stage. *See, e.g., JPS Elastomerics Corp. v. Indus. Tools Inc.*, 65 F. Supp. 2d 376, 381 (W.D. Va. 1998) (finding that when construing the language most favorably to the plaintiff, "a reasonable person could find that modifications made to [the plaintiff's] machine at [the defendant's] direction constitute direct damages which were bargained for as expressly embodied in [the defendant's] own warranty provisions).

### b. Unconscionability

Even if the Court treated Plaintiffs' damages as consequential, however, the Court must still assess whether the consequential-damages exclusion provision is unconscionable, as Plaintiffs also allege. Factual issues exist including the parties' relationship, the adequacy of the bargaining position, and the existence of meaningful alternatives available, that preclude a determination at this stage as to whether Rust-Oleum's express warranty is unconscionable.[12]

---

[12] As with Rust-Oleum's arguments for failure of essential purpose, many of the cases cited in support of its position that consequential damages are precluded occurred after the development of the

"Under the UCC, a contract term limiting parties' ability to recover consequential damages is enforceable unless the provision is unconscionable." *Scott*, 2015 WL 1517527, at *7 (citing § 4-2-719(3)); *see also e.g., Pig Imp. Co., Inc. v. Middle States Holding Co.*, 943 F. Supp. 392, 401-02 (D. Del. 1996); *Pizel v. Monaco Coach Corp.*, 364 F. Supp. 2d 790, 796 (N.D. Ind. 2005). Resolution of whether an express warranty is unconscionable may involve issues of fact which preclude resolution on a motion to dismiss. *See Bennett v. Skyline Corp.,* 52 F. Supp. 3d 796, 809 (N.D.W.Va. 2014) (citing *Hager v. Am. General Fin., Inc.,* 37 F. Supp. 2d 778, 787 (S.D.W.Va. 1999)) (explaining that dismissal is improper if questions of fact exist regarding "whether the parties' bargaining power was grossly unequal so as to render the transactions between the plaintiffs and defendants unconscionable'")); *accord Gonzalez v. FMS, Inc.,* No. 14 C 9424, 2015 WL 4100292, at *3 (N.D. Ill. July 6, 2015) (citing *McMillan v. Collection Prof'ls Inc.,* 455 F.3d 754, 759–60 (7th Cir. 2006)) (explaining that whether a particular practice is unconscionable in the eyes of an unsophisticated consumer "is often a question of fact and thus 'district courts must act with great restraint when asked to rule in this context on a motion to dismiss'").

Here, factual inquiries exist as to the relationships between and relative positions of the parties, the adequacy of the bargaining position, and the existence of meaningful alternatives available to Plaintiffs. *See, e.g., Bennett*, 52 F. Supp.3d at 809; *In re Samsung DLP Television Class Action Litig.*, Civ. 07-2141(GEB), 2009 WL 3584352, at *5 (D.N.J. Oct. 27, 2009)

---

factual record on motions for summary judgment or after a trial. *See, e.g., Kennedy Elec. Co. v. Moore-Handley, Inc.*, 437 So. 2d 76, 81 (Ala. 1983) (appeal of a jury verdict); *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.*, 246 Cal. Rptr. 823, 836 (Cal. Ct. App. 1988) (bench trial); *Pig Imp*, 943 F. Supp. at 392 (summary judgment); *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1166 (11th Cir. 2009) (summary judgment); *NEC Tecs, Inc. v. Nelson*, 478 S.E.2d 769, 775 (Ga. 1996) (summary judgment); *Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 733 N.E.2d 718, 724-25 (Ill. App. Ct. 2000) (summary judgment); *Pizel*, 364 F. Supp. 2d at 796 (partial summary judgment).

(finding that the plaintiffs adequately alleged procedural and substantive unconscionability where the defendant knew of defect at time of sale, consumers had no meaningful choice in time limitations of warranty, and a significant disparity in bargaining power existed); *Payne v. Fjuifilm U.S.A., Inc.*, Civ. 07-385(JAG), 2007 WL 4591281, at *5 (D.N.J. Dec. 28, 2007) (nothing that the plaintiff specifically alleged that the defendant knew, or should have known, of the alleged defect in the product and defendant failed to disclose same to members of the class). In addition, factual inquiries exist surrounding Restore's alleged latent defect and whether the consequential-damages exclusion provision, in light of that defect, is unconscionable. *See, e.g., Majors v. Kalo Labs., Inc.,* 407 F. Supp. 20, 22–23 (M.D. Ala. 1975) (citing U.C.C. § 2-719(2)) (finding a limitation in the remedy clause unconscionable where the purchased product, a soybean inoculant, had a latent defect which could not be detected until the soybean crop had been cultivated, planted and harvested); *Trinkle v. Schumacher Co.,* 301 N.W.2d at 259 (finding limited remedy provision unconscionable under § 2-719(2) where defect in fabric not discoverable until after time limitation of sales contract expired); *Wilson Trading Corp. v. David Ferguson, Ltd.,* 244 N.E.2d at 688 (finding limited remedy inadequate under § 2-719(2) where defect in yarn not discoverable until after time limitation of sales contract expired); *accord Pig Imp*, 943 F. Supp. at 401-02 (distinguishing case law finding a latent defect as a basis for unconscionability on the basis that the plaintiff had the means to discover the defect at the time of delivery and had a reason to be looking for the defect). The presence of such factual issues, taken along with Plaintiffs' well-pleaded Complaint, preclude dismissal of Plaintiffs' claim at this stage.

In addition, Plaintiffs' allegations are sufficient to satisfy the pleading standard to allow a reasonable inference that Rust-Oleum had knowledge of the alleged latent defect during the

relevant time period of the present action, where the Complaint specifically alleges that customers voiced complaints against the product at least as early as 2011 when consumers complained about Synta's Restore product peeling and pulling away from the surface three months after application. (*See, e.g.,* R.16, ¶ 88.) Furthermore, Plaintiffs allege that after Rust-Oleum purchased Synta, it had access to Synta's customer complaint files and could review numerous online complaints about Synta's Restore product. (R.16, ¶ 87.)

Accordingly, taking the allegations and facts in the light most favorable to Plaintiffs, the Court denies Rust-Oleum's motion to dismiss the breach of express warranty claims based on the consequential-damages exclusion provision.[13]

### B. Plaintiffs' Allegations Fail to State a Claim that Restore's Limited Lifetime Warranty is Unenforceable as Conspicuous

Plaintiffs allege that the Restore written warranty's "limitations are not sufficiently set apart by underlining or highlighting," resulting in a "lack of conspicuousness" that they allege violates §§ 2302(a), 2304(a)(3), 2308(a), and 2308(c) of the MMWA. (*See* R.16, ¶ 280.) Plaintiffs further allege that under state law, Rust-Oleum "has not sufficiently disclaimed the implied warranty of merchantability (specifically and conspicuously) or the implied warranty of fitness (in writing and conspicuously)." (R.16, ¶¶ 298, 308.) Rust-Oleum argues that Restore's Lifetime Limited Warranty is sufficiently conspicuous as required by state law. Namely, Rust-Oleum contends that the MMWA contains no requirements for consequential-damages exclusions or limitations to appear conspicuously on a limited warranty (as opposed to a full warranty). In addition, Rust-Oleum argues that the consequential-damages exclusion does not

---

[13] Because the Court determined that factual issues preclude resolution of whether the consequential-damages exclusion provision bars Plaintiffs from recovery of damages based on breach of express warranty, the Court does not address the parties' arguments regarding adequacy of the offered remedy. (*See, e.g.,* R.77, at 9-11.)

disclaim or modify an implied warranty, but instead restricts the available relief for breach of warranty and that Plaintiffs have failed to allege warranties that are inconspicuous under the U.C.C. where the Limited Lifetime Warranty includes a bold and capitalized title.  (*See* R.32, at 21-25; R.77, at 8-10.)  Plaintiffs respond that "[i]n order to be enforceable … warranty disclaimer language (not simply the title) must be conspicuous", and that the warranty limitations "buried within the warranty and printed in the same size letters as the rest of the agreement" fail to sufficiently distinguish the warranty from the rest of the agreement.  (*See* R.66, at 20.)

Plaintiffs allege that Rust-Oleum violated Sections 2302(a), 2304(a)(3), 2308(a), and 2308(c) of the MMWA for the limited warranty's lack of conspicuousness.  (*See* R.16, ¶ 280.)  The MMWA is a "remedial statute designed to protect consumers from deceptive warranty practices."  *Anderson v. Gulf Stream Coach, Inc.,* 662 F.3d 775, 780 (7th Cir. 2011) (citing *Skelton v. General Motors Corp.,* 660 F.2d 311, 313 (7th Cir. 1981)).  The MMWA does not mandate that sellers and manufacturers offer warranties, but if they do chose to do so, any "written warranty" must comply with the MMWA's requirements.  *Skelton,* 660 F.2d at 314.  A warrantor, for example, must "fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty." 15 U.S.C. § 2302(a).  The MMWA further states requirements for remedies under written warranty and exclusion or limitation of consequential damages which include that "such warrantor may not exclude or limit consequential damages for breach of written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty".  15 U.S.C. § 2304(a)(3).  This statutory provision, however, does not apply to limited warranties.  *See* 15 U.S.C. § 2303(a)(2) ("If the written warranty does not meet the Federal minimum standards for warranty set forth in section 2304 of this title, then it shall be conspicuously designated a

"limited warranty"); *see also Schimmer*, 384 F.3d at 405 (explaining that the alleged "limited"

warranty was not subject to Section 2304 of the MMWA and "thus not subject to the Act's

substantive remedies"); *Anderson*, 662 F.3d at 781 (citing *Boelens v. Redman Homes, Inc.,* 748

F.2d 1058, 1062 (5th Cir. 1984); 15 U.S.C. §§ 2303, 2304) (explaining that the MMWA

"distinguishes between two kinds of written warranties: full warranties and limited warranties"

and that "'[l]imited' warranties and 'implied' warranties are not subject to the same standards as

"full" warranties" under the MMWA).

Here, Plaintiffs allege that "Defendant places a written 'lifetime limited warranty' on the

packing of Restore." (*See* R.16, ¶ 280.) Plaintiffs further attach to, and incorporate into, their

Complaint, two exhibits which show the limited warranty contained in the Restore packaging

which is prefaced by bold, capitalized letters stating "LIMITED LIFETIME WARRANTY".

(*See* R.16, ¶ 63; *id.*, Ex. 1, Ex. 2.) Even taking all facts and reasonable inferences in Plaintiffs'

favor, the allegations fail to support a claim that the Restore limited lifetime warranty is

insufficiently conspicuous as required by the MMWA because the warranty is clearly labeled as

"limited" and the MMWA's statutory requirements for conspicuousness are, therefore,

inapplicable.[14] The Court, therefore, finds that Plaintiffs' fail to state a claim that the limited

lifetime warranty is invalid or unenforceable as inconspicuous based on a violation of the alleged

statutory provisions of the MMWA.

The MMWA does, however, allow consumers to enforce written and implied warranties

in federal court, borrowing state law causes of action—as Plaintiffs have alleged here.

*Anderson*, 662 F.3d at 781 (citing *Schimmer*, 384 F.3d at 405; MMWA § 2310(d)(1)) ("But the

---

[14] Plaintiffs' Complaint alleges only statutory violations of the MMWA (*see* R.16, ¶ 280) and
makes no reference to the implementing regulations of the MMWA.

MMWA 'allows consumers to enforce [limited] written and implied warranties in federal court, [as provided in section 2310(d)(1),] borrowing state law causes of action'"). This ability to borrow state law does not cure Plaintiffs' defect because the U.C.C. in each relevant state does not impose a conspicuousness requirement for exclusive-remedy provisions or consequential-damages exclusions. Although Plaintiffs refer to Section 2-316 of the U.C.C., that section requires that disclaimers of warranties be conspicuous—not limitations of relief for breach of warranty. *See* U.C.C. § 2-316 ("to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous").[15]

Even if inconspicuousness provided a ground for invalidation of the remedy limitations, however, Plaintiffs' allegations fail to support such a claim. Under U.C.C. § 1-201(b)(10), a term is "conspicuous" when "a reasonable person against which it is to operate ought to have noticed it" and includes "a heading in capitals equal to or greater in size than the surrounding text".[16] Indeed, the "LIMITED LIFETIME WARRANTY" printed on the front page of the

---

[15] *See also* Ala. Code § 7-2-316(2); Cal. Com. Code § 2316(2); Colo. Rev. Stat. § 4-2- 316(2); Del. Code tit. 6, § 2-316(2); Fla. Stat. § 672.316(2); Ga. Code § 11-2-316(2); Idaho Code § 28-2- 316(2); 810 ILCS 5/2-316(2); Ind. Code § 26-1-2-316(2); Me. Rev. Stat. tit. 11, § 2-316(2); Md. Code, Com. Law § 2-316(2); Mass. Gen. Laws ch. 106, § 2-316(2); Mich. Comp. Laws § 440.2316(2); Minn. Stat. § 336.2-316(2); Mo. Rev. Stat. § 400.2-316(2); Neb. Rev. Stat. U.C.C. § 2-316(2); N.H. Rev. Stat. § 382-A:2-316(2); N.J. Stat. § 12A:2-316(2); N.Y. U.C.C. Law § 2-316(2); N.C. Gen. Stat. § 25-2- 316(2); Ohio Rev. Code § 1310.21(B); 13 Pa. Cons. Stat. § 2316(b); R.I. Gen. Laws § 6A-2-316(2); Tenn. Code § 47-2-316(2); Tex. Bus. & Com. Code § 2.316(2); Va. Code § 8.2-316(2); Wash. Rev. Code § 62A.2-316(2).

[16] Ala. Code § 7-1-201(b)(10); Cal. Com. Code § 1201(b)(10); Colo. Rev. Stat. § 4-1-201(b)(10); Del. Code tit. 6, § 1-201(b)(10); Fla. Stat. § 671.201(b)(10); Ga. Code § 11-1-201(b)(10); Idaho Code § 28- 201(b)(10); 810 ILCS 5/1-201(b)(10); Ind. Code § 26-1-1-201(b)(10); Me. Rev. Stat. tit. 11, § 1- 1201(b)(10); Md. Code, Com. Law § 22-102(a)(14); Mass. Gen. Laws ch. 106, § 1-201(b)(10); Mich. Comp. Laws § 440.1201(b)(10); Minn. Stat. § 336.1-201(b)(10); Mo. Rev. Stat. § 400.1-201(b)(10); Neb. Rev. Stat. U.C.C. § 1-201(b)(10); N.H. Rev. Stat. § 382-A:1-201(b)(10); N.J. Stat. § 12A:1-201(b)(10); N.Y. U.C.C. Law § 1-201(b)(10); N.C. Gen. Stat. § 25-1-201(b)(10); Ohio Rev. Code § 1310.21(B)(10);

instructions and in capital and bold letters prefaces the description of the limitations on relief for breach of warranty. (*See* R.16, Ex. 1; *id.*, Ex. 2.) In addition, the paint can packaging label further states in bold and capital letters "THIS WARRANTY SPECIFICALLY EXCLUDES LABOR OR COST OF LABOR FOR THE APPLICATION OF ANY PAINT OF ANY PAINT AND CONSEQUENTIAL, INCIDENTAL DAMAGES". (*See* R.16, Ex. 2.) Indeed, Plaintiffs' allegations also refer to the bold header and the capital letters on the warranty on the front page of the instructions. (*See* R.16, ¶ 96.) Plaintiffs simply argue that the limitations are inconspicuous because they are buried within the warranty and indistinguishable from the rest of the document. Plaintiffs' allegations, however, do not support such an argument where the warranties attached to the Complaint show the header in bold and capital letters on the front page of the instructions or on the cover of the Restore can or bucket. (*See* R.16, Exs. 1, 2.) *See, e.g., Semitekol v. Monaco Coach Corp.*, 582 F. Supp. 2d 1009, 1029 (N.D. Ill. 2008) (rejecting the plaintiffs argument in opposition to a motion to dismiss that the warranty disclaimers were inconspicuous where the disclaimers were printed in bold, capital, underlines letters); *see also id.* (citing 810 ILCS 5/2–316(2); 810 ILCS 5/1–201(1)) ("[l]anguage in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color.... Whether a term or clause is 'conspicuous' or not is for decision by the court"); *Merricks v. Monaco Coach Corp.*, No. CIV. 3:08CV00047, 2008 WL 5210856, at *4, n. 2 (W.D. Va. Dec. 15, 2008) (finding the owner's manual limitations did not violate MMWA regulation, 16 C.F.R. § 701.3, as inconspicuous where the limitations were printed in bold face, all-caps type, and "clearly worded and conspicuous on the page"). Taking the allegations in the light most favorable to Plaintiffs, to the

---

13 Pa. Cons. Stat. § 1201(b)(10); R.I. Gen. Laws § 6A-1-201(b)(10); Tenn. Code § 47-1-201(b)(10); Tex. Bus. & Com. Code § 1.201(b)(10); Va. Code § 59.1-501.2(a)(14); Wash. Rev. Code § 62A.1-201(b)(10).

extent that Plaintiffs attempt to invoke the U.C.C. provisions in their arguments that Rust-Oleum's limited lifetime warranty is not conspicuous in the labels as presented, those arguments fail.[17]  The Court, therefore, finds that Plaintiffs' allegations fail to state a claim supporting a finding that Rust-Oleum breached its express or implied warranties because Restore's limited lifetime warranty is inconspicuous.

### C. Plaintiffs Sufficiently Plead Pre-Suit Notice Was Provided to Rust-Oleum & Further Analysis At This Stage is Premature

Rust-Oleum asserts that the 15 Plaintiffs who have not yet alleged a refund payment or offer fail to state a breach of warranty claim because they fail to allege factual support that those Plaintiffs provided Rust-Oleum with pre-suit notice of their alleged problems with Restore. Plaintiffs respond that: (1) whether notice is sufficient is a question of fact not suitable for a motion to dismiss; (2) claims of direct notice for 3 of the 15 Plaintiffs should be sustained; (3) Plaintiffs sufficiently allege actual notice; and (4) certain Plaintiffs provided notice by service of the Complaint.  (*See* R.66, at 22-27.)

The U.C.C. provides that a buyer of goods "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  *See* U.C.C. § 2-607.[18]  Courts in the states relevant to the 15 Plaintiffs at issue here, have applied this U.C.C. provision to require that a plaintiff give the defendant reasonable

---

[17] This is true, not only to the extent that Plaintiffs invoke this argument for alleged failure of the exclusive-remedy provision and the consequential-damages exclusion to be conspicuous, but also to the extent that Plaintiffs attempt to argue that the "Limited Lifetime Warranty" is inconspicuous with regard to its breach of implied warranty claims (Counts IV & V).

[18] Ala. Code § 7-2-607(3)(a); Colo. Rev. Stat. § 4-2-607(3)(a); Ga. Code § 11-2-607(3)(a); Idaho Code § 28-2-607(3)(a); 810 ILCS 5/2-607(3)(a); Me. Rev. Stat. tit. 11, § 2-607(3)(a); Minn. Stat. § 336.2- 607(3)(a); N.J. Stat. § 12A:2–607(3)(a); N.Y. U.C.C. Law § 2-607(3)(a); N.C. Gen. Stat. § 25-2- 607(3)(a); R.I. Gen. Laws § 6A-2-607(3)(a); Tenn. Code § 47-2-607(3)(a); Tex. Bus. & Com. Code § 2.607(c)(1); Va. Code § 8.2–607(3)(a); Wash. Rev. Code § 62A.2-607(3)(a).

pre-suit notice before asserting a breach of warranty claim in court. *See, e.g., Connick v. Suzuki Motor Corp.*, 174 Ill.2d 482, 492, 675 N.E.2d 584, 589, 221 Ill.Dec. 389 (1996) (citing 801 ILCS 5/2-607 & 13 Pa.Cons.Stat. § 2607) (Section 2-607 of the U.C.C. mandates that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"). Similarly, courts have applied the same U.C.C. pre-suit notice requirements to reject breach of warranty claims brought under the MMWA. *See, e.g., Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1284-85, 1289 (S.D. Ga. 2010); *Perona v. Volkswagen of Am., Inc.*, 292 Ill. App. 3d 59, 65, 684 N.E.2d 859, 864 (1997) (citing *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1012 (D.C. Cir. 1986)) ("Magnuson–Moss incorporates the relevant state law on U.C.C. notice").

Plaintiffs argue that whether and to what extent notice is sufficient is a question of fact not susceptible to a motion to dismiss. *See, e.g., Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 940 (Ill. App. Ct. 1998) ("Whether sufficient notice has been provided is generally a question of fact to be determined based upon the particular circumstances of each case"). While this may be true, the law still mandates a complaint provide factual allegations sufficient to establish pre-suit notice to sustain a breach of warranty claim under the U.C.C. and MMWA. *See Connick*, 174 Ill.2d at 492-495. In particular, a notification of breach of warranty is sufficient if it lets the seller know that the particular "transaction is still troublesome and must be watched." *Connick*, 174 Ill.2d at 492 (citing 810 ILCS Ann. 6/2-607, U.C.C. Comment 4; 13 Pa.Cons.Stat. § 2607, U.C.C. Comment 4.) In general, buyers "must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty." *Id.* "There are instances, however, when a buyer can fulfill the notice requirements without

giving direct notice to the seller." *Id.* One of these exceptions to direct notice includes when the seller had actual knowledge of the defect of the particular product. *See id.*

Rust-Oleum argues that for 12 of the 15 Plaintiffs (Reyes, Patterson, Dockstader, Shogren, Riello, Dorgan, Fernandez, McLamb, Renzi, Ledfor, Reynolds, and McCain), that the Complaint makes no allegations that they provided notice to Rust-Oleum before filing suit. This is not the case, however, as the Complaint alleges that "[o]nce Plaintiffs purchased Restore and incurred damages, Plaintiffs promptly notified Defendant of Restore's premature failure and filed this action and related lawsuits." (*See* R.16, ¶ 94.) The Complaint further alleges that the remaining 3 of the 15 Plaintiffs who Rust-Oleum challenges here, specifically "notified Defendant that Restore was prematurely failing" and "resulting in permanent damages to the deck." (*See, e.g.,* R.16, ¶ 133, 180, 191.) These allegations suffice at the early stage of this litigation as allegations of direct notice for the 15 Plaintiffs. *See Much v. Sears Roebuck & Co.*, No. 06-cv-07023, 2007 WL 2461660, at *5 (N.D. Ill. Aug. 27, 2007) (sustaining nationwide warranty claims where, in many states, "nothing more is required to give notice of a breach of an implied warranty" than to allege "that they notified [the defendant] that there were problems with their machines").

In addition, Plaintiffs have sufficiently alleged factual support for one of the exceptions to direct notice—actual knowledge of the defendant. In particular, Plaintiffs have alleged that Rust-Oleum "knew and had notice that Restore had the propensity to prematurely fail" and that Rust-Oleum "knew or should have known that the product would not meet the claims and promises and representations the company affirmatively made to consumers on product packaging, uniform brochures, online marketing, and through other advertisements." (R.16, ¶¶ 82, 281.) Plaintiffs further allege that Rust-Oleum was a merchant in the business of

38

manufacturing, marketing, and selling Restore and "had internal systems that likely showed

Restore's defects, and Defendant had notice of consumer complaints for years, which

demonstrated that consumers were needing to repair and/or replace decks and other property."

(R.16, ¶ 97; *see also id.*, ¶¶ 270, 281, 291, 296, 298, 306, 308, 327, 343.)  Additionally, Plaintiffs

allege that Rust-Oleum had knowledge of Restore's defects through pre- and post-sale audits,

field testing, numerous online consumer complaints, relaying that the instructions were followed

as directed, and that within months, the product peeled, cracked, bubbled, and that customers

"contacted [Rust-Oleum's] warranty/claims office."  (R.16, ¶¶ 80-88, 343.)  These allegations

are sufficient at this early stage to allege an exception to pre-suit notice based on Rust-Oleum's

knowledge of the issues with Restore products sold to Plaintiffs and the putative class.  *See*

*L.Zingerman, D.D.S., P.C. v. Nissan N. Am., Inc.*, No. 14 C 7835,1 2015 WL 1840952, at *5

(N.D. Ill. Apr. 20, 2015) (finding that the plaintiff sufficiently alleged that the defendant knew

about the issue with the alleged capabilities of car technology where the plaintiff claimed that the

defendant "has actual knowledge that it breached express warranties with Plaintiff and other

Class members related to the Q50" and further alleged that he and other putative class members

contacted the defendant about the problems); *see also Hedges v. Earth, Inc.*, No. 14 C 9858,

2015 WL 1843029, at *3 (N.D. Ill. Apr. 21, 2015) (sustaining warranty claims in a class action

and finding the plaintiff sufficiently pled "actual knowledge" where the alleged defect

"necessarily applies to each and every pair of Exer-Walk shoes [the defendant] sold because,

according to the [c]omplaint, [the defendant] knows that none of these shoes can possibly do

what [the defendant] warrants they can do"); *Strzakowlski v. Gen. Motors Corp.,* No. Civ.A.

04-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005) (explaining that in New Jersey, under

Section 2-607(3)(a)'s notice requirement, "no notice must be given to a manufacturer who is not

39

the immediate seller in an express warranty case" and even if it were, filing of the complaint

would satisfy the requirement for purposes of a motion to dismiss).

Lastly, "state law varies as to what must be pleaded to satisfy the notice requirement". *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *27-28 (D.N.J. July 29, 2015). As summarized by the *In re Caterpillar* court:

> In some states, mere knowledge of a defect or constructive notice prior to suit is not enough, while in others it is. *Compare Fowler v. Goodman Mfg. Co. LP,* Civ. 14–968, 2014 WL 7048581, at *5 (N.D. Ala. Dec. 12, 2014) (Alabama) ("Contrary to plaintiffs' argument, a general awareness on Apple's part of alleged defects in its iPhone does not extinguish the purposes of the notice requirement, nor does it substitute for that requirement under Alabama law.") *with Martin v. Ford Motor Co.,* 765 F. Supp. 2d 673, 683 (E.D.Pa. 2011) (Pennsylvania) (finding allegations that defendant was aware for years of axle problems in vehicle due to widespread complaints on the internet and elsewhere and complaints by plaintiffs directly to defendant sufficient to satisfy notice requirement). In others, filing the complaint is sufficient to provide notice. *See Strzakowlski v. Gen. Motors Corp.,* Civ. 04–4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005) (New Jersey). Elsewhere, such filing is not sufficient. *See Hobbs v. Gen. Motors Corp.,* 134 F. Supp. 2d 1277, 1285 (M.D. Ala. 2001) (filing of a lawsuit itself constitutes sufficient notice only if personal injuries are involved); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.,* Civ. 13–1803, 2014 WL 1048710, at *4 (N.D. Cal. Mar. 14, 2014) ("Given the purpose of the rule, courts have expressly held that the notice must be provided before the lawsuit-notice that is after, or contemporaneous with, the filing of the lawsuit is insufficient."). Moreover, in some states, notice is not required where plaintiff asserts a warranty claim against a remote manufacturer. *See Sanders v. Apple Inc.,* 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) ("[T]imely notice of a breach of an express warranty is not required where the action is against a manufacturer and is brought "by injured consumers against manufacturers with whom they have not dealt.)

2015 WL 4591236, at *27-28. In addition, Plaintiffs contend here that the issue of notice is

usually a question of fact for the jury. The Court agrees. Indeed, "the sufficiency and

reasonableness of notice provided to the defendant is usually a fact question for the jury" in

many of the states at issue here. *See id.* at *28, n. 41 (collecting cases from New Jersey,

Colorado, Alabama, Florida, Georgia, Illinois, Minnesota, New York, North Carolina, Ohio, and

Texas).[19]  Accordingly, the Court finds that the allegations presented are sufficient and notes that an exhaustive review of the factual sufficiency of each Plaintiffs' allegations regarding notice under each applicable state law is not appropriate at this stage.  "Although notice presents a close question in states where neither constructive notice of the alleged defect, nor filing of the complaint is sufficient to establish notice, such a conclusion would be premature at this juncture."  *Id.* at *28.  Accordingly, the Court denies Rust-Oleum's motion to dismiss Plaintiffs' breach of express and implied warranty claims based on lack of pre-suit notice.

### D.    Implied Warranty Claims

Counts IV and V allege breaches of the implied warranty of merchantability under U.C.C. § 2-314 and the implied warranty of fitness for a particular purpose under U.C.C. § 2-315, with Count IV covering states that do not require privity and Count V covering those states that do.  (R.16, ¶¶ 293-313.)

#### 1.    Breach of Implied Warranty of Fitness for a Particular Purpose under U.C.C. § 2-315

Rust-Oleum asserts that Plaintiffs' claims for breach of the implied warranty of fitness for a particular purpose independently warrant dismissal because the Complaint fails to plead the requisite "particular purpose".  Plaintiffs respond that the Complaint sufficiently alleges a

---

[19] *See In re Caterpillar*, 2015 WL 4591236, at *28, n. 41 (citing *Strzakowlski,* 2005 WL 2001912, at *3 (New Jersey); *Fiberglass Component Prod., Inc. v. Reichhold Chemicals, Inc.,* 983 F. Supp. 948, 954 (D. Colo. 1997) (Colorado); *Hobbs v. Gen. Motors Corp.,* 134 F. Supp.2d 1277, 1285 (M.D. Ala. 2001) (Alabama); *Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.,* 719 F.2d 1092, 1102 (11th Cir. 1983) (Florida); *Wal–Mart Stores, Inc. v. Wheeler,* 586 S.E.2d 83, 85 (Ga. Ct. App.2003) (Georgia); *Maldonado,* 694 N.E.2d at 1026 (Illinois); *Duxor Inv. Aktiengesellschaft v. Inv. Rarities, Inc.,* 1990 WL 57549, at *2 (Minn. Ct. App. May 8, 1990) (Minnesota); *Hubbard v. Gen. Motors Corp.,* Civ. 95–4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996) (New York); *Horne v. Novartis Pharm. Corp.,* 541 F. Supp. 2d 768, 786 (W.D.N.C. 2008) (North Carolina); *Malkamaki v. Sea Ray Boats, Inc.,* 411 F. Supp. 2d 737, 743 (N.D. Ohio 2005) (Ohio); *Hull v. S. Coast Catamarans, L.P.,* 365 S.W.3d 35, 44 (Tex. Ct. App. 2011) (Texas)).

particular purpose for which Restore is used and that it would be improper at this stage of the litigation to engage in fact-finding to resolve whether the implied warranty of fitness arises here.

To state a claim for breach of implied warranty of fitness for a particular purpose, Plaintiffs must allege that "(1) the seller had reason to know of the particular purpose for which the buyer required the goods; (2) the buyer relied on the seller's skill and judgment to select suitable goods; and (3) the seller knew of the buyer's reliance on its skill and judgment." *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 957 (N.D. Ill. 2007) (internal quotation marks omitted). In each relevant state, an implied warranty of fitness for a particular purpose arises only "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required." U.C.C. § 2-315.[20] The buyer need not directly communicate the particular purpose to Rust-Oleum as "[a] buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended." U.C.C. § 2-315, cmt. 1. As further explained in the U.C.C., "[a] particular purpose differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of

---

[20] Ala. Code § 7-2-315; Cal. Com. Code § 2315; Colo. Rev. Stat. § 4-2-315; Del. Code tit. 6, § 2-315; Fla. Stat. § 672.315; Ga. Code § 11-2-315; Idaho Code § 28-2-315; 810 ILCS 5/2-315; Ind. Code § 26-1- 2-315; Me. Rev. Stat. tit. 11, § 2-315; Md. Code, Com. Law § 2-315; Mass. Gen. Laws § 2-315; Mich. Comp. Laws § 440.2315; Minn. Stat. § 336.2-315; Mo. Rev. Stat. § 400.2-315; Neb. Rev. St. § 2-315; N.H. Rev. Stat. § 382-A:2-315; N.J. Stat. § 12A:2-315; N.Y. U.C.C. Law § 2-315; N.C. Gen. Stat. § 25-2- 315; Ohio Rev. Code § 1302.28; 13 Pa. Cons. Stat. § 2315; R.I. Gen. Laws § 6A-2-315; Tenn. Code § 47- 2-315; Tex. Bus. & Com. Code § 2.315; Va. Code § 8.2-315; Wash. Rev. Code § 62A.2-315.

merchantability and go to uses which are customarily made of the goods in question." U.C.C. § 2-315, cmt. 2.[21]

Plaintiffs allege that Rust-Oleum misrepresented Restore's qualities on product labels and packaging, including statements that Restore "repairs decking", is "the smart alternative to deck & concrete replacement", "locks down wood splinters", revives wood & broom swept concrete", provides "lasting moisture protection", and is a "liquid armor resurfacer. (R.16, ¶ 61.) The Complaint further alleges that Restore "lasts 3X longer than deck stain with less maintenance", has "superior weather resistance" and "ultimate water repellency", and is "an easy to apply repair coating that revives the surface while offering maximum protection to preserve the deck for years to come". (*Id.*, ¶ 67.) Plaintiffs assert that Rust-Oleum impliedly warranted to Plaintiffs (and to Plaintiffs' agents) that Restore was … fit for its ordinary purpose of resurfacing decks and similar structures, and was fit for its particular purpose of providing protection to deck structures form [sic] harsh weather conditions and lasting longer than ordinary deck paints or stains." (*Id.*, ¶ 294; *see also id.*, ¶ 295 ("the product was not fit for its ordinary purpose as a deck resurfacer").) Furthermore, Plaintiffs allege that Restore was "unfit for its ordinary use and was not of merchantable quality, as warranted by Defendant, because it was defective and had the propensity to crack, peel, flake, chip, bubble, pucker, separate and generally degrade." (*Id.*, ¶ 295.) Additionally, Plaintiffs state that:

---

[21] Ala. Code § 7-2-315 cmt. 2; Cal. Com. Code § 2315 cmt. 2; Colo. Rev. Stat. § 4-2-315 cmt. 2; Del. Code tit. 6, § 2-315 cmt. 2; Fla. Stat. § 672.315 cmt. 2; Ga. Code § 11-2-315 cmt. 2; Idaho Code § 28-2- 315 cmt. 2; 810 ILCS 5/2-315 cmt. 2; Ind. Code § 26-1-2-315 cmt. 2; Me. Rev. Stat. tit. 11, § 2-315 cmt. 2; Md. Code, Com. Law § 2-315 cmt. 2; Mass. Gen. Laws § 2-315 cmt. 2; Mich. Comp. Laws § 440.2315 cmt. 2; Minn. Stat. § 336.2-315 cmt. 2; Mo. Rev. Stat. § 400.2-315 cmt. 2; Neb. Rev. St. § 2-315 cmt. 2; N.H. Rev. Stat. § 382-A:2-315 cmt. 2; N.J. Stat. § 12A:2-315 cmt. 2; N.Y. U.C.C. Law § 2-315 cmt. 2; N.C. Gen. Stat. § 25-2-315 cmt. 2; Ohio Rev. Code § 1302.28 cmt. 2; 13 Pa. Cons. Stat. § 2315 cmt. 2; R.I. Gen. Laws § 6A-2-315 cmt. 2; Tenn. Code § 47-2-315 cmt. 2; Tex. Bus. & Com. Code § 2.315 cmt. 2; Va. Code § 8.2-315 cmt. 2; Wash. Rev. Code § 62A.2-315 cmt. 2.

> Restore was similarly unfit for its particular purpose. At the time Plaintiffs purchased Restore, Defendant knew, or should have known, that the product would be used as an exterior resurfacing product for decks and related structures subject to certain extreme conditions, including high temperature and humid weather in the summer and freezing temperatures, ice, snow, and dry air in the winter. Plaintiffs (and Plaintiffs' agents) reasonably relied on the skill and judgment of Defendant in selecting and furnishing a suitable product for this purpose. However, Defendant's product was not suitable for this purpose at the point of sale because it had the propensity to prematurely fail, did not withstand harsh weather, and did not last longer than ordinary deck paint or stain.

(*Id.*, ¶ 296.)

Rust-Oleum argues that Plaintiffs' allegations improperly conflate the ordinary and particular purpose and warrant dismissal for Plaintiffs' failure to distinguish between the two. Put differently, Rust-Oleum argues that Plaintiffs alleged particular purpose is not "a specific use by the buyer which is peculiar to the nature of his business" but instead is the "ordinary purpose[] for which goods are used" or a "use[] which [is] customarily made of the goods in question". U.C.C. § 2-315, cmt. 2. According to Rust-Oleum, Plaintiffs are required to plead a legitimate "particular purpose" in order to pursue a fitness-for-particular-purpose claim. The Court agrees.

Plaintiffs' allegations set forth a purported distinction between Restore's ordinary purpose of resurfacing decks and similar structures, and its particular purpose of providing protection to deck structures from harsh weather conditions and lasting longer than ordinary deck paints or stains. This is a distinction without a meaningful difference where Plaintiffs also allege Rust-Oleum advertised Restore and indeed, allegedly misrepresented it, as a product that both resurfaces and protects deck structures. (*See, e.g.,* R.16, ¶¶ 61, 67 (alleging advertisements for "lasting moisture protection", "liquid armor resurfacer" with "superior weather resistance" and "ultimate water repellency".) Plaintiffs also allege that Rust-Oleum advertised its Restore product as "an easy to apply repair coating that revives the surface while offering maximum

44

protection to preserve the deck for years to come". (*Id.*, ¶ 67.) These allegations intertwine the attributes of resurfacing and protection as both central to Restore's ordinary purpose, not as distinct purposes. Indeed, in their briefing, Plaintiffs assert "that the labels on each [and] every can of Restore were substantially similar and contained the same affirmations of fact regarding Restore's intended use, superiority, and durability." (R.66, at 33.) Plaintiffs, therefore, reference the Restore labels as acknowledging the "intended use" of the Restore product and do not delineate that use as limited to resurfacing only.

Plaintiffs' argument that some courts recognize a particular purpose and the ordinary purpose can be the same, implicating application of both types of implied warranties, is unpersuasive. The cases upon which Plaintiffs rely are not only contradictory to the official U.C.C. commentary that draws a distinction between the "particular purpose" and the "ordinary purpose" as well as the case law from the relevant states, but are also from states in which no named Plaintiff resides (Iowa, Arkansas, and South Carolina). Indeed, the case Plaintiffs cite from Massachusetts, acknowledges the relevant product's distinct ordinary and particular purpose. *See Regina Grape Prods. Co. v. Supreme Wine Co.*, 260 N.E.2d 219, 221 (Mass. 1970) (finding that the defendant sold its dry, red wine to the plaintiff for a particular purpose of blending with a sweet wine mixture—as opposed to its ordinary purpose as a merchantable dry, red wine—and holding that the defendant's failure to deliver wine of the necessary quality was a breach of implied warranty of fitness). As addressed below, the more recent and controlling precedents for the named Plaintiffs in this case hold that "an 'ordinary use' cannot also serve as the requisite 'particular purpose' for the implied warranty of fitness for a particular purpose." *Norfolk Coating Servs., LLC v. Sherwin-Williams Co.*, No. 2:14cv188, 2014 WL 5860533, at *4 (E.D. Va. Nov. 12, 2014); *see also Franulovic v. Coca-Cola Co.*, 2007 WL 3166953, at *6

(D.N.J.) ("It is axiomatic that a product's ordinary purpose cannot be the same as its particular purpose").

Here, even taking the allegations in the light most favorable to Plaintiffs, they have failed to allege a particular purpose that differs from the ordinary purpose where their allegations provide that resurfacing and protection were both explicitly advertised as customary uses of the Restore product. Although factual issues can surround the determination of whether an implied warranty of fitness arises in an individual case (*see* U.C.C. § 2-315, cmt. 1), a complaint must do more than "[leave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery". *See Twombly,* 550 U.S. at, 561. Additionally, a number of courts in the relevant states that address the issues surrounding implied warranty of fitness have done so on a motion to dismiss. *See, e.g., In re McDonald's French Fries Litig.,* 503 F. Supp. 2d at 957 (dismissing a breach of implied warranty of fitness claim where the complaint alleged that the potato products were promoted and sold "for the use of consumers with dietary issues and sensitivities to such ingredients" and the plaintiff did not identify a particular purpose other than consumption of the potato products); *Bond v. Nibco, Inc.,* 623 A.2d 731, 736 (Md. Ct. App. 1993) (finding the plaintiff failed to state a claim for breach of implied warranty of fitness based on allegations that the plaintiff purchased the defendant's faucets from a plumbing supply company, installed them in his townhouse where they leaked and that the faucets were defective, causing the leak—the plaintiff failed to allege a particular purpose that "in any way differed from the 'ordinary purpose' for which the faucets might be used"); *Norfolk Coating Servs.,* 2014 WL 5860533, at *4 (granting dismissal of the plaintiff's breach of warranty of implied fitness claim where the alleged particular purpose—providing an operational metering valve—"logically fails on its fact", where the valve's ordinary use was for nothing more than to regulate the flow of

46

various paint components being mixed and by achieving this objective would meet the parameters that the plaintiff desired to provide an operational valve); *Roshong v. Fitness Brands Inc.*, No. 3:10cv2656, 2012 WL 1899696, at *3, n.2 (N.D. Ohio May 24, 2012) (dismissing the plaintiffs' claim for implied warranty of fitness because it was undisputed that the plaintiffs had not specified "any particular purpose apart from the AB Circle Pro's customary use"); *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 296-97 (D. Mass. 2009) (dismissing the plaintiff's count for breach of implied warranty of fitness based on the plaintiff's failure to allege factual support for a "specific use for ProHeart® 6 peculiar to herself and her dog" and finding inadequate the purpose alleged "to provide safe heartworm protection" for a longer period of time than other heartworm preventatives administered monthly); *Maeder Bros. Quality Wood Pellets, Inc. v. Hammond Drives & Equip., Inc.*, No. 320362, 2015 WL 1650814, at *6 (Mich. Ct. App. Apr. 14, 2015) (unpublished) (referring to the U.C.C. comment and noting that "it is questionable whether the implied warranty of fitness for a particular purpose would even apply to a situation like the present case, where the buyer was using the goods for the ordinary purpose for which they were intended").

Accordingly, because Plaintiffs' allegations fail to provide factual support for a particular purpose for Restore by any of the individual Plaintiffs or those in the putative class that differ from its ordinary purpose, the Court grants Rust-Oleum's motion in this regard and dismisses Plaintiffs breach of implied warranty of fitness claims under U.C.C. § 2-315 in Counts IV and V or pursuant to the MMWA that borrows state law in Count II without prejudice.

### 2. Plaintiffs Allege Factual Support for Privity Between Rust-Oleum and Consumers

Although the Court grants Rust-Oleum's motion in regard to Plaintiffs' failure to allege particular purpose in support of its breach of the implied warranty of fitness claims, Plaintiffs'

Counts IV and V still assert a breach of implied warranty of merchantability claim under U.C.C. § 2-314. To the extent that the requirement of privity exists in regard to those and other breach of warranty claims, the Court finds that resolution of factual issues surrounding privity between the consumers and Rust-Oleum preclude a determination of this issue at this early stage in the litigation.

Rust-Oleum asserts that the Complaint fails to adequately plead privity of contract between Plaintiffs and Rust-Oleum, as required by law in certain states for claims of implied warranty under the U.C.C. and MMWA and express warranty. Plaintiffs respond that they have adequately alleged applicable exceptions to the privity requirements, including that Rust-Oleum had direct dealings with Plaintiffs and putative class members through its agents, dealers, and/or representatives. Plaintiffs further assert that they are the known end-users—the third-party beneficiaries—to which Rust-Oleum directly marketed its advertising and labels specifying how its product would provide protection to their investment. Lastly, Plaintiffs argue that they should be allowed to prove their allegations—through discovery—that they were in privity with Rust-Oleum based upon its dealings with its agents and representatives or as third-party beneficiaries.

In many states—including Alabama, California, Florida, Georgia, Idaho, Illinois, Indiana, New York, North Carolina, Ohio, Tennessee, and Washington—a plaintiff seeking to recover economic loss cannot maintain a claim for breach of implied warranty under the U.C.C. unless he or she is in privity of contract with the defendant. *See, e.g., Wellcraft Marine, Inc. v. Zarzour*, 577 So. 2d 414, 419 (Ala. 1990); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (California law); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005); *Lamb v. Ga.-Pac. Corp.*, 392 S.E.2d 307, 309 (Ga. Ct. App. 1990); *Am. W. Enters.,*

*Inc. v. CNH, LLC*, 316 P.3d 662, 666 (Idaho 2013); *Zaro v. Maserati N. Am., Inc.*, 2007 WL

4335431, at *2 (N.D. Ill.); *Kolle v. Mainship Corp.*, 2006 WL 1085067, at *5 (E.D.N.Y.);

*Gregory v. Atrium Door & Window Co.*, 415 S.E.2d 574, 575 (N.C. Ct. App. 1992); *McKinney v.*

*Bayer Corp.*, 744 F. Supp. 2d 733, 758 (N.D. Ohio 2010); *Gregg v. Y.A. Co.*, 2007 WL 1447895,

at *7 (E.D. Tenn.); *Chance v. Richards Mfg. Co.*, 499 F. Supp. 102, 105 (E.D. Wash. 1980).

Indiana law requires privity for claims based on the implied warranty of fitness for a particular

purpose but not the implied warranty of merchantability.  *See Atkinson v. P & G-Clairol, Inc.*,

813 F. Supp. 2d 1021, 1026 (N.D. Ind. 2011).  MMWA implied warranty claims likewise require

privity when the state law governing the claim requires privity.  *See e.g, Voelker v. Porsche Cars*

*N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003); *Doster Lighting, Inc. v. E-Conolight, LLC*, No.

12-C-0023, 2015 WL 3776491, at *11, n.6 (E.D. Wis. June 17, 2015).

    "A buyer and seller stand in privity if they are in adjoining links of the distribution chain.

Thus, an end customer … who buys from a retailer is not in privity with a manufacturer."

*Clemens*, 534 F.3d at 1023.  This is not the hard and fast rule that Rust-Oleum presents, however,

as even the Ninth Circuit acknowledged in *Clemens*, "[s]ome particularized exceptions to the

rule exist. The first arises when the plaintiff relies on written labels or advertisements of a

manufacturer."  *Id.*; *see also In re Carrier IQ, Inc.*, 778 F. Supp. 3d 1051, 1106 (N.D. Cal. 2015)

(dismissing breach of implied warranty of fitness claim because the plaintiff failed to allege

factual support for the exception of reliance on labels and advertisements as direct dealings with

the manufacturer).  While discovery may yield additional supporting evidence upon which

Plaintiffs can rely, Plaintiffs are also required to plead a sufficient basis in the Complaint to state

a claim for privity.  Plaintiffs have done so here, where they allege factual support for the "direct

dealing" exception.  Namely, Plaintiffs allege a series of well-pleaded paragraphs detailing Rust-

Oleum's direct marketing campaign to consumers, including to Plaintiffs and the putative class (*see, e.g.,* R.16, ¶¶ 59-70), and additionally allege that "consumers relied upon Defendant[']s misrepresentations … regarding Restore, including advertisements that Restore would last ten to twelve years" (*id.*, ¶ 93; *see also id.*, ¶¶ 329, 345, 350).  In addition, Plaintiffs allege factual support of specific instances, for example with Plaintiff Hoff, alleging that "Hoff reviewed Defendant's advertising regarding Restore's high quality and longevity, and in reasonable reliance of those statements, incurred out of pocket costs for damages caused by Restore's premature failure and/or the concomitant costs of repair and/or replacement of his deck."  (*Id.*, ¶ 337.)  Taking the allegations in the light most favorable to Plaintiffs, these allegations provide a plausible factual basis that "raise[s] a reasonable expectation that discovery will reveal evidence" supporting the allegations.  *See Twombly,* 550 U.S. at 556; *see also Indep. Trust Corp.*, 665 F.3d at 935.  Accordingly, Plaintiffs have met their burden at this stage.

In other words, a summary dismissal of Plaintiffs' claims at this stage would be improper. *See, e.g., Kaplan v. Shure Bros.*, 153 F.3d 413, 419 (7th Cir. 1998) (breach of contract claim sufficient where allegations put defendant on notice of claim of privity); *In re AZEK Bldg. Prods., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 618 (D.N.J. 2015) ("The fact-intensive nature of privity frequently renders dismissal at the pleading stage premature"); *Dewey v. Volkswagen, AG,* 558 F. Supp. 2d 505, 524,  n. 17 (D.N.J. 2008) (denying motion to dismiss New York warranty claims because privity "involves issues of fact not appropriate for resolution at the motion to dismiss stage"); *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1183 (N.D. Fla. 2007) (finding issue of whether privity contract existed between consumers and manufacturers raised a factual question that could not be resolved on a motion to dismiss); *TRW, Inc. v. Dart Ind., Inc.*, No. 84 C 3049, 1986 WL 3327, at *9 (N.D. Ill. 1986) (finding that factual

issues exists that when resolved in favor of non-movant (plaintiff) on summary judgment brought the warranty claims within the direct relationship and third-party beneficiary exceptions of the privity rule). Accordingly, the Court denies Rust-Oleum's motion to dismiss Plaintiffs' implied warranty of merchantability claims under U.C.C. § 2-314 and express warranty claims based on failure to allege factual support establishing privity for those Plaintiffs in states requiring such a showing.

### E. Express Warranty Claims

Rust-Oleum challenges the express warranty claims (in Counts II and III) for 23 Plaintiffs as insufficient for failure to plead the requisite reliance. To create an express warranty under U.C.C. § 2-313, an "affirmation of fact or promise" or a "description of the goods" by the seller must be part of the "basis of the bargain." U.C.C. § 2-313.[22] In certain states—including California, Delaware, Florida, Maine, Maryland, Massachusetts, Minnesota, Nebraska, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Tenessee, Texas, and Washington— courts have held that a plaintiff must "show reliance on a statement or representation for it to be considered part of the 'basis of the bargain'." *See, e.g., Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726 (5th Cir. 2007).[23] The MMWA incorporates the state-law requirements for reliance.

---

[22] *See* Ala. Code § 7-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Del. Code tit. 6, § 2- 313; Fla. Stat. § 672.313; Ga. Code § 11-2-313; Idaho Code § 28-2-313; 810 ILCS 5/2-313; Ind. Code § 26-1-2-313; Me. Rev. Stat. tit. 11, § 2-313; Md. Code, Com. Law § 2-313; Mass. Gen. Laws ch. 106, § 2-313; Mich. Comp. Laws § 440.2313; Minn. Stat. § 336.2-313; Mo. Rev. Stat. § 400.2-313; Neb. Rev. Stat. § 2-313; N.H. Rev. Stat. § 382-A:2-313; N.J. Stat. § 12A:2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; Ohio Rev. Code § 1302.26; 13 Pa. Cons. Stat. § 2313; R.I. Gen. Laws § 6A-2-313; Tenn. Code § 47-2-313; Tex. Bus. & Com. Code § 2.313; Va. Code § 8.2-313; Wash. Rev. Code § 62A.2- 313.

[23] *See, e.g., Sanders v. Apple, Inc.,* 672 F. Supp. 2d 978, 986-87 (N.D. Cal. 2009); *Dilenno*, 668 F. Supp. at 376 (Delaware); *Thursby v. Reynolds Metals Co.,* 466 So. 2d 245, 250 (Fla. Dist. Ct. App. 1984); *Phillips v. Ripley & Fletcher Co.,* 541 A.2d 946, 950 (Me. 1988); *Reed v. Sears & Roebuck & Co.,* 934 F. Supp. 713, 720 n.7 (D. Md. 1996); *Stuto v. Coming Glass Works*, No. 88-1150-WF, 1990 WL 105615, at *5 (D. Mass); *Hendricks v. Callahan*, 972 F.2d 190, 193 (8th Cir. 1992) (Minnesota); *Hillcrest Country Club v. N.D. Judds Co.,* 461 N.W.2d 55, 61 (Neb. 1990); *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381,

*See, e.g., Maxwell v. Remington Arms Co., LLC,* No. 1:10CV918, 2014 WL 5808795, at *3

(M.D.N.C. Nov. 7, 2014) (citing *Carlson v. Gen. Motors Corp.,* 883 F.2d 287, 291 (4th Cir.

1989)) ("When a party brings a breach of warranty claim under the MMWA, courts apply state

law for the breach of warranty action unless expressly altered by the federal statute"); *Baldwin v.*

*Jarett Bay Yacht Sales, LLC,* 683 F. Supp. 2d 385, 390 (E.D.N.C. 2009) ("Where a 'consumer'

seeks relief for breach of a 'written warranty' from a 'warrantor' or 'supplier,' Congress

expected courts to look to state warranty law except as expressly modified in the MMWA");

*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1340 (C.D. Cal. 2013).

Rust-Oleum argues that Plaintiffs have failed to plead that they relied upon Restore's

express warranty and only make conclusory allegations that Rust-Oleum's alleged

"representations and promises became part of the basis of the bargain between the parties" (R.16,

¶ 287) and "recall[], generally, seeing and relying on advertisements regarding Restore's high

quality and longevity" (*id.*, ¶ 120).  Plaintiffs respond that because Rust-Oleum's "Limited

Lifetime Warranty" is included when purchasing Restore reliance is, therefore, presumed and not

required to be plead.  Plaintiffs further assert that even if it is required, they have provided a

sufficient factual basis to satisfy the pleading standard.  The Court agrees with Plaintiffs.

As discussed above regarding Rust-Oleum's arguments surrounding privity, Plaintiffs

have alleged reliance on written labels or advertisements for Restore.  The same allegations that

support the direct marketing exception to privity between the consumer and manufacturer

---

391 (E.D.N.Y. 2014); *Prichard Enters., Inc. v. Adkins*, 858 F. Supp. 2d 576, 585 (E.D.N.C. 2012);
*McKinney*, 744 F. Supp. 2d at 754 (Ohio); *Oppenheimer v. York Int'l*, No. 4348 MARCHTERM 2002,
2002 WL 31409949, at *3 (Pa. Ct. Comm. Pleas 2002); *Ralston Dry-Wall Co. v. U.S. Gypsum Co*., 740 F.
Supp. 926, 929 (D.R.I. 1990), *aff'd*, 926 F.2d 99 (1st Cir. 1991); *Coffey v. Dowley Mfg., Inc.*, 187 F.
Supp. 2d 958, 973 (M.D. Tenn. 2002), *aff'd*, 89 F. App'x 927 (6th Cir. 2003); *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 814 (S.D. Tex. 2013); *Reece v. Good Samaritan Hosp.*, 953 P.2d
117, 123 (Wash. Ct. App. 1998).

support reliance here.  In addition, Plaintiffs have alleged that Rust-Oleum's "Limited Lifetime Warranty" is included on every single can of Restore which states that Rust-Oleum "guarantees product performance … as long as you own or reside in your home."  (*Id.*, ¶¶ 63, 280; R.16, Exs. 1, 2.)  Because this warranty is made part of every purchase, Plaintiffs' claims "do[] not require a showing of reliance".  *In re Caterpillar Inc.*, 2015 WL 4591236, at *25-26 ("[p]laintiffs' pleading is thus consistent with cases where courts have found the basis of the bargain or reliance requirements satisfied because the express warranties at issue were part of the purchase agreement"); *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 972-73 (N.D. Cal. 2014) (discussing cases from various jurisdictions and denying dismissal under Rule 12(b)(6) of the plaintiffs' express warranty claim—based in the defendant's provision of a limited warranty—finding that the plaintiff was not required to allege reliance under U.C.C. § 2-313). Indeed, in some of the jurisdictions at issue, for example in California, the requirement for reliance can depend on the presence of privity between the parties.  Because Plaintiffs have sufficiently alleged support for an exception to privity and analysis beyond that finding is too factual in nature, the same result is implicated here.

Furthermore, although they provide a detailed list of the assertions made in Restore's advertising, Plaintiffs are not required to allege that they relied on each claim included on Restore's advertising.  Per Comment 3 to Section 2-313 of the U.C.C.:

> The present section deals with affirmations of fact by the seller, descriptions of the goods or exhibitions of samples, exactly as any other part of a negotiation which ends in a contract is dealt with. No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. *In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement.* Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. *The issue normally is one of fact.*

53

U.C.C. § 2-313, cmt. 3 (emphasis added); *see also Weinstat v. Dentsply*, 180 Cal. App. 4th 1213, 1227, 103 Cal. Rptr. 3d 614 (2010) (noting that "[p]re-[U.C.C.] law governing express warranties required the purchaser to prove reliance on specific promises made by the seller" but that the UCC does not; under comment 3, there is a "presumption that the seller's affirmations go to the basis of the bargain"). As such, Plaintiffs are not required to plead reliance by each Plaintiff on specific misleading statements included on the product labeling for Restore to survive Rust-Oleum's motion to dismiss their claim for breach of express warranty.

Even if Plaintiffs were required to do so, however, they have sufficiently pled reliance here. Plaintiffs allege that every can of Restore was substantially similar and contained the same affirmations of fact regarding Restore's intended use, superiority, and durability. (R.16, ¶¶ 60, 286.) Plaintiffs further allege that these affirmations were consistent with Rust-Oleum's advertising campaign. (*See, e.g., id.*, ¶¶ 65-67, 286.) Each Plaintiff alleges that "consumers relied upon Defendant[']s misrepresentations and omissions regarding Restore, including advertisements that Restore would last ten to twelve years" and that "Plaintiffs reviewed and reasonably relied on Defendant's representations and omissions regarding Restore". (*Id.*, ¶¶ 93, 329, 337, 345, 350.) Plaintiffs further allege the general reliance on advertisements for each of the specific Plaintiffs Rust-Oleum challenges here. (*See, e.g.,* R.16, ¶¶ 127 (Hoff); 139 (Malloy); 143 (Shanks); 166 (Fales); 170 (Webber); 174 (Boscardin); 182 (Mies); 193 (Holbrook); 207 (Larson); 210 (Fernandez); 214 (Leonard); 217 (McLamb); 221 (Blank); 223 (Dixson); 229 (Cady); 223 (Fredericks); 237 (Reinhart); 240 (Renzi); 243 (Rogers); 246 (Diaz); 250 (Murphy); 260 (Allen); 263 (McCain).) These allegations are sufficient to withstand dismissal at the pleading stage. *See, e.g., In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practices Litig.*, 955 F. Supp. 2d 1311 (S.D. Fla. 2013) (general allegations of reliance on

advertisements and products labels plausibly alleged reliance for purposes of state laws of state in which "reliance is an essential element of a breach of warranty claim"); *accord, In re Caterpillar, Inc.*, 2015 WL 3591236, at *25-26, n. 1 (denying motion to dismiss warranty claims in multistate putative class action where complaint permitted an inference that "[p]laintiffs relied on the express warranties").

Accordingly, the Court denies Rust-Oleum's motion to dismiss Plaintiffs' claims for breach of express warranty in Counts II and III.

### F.    Section 2310(b) of the MMWA

Rust-Oleum argues that Plaintiffs cannot assert a claim based on unfair or deceptive practices under the MMWA, 15 U.S.C. § 2310(b), because there is no private right of action for enforcement of that subsection. Plaintiffs respond that they are not precluded from asserting a violation of Section 2310(b) of the MMWA because the private right of action conferred through subsection 2310(d)(1) provides for private enforcement of the substantive provisions of the Act. A brief background of the MMWA is instructive here.

"Congress enacted the MMWA in response to a swell of consumer complaints regarding the inadequacy of warranties to protect consumers' interests." *Seney v. Rent-A-Ctr, Inc.*, 738 F.3d 631, 633 (4th Cir. 2013) (citing H.R.Rep. No. 93-1107, reprinted in 1974 U.S.C.C.A.N. 7702, 7708-11). Through passing the MMWA, Congress sought to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing" of goods. 15 U.S.C. § 2302(a). In order to do so, Congress provided "a private right of action to consumers 'damaged by the failure of a supplier, warrantor, or service contractor to comply with … a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). Section 2310(d)(1) states:

(d) Civil action by consumer for damages, etc; jurisdiction; recovery of costs and expenses; cognizable claims

(1) Subject to subsections (a)(3) and (e), a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

    (A) in any court of competent jurisdiction in any State or the District of Columbia; or

    (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

This section of the MMWA provides a private right of action to consumers damaged by the failure of a warrantor "to comply with any obligation under [the MMWA], or under a written warranty, implied warranty, or service contract …". *See McGarvey v. Penske Auto. Grp., Inc.*, No. CIV.08-5610JBS/AMD, 2010 WL 1379967, at *1 (D.N.J. Mar. 29, 2010) (emphasis added) (citing § 2310(d)(1)).

Section 2310(b)—the Section Plaintiffs seek to pursue in addition to Section 2310(d)— defines "Prohibited acts" under the MMWA, stating:

It shall be a violation of section 45(a)(1) of this title [unfair competition][24] for any person to fail to comply with any requirements imposed on such person by this chapter (or a rule thereunder) or to violate any prohibition contained in this chapter (or a rule thereunder).

15 U.S.C. § 2310(b).  Section 45(a)(1) of Title 15 provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."  15 U.S.C. § 45(a)(1).  Section 45 provides the Federal Trade Commission with power to prevent unfair competition.  *See id.*

---

[24] 15 U.S.C. § 45(a)(1) is also Federal Trade Commission Act § 5(a).

Rust-Oleum argues that Plaintiffs have no private right of action under Section 2310(b). "The cardinal rule of statutory interpretation is that courts 'must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose.'" *United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004) (citing *Grzan v. Charter Hosp. of Northwest Ind.,* 104 F.3d 116, 122 (7th Cir. 1997) (internal quotation and citation omitted)); *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) (citing *Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 680 (7th Cir. 1997) ("Where the statute's language is plain, the court's function is to enforce it according to its terms"). "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). In determining whether the meaning of statutory language is plain or ambiguous, the Supreme Court instructs courts to "look to the specific language at issue, the context in which the language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "The language of the statute should be conclusive of Congress's intent where the language is 'expressed in reasonably plain terms.'" *Griffin v. Oceanic Contractors, Inc.* 458 U.S. 564, 570, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). In particular, where determining whether Congress intended to create a private right of action under a federal statute without saying so explicitly, the courts "look first, of course, to the statutory language, particularly to the provisions made therein for enforcement and relief", and then to a "key [in] the inquiry … the intent of the Legislature". *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 101 S.Ct. 2615

(1981).  In addition to reviewing the statutory language and legislative history, the courts are to use "other traditional aids of statutory interpretation to determine congressional intent."  *Id.*

Rust-Oleum's argument that Plaintiffs cannot state a claim under MMWA § 2310(b) consists of one page that makes conclusory assertions that Section 2310(b) confers public—not private—enforcement powers.  (*See* R.32, at 38 ("There is no private right of action to enforce either statutory provision.  15 U.S.C. § 45(a), 2310(b)").)  In addition, many of the cases upon which Rust-Oleum relies either do not provide the definitive conclusion that Rust-Oleum advocates for here, as they were not presented with the precise legal issue (*see, e.g., Boelens,* 748 F.2d at 1062 (citing Section 2310(b)) (stating that "the FTC may treat a violation of the Act as an unfair or deceptive trade practice under the [FTC Act]")), or refer to the FTC Act directly, to which Section 2310(b) refers and the parties do not dispute is itself limited to public enforcement by the FTC.  (*See* R.32, at 38.)  Accordingly, having left the Court without the proper reference, reliance, and analysis of the statutory language, legislative history, and the other traditional tools of statutory interpretation, the Court denies Rust-Oleum's motion to dismiss in this regard.

## III.     Plaintiffs' Fraud-Based Claims (Counts VI-X)

Counts VI-X assert violations of various statutes: 48 consumer fraud statutes enacted in 42 states and the District of Columbia, four states' false-advertising statutes, and California's Consumers Legal Remedies Act, as well as common law claims for negligent misrepresentation and fraudulent concealment.

### A.     Counts VI-X Are Sufficiently Pled Under Rule 9(b) With Particularity

Rust-Oleum argues that the Court must dismiss Plaintiffs' consumer protection claims under the laws of 48 states because Plaintiffs have failed to please these claims with particularity as required by Federal Rule of Civil Procedure 9(b).  Plaintiffs do not contest that Rule 9(b) is applicable to the consumer protection claims in this case.  (*See* R.66, at 38.)

Under Rule 9(b), Plaintiffs are required to plead the "who, what, when, where, and how of the fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 737 (7th Cir. 2014) (citing *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 615 (7th Cir. 2011)); *see also Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 815 (N.D. Ill. 2013) (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)) (explaining that a plaintiff is required to plead the "'who, what, when, where, and how: the first paragraph of any newspaper story' of the circumstances constituting fraud"). In the Seventh Circuit, which the parties agree is applicable law, a plaintiff who provides a "general outline of the fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud satisfies Rule 9(b). *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 237 F.R.D. 173, 175 (N.D. Ill. 2006) (citing *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)); *see also Adv. Pain Consultants v. Richmond*, No. 15 C 479, 2015 WL 4972231, at *2 (N.D. Ill. Aug. 18, 2015). "[T]he particularity requirement of Rule 9(b) must be relaxed where the plaintiff lacks access to all facts necessary to detail his claim." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) (citing *Corley v. Rosewood Care Ctr.,* 142 F.3d 1041, 1051 (7th Cir. 1998)); *Adv. Pain Consultants*, 2015 WL 4972231, at *2 (citing *Jepson, Inc. v. Makita Corp.,* 34 F.3d 1321, 1328 (7th Cir. 1994)) ("[w]hen details of the fraud itself 'are within the defendant's exclusive knowledge,' specificity requirements are less stringent"); *Gaudie v. Potestivo Appraisal Servs., Inc.*, 837 F. Supp. 2d 799, 804 (N.D. Ill. 2011); *accord In re Caterpillar*, 2015 WL 4591236, at *30 (citing *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)).

Plaintiffs' Complaint satisfies these requirements. The Complaint provides the "who, what, when, where, and how" of Rust-Oleum's alleged misconduct. *See Camasta,* 761 F.3d at

737.  In particular, Plaintiffs provide the "who"—Rust-Oleum and its product Restore.  (*See, e.g.,* R.16, ¶¶ 3, 52, 57, 58.)  Plaintiffs provide the "what"—Rust-Oleum's written warranty language, and its advertising and labeling claims concerning Restore, Rust-Oleum's knowledge of the alleged defect, as well as Rust-Oleum's alleged refusal to disclose to consumers Restore's alleged defects.  (*See, e.g., id.*, ¶¶ 59-75.)  Plaintiffs have also provided the "when", as the period, between at least 2012-present, relevant to the product and the class members.  (*See, e.g., id.*, ¶¶ 57, 66, 77, 80, 81, 87, 88.)[25]  Plaintiffs have provided the "where"—the location of each Plaintiff and purchase of the products, the location of the written warranty and the use of advertising and labels.  (*See, e.g.,* R.16, ¶¶ 60-68.)  Finally, Plaintiffs have alleged the "how" with respect to the specific statements and Rust-Oleum's alleged misleading actions or inactions. Specifically, the named Plaintiffs allege that (1) they were deceived by Rust-Oleum's packaging and advertising; (2) they purchased Restore while reasonably relying on Rust-Oleum's misrepresentations; (3) they were injured because they would not have purchased these products had they known Restore does not possess the qualities and attributes Rust-Oleum touted in its allegedly false advertising and deceptive labeling; and (4) Plaintiffs paid money for Restore products that allegedly had no value and would not have otherwise purchased Restore, but for Rust-Oleum's alleged warranty and advertising claims, all causing Plaintiffs to suffer out of pocket loss.  (*See, e.g., id.*, ¶¶ 117-222.)

Plaintiffs' allegations meet the demands for the requirements of Rule 9(b) as interpreted by the Seventh Circuit.  While the Rule does require Plaintiffs to plead fraud claims "with

---

[25] In addition, Plaintiffs allege the month or season for the years relevant to Plaintiffs' individual purchases and uses of Restore, awareness of the alleged product failure, and notification to Rust-Oleum. (*See, e.g.,* R.16, ¶¶ 121, 124, 128, 131, 136, 137, 140, 141, 144, 147, 150, 153, 156, 157, 160, 164, 167, 171, 175, 179, 183, 184, 187, 190, 193, 195, 198, 201, 204, 208, 211, 212, 215, 218, 219, 222, 226, 227, 230, 231, 234, 235, 238, 241, 244, 247, 248, 251, 254, 257, 261, 264.)

particularity", the Rule also explicitly states that "knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9. Plaintiffs have done more than they are required to do to comply with Rule 9(b)'s particularity requirement at this stage. *See, e.g., U.S. Commodity Future Trading Comm'n v. Kraft Foods Grp., Inc.*, No. 15 C 2881, 2015 WL 9259885, at *9 (N.D. Ill. Dec. 18, 2015) (explaining that for a claim of fraud for market manipulation, "the plaintiff need not plead manipulation to the same degree of specificity as a plain misrepresentation claim"); *In re First Merchants Acceptance Corp. Secs. Litig.*, No. 97-2715, 1998 WL 781118, at *8 (N.D. Ill. Nov. 2, 1998) (stating that the requirements of Rule 9(b) are relaxed where the facts are in the hands of the defendants and only obtainable through discovery). Rust-Oleum relies on *Gandhi v. Sitara Capital Mgmt.*, 721 F.3d 865, 870 (7th Cir. 2013, to assert that Plaintiffs' "as the purported audience for [Rust-Oleum's] alleged misstatements … should be able to provide at least some detail regarding the circumstances in which they heard them" without discovery. (R.77, at 23.) Rust-Oleum's reliance is misplaced, however, as the plaintiffs in *Gandhi* had the benefit of discovery and had amended their complaint thrice during the litigation, but still alleged only conclusory statements that the defendant had made statements indicating he would invest some of the sales of his former companies into the fund. 721 F.3d at 870. The Seventh Circuit agreed with the district court and found these allegations insufficient as they "do not provide any precision regarding, for example, the timing of [the defendant's] statements, the place in which he uttered them, or the manner he communicated them to [the plaintiffs]." *Id.* This is inapposite to the situation here, where Plaintiffs allege specific statements Rust-Oleum made that constitute alleged misrepresentations in their advertising. (*See* R.16, ¶¶ 61, 67, 89.) Plaintiffs further provide specific information with regard to each Plaintiff in terms of timing and the type of advertising observed. Plaintiff

Hickman, for example, alleges that she purchased Rust-Oleum and used in around the Summer of 2010 and that she "recalls, generally, seeing and relying on advertisements regarding Restore's high quality and longevity." (*Id.*, ¶¶ 117, 120.) Plaintiff Fredericks, for example, alleges that he purchased Rust-Oleum "in or around June of 2013" and that he "recalls, generally, seeing and relying on advertisements regarding Restore's ability to provide superior protection to his deck for years to come." (*Id.*, ¶¶ 230, 233.) In addition, Plaintiff Murphy, alleges that she purchased Rust-Oleum "in or around July 2013" and that she "recalls relying on advertisements regarding the integrity and longevity of Restore she saw on television, on Defendant's website and on promotional materials she read at both Lowe's and Home Depot, where she purchased Restore." (*Id.*, ¶¶ 247, 250.) Similar allegations exist for each Plaintiff that specify the timing of the purchase and the content of the advertisements upon which that Plaintiff relied. These allegations are sufficient.

### B.     Plaintiffs Adequately State a Claim for State Statutory Violations

Rust-Oleum argues that even if Plaintiffs satisfy Rule 9(b), Counts VI-VIII nonetheless fail to state a claim under Rule 12(b)(6). Specifically, Rust-Oleum argues that the Court should dismiss Counts VI-VII because they assert claims under statutes where no Plaintiff lives[26] and the Complaint fails to plead a claim under the remaining statutes invoked in Counts VI-VIII because it fails to allege actionable misrepresentations, fails to plead causation and reliance, and fails to plead Rust-Oleum's knowledge of the defect. The Court addresses each argument in turn.

---

[26] The Court addressed Rust-Oleum's argument regarding Plaintiffs' assertion of state statutory violations in states where no Plaintiffs live *supra* (Analysis, I, n. 6), finding it premature and denying it without prejudice.

### 1.    The Complaint Adequately Pleads Causation and Reliance

Rust-Oleum argues that many of the relevant states require Plaintiffs to allege proof of reliance, yet the Complaint fails to do so.  As explained *supra* (Analysis, II.D.2, II.E.), Plaintiffs have sufficiently pled reliance to support claims for the direct marketing exception to privity and for their breach of express warranty claims.  Even though Rule 9(b) applies here, Plaintiffs' allegations have still met the heightened pleading standard.  Plaintiffs have adequately alleged the specific information necessary to show that they relied on Restore's alleged misrepresentations here.  This is particularly true where, as here, Plaintiffs allege that many of Rust-Oleum's misrepresentations are contained in statements contained on product labeling. *See, e.g., Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 576 (N.D. Cal. 2013) (Rule 9(b) satisfied in labeling case); *Kosta v. Del Monte Corp.*, No. 12-V-01722-YGR, 2013 WL 2147413, at *15 (N.D. Cal. May 15, 2013) (same); *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090, 1100 (C.D. Cal. 2012) (finding the plaintiffs' complaint satisfied Rule 9(b) where the representation at issue "appears on product labels throughout the class period").

Furthermore, Plaintiffs have sufficiently pled causation.  Plaintiffs allege that "consumers end up spending more time and money to repair damages caused by the defective product." (R.16, ¶ 74; *see also id.*, ¶ 92 ("significant cost and damage caused by Defendant's conduct"); *id.*, ¶ 287 ("structural damages caused by the product").)[27]  "[A] finding of proximate cause will turn upon whether it can be said that, but for the concealment" of material facts, the plaintiffs would not have gone through with the transaction."  *Waterford Prods. Co. v. Victor*, No. 98-L-

---

[27] In addition, the Complaint alleges for each Plaintiff that Restore's premature failure caused the damage at issue.  (*See, e.g.,* R.16, ¶¶ 119, 122, 126, 130, 134, 138, 142, 145, 148, 151, 154, 158, 162, 165, 169, 173, 177, 181, 185, 188, 192, 196, 199, 202, 206, 209, 213, 216, 220, 224, 228, 232, 236, 239, 242, 245, 249, 252, 255, 259, 262, 265, 268.)

029, 1999 WL 1313664, at *6 (Ohio Ct. App. Dec. 17, 1999); *see also Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 96 (Cal. App. Ct. 2001). As such, a finding of proximate cause "is generally a fact question for the jury" and less amenable to resolution on a motion to dismiss. *See Abbotts v. Campbell*, 551 F.3d 802, 806 (8th Cir. 2008).

Accordingly, Plaintiffs have sufficiently alleged reliance and causation to withstand Rust-Oleum's motion to dismiss their fraud claims on this basis.

### 2. Claims Under Statutes that Require Knowledge Are Sufficiently Pled

Rust-Oleum argues that Plaintiffs inadequately plead Rust-Oleum's knowledge of the defective nature of its Restore. The Court disagrees.

Under Rule 9(b), while "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also United States v. Sanford-Brown, Ltd.,* 788 F.3d 696, 704-705 (7th Cir. 2015) (citing Rule 9(b)); *Goldberg*, 929 F. Supp. 2d at 815 (citing *DiLeo*, 901 F.2d at 627); *Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009) (citing Rule 9(b)) ("Knowledge and intent, in particular, need not be covered in detail").

Plaintiffs' allegations contain numerous facts supporting a finding that Rust-Oleum designed, marketed, and sold Restore with knowledge of its defects. Specifically, Plaintiffs allege that Rust-Oleum acquired knowledge of the defects afflicting Restore through: (1) pre- and post-sale audits routinely performed by its quality improvement teams (R.16, ¶ 82); (2) field testing performed prior to Rust-Oleum selling Restore (*id.*, ¶ 83); (3) online complaints made in various internet forums, including on Rust-Oleum's Facebook page (*id.*, ¶ 84); (4) direct complaints to Rust-Oleum (*id.*, ¶ 85; *see also e.g., ¶¶*118, 137, 141); and (5) complaints to Synta, the predecessor manufacturer for Restore that Rust-Oleum acquired in 2012. (*Id.*, ¶ 86). Taking

all these allegations in the light most favorable to Plaintiffs, they have adequately alleged that Rust-Oleum knew of the defects causing Restore's suboptimal performance, and yet as the allegations assert, Rust-Oleum continued to sell the product.

Rust-Oleum's argument that customer complaints "in and of themselves" fail to adequately support an inference that a manufacturer knew of a defect is misplaced, as Plaintiffs have not only alleged customer complaints, but have alleged them as a portion of the pool of knowledge in which Rust-Oleum allegedly swam.  In addition, Rust-Oleum's criticisms of the timing of the customer complaints are unfounded as Plaintiffs allege dates for some of the customer complaints posted online and allege dates for each Plaintiff's purchase and use of Restore, as well as dates for when each Plaintiff became aware of the alleged premature failure of its Restore product and notified Rust-Oleum.  The timing of these events dates back as early as the Summer of 2010 when Plaintiff Hickman purchased Restore (*see* R.16, ¶¶ 117-120), and Rust-Oleum acquired Synta in September 2012.  Therefore, Plaintiffs' allegations provide a temporal connection among the facts that supports the customer complaints as a basis for knowledge of Restore's alleged defects.  Lastly, Rust-Oleum's assertion that the online customer complaints that are alleged with regard to Synta's Restore or with no connection to Rust-Oleum provide no support for Plaintiffs' knowledge theory is unpersuasive.  While it may be true—as Rust-Oleum asserts—that "[r]andom anecdotal examples of disgruntled customers posting their views on websites" do not support a knowledge theory, these are not the only factual allegations upon which Plaintiffs rely.  (*See* R.32, at 53 (citing *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974, n.9 (N.D. Cal. 2008)).)  Indeed, Plaintiffs have alleged numerous customer complaints, some of which reference Synta's Restore and others that were on the Restore Facebook page.  Plaintiffs have also alleged that Rust-Oleum had access to Synta's customer

complaint files. (*See* R.16, ¶ 87). Taking these facts in the light most favorable to Plaintiffs, a reasonable inference exists with regard to the customer complaints about Synta's Restore and Rust-Oleum's Restore products posted on Rust-Oleum's Facebook page, that these complaints fall within the ambit of Rust-Oleum's knowledge.

Accordingly, Plaintiffs have sufficiently pled allegations to support Rust-Oleum's knowledge in the context of their statutory consumer fraud claims.

### 3. The Complaint Alleges Actionable Misrepresentations

Rust-Oleum asserts that Plaintiffs base their statutory-fraud claims on the same alleged misrepresentations underlying their negligent-misrepresentation claim—alleged misrepresentations that are either non-actionable puffery or mere promises of future performance.

To state a claim under the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et seq., for example, Plaintiffs must show (1) a deceptive act or practice; (2) the defendant's intent that the consumer plaintiff rely upon the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *See Connick*, 174 Ill.2d at 501. Under the ICFA, "a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Muir v. Playtex Products, LLC*, 983 F. Supp. 2d 980, 987-88 (N.D. Ill. 2013) (citing *Bober v. Glaxo Wellcome PLC,* 246 F.3d 934, 938 (7th Cir. 2001)). The "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Id.* (citing *Davis v. G.N. Mortg. Corp.,* 396 F.3d 869, 884 (7th Cir. 2005)). In determining the sufficiency of a claim under Rule 12(b)(6), the Court must ask whether the allegedly false and misleading statements on which Plaintiffs base their claim, "can be read to create a likelihood of deception or to have the capacity to deceive." *Id.* (citing *Bober*, 246 F.3d

66

at 938).  Rust-Oleum offers two grounds to support its submission that the alleged

representations are not deceptive—puffery and promises of future performance.  The Court finds

both unpersuasive.

### a.  The Alleged Misrepresentations Are Not Mere Puffery

First, Rust-Oleum argues that the Complaint points to representations that amount to

nothing more than sales "puffery", asserting that Restore:

- is "easy to apply", "low maintenance", and a "long-lasting alternative to the endless cycle of repairing and repainting" (*see* R.16, ¶ 341(c), (k));

- provides "tough", "resilient", and "durable" coating that forms a "protective barrier from Mother Nature's harsh elements" (*id.*, ¶ 341(d), (f), (i)); and

- offers "superior weather resistance," "ultimate water repellency," and "lasting moisture protection" (*id.*, ¶ 341(j), (l)).

Plaintiffs respond that they have sufficiently pled actionable misrepresentations because the

experiences Plaintiffs encountered prove that Rust-Oleum's statements are objectively false.

At the outset, the Court notes that Rust-Oleum's argument is a defense and Plaintiffs are not

required to anticipate or plead around defenses in their Complaint.  *See United States v. Coffman,*

94 F.3d 330, 335 (7th Cir. 1996) ("In a case in which the *defense* was that the misrepresentation

was mere puffery, however, the defendant would be entitled to an instruction putting this *defense*

before the jury, provided of course that there was some evidence to support the *defense*")

(emphasis added); *see also United States v. N. Trust Co.,* 372 F.3d 886, 888 (7th Cir. 2004)

("[C]omplaints need not anticipate and attempt to plead around defenses").

Even if Plaintiffs were required to plead around it, however, they have sufficiently done

so here. "Puffing denotes the exaggerations reasonably expected of a seller as to the degree of

quality of his or her product, the truth or falsity of which cannot be precisely determined."  *Muir*,

983 F. Supp. 2d at 989 (citing *Barbara's Sales, Inc. v. Intel Corp.,* 227 Ill.2d 45, 316 Ill. Dec.

522, 879 N.E.2d 910, 926 (Ill. 2007)). "Puffing typically consists of 'subjective descriptions relating to quality,' such as 'high quality,' 'perfect,' and 'best'". *Id.* (citations omitted). Furthermore, "[i]t is well-settled that '[p]uffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud.'" *Hall v. Tune Up Corp.,* No. 13 C 1804, 2013 WL 4012642, at *4 (N.D. Ill. Aug. 6, 2013) (citing *Speakers of Sport, Inc. v. ProServ, Inc.,* 178 F.3d 862, 866 (7th Cir. 1999)); *see also United States v. Canty,* 499 F.3d 729, 733–34 (7th Cir. 2007) (noting that "'puffing' about the quality of one's wares does not give rise to actionable fraud") (citations omitted).

Rust-Oleum's statements that Restore is "easy to apply", "low maintenance", and a "long-lasting alternative to the endless cycle of repairing and repainting" are not mere puffery when read together as they indicate that Restore, when compared to other products on the market, is easier to apply, does not have to be applied as often, and lasts longer. Indeed, these phrases, taken in the context of the additional information provided to the consumer are measurable as Plaintiffs allege that Rust-Oleum scientifically tested Restore in "torture tests", "field tests", and pre-sale "testing" to demonstrate its long-lasting and durable properties in the midst of "high winds, salt air, torrential rains, exposure to the hot sun and high foot-traffic". (*See* R.16, ¶ 68.) These statements indicate properties "capable of precise measuring" as demonstrated by the existence of scientific studies conducted by Rust-Oleum. *See Muir*, 983 F. Supp. 2d at 989. A reasonable consumer could certainly rely on the "easy to apply", "low maintenance", and "long-lasting" claims in concluding that Rust-Oleum's product has been tested as superior to its competitors as well as in deciding whether to purchase Restore. *See id.* The same is true for the remaining alleged misrepresentations that Restore provides "tough", "resilient", and "durable" coating that forms a "protective barrier from Mother Nature's harsh

68

elements" and offers "superior weather resistance," "ultimate water repellency," and "lasting moisture protection". These statements taken together, like the previous statements, do not constitute mere puffery as they convey information on which a consumer of ordinary prudence and comprehension may rely upon in choosing Restore. *See Hall*, 2013 WL 4012642, at *4 (citing *Williams v. Aztar Indiana Gaming Corp.,* 351 F.3d 294, 299 (7th Cir. 2003) (identifying certain statements as "sales puffery on which no person of ordinary prudence and comprehension would rely")). As before, this is particularly true where Rust-Oleum advertised in its marketing campaign that it conducted scientific tests for durability and long-lasting properties (*see* R.16, ¶ 84), and advertised that Restore was "tough tested for 12 years" (*id.*, ¶¶ 318, 341). Accordingly, the Court finds that Plaintiffs' allegations sufficiently allege the misrepresentations are not mere-puffery.

### b. The Alleged Misrepresentations Are Not Mere Promises of Future Performance

Second, Rust-Oleum argues that the alleged misrepresentations are mere promises of future performance. Specifically, Rust-Oleum asserts that the Complaint cites opinions predicting how long Restore works—e.g., "lasts 10 to 12 years" and "lasts 3X longer than deck stain". (*See* R.16, ¶ 341(a)-(b), (e), (g).) Rust-Oleum argues that "a negligent misrepresentation claim will fail if … the representation is more a prediction of the product's future performance than a representation of an existing fact." (R.32, at 57.) Plaintiffs respond that the statements, such as these, are actionable predictions that are taken into consideration by a reasonable consumer prior to purchase. The Court agrees.

Plaintiffs allege that Rust-Oleum knew that its product was defective or at the least did not perform as advertised for many consumers, yet it continued to promote its product with slogans of longevity and durability to continue selling a do-it yourself product that makes up a

major portion of Rust-Oleum's sales. These allegations are sufficient to plead that the statements predicting the longevity of Restore alone and in comparison to other deck stains are actionable predictions. *See, e.g., Unified School Dist. V. Celotex Corp.*, 6 Kan. App. 2d 346, 358-359 (Kan. Ct. App. 1981) (finding that predictions of product longevity actionable misrepresentations where the evidence at trial demonstrated that the defendant knew about the product's problems and continued to falsely promote it); *United States v. All Meat & Poultry Prods. Stored at Lagrou Cold Storage*, 470 F. Supp. 2d 823, 831 (N.D. Ill. 2007) (citing *Chatham Surgicore, Ltd. v. Health Care Serv. Corp.,* 356 Ill. App. 3d 795, 292 Ill. Dec. 534, 826 N.E.2d 970, 978 (Ill. App. Ct. 2005)) (explaining that allegations that a defendant made a promise of future performance that it had no intention of performing may be enough to state a consumer fraud claim where the plaintiff also alleges that the false promise of future performance was part of a scheme to carry out a fraud). Accordingly, the Court finds that Defendant's argument fails.

### 4. State-Specific Grounds

#### a. Massachusetts

Rust-Oleum next argues that pre-suit notice is required under the Massachusetts Consumer Protection Act, Ma. Gen. Laws C 93A §1 *et seq*., and that Plaintiff Boscardin cannot proceed for this reason. Specifically, Plaintiffs allege that "Plaintiff Boscardin notified Defendant that Restore was prematurely failing, resulting in permanent damage to the deck." (R.16, ¶ 172.)

The Massachusetts Consumer Protection Act requires a plaintiff to provide the defendant with pre-suit notice of a claim. Mass. Gen. Laws ch. 93A, § 9(3). The notice requirement is "a prerequisite to suit" that "must be alleged in the plaintiff's complaint". *Rodi v. New England Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004). Plaintiffs reply that the Massachusetts statute

70

provides that the demand requirements—including notice—do not apply if "the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth". Mass. Gen. Laws. Ch 93A, § 9(3). Plaintiffs further argue that this exception applies here because the Complaint alleges that Rust-Oleum is an Illinois Corporation with corporate headquarters in Illinois and does not allege that Rust-Oleum maintains a place of business or assets in Massachusetts.

Plaintiffs' allegation that Rust-Oleum is an Illinois corporation and silence as to a place of business or assets in Massachusetts does not suffice, however, as they "must allege facts" supporting the exception's application. *See Sumner v. Mortg. Elect. Registration Sys.*, No. 11-11910-DJC, 2012 WL 3059429, at *6-7 (D. Mass. July 26, 2012) ("Although the [p]laintiffs are not required to allege in the complaint the legal conclusion that the demand letter requirement is inapplicable, they must allege facts that the [d]efendants do not maintain a place of business or keep assets in Massachusetts to show the exception to the demand letter requirement applies to plead a Chapter 93A claim"); *Cf. Akar v. Fed. Nat'l Mortg. Ass'n,* Civ. No. 10-10539-NMG, 2012 WL 661458, at *22 (D.Mass. Feb.8, 2012) (denying motion to dismiss Chapter 93A claim where complaint alleged that the defendant did not maintain a place of business or keep assets in Massachusetts); *Okoye v. Bank of New York Mellon,* Civ. No. 10-11563-DPW, 2011 WL 3269686, at *4–5 (D.Mass. July 28, 2011) (finding dismissal of Chapter 93A claim based on failure to issue demand letter not warranted against a defendant where the complaint alleged that those Defendants did not maintain a place of business or keep assets in Massachusetts but granting the motion to dismiss Chapter 93A as to another Defendant who presented evidence that contrary to the complaint's allegation otherwise, the Defendant held an asset in Massachusetts); *see also In re Lidoderm Antitrust Litig.,* 103 F. Supp. 3d 1155, 1161

71

(N.D. Cal. 2015) (citing *Bean v. Bank of New York Mellon,* No. CIV.A. 12–10930–JCB, 2012 WL 4103913, at *7 (D.Mass. Sept. 18, 2012) ("Although Bean is not required to allege the legal conclusion that the demand letter requirement is inapplicable, she must allege facts that BNY does not maintain a place of business or keep assets in Massachusetts to show the exception to the demand letter requirement applies to plead a Chapter 93A claim").

The Complaint fails to allege any facts from which the Court can reasonably infer that the Defendant does not maintain a place of business or keep assets in Massachusetts. *See Cox v. Chrysler Grp., LLC,* No. CV 14-7573(MAS)(DEA), 2015 WL 5771400, at *12 (D.N.J. Sept. 30, 2015) (citing *In re AZEK Bldg. Prods. Inc. Mktg & Sales Practices Litig*., 82 F. Supp. 3d at 622) (dismissing without prejudice the Massachusetts plaintiff's claim under Chapter 93A because "the burden is on the [p]laintiff to allege an exception to the demand letter requirement", and he failed to meet his burden). Accordingly, the Court grants Rust-Oleum's motion to dismiss Plaintiff Boscardin's claim under the Massachusetts Consumer Protection Act without prejudice, and grants Plaintiffs leave to replead.

### b.    New Jersey

In addition, Rust-Oleum argues that the New Jersey Consumer Fraud Act requires a plaintiff to "quantify" "at the pleadings stage" the alleged "ascertainable loss." *In re AZEK Bldg. Prods. Inc. Mktg & Sales Practices Litig*., 82 F. Supp. 3d at 623-24. Indeed, "[i]n cases involving alleged misrepresentations, as here, 'either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle.'" *Id.* at 624. Plaintiffs "must plead specific price information or provide alternate means of quantifying their loss to allege ascertainable loss under New Jersey law." *Id.*

The Complaint contains allegations that Plaintiffs Riello and Dorgan would not have purchased Restore had they known about the defect and that they suffered out of pocket loss as a result. (*See* R.16, ¶¶ 199, 202.) These allegations are insufficient under New Jersey law. Accordingly, the Court grants Rust-Oleum's motion to dismiss Plaintiff Riello's and Plaintiff Dorgan's claims under the New Jersey Consumer Fraud Act without prejudice, and grants Plaintiffs leave to replead.

### C. Plaintiffs Fail To Sufficiently Plead Claims for Negligent Misrepresentation on the Basis of an Alleged Omission

Rust-Oleum argues that the Court should dismiss Plaintiffs' negligent misrepresentation claim for failure to adequately plead causation, reliance, or any actionable misrepresentations. For the same reasons as addressed *supra* (Analysis, III.B.3.), Plaintiffs' allegations adequately plead causation and reliance as well as affirmative actionable misrepresentations that do not warrant dismissal at this stage. Rust-Oleum, however, further alleges that Plaintiffs' allegations of omissions fail to support a claim of negligent misrepresentation and that both state-specific grounds exist for dismissal as well as arguments under the Economic-Loss Rule. The Court addresses each argument in turn.

First, Rust-Oleum argues that Plaintiffs' negligent misrepresentation claim relies, in part, on alleged omissions and that some jurisdictions have rejected omissions as a basis for a claim. *See, e.g., Eberts v. Goderstad*, 569 F.3d 757, 765 (7th Cir. 2009) ("Negligent misrepresentation by nondisclosure is a claim of questionable heritage and has been soundly rejected in some jurisdictions"). Plaintiffs respond, arguing for omissions in the context of their fraudulent concealment claim, but do not address the omissions' relevance to their negligent misrepresentation claim in the jurisdictions Rust-Oleum identifies. Accordingly, the Court grants Rust-Oleum's motion to dismiss the negligent misrepresentation claims for Plaintiffs Hoff

(California), Baden (Colorado), Lautigar (Colorado), Patterson (Georgia), McCoy (Indiana), Fales (Maine), Webber (Maryland), Scaglione (Michigan), Holbrook (Nebraska), Leonard (North Carolina), McLamb (North Carolina), Blank (Ohio), and Dixson (Ohio) to the extent that those claims are based on an alleged failure to disclose.[28]

Second, Rust-Oleum argues that the Court should dismiss Plaintiffs' omission-based negligent misrepresentation claims (for the remaining non-California Plaintiffs) because Plaintiffs have not shown Rust-Oleum had a duty to disclose.[29] Indeed, Plaintiffs do not provide argument for duty to disclose as applicable to negligent misrepresentation, but instead focus on the duty to disclose for fraudulent concealment. (*See* R.66, at 59.) As with their previous failure to respond, the Court grants Rust-Oleum's motion in this regard and dismisses the non-California Plaintiffs' allegations of negligent misrepresentation based on a failure to allege a duty to disclose the purported Restore product defect.

---

[28] *See Lopez v. Nissan N. Am.,* 135 Cal. Rptr. 3d 116, 136 (Ct. App. 2011); *Burman v. Richmond Homes Ltd.*, 821 P.2d 913, 919, 921 (Colo. App. 1991); *Futch v. Lowndes Cnty.,* 676 S.E.2d 892, 896 (Ga. Ct. App. 2009); *Lautzenhiser v. Coloplast A/S,* 2012 WL 4530804, at *6 (N.D. Ind.); *Binette v. Dyer Library Ass'n,* 688 A.2d 898, 903 (Me. 1996); *Shaw v. Brown & Williamson Tobacco Corp.,* 973 F. Supp. 539, 549-50 & n.2 (D. Md. 1997); *Donald v. Hi-Tec Bldg. Servs.*, No. 1:13-CV-472, 2013 WL 5521632, at *2 (W.D. Mich.); *Outlook Window P'ship v. York Int'l Corp.,* 112 F. Supp. 2d 877, 896-97 (D. Neb. 2000); *Landmar, L.L.C. v. Wells Fargo Bank,* 978 F. Supp. 2d 552, 563-64 (W.D.N.C. 2013); *Gentile v. Ristas,* 828 N.E.2d 1021, 1040 (Ohio Ct. App. 2005).

[29] *See Monreal v. GMAC Mortgage, LLC,* 948 F. Supp. 2d 1069, 1077 (S.D. Cal. 2013) (explaining the elements necessary to plead a claim for negligent misrepresentation and a cause of action for fraudulent concealment, only the latter of which requires a duty to disclose); *see also Jackson v. Fischer,* 931 F. Supp. 2d 1049, 1068 (N.D. Cal. 2013) ("While the courts in some states have held that failure to disclose where there is a duty to disclose may suffice to support a negligent misrepresentation claim, the California Court of Appeal held in *Wilson v. Century 21 Great Western Realty,* 15 Cal. App. 4th 298, 18 Cal. Rptr. 2d 779 (1993) that based on the California statutory language, negligent misrepresentation specifically requires a "positive assertion.") (citations omitted).

### D.     Plaintiffs' Claims for Negligent Misrepresentation on State-Specific Grounds

Rust-Oleum's arguments seeking dismissal of Plaintiffs' negligent misrepresentation claims are not, however, limited to omissions.  The Court, therefore, turns to Rust-Oleum's additional arguments regarding Plaintiffs' negligent misrepresentation claims and the alleged affirmative misrepresentations.  Specifically, Rust-Oleum contends that the Court should dismiss Plaintiffs' negligent misrepresentation claims in various states because (1) they were not made for business purposes (Colorado, Massachusetts, Minnesota, Missouri, Nebraska, Ohio, Tennessee, and Washington), (2) they are not limited to the required factual context of dealings with an accountant and employment relationships (Idaho and Indiana), (3) the alleged misrepresentations were not made intentionally or recklessly (Minnesota), (4) the relationship between the parties lacks the required privity or proxy (Massachusetts and New York), and (5) the statute of limitations has run (Alabama).

First, Rust-Oleum contends that in order for Plaintiffs to prove their negligent misrepresentation claim in certain states, they must show that Rust-Oleum made the misrepresentation "for business purposes."  (R.32, at 59.)  Rust-Oleum argues that the Court should dismiss Plaintiffs' negligent representation claims in those states because "the complaint concedes that plaintiffs did not rely on Rust-Oleum's purported misrepresentations for business or commercial purposes, alleging instead that plaintiffs 'used  Restore primarily for personal, family and/or household purposes'".  (*Id.* at 59.)  In support of its argument, Rust-Oleum relies on a Colorado Supreme Court case, *Allen v. Steele*, 252 P.3d 476, 484 (Colo. 2011), wherein the Supreme Court explained "to state a claim of negligent misrepresentation, the misrepresentation must be given for the plaintiff's business or commercial purposes."  (*See* R.32, at 59.)  Rust-Oleum's reading of *Allen* is strained, as the Colorado Supreme Court's directive does not

dictate that a plaintiff must allege a business or commercial *use* for a product at the base of a negligent misrepresentation claim. Instead, it explains that a plaintiff must allege that the *misrepresentation was made for a* business or commercial purpose. This general limitation of negligent misrepresentation claims to business transactions aligns with Section 552 of the Restatement (Second) of Torts (1977), which states "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions…".[30] This reading further comports with other jurisdictions cited in *Allen* that require a plaintiff to prove the negligent misrepresentation claim relates to a business or commercial purpose, as opposed to a personal transaction:

> Other states that define negligent misrepresentation according to section 552 have limited the cause of action strictly to cases involving business transactions, which they define synonymously with "commercial transactions." *See, e.g., G.A.W., III v. D.M.W,* 596 N.W.2d 284, 290 (Minn.Ct.App.1999) (stating that negligent misrepresentation has been "recognized [only] in the context of a business or commercial transaction" and did not apply to husband's suit alleging former wife misrepresented paternity); *Robinson v. Omer,* 952 S.W.2d 423, 427–28 (Tenn.1997) (holding that negligent misrepresentation did not apply where attorney gave advice for personal, not business, matters). *Contra Sain v. Cedar Rapids Cmty. Sch. Dist.,* 626 N.W.2d 115, 126 (Iowa 2001) (holding that negligent misrepresentation is not restricted to business matters, but "situations where the information supplied harmed the plaintiff in its relations with third parties").

---

[30] Section 552 provides in relevant part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

252 P.3d at 484. Similarly, the additional cases Rust-Oleum cites do not demand that a plaintiff actually use the product for a commercial or business purpose, but require merely that the misrepresentation surrounds a business transaction. *See Sampson v. MacDougall*, 802 N.E.2d 602, 608 (Mass. App. Ct. 2004) ("[o]ur cases have not recognized a cause of action for negligent misrepresentation based on comments made during a purely social interaction, and we decline to do so now"); *see also Travelers Commercial Cas. Co. v. Sielfleisch Roofing, Inc.*, No. 4:12 CV 1550 DDN, 2014 WL 636204, at *9 (E.D. Mo. Feb. 18, 2014) (statement concerning on-going litigation is not a business transaction for purposes of negligent misrepresentation); *Swanson v. Ptak*, 682 N.W.2d 225, 228 (Neb. 2004) (estate personal representative did not have a duty in his individual capacity to advise heirs on division of estate, therefore, there was no business transaction); *Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th Cir. 2008) (the plaintiff used the allege misrepresentation in his decision to engage in a personal encounter with another member); *Hodge v. Craig*, 382 S.W.3d 325, 346 (Tenn. 2012) (negligent misrepresentation claim does not "apply to private communications between a woman and a man regarding the paternity of a child").

Plaintiffs' well-pleaded Complaint alleges that Plaintiffs engaged in a business or commercial transaction via their purchase of Restore from retailers. (*See, e.g.,* R.16, ¶¶ 74, 80, 81, 94, 98.) Indeed, the Complaint's class action allegations include a proposed nationwide declaratory and injunctive relief class defined as "[a]ll individuals and entities that have purchased, not for resale, Restore and/or Restore 10X in the territories of the United States." (*Id.*, ¶ 101.) As such, Rust-Oleum's motion to dismiss Plaintiffs' negligent misrepresentation claims for Plaintiffs in Colorado, Massachusetts, Minnesota, Missouri, Nebraska, Ohio,

Tennessee, and Washington on the basis that they failed to prove a business transaction is denied.

Second, Rust-Oleum argues that other states have limited negligent misrepresentation claims to particular factual contexts. Rust-Oleum asserts that Idaho and Indiana limit negligent representation claims to professional relationships dealing with an accountant (Idaho) and employment relationships (Indiana). Regarding Rust-Oleum's Idaho arguments, Plaintiffs do not respond. Rust-Oleum's motion to dismiss negligent misrepresentation claims for Idaho Plaintiffs Dockstader and Gomez is, therefore, granted. Pertaining to Indiana, Rust-Oleum relies on one point in Indiana case law that the state generally "has not recognized" negligent misrepresentation claims "outside the limited context of an employment relationship." (R.32, at 60 (citing *Thomas v. Lewis Eng'g, Inc.*, 848 N.E.2d 758, 760 (Ind. Ct. App. 2006) & *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) ("Indiana … does not … recognize[] negligent misrepresentation as a distinct tort")). As stated by the Indiana Supreme Court in 2010, however, "liability for the tort of negligent misrepresentation has been recognized in Indiana." *U.S. Bank, N.A. v. Integrity Land Title Corp.*, 929 N.E.2d 742, 747 (Ind. 2010) (citing *Passmore v. Multi–Mgmt. Servs. Inc.,* 810 N.E.2d 1022, 1025 (Ind. 2004)). Indeed, the Indiana Supreme Court, citing Section 552, further indicated that "negligent misrepresentation may be actionable and inflict only economic loss". *Id.* (citations omitted). The Indiana Supreme Court went on to address distinct applications within the construction industry and regarding title insurance company and commitment issuers. *Id.* at 743-47. Because the Indiana Supreme Court has indicated that application of a negligent misrepresentation claim can extend beyond employment relationships, the Court denies Rust-Oleum's motion to dismiss Indiana Plaintiff McCoy's negligent misrepresentation argument.

Third, Rust-Oleum contends that the Court should dismiss the negligent misrepresentation claim for Minnesota Plaintiff Mies because Minnesota statutory law requires a defendant to make a misrepresentation intentionally or recklessly in order to prevail on a common law misrepresentation claim. Plaintiffs have alleged factual support for a finding of intentional and/or reckless misrepresentation, however, based on allegations that Rust-Oleum possessed knowledge of Restore's propensity to prematurely fail. (R.16, ¶ 343; *see also id.*, ¶¶ 76, 82, 97.) Accordingly, Rust-Oleum's motion to dismiss Plaintiff Mies' negligent misrepresentation claim is denied.

Fourth, Rust-Oleum asserts that other states require privity or proxy in order to maintain a negligent misrepresentation claim. As discussed *supra* (Analysis, II.D.2.), however, Plaintiffs have sufficiently pled factual support for privity between Rust-Oleum and consumers. As such, Rust-Oleum's motion to dismiss Massachusetts Plaintiff Boscardin and New York Plaintiffs Larson and Fernandez's negligent misrepresentation claims is denied.

Lastly, Rust-Oleum contends that the Court should dismiss Plaintiff Hickman's negligent misrepresentation claim for failure to meet Alabama's "two-year statute of limitations, which begins running when the plaintiff discovers, or should have discovered, the fact constituting the fraud." *Bryant Bank v. Talmage Kirkland & Co.*, 155 So.3d 231, 235 (Ala. 2014). Plaintiffs allege that Plaintiff Hickman bought Restore in 2010 and notified "Defendant" that Restore was "failing and resulting in permanent damage to the deck" "[i]n or around 2011." (R.16, ¶¶ 117, 118.) According to Rust-Oleum, Plaintiff Hickman first joined this litigation in May 2015. Plaintiffs did not respond to this argument. Accordingly, the Court grants Rust-Oleum's motion in this regard and dismisses the negligent misrepresentation claim for Plaintiff Hickman.

### E. The Economic Loss Rule Does Not Mandate Dismissal of Certain Plaintiffs' Claims At This Stage

Rust-Oleum next contends that the Court should dismiss Plaintiffs' negligent misrepresentation claims under the laws of Illinois, Maine, Maryland, Michigan, Missouri, New Hampshire, New Jersey, and New York, based on the economic-loss rule because Plaintiffs solely seek economic losses purportedly caused by Restore. Plaintiffs respond that the economic loss rule and/or warranty provisions do not prevent them from pursuing claims of damage to other property, namely, the decks upon which Plaintiffs applied Restore.

The economic loss rule generally prohibits recovery in tort for solely economic loss. *See, e.g., Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982). Economic loss includes "damages for inadequate value, costs of repair and replacement of the defective product." *Id.* at 449. "[W]hen a product is sold in a defective condition that is unreasonably dangerous to the user or consumer or to his property", however, "strict liability in tort is applicable to physical injury to plaintiff's property, as well as to personal injury." *Id.* at 448.[31] This is generally known as the "other property" exception[32] to the economic loss rule. *See*

---

[31] As explained by the Illinois Supreme Court, "[t]his comports with the notion that the essence of a product liability tort case is not that the plaintiff failed to receive the quality of product he expected, but that the plaintiff has been exposed, through a hazardous product, to an unreasonable risk of an injury to his person or property. On the other hand, contract law, which protects expectation interests, provides the proper standard when a qualitative defect is involved, i.e., when a product is unfit for its intended use." *Moorman Mfg Co.*, 435 N.E.2d at 448-49.

[32] Indeed, the "economic loss rule articulated in *Moorman* does not apply when: (1) the plaintiff sustained damages (*i.e.,* personal injury or property damage) as a result of a sudden or dangerous occurrence; (2) the defendant makes an intentional, false representation (*i.e.,* fraud) that proximately causes the plaintiff's damages; or (3) the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. *MCI Worldcom Network Servs., Inc. v. Big John's Sewer Contractors, Inc.*, No. 03 C 4991, 2003 WL 22532804, at *2 (N.D. Ill. Nov. 7, 2003) (citing *In re Chicago Flood Litig.,* 176 Ill.2d 179, 223 Ill. Dec. 532, 680 N.E.2d 265, 275 (Ill. 1997)). Thus, under the first exception, Plaintiffs' allegations of damaged decks resurfaced with Restore suffice as property damage. *See Dexter Axle Co. v. Omiotek Coil Spring, Co.,* No. 00 C 28, 2000 WL 420856, at *1–2 (N.D. Ill. Apr.17, 2000) (allegations

*Colovos v. Owens-Corning Fiberglass Corp.*, No. 93 C 6483, 1994 WL 201047, at *2-3 (N.D.

Ill. May 18, 1994) (explaining that Illinois law recognizes the "other property" exception to the

"economic loss" rule).[33]

The *Oceanside at Pine Point* decision provides guidance in determining whether damage

has occurred to "other property", wherein the Maine Judicial Supreme Court ultimately adopted

an approach aligned with other jurisdictions that looks to "the product purchased by the plaintiff,

as opposed to the product sold by the defendant, to determine whether a product has injured only

itself." 659 A.2d 267, 270 (Me. 1995) (citing, *inter alia, Easling v. Glen–Gery Corp.,* 804 F.

Supp. 585, 590 (D.N.J. 1992) (no recovery permitted under strict liability theory for building

damage caused by defective bricks because the plaintiffs purchased completed apartment

complex and not a load of bricks)); *see also American Home Assurance Co. v. Major Tool &*

*Mach., Inc.,* 767 F.2d 446, 447–48 (8th Cir. 1985) (turbine assembler could not recover in tort

from manufacturer of defective component parts because damage from those defective parts to

remainder of turbine was not damage to other property).

Here, Plaintiffs allege they purchased individual cans of Restore which they applied to

their existing decking property—property that was not a part of Plaintiffs' Restore purchase.

Specifically, Plaintiffs' well-pled Complaint alleges that the Restore product, itself, degrades and

---

that damage included harm to components other than a defective adjuster wire spring were sufficient to
survive a motion to dismiss based on *Moorman*).

[33] *See also Kelleher v. Marvin Lumber & Cedar Co.*, 891 A.2d 477, 496-97 (N.H. 2005) (damage
to home caused by leaking windows installed into existing home not barred by economic loss); *Naporano
Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 504 (D.N.J. 1999) (citing N.J.S.A.
§ 2A:58C-1(b)(2) (codifying that damages are available when injury occurs to property "other than to the
product itself"); *Arkwright Mut. Ins. Co. v. Bojoirve, Inc.*, No. 93 CIV 3068 (WK), 1996 WL 361535, at
*3 (S.D.N.Y. June 27, 1996); *Oceanside at Pine Point Condominium Owners Ass'n v. Peachtree Doors,
Inc.*, 659 A.2d 267, 270 (Me. 1995); *B.L. Jet Sales, Inc. v. Alton Packaging Corp.*, 724 S.W.2d 669, 671
(Ct. App. Mo. 1987).

needs to be replaced, and that the product causes damage to Plaintiffs' property.  (*See, e.g.,* R.16, ¶ 4 ("even after proper application, damage will result to class members' decks"); *id.*, ¶ 91 ("consumers continue to spec thousands of dollars on purchasing and applying Restore, and they then spend even more money removing and replacing Restore when it peels, cracks and causes damage to existing property"); *id.*, ¶ 116 ("Defendant's product at issue in this action fails to perform as warranted and in fact ultimately causes damage and injury to any decking material upon which Restore is applied").)  Taking the facts alleged and all reasonable inferences in Plaintiffs' favor, the Complaint sufficiently states a claim for negligent misrepresentation that is not barred by the economic loss rule in the various states because application of Restore results in damage to "other property" and any integration of the Restore product with the deck, under these theories does not foreclose the rule's application.[34]

Furthermore, Plaintiffs' negligent misrepresentation claim is not barred because of the foreseeability of damage.  Rust-Oleum argues that because its warranty excludes payment for "replacement of any wood structure" or "consequential, incidental damages," it is foreseeable that Restore could damage a deck and that such foreseeability bars Plaintiffs' claim.  (R.32, at 64-65 (citing Michigan and Wisconsin[35] law))  Plaintiffs contend that foreseeability is not the only issue and that, under Michigan law, the economic loss doctrine "preclude[s] recovery in tort for economic loss caused by inferior products where: (1) the parties or others closely related to

---

[34] The present litigation is distinguishable from *Pulte Home Corp. v. Parex, Inc.*, 923 A.2d 971 (Md. 2008) upon which Rust-Oleum relies, because in *Pulte*, the court found the plaintiff barred from recovery by the economic loss rule because the stucco product was integrated into the finished product purchased by the plaintiff—the entire home.  Here, Plaintiffs purchased individual cans of Restore, not Restore applied to decking material, as discussed *supra*, and the Complaint sufficiently pleads factual support for such purchase.

[35] Although Rust-Oleum recites Wisconsin law, its motion to dismiss admits its inapplicability since Plaintiffs' voluntary dismissal of certain Plaintiffs (*see* R.23-25), resulted in "no remaining plaintiff [] alleged to reside in Montana or Wisconsin."  (R.32, at 1, n. 1.)

them had the opportunity to negotiate the terms of the sale of the good or product causing the injury, and (2) their economic expectations can be satisfied by contractual remedies." *Quest Diagnostics, Inc. v. MCI WorldCom, Inc.*, 254 Mich. App. 372, 380, 656 N.W.2d 858, 863 (Mich. Ct. App. 2002). Here, Plaintiffs have alleged that the parties had unequal bargaining power and that Plaintiffs' economic expectations cannot be satisfied by contractual remedies. (*See, e.g.,* R.16, ¶¶ 74, 76, 98, 291, 298, 308.) Taking these allegations in the light most favorable to Plaintiffs, the Complaint alleges that consumers expected Restore to preserve, not damage, their decks that were not a part of the original purchase. (*See, e.g., id.*, ¶¶ 74, 76, 98.) Rust-Oleum argues in reply that these expectations are inadequate under Illinois law and that the other-property exception permits recovery "only if the property damage results from 'hazards peripheral to the product's intended function.'" (R.77, at 33.) This argument, however, is not a foreseeability argument and is newly presented in Rust-Oleum's reply brief, to which Plaintiffs have not had an adequate opportunity to respond. The Court, therefore, disregards Rust-Oleum's arguments regarding consumer expectations and hazards peripheral to the products intended use and their application to the economic loss doctrine. *See Gygory v. C.I.R.*, 779 F.3d 466, 472 (7th Cir. 2015) (quoting *United States v. Feinberg,* 89 F.3d 333, 341 (7th Cir. 1996)) (declining to consider a party's argument raised in reply because "[t]he reply brief is not the appropriate vehicle for presenting new arguments").

Accordingly, the Court denies Rust-Oleum's motion to dismiss Plaintiffs' negligent misrepresentation claims for Plaintiffs in Illinois, Maine, Maryland, Michigan, Missouri, New Hampshire, New Jersey, and New York.

### F.    Plaintiffs' Fraudulent Concealment Claims

Count X asserts fraudulent concealment based on allegations that Rust-Oleum should have disclosed that Restore "prematurely fails."  (*See, e.g.,* R.16, ¶¶ 347, 348.)  Rust-Oleum asserts that this claim fails based on failure to plead causation and reliance, knowledge, and a duty to disclose.  In addition, Rust-Oleum asserts that Plaintiff Hickman's fraudulent concealment claim is barred by Alabama's two-year statute of limitations.  The Court has previously found that Plaintiffs' allegations sufficiently plead causation, reliance and knowledge, and therefore denies Rust-Oleum's motion to dismiss in that regard, but proceeds to address the duty to disclose and time bar arguments.

A fraudulent concealment claim requires proof that Rust-Oleum had a duty to disclose the allegedly concealed facts. *See, e.g., Connick*, 174 Ill.2d at 500.[36]  In many of the relevant states, the duty is confined to situations where the parties have a "fiduciary or confidential relationship".  *See Rared Manchester NH, LLC v. Rite Aid of N.H., Inc.*, 683 F.3d 48, 55-56 (1st Cir. 2012) (Maine); *McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 469, 480 (6th Cir. 2014) (Ohio); *Flynn v. Am. Home Prods. Corp.*, 627 N.W.2d 342, 350 (Minn. Ct. App. 2001).  Plaintiffs allege that "Defendant knew it was omitting material facts at the time it sold Restore to

---

[36] *Mason v. Chrysler Corp.,* 653 So. 2d 951, 954-55 (Ala. 1995); (2) the defendant must have been under a duty to disclose the fact to the plaintiff; *Monreal v. GMAC Mortgage, LLC,* 948 F. Supp. 2d 1069, 1077 (S.D. Cal. 2013); *Vickery v. Evelyn V. Trumble Living Trust*, 277 P.3d 864, 870-71 (Colo. App. 2011); *Aprigliano*, 979 F. Supp. 2d at 1342; *Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1167 (11th Cir. 1997) (Georgia); *Watts*, 962 P.2d at 391; *DeVoe Chevrolet- Cadillac*, 526 N.E.2d at 1240; *Blondell*, 991 A.2d at 94; *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 31 (1st Cir. 2009) (Massachusetts); *Hord v. Envtl. Research Inst. of Mich.*, 617 N.W.2d 543, 550 (Mich. 2000); *Zawaideh*, 792 N.W.2d at 495; *Invest Almaz v. Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 76 (1st Cir. 2001) (New Hampshire); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) (New Jersey); *Friedland*, 509 S.E.2d at 797; *Debbs*, 810 A.2d at 155; *Guilbeault*, 84 F. Supp. 2d at 268-69; *Shah*, 338 F.3d at 571; *Frankoff*, 448 S.W.3d at 84; *Bank of Montreal*, 193 F.3d at 827; *Landstar Inway, Inc. v. Samrow*, 325 P.3d 327, 337 (Wash. Ct. App. 2014). Delaware likewise requires a duty to disclose where, as here, there is no "active" concealment alleged. *DRR*, 949 F. Supp. at 1137.

Plaintiffs and at a time it had a duty to disclose these facts." (R.16, ¶ 348.)  That simple assertion fails to plead a factual basis for the Court to determine whether a duty to disclose arises in this case between Plaintiffs and Rust-Oleum.  *See, e.g., Connick*, 174 Ill.2d at 500 (affirming dismissal of fraudulent-concealment claim because complaint inadequately alleged that manufacturer "had a duty to disclose its knowledge" of the defect).

Plaintiffs argue, that some courts in the relevant states have found that a defendant is under a duty to disclose when it is in exclusive possession of knowledge concerning a product or it conceals facts that contradict or qualify representations.  The cases upon which Plaintiffs rely for imposition of a duty on a defendant for omissions, however, represent only six of the 29 states at issue in these claims and refer to California while Rust-Oleum does not seek dismissal of the California Plaintiff.  In addition, some of the cases upon which Plaintiffs rely are factually distinguishable.[37]  Although it resulted in dismissal of the plaintiffs' fraudulent concealment claim, the Maryland case, upon which Plaintiffs rely, asserts that "absent a duty to disclose, one who conceals facts that materially qualify affirmative representations may be liable for fraud." *Hogan v. Md. State Dental Ass'n*, 843 A.2d 902, 908 (Md. Ct. Spec. App. 2004).  Plaintiffs have alleged such a situation here, where the alleged omissions contradict the affirmative representations Rust-Oleum made to Plaintiffs.  In addition, courts have found that a duty to disclose invoked where manufacturers possess information regarding defects that are not "readily ascertainable" by consumers.  *See, e.g., Carideo v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1133 (W.D. Wash. 2010) ("[w]hen such a manufacturer has superior information regarding defects that are

---

[37] *See In re Cisneros*, 430 P.2d 86, 89-90 (Colo. 1967) (duty to disclose imposed by statute for a decedent's sons to inform court distributing decedent's property about other heirs); *see also In re Fruehauf Trailer Corp.*, 250 B.R. 168, 186 (D. Del. 2000) (explaining that a duty to disclose exists between dominant shareholders who had a fiduciary duty to company).

not readily ascertainable to customers, it has a duty to disclose the information"). Plaintiffs have pleaded that Rust-Oleum was in the unique position of having information not readily ascertainable to customers about the alleged hidden defect (*see* R.16, ¶ 97), and based on the latent properties of the alleged defect, a reasonable inference exists that it is not one readily ascertainable to customers. *See Carideo*, 706 F. Supp. 2d at 1133. Similarly, the *Peters v. Amoco Oil Co.* decision provides that the law of Alabama, Florida, and Massachusetts, all share the concept that "a duty to disclose may exist … where one party has knowledge of material facts to which the other party does not have access." 57 F. Supp. 2d 1268, 1282 (M.D. Ala. 1999). Taking the facts and all reasonable inferences in the light most favorable to Plaintiffs, they allege Rust-Oleum's failure to disclose information, to which Plaintiffs did not have access, that related directly to Restore's performance and qualities and was, therefore, material.

Accordingly, Plaintiffs have demonstrated that Plaintiffs Hickman (Alabama), Shanks (Florida), Webber (Maryland), Boscardin (Massachusetts), and Allen and McCain (Washington) withstand Rust-Oleum's motion to dismiss for failure to sufficiently plead Rust-Oleum's duty to disclose with regard to its fraudulent concealment claim. The Court grants Rust-Oleum's motion and dismisses the fraudulent concealment claims, however, for the remaining non-California Plaintiffs without prejudice.

## IV. The Complaint States a Claim for Conduct Before September 2012

Rust-Oleum asserts that a "fatal defect" of timing extends across all of Plaintiffs' claims because they rely on Restore sales and other conduct that occurred before Rust-Oleum began to manufacture Restore. Plaintiffs respond that the relationship between Rust-Oleum and Synta leaves open the factual question as to whether liability would have transferred to Rust-Oleum after it acquired Synta. The Court agrees.

86

The parties do not dispute that under Illinois law, the general rule is that "a corporation which merges with another corporation takes on the latter corporation's obligations and liabilities while a successor corporation which purchases the business assets of another corporation does not become liable for the debts of the seller in the absence of an express agreement to assume the seller's debt." *Gen Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997). This recitation alone does not demonstrate, however, that Rust-Oleum can escape all liability for Synta's alleged fraudulent marketing or defective manufacturing of Restore products prior to the date of acquisition in September 2012. There is no basis in the Complaint to conclude that Rust-Oleum did not acquire Synta in a merger or that no specific agreements existed as to liability between the companies, at that time. Plaintiffs' allegations provide that Rust-Oleum "acquired" Synta and "took over" Restore (*see* R.16, ¶¶ 57-58) which do not foreclose the possibility of a liability transfer. Taking the facts in the light most favorable to the Plaintiffs, the Complaint's allegations support a plausible factual basis that "raise[s] a reasonable expectation that discovery will reveal evidence" supporting the allegations. *See Twombly,* 550 U.S. at 556, 127 S.Ct. 1955; *see also Indep. Trust Corp.*, 665 F.3d at 935. These allegations suffice.

In addition, even if the acquisition was not a merger, "several exceptions to the general rule" governing a purchaser corporation's assumption of liabilities from a seller exist. *See Myers v. Putzmeister, Inc.*, 596 N.E.2d 754, 755-56 (Ill. App Ct. 1992). Specifically, liability may attach where: "(1) there is an express or implied agreement or assumption; (2) the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) the purchaser is merely a continuation of the seller; or (4) the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Id.* (citation omitted). Neither Plaintiffs nor the Court

currently have enough information regarding the terms of the acquisition to determine, as a matter of law, whether Rust-Oleum assumed Synta's liability for the Restore Products. The issue is, therefore, premature. *See Ordonez v. Akorat Metal Fabricators, Inc.*, No. 10 C 5708, 2011 WL 6379290, at *3 (N.D. Ill. Dec. 20, 2011) ("The remainder of Shale's motion, in which it argues that plaintiffs cannot prove successor liability, is premature. Plaintiffs have not had an adequate opportunity to conduct discovery on their claims against Shale").

**V.      Plaintiffs' Claims Allege Sufficient Allegations to Thwart Preemption Under New Jersey and Ohio Law to the Extent They Seek Relief for Damage to Other Property**

As an independent basis to the myriad of state-specific arguments Rust-Oleum argues, it further contends that the Court should dismiss many of Plaintiffs' claims under New Jersey and Ohio law to the extent they seek relief for damage to property other than the purchased Restore, because product liability statutes in both states preclude such recovery.

The New Jersey Products Liability Act ["NJPLA"] defines a "product liability action" and provides that "claims for 'harm caused by a product' are governed by the [NJPLA] 'irrespective of the theory underlying the claim." *Sinclair v. Merck & Co.*, 948 A.2d 587, 595 (N.J. 2008) (quoting N.J. Stat. § 2A:58C-1(b)(3)). A product liability action under NJPLA encompasses "any claim or action brought by a claimant for harm caused by a product." N.J. Stat. § 2A:58C-1. The JPLA defines "claimant" as "any person who brings a product liability action ..." N.J. Stat. § 2A:58C-1(b)(1). The JPLA defines "harm" to include "physical damage to property, other than to the product itself." N.J. Stat. § 2A:58C-1(2).

Rust-Oleum argues that to the extent Plaintiffs' decks constitute "other" property under the NJPLA, Plaintiffs' claims for breach of implied warranty and violation of the New Jersey

Consumer Fraud Act fail.[38]  Plaintiffs respond that Rust-Oleum attempts to extend the reach of the NJPLA beyond the confines of New Jersey law.  The Court agrees.

New Jersey courts have consistently ruled that the NJPLA does not preclude common law or CFA claims in all cases.  *See, e.g., Wendling v. Pfizer, Inc.*, No. A-1807-06T1, 2008 WL 833549, at *7-8 (N.J. Super. Ct. App. Div. Mar. 31, 2008) (JPLA did not bar Consumer Fraud Act claim); *Estate of Knoster v. Ford Motor Corp.*, 200 F. App'x 106, 116 (3d Cir. 2006) (JPLA does not subsume CFA claim); *Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac LLC*, 945 F. Supp. 2d 543, 556 (D.N.J. 2013) (allowing NJPLA and CFA claims to go forward); *New Hope Pipe Liners, LLC v. Composites One, LLC*, No. Civ. 09-3222, 2009 WL 4282644, at *3 (D.N.J. Nov. 30, 2009) (finding fraud, consumer fraud act, and breach of implied warranty of fitness for a particular purpose not subsumed by the NJPLA).  Rust-Oleum does not present any factual argument specific to this case supporting its general assertion that the NJPLA subsumes the claims alleged in this action.  Accordingly, Rust-Oleum has failed to show that Plaintiffs' claims for breach of implied warranty and statutory fraud are improper here.  The Court, therefore, denies Rust-Oleum's motion to dismiss based on preemption by the NJPLA.

The Ohio Products Liability Act ["OPLA"] is a closer call.  The OPLA "eliminate[s] 'all common law product liability claims.'"  *Wimbush v. Wyeth*, 619 F.3d 632, 639 (6th Cir. 2010) (quoting Ohio Rev. Code § 2307.71(B)).  Ohio courts have found that the OPLA's preemptive force extends to claims under the Ohio Consumer Sales Practices Act that "are primarily rooted in product liability claims."  *Hendricks v. Pharmacia Corp.*, 2014 WL 2515478, at *5 (S.D. Ohio) (citing cases).  The OPLA defines "product liability claim" to include claims seeking "to

---

[38] Although Rust-Oleum also argues that the New Jersey Plaintiffs' claims for negligent misrepresentation and fraudulent concealment are also precluded, because the Court dismissed those claims it does not address them here.

89

recover compensatory damages from a manufacturer" for "physical damage to property other than the product in question" arising out of "marketing of that product."  Ohio Rev. Code § 2307.71(A)(13).

According to Rust-Oleum, Plaintiffs' allegations related to their decks constitute "property other than the product in question" for purposes of the OPLA and the Court should, therefore, dismiss Plaintiffs' claims for violation of the Consumer Sales Act.  Plaintiffs respond that Plaintiffs Blank and Dixson's claims sounding in fraud survive this challenge because they are not rooted in product liability claims, but instead are based in fraud and Rust-Oleum's general duty not to deceive and failure to disclose that the Restore products did not work as marketed and degrade after application.  (R.16, ¶¶ 341, 347); *see Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 348-49 (6th Cir. 2000) (fraudulent misrepresentation and concealment claims preempted only to the extent that they are based on a duty to issue additional or clearer warning but "fraud claims premised on a general 'duty not to deceive' rather than a 'duty based on smoking and health' are not preempted by the [OPLA]").  In *Hendricks v. Pharmacia Corp.,* the plaintiff alleged that the defendant "made misrepresentations of material facts ... in the advertising, marketing, distribution and sale" of a pharmaceutical product.  No. 2:12-CV-00613, 2014 WL 2515478, at *4 (S.D. Ohio June 4, 2014) *report and recommendation adopted,* No. 2:12-CV-613, 2014 WL 4961550 (S.D. Ohio Oct. 2, 2014).  Although it ultimately found that the fraud claims fell under a failure to warn theory, the Ohio district court stated that the plaintiff's "contention that [d]efendants actively misrepresented the safety of [the product] presents a closer case for active fraud."  *Id.*  Based on the fine line presented in Ohio case law, the Court finds that the issue is premature.  Taking the allegations in the light most favorable to Plaintiffs at this stage, it is a factual issue as to whether Plaintiffs' claims are primarily rooted in

90

product liability claims or whether they are premised on a general duty not to deceive such that the OPLA would not abrogate the Ohio Plaintiffs' claims.

## CONCLUSION

For these reasons, the Court grants in part, grants in part without prejudice, and denies in part Rust-Oleum's motion to dismiss.

Dated: January 7, 2016                                    ENTERED

_____
AMY J. ST. EVE
United States District Court Judge