**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation | Case No. 1:15-cv-01364 |
| | MDL No. 2602 |
| | Hon. Amy J. St. Eve |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
UNCONTESTED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT,
CERTIFICATION OF A SETTLEMENT CLASS, APPOINTMENT OF CLASS
COUNSEL, AND RELATED RELIEF**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................4

SUMMARY OF THE PROPOSED CLASS SETTLEMENT ....................................6

ARGUMENT ...........................................................................................................11

I.  Certification of the Settlement Class Is Appropriate .........................................11

    A.  This Case Satisfies All Rule 23(a) Prerequisites for Class Certification...............12

        1.  The Settlement Class is sufficiently numerous...........................................12

        2.  Common questions of law and fact affect all Class Members...................12

        3.  The representative Plaintiffs' claims are typical of those held by the
           Class.........................................................................................................14

        4.  Plaintiffs and Class Counsel have adequately protected the Class ............14

    B.  The Proposed Settlement Class May Be Maintained Under Rule 23(b)(3)...........16

        1.  Common questions predominate in this case...............................................16

        2.  A class action is a superior method for adjudication of this controversy ..17

II.  The Proposed Settlement Warrants Preliminary Approval.................................18

    A.  Settlements are Favored in Class Actions.............................................................18

    B.  The Guidelines for Preliminary Approval of Class Settlements...........................18

    C.  The Settlement Agreement Satisfies the Criteria for Preliminary Approval .........21

        1.  The proposed Settlement Agreement achieves substantial and concrete
           benefits for the Class relative to the uncertain outcome of continued
           litigation ...................................................................................................21

        2.  Absent a settlement, intense and costly litigation may have likely
           continued for years.....................................................................................23

3. No known opposition to the Settlement exists at this stage.......................24

4. The proposed Class Counsel has provided competent and knowledgeable guidance in this case .................................................................................25

5. The stage of the proceedings and discovery produced warrants approval.25

III. The Court Should Approve the Proposed Notice Plan .......................................26

A. The Proposed Methods for Providing Notice Meet the Criteria for Approval ......26

B. The Proposed Contents of the Notice Meet the Requirements for Approval ........28

CONCLUSION.............................................................................................................28

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*American Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
 2011 U.S. Dist. LEXIS 84219 (N.D. Ill. July 26, 2011).....................................20

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997)..............................................................................11, 17, 18

*Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 313 (7th Cir. 1980),
 616 F.2d 305 (7th Cir. 1980) ........................................................... *passim*

*Barragan v. Evanger's Dog & Cat Food Co.*,
 259 F.R.D. 330 (N.D. Ill. 2009).....................................................................12

*Burns v. Elrod*,
 757 F.2d 151 (7th Cir. 1985) ........................................................................26

*Butler v. American Cable & Tel., LLC*,
 No. 09 CV 5336, 2011 U.S. Dist. LEXIS 115506 (N.D. Ill. Oct. 6, 2011) ......11

*Butler v. Sears, Roebuck and Co.*,
 702 F.3d 359 (7th Cir. 2012) ........................................................................17

*Chapman v. Worldwide Asset Mgmt., L.L.C.*,
 2005 U.S. Dist. LEXIS 18881 (N.D. Ill. Aug. 30, 2005) .................................15

*City of Sterling Heights Gen. Employees' Ret. Sys. v. Hospira, Inc.*,
 No. 1:11-cv-08332 (N.D. Ill. Aug. 5, 2014) (St. Eve, J.) .................................10

*De La Fuente v. Stokely-Van Camp, Inc.*,
 713 F.2d 225 (7th Cir. 1983) ........................................................................14

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
 768 F.2d 884 (7th Cir. 1985) ........................................................................21

*Felzen v. Andreas*,
 134 F.3d 873 (7th Cir. 1998) ........................................................................18

*Fournigault v. Independence One Mortgage Corp.*,
 234 F.R.D. 641 (N.D. Ill. 2006).....................................................................17

*Gaskill v. Gordon*,
 942 F. Supp. 382 (N.D. Ill. 1996) ..................................................................10

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) .................................................................. 2-3, 25

*Holtzman v. Turza*,
    2009 U.S. Dist. LEXIS 95620 (N.D. Ill. Oct. 14, 2009)...................................15

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
    270 F.R.D. 330 (N.D. Ill. 2010)....................................................... *passim*

*In re Kentucky Grilled Chicken Coupon Mktg. & Sales Pracs. Litig.*,
    280 F.R.D. 362 (N.D. Ill. 2011)...............................................................27

*In re Ocean Bank*,
    2007 U.S. Dist. LEXIS 29443 (N.D. Ill. Apr. 9, 2007) ...................................15

*In re Prudential Ins. Co. Sales Practices Litig.*,
    177 F.R.D. 216 (D.N.J. 1997)..................................................................26

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) .................................................................18

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) .......................................................... *passim*

*Kaufman v. Am. Express Travel Related Servs. Co.*,
    264 F.R.D. 438 (N.D. Ill. 2009).................................................. 11, 12-13, 27

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ..................................................................12

*Kessler v. Am. Resorts International's Holiday Network, Ltd.*,
    2007 U.S. Dist. LEXIS 84450 (N.D. Ill. Nov. 14, 2007) .................................20

*Lipuma v. Am. Express Co.*,
    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...................................................... 24

*Mace v. Van Ru Credit Corp.*,
    109 F.3d 338 (7th Cir. 1997) ..................................................................18

*McCabe v. Crawford & Co.*,
    210 F.R.D. 631 (N.D. Ill. 2002)................................................................12

*Messner v. Northshore Univ. HealthSys.*,
    669 F.3d 802 (7th Cir. 2012) ..................................................................16

*Mirfasihi v. Fleet Mortg. Corp.*,
   356 F.3d 781 (7th Cir. 2004) .......................................................................27

*Mirfasihi v. Fleet Mortg. Corp.*,
   450 F.3d 745 (7th Cir. 2006) .......................................................................10

*Muro v. Target Corp.*,
   No. 04 C 6267, 2005 U.S. Dist. LEXIS 14409 (N.D. Ill. July 15, 2005) .........12

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*,
   231 F.R.D. 280 (N.D. Ill. 2005)...................................................................14

*Retired Chicago Police Ass'n v. City of Chicago*,
   7 F.3d 584 (7th Cir. 1993) ...........................................................................15

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) .......................................................................21

*Rosario v. Livaditis*,
   963 F.2d 1013 (7th Cir. 1992) ...............................................................14, 15

*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009)...................................................................14

*Smith v. Sprint Communications Co., L.P.*,
   37 F.3d 612 (7th Cir. 2004) .........................................................................17

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) .......................................................................19

*Taubenfeld v. Aon Corp.*,
   415 F.3d 597 (7th Cir. 2005) .......................................................................10

*Twigg v. Sears, Roebuck & Co.*,
   153 F.3d 1222 (11th Cir. 1998) ...................................................................28

**Statutes & Rules**

28 U.S.C. § 11.41............................................................................................19

28 U.S.C. § 11.53............................................................................................26

28 U.S.C. § 21.312..........................................................................................28

28 U.S.C. § 1407 ........................................................................................................5

Fed. R. Civ. P. 23(a) ........................................................................................ *passim*

Fed. R. Civ. P. 23(a)(1) ..........................................................................................12

Fed. R. Civ. P. 23(a)(2) ..........................................................................................12

Fed. R. Civ. P. 23(a)(4) ..........................................................................................15

Fed. R. Civ. P. 23(b)(3) .................................................................................. *passim*

Fed. R. Civ. P. 23(e) ...................................................................................... *passim*

**Other**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011) ......................................................................16

Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010) .................................................. 2-3

## INTRODUCTION

Plaintiffs[1] brought this class action on behalf of consumers injured as a result of their purchases of certain wood and concrete resurfacing products, Deck & Concrete Restore, Deck Restore, Concrete Restore, and Restore 10X (the "Restore Products"), alleging that the Restore Products failed to comport with the representations of Defendant Rust-Oleum Corporation ("Rust-Oleum" or the "Defendant"). After intense litigation, including the creation and transfer to this Court of an MDL, and several rounds of arms-length negotiations, the parties entered into an agreement (the "Settlement Agreement" or "SA," attached hereto as **Exhibit 1**[2]) that will provide real and substantial benefits to the Class and resolve the claims alleged (the "Settlement") in this matter. Once approved by this Court, the Settlement will result in the establishment of nine million and three hundred thousand dollar million ($9,300,000.00) common fund that will be distributed to Settlement Class Members pursuant to the terms of the Settlement Agreement. Furthermore, the Settlement Agreement provides that, subject to certain credits, Defendant will pay separately for notice and administrative costs associated with the Settlement Agreement. In exchange for these and other benefits, Settlement Class Members will provide a general release to Rust-Oleum. In support of their motion for Preliminary Approval of the Settlement, Plaintiffs submit the Declaration of Interim Co-Lead Class Counsel William

---

[1] The Plaintiffs in this case, also the proposed representative Plaintiffs for the Settlement Class, are: Angelita Hickman, Michael Reyes, Charles Hoff, Michael Baden, Jerry Lautigar, John Malloy, Hans Shanks, Layla Patterson, Debra Dockstader, Season Gomez, Conrad Shogren, David Sullivan, Kathleen Sullivan, Tracy McCoy, Cory Fales, Robert Webber, Rick Boscardin, Cynthia Scaglione, Jeffrey Mies, Don Gibson, Scott Holbrook, Ed Anderson, John Riello, Robert Dorgan, Carol Larson, Ulbardo Fernandez, James Leonard, Joan Leonard, Christopher McLamb, Tamela McLamb, Irma Blank, Leasha Dixson, Steven Cady, Gina Cady, Lawrence Fredericks, Scott Reinhart, Mark Renzi, Paula Rogers, Dominic Ray Diaz, Becki S. Murphy, Sharon Ledford, George Reynolds, Michael Allen, Carrie McCain, and Daniel T. Howell (collectively, "the Plaintiffs").

[2] All defined terms herein have the same meanings as set forth in the Settlement Agreement unless otherwise specified.

- 1 -

Audet[3], the Declaration of Interim Co-Lead Class Counsel Katrina Carroll[4] and the Declaration of Carla A. Peak on Settlement Notice Plan[5], and the Proposed Order Granting Plaintiffs' Motion for Preliminary Approval[6].

As set forth herein and in the accompanying Declarations of counsel, the Settlement was reached only after Interim Co-Lead Class Counsel obtained critical liability information, by way of formal discovery and comprehensive internal investigation. Counsel's thorough investigation included: consultation with the over forty (40) named Plaintiffs and other class members, participation in and attendance at thirty-six (36) on-site deck inspections requested by the Defendant, at various locations around the country, extensive conferral and motion practice regarding discovery served on Defendant, a thorough review of documents and evidence produced by Rust-Oleum, and success in defeating Defendant's sprawling (but well-briefed) motion to dismiss.

As this Court is well aware, the Seventh Circuit - as with other Circuits - favors the settlement of class action litigation. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). With this principle in mind, the parties ask the Court to take the first step toward resolving this case – preliminarily approving the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. The purpose of this "first step" is "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing" after class members have been given an opportunity to opt-out of the class or to voice any objections to the settlement. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see generally*

---

[3] Hereinafter referred to as the "Audet Decl."

[4] Hereinafter referred to as the "Carroll Decl."

[5] Hereinafter referred to as the "KCC Notice Plan."

[6] Hereinafter referred to as the "Order."

Manual for Complex Litigation § 21.632 (4th ed. Supp. 2010) ("Manual").

The proposed Settlement is plainly a favorable compromise in light of the merits of Plaintiffs' claims, Defendant's defenses, and the factual and legal risks of continued litigation through trial and a possible appeal. Furthermore, because of the excellent results the Settlement achieves, the Settlement concludes the otherwise potentially risky litigation with a positive, common benefit for the Class. Therefore, the proposed Settlement meets the test for preliminary approval.

Counsel for Rust-Oleum has no objection to this Motion. Accordingly, Plaintiffs hereby submit this memorandum (and related documents) in support of their uncontested motion for entry of the parties' proposed Order:

(1)     Certifying a class (the "Settlement Class") for the purpose of settlement under Rule 23 of:

> All persons or entities in the United States and its territories who purchased, not for resale, a Restore Product during the Class Period (January 1, 2008 through the date the Preliminary Approval Order is entered), excluding: (i) all persons and entities who filed a claim concerning a Restore Product in any court, if that claim has been resolved with a final judgment or order; (ii) Rust-Oleum, any entity in which Rust-Oleum has a controlling interest, any person or entity which has a controlling interest in Rust-Oleum, and Rust-Oleum's legal representatives, assigns, and successors; and (iii) the judge to whom the MDL Action is assigned and any member of the judge's immediate family.

(2)     Appointing Plaintiffs as representatives of the Class;

(3)     Appointing Interim Co-Lead Counsel, Audet & Partners LLP and Lite DePalma Greenberg, LLC as Settlement Class Counsel;

(4)     Preliminarily approving the proposed Settlement as set forth in the Settlement Agreement;

(5)     Authorizing the form and manner of notice to be sent to the Settlement Class

- 3 -

Members advising them of the proposed Settlement, Class Counsel's intended fee and expense application, and their rights with respect thereto;

(6)      Appointing KCC LLC as the Notice provider and Claims Administrator; and

(7)      Scheduling a final hearing (the "Fairness Hearing") to consider final approval of the Settlement Agreement.

For the reasons set forth herein, Plaintiffs respectfully request the Court grant their uncontested Motion for Preliminary Approval of the Settlement and enter the proposed Order submitted herewith.

## FACTUAL AND PROCEDURAL BACKGROUND

This MDL is a putative class action alleging the Defendant violated consumer and warranty laws, and was brought on behalf of persons who purchased deck resurfacing Restore Products manufactured by Rust-Oleum. Plaintiffs allege that the Restore Products are intended to be used by consumers to repair and revitalize their existing decking by covering the decking with a thick, weather-resistant coating. Plaintiffs further allege Rust-Oleum markets these products as superior, lower-maintenance and lasting alternatives to traditional deck paints and stains. As alleged by Plaintiffs, the Restore Products did not perform as promised. *See, generally*, the Second Amended Complaint (the "SAC"), Dkt. No. 85. An initial class complaint was filed over two years ago in this District, and shortly thereafter, many more class action cases were subsequently filed alleging similar claims in federal courts in many jurisdictions throughout the United States.

In light of the multiple filings of related class action complaints, on February 6, 2015, the United States Judicial Panel on Multidistrict Litigation ("JPMDL") issued an Order:   a) consolidating before this Court the five then-pending actions complaining about the Restore

Products filed in federal district courts,[7] b) finding that the actions "involve common questions of fact," and c) that centralization, under 28 U.S.C. § 1407, in the Northern District of Illinois ("the MDL Action") would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the ensuing litigation. The MDL Action is captioned *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, Case No. 1:15-cv-1364 (N.D. Ill.), MDL Docket No. 2602.

After the MDL Action was established, on February 18, 2015, the JPMDL issued a conditional transfer order for *Sullivan, et al. v. Rust-Oleum Corporation*, No. 3:15-cv-00023 (S.D. Ill.), a related action filed on January 8, 2015. Thereafter, an additional action, *Baden, et al. v. Rust-Oleum Corporation*, No. 15-cv-2892 was filed on April 1, 2015 in the Northern District of Illinois, and subsequently reassigned and related to the MDL Action. Later, *Howell v. Rust-Oleum Corporation*, No. 15-cv-8379 was filed in the District of New Jersey, and subsequently transferred and consolidated into the MDL Action by the JPML on December 15, 2015.

A Consolidated Class Action Complaint was filed by the Plaintiffs in the MDL Action on May 19, 2015. On January 7, 2016, the Court granted in part and denied in part Rust-Oleum Corporation's motion to dismiss, extensively briefed by the parties. *See* Dkt. No. 80. Pursuant to the Court's order, a Consolidated Second Amended Class Action Complaint was filed on March 29, 2016, seeking to address the issues outlined by the Court in the motion to dismiss Order.

During the pendency of Defendant's motion to dismiss, the parties engaged in heavy and extensive discovery. The discovery included thirty-six (36) on-site property inspections at Plaintiffs' homes around the country, the exchange of written discovery responses and the

---

[7] *McCain, et al. v. Rust-Oleum Corporation*, No. 14-cv-4852 (N.D. Ill.); *Webber, et al. v. Rust-Oleum Corporation*, No. 14-cv-2248 (D. Md.); *Cady, et al. v. Rust-Oleum Corporation*, No. 14-cv-06156 (E.D. Pa.); *Fernandez v. Rust-Oleum Corporation, et al.*, No. 14-cv-08857 (S.D.N.Y.); *Leonard, et al. v. Rust-Oleum Corporation*, No. 14-cv-00259 (E.D.N.C.).

production of documents by Defendant on a rolling basis. In addition, after many meet-and-confers, Plaintiffs sought relief from the Court on certain outstanding discovery. With the Court's assistance on November 20, 2015, the Parties also submitted an agreement for the production of ESI in response to Plaintiffs' first set of written discovery. Thereafter, Defendant began production of ESI and produced approximately 30,000 pages of documents to Plaintiffs. Rust-Oleum served Plaintiffs with written discovery and interrogatories, requiring the plaintiffs to provide answers and documents for a collective total of 960 interrogatories and 1080 requests for production.

With the benefit of informal discovery, the many property inspections, the Court's order on the motion to dismiss and formal discovery, the parties began to discuss the possibility of settlement in late 2015. After months of in-person and telephonic negotiation sessions, the parties came to an agreement on the material terms of the Settlement. Thereafter, the parties spent immense time and effort to arrive upon the exact details of the Settlement, including the relief and claims structure, as well as notice and the administration of the Settlement.

<u>**SUMMARY OF THE PROPOSED CLASS SETTLEMENT**</u>

Plaintiffs and Rust-Oleum have reached an agreement to settle this litigation for a common fund of $9.3 Million dollars ($9,300,000.00), along with interest that may accrue, paid by Rust-Oleum, without the possibility of reversion. Rust-Oleum will also pay separately for class notice and claims administration (but will be entitled to receive a credit for paid administration expenses up to $300,000). The parties agreed to the certification of a Settlement Class for purposes of this proposed Settlement. The key terms in the Settlement Agreement are:

***The Proposed Settlement Class***: The Settlement Class will consist of all persons who purchased certain Restore products (Deck & Concrete Restore, Deck Restore, Concrete Restore,

and Restore 10X) from January 1, 2008 until the date of preliminary settlement approval. (SA ¶ 1.)[8] The Settlement Class is an opt-out class under Rule 23(b)(3). (*Id*. ¶ 1.1, jj.) Class status can be objectively determined from records supplied by Rust-Oleum and self-identification via the claims process outlined in the Settlement Agreement. (*Id*. ¶ 6.11)

*Payments to the Settlement Class*: Rust-Oleum will establish a common fund of $9.3 million dollars ($9,300,000.00), without the possibility of reversion. The Settlement Fund shall be used to pay Eligible Claims, the award of fees, expenses, and costs to Class Counsel and Additional Plaintiffs' Counsel, incentive awards to the Plaintiffs, the fees and expenses of the Special Master, and certain fees, costs, expenses, taxes, reimbursements and credits. (SA ¶ 4.6). After deducting Court-approved attorneys' fees, costs and expenses, incentive awards for the Class Representatives, taxes, the Special Master's fees and expenses, product cost reimbursements to Rust-Oleum for Class Members who receive product pursuant to the Settlement, and up to a $300,000 credit to Rust-Oleum for administrative costs, the balance (the "Net Settlement Fund") will be distributed to Settlement Class Members who submit valid Claim Forms (subject to possible reimbursement payments to Rust-Oleum for certain warranty relief provided between Preliminary Approval and Final Approval of the Settlement). (SA ¶ 10.2).

*Separate Payment by Rust-Oleum of Administration Expenses*: As set forth herein, Rust-Oleum shall pay all of the costs of Class Notice and all Claims Program Administration Expenses (subject to limited credits and reimbursements for paid Claims Program

---

[8] Excluded from the Settlement Class are: (i) all persons and entities who filed a claim concerning a Restore Product in any court, if that claim has been resolved with a final judgment or order; (ii) Rust-Oleum, any entity in which Rust-Oleum has a controlling interest, any person or entity which has a controlling interest in Rust-Oleum, and Rust-Oleum's legal representatives, assigns, and successors; and (iii) the judge to whom the MDL Action is assigned and any member of the judge's immediate family.

Administration Expenses from the Settlement Fund of up to $300,000.00). (SA ¶ 4.8).

*Settlement Administration*: The Settlement will be administered by KCC LLC, a leading class action settlement administrator jointly selected by the parties. KCC's responsibilities include: (a) sending class notice; (b) conducting reasonable searches for Class member addresses; (c) re-mailing class notice returned in the mail; (d) processing submissions of claims; (e) sending payments to Class members; (f) processing exclusion or opt-out requests from Class members; and (g) providing reports about the claims process.

*The Notice Plan*: Consistent with Rule 23 and due process, the Notice Plan is designed to provide effective direct and indirect notice to the Class. *See, generally*, KCC Notice Plan. The Notice Plan provides for dissemination of both a Summary Notice and a Long-Form Notice to class members, by way of direct mail, email, publication and website outreach. The Notice Plan includes publication of the Summary Notice in a manner best suited to reach Class members. The Notices will inform Class members of the pendency and status of the case, terms of the Settlement, the benefits available to members under it, how the case and the Settlement may affect their legal rights, important Settlement deadlines, instructions for objecting to the Settlement or opting-out of the Class, and information concerning the date of the Final Approval Hearing and how to find more information regarding the Settlement. A toll-free telephone line and website will also be established to facilitate providing notice and information to Class members. And, to ensure the best notice practical, Rust-Oleum will also include in the section of its corporate website concerning warranty claims for the Restore Products a conspicuous link to the Settlement website to be established under this Agreement.

*Claims Period*: The Claims Period shall begin on the date following entry of the Final Approval Order and shall run for one hundred eighty (180) days or until the Effective Date,

whichever is later. (SA ¶ 1.1k).

**Guidelines for Compensation**: The Settlement provides general guidelines for various levels of compensation ("Tier 1," "Tier 2" and "Tier 3") depending on the amount and type of decking damage suffered by Settlement Class Members. (SA ¶ 7). In addition, Class Members will receive additional (meaning, higher-tiered compensation) if the Restore Products were or will be removed and/or repaired and replaced. (*Id.*)

**Special Circumstances Supplemental Compensation**: In addition to payments pursuant to the above-referenced guidelines, under certain circumstances (after payment of the initial costs and expenses and the initial guideline payments to Class Members) the Claims Administrator will consider requests for Supplemental Compensation to Settlement Class Members due to Special Circumstances. (SA ¶ 7.5). Special Circumstances Supplemental Compensation may include any additional out-of-pocket costs associated with removal and replacement of Restore and/or the decking or other area where the Restore Products were applied.

**Class Member Releases**: Upon final approval of the Settlement, all Class members who do not opt-out will release Rust-Oleum and the related parties from all Released Claims, as defined in the Settlement Agreement, concerning the Restore Products. The release is limited to claims that arise out of the manufacture, sale, advertising, labeling, warranting, and use[9] of the Restore Products purchased during the Class Period.

**Class Representative Incentive Awards**: The Settlement Agreement permits Plaintiffs to seek, subject to Court approval, incentive awards in an amount not to exceed two thousand dollars ($2,000.00) each. This incentive award does not exclude Plaintiffs from participation in the settlement claims process. The Court does <u>not</u> need to award or otherwise rule on Plaintiffs'

---

[9] For a comprehensive list of all Released Claims, *see* SA, *generally*, and ¶ 1.1(mm).

incentive awards at this time. Class Counsel will file a motion for the incentive award, pursuant to the schedule set forth in the Preliminary Approval Order, and will support that request for the award in detail.

*Class Counsel's Attorneys' Fees and Costs*: Under the Settlement Agreement, and consistent with Seventh Circuit law, Class Counsel will move for an award of attorneys' fees, costs and expenses from the Settlement fund. (SA ¶ 9.1). But, in all other respects, no other agreements exist between or among the parties as to payments to be made to Class Counsel or Plaintiffs. (*Id.*, ¶ 9.3). Class Counsel intends to submit a fee application at the appropriate stage of these proceedings seeking up to thirty-three (33) percent of the total settlement payment.[10] The parties have agreed that, a failure to grant some or all of the requested attorneys' fees, costs, and expenses shall not be grounds for modification or termination of this Agreement.

*Settlement Termination*: Rust-Oleum has the right to terminate the settlement if: (a) the Court refuses to approve any part of the Settlement Agreement; (b) the Court materially changes the terms of the requested preliminary approval order or the requested final approval order; (c) an appellate court reverses or vacates the final approval order; (d) the Effective Date, as defined in the Settlement Agreement, does not occur before Rust-Oleum must answer or otherwise plead in response to any complaint in the MDL action; or (e) any other ground for termination provided for in the Settlement Agreement that arises. (SA ¶ 16.1). The parties have agreed,

---

[10] The ultimate determination of this issue will take place at the final approval hearing. However, this percentage is well within the range of class action attorneys' fees approved by the Seventh Circuit. *See Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748-49 (7th Cir. 2006) (affirming class attorneys' fees that were 30 percent of defendant's maximum payment); *Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (approving fees of 30 percent of settlement); *City of Sterling Heights Gen. Employees' Ret. Sys. v. Hospira, Inc.*, No. 1:11-cv-08332, at *1 (N.D. Ill. Aug. 5, 2014) (St. Eve, J.) (awarding 30 percent of $60 million settlement fund as attorneys' fees); *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996) (Williams, J.) (38% fee), *aff'd*, 160 F.3d 361 (7th Cir. 1998).

however, that if Court does not approve the Settlement Agreement, if it materially changes the terms of the requested Preliminary Approval Order or the requested Final Approval Order, or if an appellate court reverses or vacates the Final Approval Order, then, before termination, the parties will attempt to amend the Settlement Agreement consistent with the applicable order and proceed with a settlement based on an amended version of the Agreement. (SA ¶ 16.5).

## ARGUMENT

### I.     Certification of the Settlement Class Is Appropriate

The benefits of the proposed Settlement can be realized only through certification of the Settlement Class.  *Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 441-442 (N.D. Ill. 2009) ("Before addressing the substantive provisions of the Settlement Agreement, the court must first determine whether the proposed Class can be certified."). A class may be certified solely for purposes of settlement if a settlement is reached before a litigated determination of the certification issue. *See Butler v. American Cable & Tel., LLC*, 2011 U.S. Dist. LEXIS 115506, at *11-13 (N.D. Ill. Oct. 6, 2011). The standards for certification of a settlement class are less rigorous than in a litigated certification contest. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997).

Here, the parties have agreed to the certification of the following Settlement Class, under Fed. R. Civ. P. 23(a) and 23(b)(3):

> All persons or entities in the United States and its territories who purchased, not for resale, a Restore Product during the Class Period (January 1, 2008 through the date the Preliminary Approval Order is entered), excluding: (i) all persons and entities who filed a claim concerning a Restore Product in any court, if that claim has been resolved with a final judgment or order; (ii) Rust-Oleum, any entity in which Rust-

> Oleum has a controlling interest, any person or entity which has a controlling interest in Rust-Oleum, and Rust-Oleum's legal representatives, assigns, and successors; and (iii) the judge to whom the MDL Action is assigned and any member of the judge's immediate family.

As discussed below, this proposed Settlement Class satisfies Rule 23's requirements.

### A.    This Case Satisfies All Rule 23(a) Prerequisites for Class Certification

Rule 23(a) requires that any proposed class meet four (4) prerequisites: numerosity, commonality, typicality and adequacy of representation. Here, each element is satisfied.

### 1.    The Settlement Class is sufficiently numerous

The Class Members are numerous, making their individual joinder impracticable. Fed. R. Civ. P. 23(a)(1). "Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002); *see also*, *Muro v. Target Corp.*, 2005 U.S. Dist. LEXIS 14409, at *39 (N.D. Ill. July 15, 2005) ("Permissive joinder is usually deemed impracticable where the class members number 40 or more.").  This element is easily satisfied here: there are already 40 named Plaintiffs in the case alone. Plaintiffs anticipate that unnamed class members will easily bring the class into the thousands.

### 2.    Common questions of law and fact affect all Class Members

Commonality under Fed. R. Civ. P. 23(a)(2) involves an inquiry into whether class members share at least one common question of law or fact. *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The element "does not necessitate every class member's factual or legal situation to be a carbon copy of those of the named plaintiffs,…the low commonality hurdle is easily surmounted." *Kaufman v. American Express Travel Related Servs. Co.*, 264 F.R.D. 438, 442

(N.D. Ill. 2009) (internal quotation marks omitted).

This case comfortably satisfies this minimal standard. Here the Court would be asked to address a series of identical questions. For example, as alleged in Plaintiffs' operative Complaint, common questions of law and fact exist as to:

- Whether Defendant marketed Restore as a superior, longer-lasting alternative to paint or stain, capable of extending the life of wooden decks and related structures to which it was applied,

- Whether Defendant's marketing of Restore was false, deceptive, and/or misleading to reasonable consumers;

- Whether Restore is unfit for its ordinary purpose of providing lasting protection to deck surfaces and related structures;

- When Defendant discovered that Restore was susceptible to premature failure;

- Whether Defendant ever disclosed its knowledge that Restore was susceptible to premature failure;

- Whether Restore's propensity of premature failure would be important to a reasonable consumer;

- Whether Defendant was unjustly enriched by the sale of Restore;

- Whether Defendant breached its express and implied warranties;

- Whether Defendant's purported express warranty limitations on available remedies are unconscionable and void;

- Whether Defendant engaged in fraudulent, unfair, or deceptive conduct with respect to the handling of warranty claims;

- Whether members of the proposed class have sustained damages and, if so, the proper measure of such damages; and

- Whether Defendant should be declared financially responsible for notifying all class members about Restore's propensity to prematurely fail and for all damages associated with application of the product on class members' decks and similar property.

*See* Dkt. 85 (SAC), at ¶ 107. Underlying these basic common questions is a common nucleus of operative facts pertaining to the same standardized conduct by Rust-Oleum arising from the

manufacture and sale of the allegedly defective Restore Products. These central fact issues and their consequences are common to all Settlement Class Members, and thus the Settlement Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a).

>   **3.    The representative Plaintiffs' claims are typical of those held by the Class**

The typicality requirement under Rule 23(a)(3) is "liberally construed" and easily satisfied. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009); *see also*, *Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Here, typicality is satisfied because Plaintiffs' claims and those of the Settlement Class Members they seek to represent derive from the same set of operative facts. All Plaintiffs purchased Restore Products during the Settlement Class Period, and Plaintiffs allege that they, like the other Settlement Class Members, were damaged by those purchases. All members of the Settlement Class were alleged victims of this common course of conduct by Rust-Oleum which arises out of Rust-Oleum's sale and manufacture of the Restore Products. These allegations form the basis of claims held by all Class Members, and all claims are based on the same legal theories: Rust-Oleum's violation of warranty law and consumer protection statutes. As a result, the claims of the Plaintiffs are typical of those of the Settlement Class.

>   **4.    Plaintiffs and Class Counsel have adequately protected the Class**

Rule 23(a)'s final requirement is that class representatives must "fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy analysis asks whether: (1) the plaintiff has a "'sufficient interest in the outcome to ensure vigorous advocacy" of the case; (2) does "not have interests that conflict with those of the class"; and (3) the class representatives' lawyers are "qualified, experienced, and able to conduct the litigation." *Holtzman v. Turza*, 2009 U.S. Dist. LEXIS 95620, at *14 (N.D. Ill. Oct. 14, 2009) (*quoting Chapman v. Worldwide Asset Mgmt., L.L.C.*, 2005 U.S. Dist. LEXIS 18881, at *11 (N.D. Ill. Aug. 30, 2005)); *see also*, *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

Plaintiffs' interests and claims are entirely consistent with those held by the Class, and logic, along with the history of this litigation, indicates that Plaintiffs have and will continue to vigorously advocate for Class Members. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010) ("[E]nsure that there is no inconsistency between the named parties and the class they represent"). Since neither conflicting nor antagonistic claims exist, there are no conflicts of interest, let alone disqualifying ones. *Rosario*, 963 F.2d at 1018. Further, the adequacy requirements are modest at best and described as "not particularly demanding." *In re Ocean Bank*, 2007 U.S. Dist. LEXIS 29443, at *25 (N.D. Ill. Apr. 9, 2007). Plaintiffs are adequate representatives.

Plaintiffs' Interim Co-Lead and proposed Co-Lead Class Counsel are reputable and highly experienced litigators, having handled numerous products liability class actions. (Audet Decl ¶¶ 1-3, Exhs. A, B; & Carroll Decl ¶ 2, Exh. A.) In this case, they and certain other class counsel aggressively pursued discovery from Rust-Oleum and engaged in often contentious back-and-forth arguments regarding issues such as ESI and applicable search terms. These disputes led to motions to compel that this Court judiciously resolved. (Audet Decl. ¶¶ 5, 6;

- 15 -

Carroll Decl. at ¶¶ 11-13.) Plaintiffs' attorneys reviewed voluminous documents produced, provided documents and ESI in turn, and successfully defeated a complex motion to dismiss. (Audet Decl. ¶¶ 5, 6; Carroll Decl. at ¶¶ 15, 16.) All told, Plaintiffs' attorneys have devoted thousands of hours and substantial resources towards investigating the underlying facts, researching the applicable law, prosecuting the case, and negotiating a detailed Settlement. (Audet Decl. ¶¶ 7, 8; Carroll Decl. at ¶¶ 4-16.) Indeed, the volume and structure of the proposed Settlement *alone* should serve as conclusive proof of Class Counsel's adequacy. Plaintiffs and their attorneys have demonstrated they are fully capable of litigating this case and that the interests of the Settlement Class have been and will be fairly and adequately protected.

**B.    The Proposed Settlement Class May Be Maintained Under Rule 23(b)(3)**

Once Rule 23(a) is satisfied, the Court must proceed to consider the predominance and superiority requirements of Rule 23(b)(3), whether "questions of law or fact common to the class predominate over any [individualized questions], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy these requirements.

**1.    Common questions predominate in this case**

The first part of Rule 23(b)(3) is satisfied when "common questions represent a significant aspect of a case and... can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (3d ed. 2011)). "'Considerable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common

nucleus of operative facts.'" *Pella*, 257 F.R.D. at 484 (quoting *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 644 (N.D. Ill. 2006)).

Here, common questions that would be decided on a class wide basis include: (1) whether the Restore Products were susceptible to failure and (2) whether the failure can and did cause damage to the property of the Class. Likewise: (1) whether and when Rust-Oleum knew the Restore Products would fail and (2) what actions it took or omitted to take in response to the issue would be common to the Class. Plaintiffs have claimed that Rust-Oleum "engaged in standardized conduct that violated laws that are common [to the proposed Settlement Class], and the class and subclasses will therefore be cohesive." *In re AT&T Mobility*, 270 F.R.D. at 345 (*citing Amchem Prods.*, 521 U.S. at 623). Further, because a Settlement Class is sought here and there will be no trial, the Court need not inquire whether the case, if tried, would present manageability problems with individualized issues. *Smith v. Sprint Communications Co., L.P.*, 37 F.3d 612, 614 (7th Cir. 2004) (*quoting Amchem Prods.*, 521 U.S. at 591)).

### 2. A class action is a superior method for adjudication of this controversy

The second Rule 23(b) element – superiority of class adjudication – is easily fulfilled here. "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Butler v. Sears, Roebuck and Co.*, 702 F.3d 359, 362 (7th Cir. 2012). Rule-makers designed the class action device for a case like this: a large number of claims, in the thousands, which would be uneconomical to pursue on an individual basis. As the Supreme Court stressed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class

> action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods.*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

In this case, the number of Settlement Class Members is far too numerous and the typical individual claim is likely to be too small for each individual Settlement Class Member to litigate in a separate action. The class action device is the only viable vehicle by which the vast majority of persons injured by Defendant's allegedly wrongful conduct may obtain a remedy. A class action is the appropriate and superior method for adjudication of these claims, and as such, Rule 23(b)(3) is satisfied.

## II.     The Proposed Settlement Warrants Preliminary Approval

### A.     Settlements are Favored in Class Actions

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. The 7th Circuit has held that "Federal courts naturally favor the settlement of class action litigation." *Isby*, 75 F.3d at 1196. "Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also*, *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (settlement is particularly favored in class actions, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential class benefit). Here, a settlement will provide an appropriate resolution of the issues.

### B.     The Guidelines for Preliminary Approval of Class Settlements

At this juncture, Plaintiffs, without objection from Rust-Oleum, request that the Court

grant preliminary approval of the Settlement so that notice may be sent to the Class. "District court review of a class action settlement proposal is a two-step process." *Armstrong*, 616 F.2d at 314. As the Seventh Circuit explains:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Id*.

In deciding whether to preliminarily approve a class settlement, courts should consider: (1) the strength of plaintiffs' claims compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (*citing Isby*, 75 F.3d at 1199). In addition, the court should consider the defendant's ability to pay. *Armstrong*, 616 F.2d at 314 (*citing Manual for Complex Litig.*, § 1.46, at 56 (West 1977)).

A finding of fairness is bolstered where, as in this case, the proposed Settlement was reached only after zealous, arms-length negotiations that took place over numerous in-person sessions with executives and counsel for Rust-Oleum, as well as dozens of conference calls and several cross-country meetings. *See* 4 *Newberg on Class Actions* § 11.41 (Fairness of a class settlement may be initially presumed when the settlement has been arrived at by arm's length bargaining, among other considerations). A reviewing court "do[es] not focus on individual

- 19 -

components of the settlements, but rather view[s] them in their entirety in evaluating their fairness," and considers the facts "in the light most favorable to the settlement." *Armstrong*, 616 F.2d at 315. (Audet Decl. at ¶¶ 9-16; Carroll Decl. at ¶ 17.)

At this preliminary approval stage, however, the review is abbreviated. "[T]he court's task is to 'determine whether the proposed settlement is within the range of possible approval,' not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards..." *American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, 2011 U.S. Dist. LEXIS 84219, at *32-33 (N.D. Ill. July 26, 2011) (citation omitted). As a result, courts in this district perform "a more summary version" of the final fairness inquiry at the preliminary approval stage. *Kessler v. Am. Resorts International's Holiday Network, Ltd.*, 2007 U.S. Dist. LEXIS 84450, at *17 (N.D. Ill. Nov. 14, 2007); *see also*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (St. Eve, J.) (*citing Kessler*).

Here, the proposed Settlement meets all of these criteria for preliminary approval. As illustrated below, Plaintiffs make a showing that the proposed Settlement is within the range of possible approval and provides important benefits to the Settlement Class. Further, there is no evidence whatsoever of collusion or overreaching: To the contrary, the proposed Settlement was the product of protracted and extensive arm's-length negotiations conducted by experienced counsel. (Audet Decl. at ¶¶ 9-16; Carroll Decl. at ¶ 17.)

Here, the Settlement is a common fund settlement with a real value known to the Court and the Class, as the total cash value is undisputed. Thus, any evaluation of the requested attorneys' fees can occur in the context of the common fund and value Class Counsel created so that the Court can determine whether the fees are reasonable (Plaintiffs will file a separate motion requesting attorneys' fees, which will be available to Class Members prior to the

objection deadline).

### C.     The Settlement Agreement Satisfies the Criteria for Preliminary Approval

#### 1.     The proposed Settlement Agreement achieves substantial and concrete benefits for the Class relative to the uncertain outcome of continued litigation

Comparing concrete settlement benefits with hypothetical litigation outcomes is an inexact science. As the Seventh Circuit has stressed, "[a] high degree of precision cannot be expected in valuing a litigation, especially regarding the estimation of the probability of particular outcomes." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002). Further, the evaluation of the costs and benefits of settlement must be tempered by the recognition that any compromise involves concessions from all the settling parties. Indeed, "[t]he essence of settlement is compromise." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985).

Here, the Settlement Agreement strikes a compromise that affords fair recompense to Class Members. The proposed Settlement pays $9.3 Million dollars to a common fund with a non-reversionary clause to maximize the amount of funds available to benefit the Settlement Class.  The proposed Settlement Agreement also provides for the separate payment by Rust-Oleum of administrative expenses (subject to a potential $300,000 reimbursement from the Settlement Fund).  The relief afforded by the Settlement Agreement is substantial.

In addition, a key feature of the Settlement is that Class Members will receive scaled payments in non-exclusive tiers depending on the degree of problems experienced with the Restore Products. (SA ¶ 7). Those who experienced greater levels of damage will be able to recoup a reasonably higher payment in multiple tiers from the Settlement Fund (although no Class Member can recover in multiple tiers for the same area of damage).  In this way, the funds

are more fairly distributed versus a one-size-fits-all solution. The Settlement also provides for Special Circumstances Supplemental Compensation (if sufficient funds exist after calculating all eligible payments under the preliminary guidelines, expenses, and other costs) to Settlement Class Members who incurred any additional out-of-pocket costs associated with removal and replacement of Restore and/or the decking or other area where the Restore Products were applied. (SA ¶ 7.5). While a robust Notice Plan is in place, the likelihood of Class Members not responding nevertheless exists; however, here, <u>all funds</u> available after certain necessary deductions and payments will be distributed to known Settlement Class Members. (SA ¶¶ 7.9-7.13). This will be accomplished by having the Claims Administrator submit to the Court for approval a "Plan of Allocation" after the Claims Period ends, ensuring that <u>all funds</u> remaining after fees and qualifying reimbursements are distributed directly to Settlement Class Members. (*Id*.).

If the case had not settled the outcome may have ended up being drastically different and to the detriment of the Class. To be clear, Plaintiffs believe that their claims are meritorious and are confident of prevailing on the merits, but candidly acknowledge that there are significant hurdles to obtaining a judgment for the full value of Class Members' claims.

First, class certification and any findings of liability would be hotly contested by Rust-Oleum. Although Plaintiffs believe they can overcome Rust-Oleum's arguments, Rust-Oleum would likely argue that the Class Members – who primarily made purchases from retailers – cannot be ascertained with any reasonable degree of certainty even in spite of the warranty information within Rust-Oleum's records. Rust-Oleum would also contend that if the case were to go to trial, individual issues of proof, causation, and damages, and the need to address the many differences in state warranty and consumer protection laws would make the case

unmanageable and undercut the propriety of class certification. Even if a litigation class were certified, Rust-Oleum would likely maintain that the defects within the Restore Products are rare or attributable to factors wholly outside Rust-Oleum's control (*i.e.* environmental factors or inappropriate use and application by consumers).

Second, on the merits, Plaintiffs' claims will be subject to a "battle of the experts." Plaintiffs will have consulted with and retained qualified experts to support their claims that Rust-Oleum's representations are scientifically unreasonable, but Rust-Oleum would doubtless engage qualified experts of their own, and there is always the risk that a finder-of-fact could side with Rust-Oleum's experts. While Plaintiffs believe that the weight of the evidence is in their favor in any expert dispute, as with any trial, there is a risk that a jury would side with Defendant.

In short, complex litigation such as this is inherently risky, there is always a genuine chance that Plaintiffs may not succeed on the merits or, even if they do, they may not obtain the measure of relief they seek. *See In re AT&T Mobility*, 270 F.R.D. at 347. Given the challenges and difficulties Plaintiffs would face in protracted litigation, the payment of $9.3 million now by Rust-Oleum is certainly within the range of reasonable outcomes. Plaintiffs, at this juncture, find it hard to imagine a measurably better outcome than that achieved through the Settlement Agreement.

### 2. Absent a settlement, intense and costly litigation may have likely continued for years

Had this case not settled, litigation could have continued for years. Through protracted, heated and contentious battles over discovery and pleadings issues, Rust-Oleum and its aggressive legal team have proved to be tenacious adversaries. Class certification briefing would likely not take place until mid-2017, if not later. Further, as Plaintiffs expect, if the Court

certified any litigation class in the future, Rust-Oleum likely would have sought immediate appellate review under Rule 23(f). (Audet Decl. ¶ 17.) Any detour to the Seventh Circuit would have delayed class relief for months, if not years. Even if an eventual trial occurred, any recovery could be delayed for years yet another appeal. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005) (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). Rust-Oleum has clearly demonstrated its willingness and ability to fight long and hard given the parties' litigation history and its extensive challenges to even the smallest of details such as the extent of search terms used in discovery. (Audet Decl. ¶¶ 5, 6; Carroll Decl. at ¶¶ 11-13.)

Further, litigation will require additional discovery as to the merits of the claims, including additional expert disclosures and depositions of experts. This matter will be expert-intensive because much of the proof of Rust-Oleum's liability is dependent upon technical/scientific testimony and expert testimony related to design of consumer products, consumer purchasing habits, and consumer use of the Restore Products. The extensive motion practice that will almost certainly follow as a result of the class certification process will only necessitate further class certification discovery, and discovery and motion practice related to class-wide damages. Summary judgment motions are also likely.

This is undoubtedly a complex case, and continued litigation will come at considerable expense to Plaintiffs and to Rust-Oleum, and at significant expense of the limited resources of the Court. Here, as in *Isby* and other cases, continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time.

### 3. No known opposition to the Settlement exists at this stage

At this preliminary approval stage, there is no known opposition to the Settlement

- 24 -

Agreement. Although Plaintiffs anticipate no objections, they will appropriately respond if any surface following the delivery of Class Notice. (Audet Decl. ¶ 18.) Defendant has indicated that it will not oppose preliminary approval of the Settlement. (*Id.*)

### 4. The proposed Class Counsel has provided competent and knowledgeable guidance in this case

Courts are "'entitled to rely heavily on the opinion of competent counsel…'" *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325). Proposed Class Counsel have extensive experience and have prosecuted numerous consumer products liability class actions in this and other Courts. With this experience in mind, both Proposed Class Counsel (and the Additional Plaintiffs' Counsel with hundreds of years of combined experience), strongly recommend the proposed Settlement Agreement because it ensures substantial compensation to the Class in lieu of a severely delayed resolution of Plaintiffs' complex class claims. (Audet Decl. ¶¶ 17, 18; Carroll Decl. ¶¶ 17, 18.)

### 5. The stage of the proceedings and discovery produced warrants approval

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325.

Class Counsel has a highly-informed and balanced understanding of this case. Plaintiffs' Counsel painstakingly probed the discovery produced thus far and, as a result, were able to engage in meaningful and multiple settlement negotiations with Rust-Oleum. (Audet Decl. ¶¶ 9-16; Carroll Decl. at ¶¶ 16-18.) Defeating Rust-Oleum's motion to dismiss also provided Class Counsel with a reinforced understanding of the applicable law and any shortcomings in the merits of the case. The Court, having delved into the allegations this case to decide the robust

motions and supporting memorandums at the motion to dismiss stage, demonstrated a mastery of the facts and applicable law. The Court and counsel are in an excellent position, therefore, to evaluate the merits of the proposed Settlement versus the risk and costs associated with continued litigation.

### III.     The Court Should Approve the Proposed Notice Plan

Rule 23(e) requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(e). Courts have consistently recognized that Rule 23(e) and due process do not require that every class member receive actual notice, as long as the selected method will likely apprise interested parties. *Newberg on Class Actions* § 11.53; *Burns v. Elrod*, 757 F.2d 151, 157 (7th Cir. 1985) (notice must be reasonably calculated to reach most interested parties); *In re Prudential Ins. Co. Sales Practices Litig.*, 177 F.R.D. 216, 234 (D.N.J. 1997) (due process does not require perfection). The Notice Plan, discussed in further detail below, is consistent with Rule 23 and Due Process. (*See, generally*, Peak Decl. and KCC Notice Plan.)

### A.     The Proposed Methods for Providing Notice Meet the Criteria for Approval

As set forth in the Settlement Agreement, the Notice Plan, developed by KCC, a well-respected notice and claims administrator, establishes a vigorous and informative methodology for providing notice to the Class.

*First*, the "short-form" or "Summary Notice" will be published in four (4) different national publications[11] with the goal of maximum exposure. These publications were strategically targeted to provide for the best possible notice to the applicable demographics of Class Members.

---

[11] The four national publications identified are: *National Geographic* (circulation 3,147,721); *Parade* (circulation 22,834,907); *People* (circulation 3,418,555); and *Southern Living* (circulation 2,828,450).

*Second*, "Long-Form" or "Detailed Notices" notices will be physically mailed to all known or reasonably discovered Class Members. If mailing or transmission is unsuccessful, notice will be sent again to addresses on file with the United States Post Office.

*Third*, a toll-free telephone line will be established to provide direct support for potential Class Members to obtain additional information regarding the Settlement.

*Fourth*, a searchable case website will be established with detailed information regarding the Settlement, the notice and claims process, the Released Claims, and all information relevant to preliminary and final approval.

*Fifth*, Rust-Oleum will also include in the section of its corporate website concerning warranty claims for the Restore Product a conspicuous link to the website to be established under the Settlement Agreement.

*Sixth*, KCC will purchase internet banner advertising throughout the claim period to direct potential claimants to the website.

The Notice Plan, as described in detail in the KCC Notice Plan, includes various components, including ***direct mail, direct email and publication notice*** to known class members, and publication to unknown class members, and satisfies the requirements of Rule 23. *See e.g.*, *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004) (approving a notice for a nationwide class that consisted of publication in one publication of national circulation and the posting of the notice on a website set up by a settlement administrator); *Kaufman*, 264 F.R.D. at 446 (Publication of notice in "a national newspaper of wide circulation, plus an online publication, constitutes sufficient notice by publication."); *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Pracs. Litig.*, 280 F.R.D. 362 (N.D. Ill. 2011) (approving notice plan consisting of publication, internet advertising, the maintenance of a website containing the

notice, and targeted on-line advertising and sponsored key-word search advertisements).

**B.     The Proposed Contents of the Notice Meet the Requirements for Approval**

"The contents of a Rule 23(e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *AT&T Mobility*, 270 F.R.D. at 351 (quoting 3 *Newberg on Class Actions* § 8.32 (4th ed. 2010)).

The proposed Notice Plan does all this and more. As outlined in the Notice Plan, the Notices (attached as Exhibits A and B to the Settlement Agreement) provide the Class with critical information about Settlement terms in a concise and neutral way and explain how Class Members' payments will be calculated via the Tier system and the right to seek compensation; describe the Settlement Fund; explain how Class Members may make an Opt-Out Request; inform Class Members of the right to object; disclose the intended fee application of Class Counsel; provide the upcoming deadlines and the date of the Final Approval Hearing; and how to get more information about the case, settlement, notice, or rights under the Settlement Agreement.   As such, the notices more than satisfy the requirements for Rule 23(e) and due process. *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998); see also *Manual for Complex Litigation* (Fourth) § 21.312.

## CONCLUSION

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and adequate and falls within the range of what might ultimately be approved, Plaintiffs respectfully request that the Court enter the Preliminary Approval Order that accompanies this motion and memorandum.

DATED: October 19, 2016                          Respectfully submitted,

                                                 /s/ *William Audet*
                                                 William M. Audet
                                                 AUDET & PARTNERS, LLP
                                                 711 Van Ness Avenue, Suite 500
                                                 San Francisco, CA 94102-3275
                                                 Telephone:   (415) 568-2555
                                                 Facsimile:    (415) 568-2556
                                                 waudet@audetlaw.com

                                                 /s/ *Katrina Carroll*
                                                 Katrina Carroll
                                                 Kyle A. Shamberg
                                                 LITE DEPALMA GREENBERG, LLC
                                                 211 W. Wacker Drive, Suite 500
                                                 Chicago, IL 60606
                                                 Telephone:   (312) 750-1591
                                                 Facsimile:    (973) 877-3845
                                                 kcarroll@litedepalma.com
                                                 kshamberg@litedepalma.com

                                                 *Interim Co-Lead Counsel for Plaintiffs*

Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN, PLLP
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
rkshelquist@locklaw.com

Edward A. Wallace
Amy E. Keller
WEXLER WALLACE, LLP
55 West Monroe, Suite 3300
Chicago, IL 60603
Telephone: (312) 346-2222
Facsimile: (312) 346-0022
eaw@wexlerwallace.com
aek@wexlerwallace.com

Brendan S. Thompson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone: (202) 789-3960
brendant@cuneolaw.com

Joseph G. Sauder
MCCUNEWRIGHT, LLP
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (610) 727-3967
jgs@mccunewright.com

Kevin D. Bloom
BLOOM & BLOOM, P.C.
530 Blooming Grove Turnpike
New Windsor, NY 12550
Telephone: (845) 561-6920
Facsimile: (845) 561-0978
kbloom@hvc.rr.com

Joel R. Rhine
RHINE MARTIN LAW FIRM, P.C.
1612 Military Cutoff, Suite 300
Wilmington, NC 28403
Telephone: (910) 772-9960
Facsimile: (910) 772-9062
jrr@rhinelawfirm.com

Daniel C. Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: (215) 592-1500
dlevin@lfsblaw.com

Matthew D. Schelkopf
CHIMICLES & TIKELLIS, LLP
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
mds@chimicles.com

Jonathan Shub
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700
Facsimile: (215) 238-1968
jshub@kohnswift.com

Richard J. Burke
QUANTUM LEGAL, LLC
1010 Market Street, Suite 1310
St. Louis, MO 63101
Telephone: (847) 433-4500
richard@qulegal.com

Robert N. Isseks
6 North Street
Middletown, NY 10940
Telephone: (845) 344-4322
Facsimile: (845) 341-1760
isseks@isseksandsmith.com

Jean S. Martin
LAW OFFICE OF JEAN SUTTON MARTIN, PLLC
2018 Eastwood Road, Suite 225
Wilmington, NC 28405
Telephone: (910) 292-6676
Facsimile: (888) 316-3485
jean@jsmlawoffice.com

*Additional Counsel for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I, the undersigned, hereby certify that on October 19, 2016, I caused the foregoing:

**Plaintiffs' Memorandum of Law in Support of
Plaintiffs' Uncontested Motion for Preliminary Approval of Settlement,
Certification of a Settlement Class, Appointment of Class Counsel, and Related Relief**

to be electronically filed with the Clerk of the Court in the United States District Court for the

Northern District of Illinois by using the CM/ECF system, which served copies on all interested

parties registered for electronic service.

/s/ *Katrina Carroll*
Katrina Carroll

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation, | : : : | Case No. 1:15-cv-1364 |
| | : | MDL No. 2602 |
| | : | |
| Related to: All Actions | : : : : | Judge Amy J. St. Eve |

## CONFIDENTIAL ATTORNEY WORK PRODUCT

## FOR SETTLEMENT PURPOSES ONLY

## AGREEMENT OF COMPROMISE AND SETTLEMENT

Subject to the approval of the Court pursuant to Federal Rule of Civil Procedure 23(e), this Agreement of Compromise and Settlement is made between the Plaintiffs, on behalf of themselves and the Settlement Class, and Defendant Rust-Oleum Corporation. Subject to Court approval and as provided herein, the Parties hereby stipulate and agree that, in consideration of the promises set forth in this Agreement and upon entry of the Final Approval Order and the occurrence of the Effective Date, this Litigation shall be settled, compromised, and dismissed upon the terms and conditions set forth herein.

This Agreement is intended by the Parties to fully and finally compromise, resolve, discharge, release, and settle the Released Claims, and to dismiss the Litigation with prejudice, subject to the terms and conditions set forth below and without any admission or concession as to the merits of any claim or defense by any of the Parties.

## 1. DEFINITIONS

1.1. As used in this Agreement, the following terms shall have the following meanings:

a. "Additional Plaintiffs' Counsel" means the following law firms agreeing to enter into and be bound by this Agreement: Bloom and Bloom, P.C; Cafferty Clobes Meriwether & Sprengel LLP; Cuneo Gilbert and LaDuca LLP; Gibbs Law Group LLP; Kohn, Swift & Graf, P.C.; Levin, Fishbein, Sedran & Berman; Lockridge Grindal Nauen PLLP; Law Office of Lewis Adler; McCuneWright LLP; Quantum Legal LLC; Rhine Law Firm, P.C.; Robert N. Isseks, Esq.; Saiber, LLC; Wexler Wallace, LLP.

b. "Agreement" means this Agreement of Compromise and Settlement and any Exhibits attached to it.

c. "CAFA Notice" means the notice to be sent by the Claims Administrator on behalf of Rust-Oleum to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b) within 10 days after the submission of this Agreement to the Court.

d.  "Claimant" means a person or entity that submits a Claim Form.

e.  "Claim Form" means the form by which Settlement Class Members may request monetary or other relief under this Agreement.

f.  "Claims Administrator" means KCC LLC, which shall agree to provide Class Notice, administer the Claims Program, and perform the other obligations of a Claims Administrator under this Agreement, as set forth herein.

g.  "Claims Deadline" means the last day of the Claims Period.

h.  "Claims Program" means the program and procedures set forth herein for soliciting, submitting, receiving, processing, and paying Claimant requests for monetary or other relief under this Agreement.

i.  "Claims Program Administration Expenses" means expenses incurred in connection with the Claims Program including costs incurred by Rust-Oleum in providing warranty relief to Settlement Class Members on or after the date on which the Court enters the Preliminary Approval Order and before the entry of the Final Approval Order regarding a Qualifying Problem with respect to a Restore Product purchased during the Class Period ("Warranty Credit").

j.  "Claims Package" means a completed Claim Form and supporting documentation.

k.  "Claims Period" means the time period during which Settlement Class Members may submit Claims Packages in accordance with the Claims Program. The Claims Period shall begin on the date following entry of the Final Approval Order and shall run for one hundred eighty (180) days or until the Effective Date, whichever is later.

l.  "Class" means all persons or entities in the United States and its territories who purchased, not for resale, a Restore Product during the Class Period, excluding: (i) all persons and entities who filed a claim concerning a Restore Product in any court, if that claim has been resolved with a final judgment or order; (ii) Rust-Oleum, any entity in which Rust-Oleum has a controlling interest, any person or entity which has a controlling interest in Rust-Oleum, and Rust-Oleum's legal representatives, assigns, and successors; and (iii) the judge to whom the MDL Action is assigned and any member of the judge's immediate family.

m.  "Class Counsel" means Audet & Partners, LLP, and Lite DePalma Greenberg LLC.

n.       "Class Member" means a member of the Class. This Agreement may use the words "he," "she," "him," "her," or "it" to refer to a Class Member without excluding any gender, person, or entity.

o.       "Class Notice" means the notice(s) of the proposed class action settlement described in this Agreement that the Claims Administrator will disseminate to the Class, pursuant to the Preliminary Approval Order, the Notice Plan, and this Agreement.

p.       "Class Period" means the period beginning on January 1, 2008 and ending on the date on which the Preliminary Approval Order is entered.

q.       "Court" means the United States District Court for the Northern District of Illinois.

r.       "Defense Counsel" means Mayer Brown LLP, counsel for Rust-Oleum.

s.       "Denial Letter" means a letter to a Claimant from the Claims Administrator stating that the Claimant does not have an Eligible Claim and providing other information about the Claims Program, as set forth herein.

t.       "Effective Date" means either: (i) the date on which the Final Approval Order is entered, if no objections are timely filed; (ii) the last date on which a timely notice of appeal from the Final Approval Order could be filed, if objections are filed but no appeal is filed; (iii) the last date on which a timely petition for writ of certiorari could be filed, if an appeal is filed, the court of appeals confirms the Final Approval Order through a dismissal or affirmance, and no certiorari petition is filed; (iv) the date on which the Supreme Court denies or dismisses a writ of certiorari or affirms the Final Approval Order, if an appeal is filed, the court of appeals confirms the Final Approval Order through a dismissal or affirmance, and a certiorari petition is filed; or (v) a date to which Rust-Oleum and Class Counsel agree in writing.

u.       "Eligible Claim" means a timely and valid claim for which a Claimant is entitled to monetary or other relief as set forth herein.

v.       "Final Approval Hearing" means the hearing required by Federal Rule of Civil Procedure 23(e), following issuance of Class Notice, that provides an opportunity for Class Members to make an Opt-Out Request, and an opportunity for Settlement Class Members to object to all or part of this Agreement, at which time the Parties will request the Court to approve this Agreement and enter a Final Approval Order.

w.       "Final Approval Order" means an order entered by the Court following the Final Approval Hearing that finds that the terms of this Agreement are

fair, reasonable, and adequate and otherwise comply with all legal requirements for approval of a class action settlement.

x.     "In-Kind Credit" means the reimbursement to Rust-Oleum out of the Settlement Fund for each container of Restore 10X Advanced (and primer) that is provided to Claimants as Tier 1 compensation, at less than the retail price of such containers.

y.     "Litigation" means the MDL Action and all cases that have been consolidated into the MDL Action, including *McCain, et al. v. Rust-Oleum Corporation*, No. 14-cv-4852 (N.D. Ill.); *Webber, et al. v. Rust-Oleum Corporation*, No. 14-cv-2248 (D. Md.)*; Cady, et al. v. Rust-Oleum Corporation*, No. 14-cv-06156 (E.D. Pa.)*; Fernandez v. Rust-Oleum Corporation, et al.*, No. 14-cv-08857 (S.D.N.Y.)*; Leonard, et al. v. Rust-Oleum Corporation*, No. 14-cv-00259 (E.D.N.C.); *Sullivan, et al. v. Rust-Oleum Corporation*, No. 3:15-cv-00023 (S.D. Ill.); *Baden, et al. v. Rust-Oleum Corporation*, No. 15-cv-2892 (N.D. Ill.); *Howell v. Rust-Oleum Corporation*, No. 15-cv-8379 (D.N.J.).

z.     "Long-Form Notice" means the Class Notice substantially in the form attached as Exhibit B that the Claims Administrator will distribute to Class Members in accordance with Due Process and Rule 23 as set forth herein.

aa.    "MDL Action" means the Multi-District Litigation No. 2602, *In re Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, United States District Court for the Northern District of Illinois, Case No. 1:15-cv-1364.

bb.    "Net Settlement Fund" means the Settlement Fund less Court approved counsel fees, costs and expenses, Plaintiffs' incentive awards, tax related payments, the fees and expenses of the Special Master, the In-Kind Credit due to Rust-Oleum, and the credit to Rust-Oleum for paid or reserved Claims Program Administration Expenses up to three hundred thousand dollars ($300,000).

cc.    "Notice Plan" means the plan for dissemination of Class Notice to Class Members as set forth herein.

dd.    "Objection Deadline" means the date thirty (30) days before the date of the Final Approval Hearing, and after the last Class Notice is sent or published, by which objections to this Agreement must be submitted in accordance with this Agreement and the Class Notice.

ee.    "Opt-Out Request" means a Class Member request to be excluded from the Settlement Class.

ff. "Opt-Out Deadline" means the date thirty (30) days before the date of the Final Approval Hearing, and after the last Class Notice is sent or published, by which Opt-Out Requests must be submitted.

gg. "Parties" means the Plaintiffs (on behalf of themselves and the Settlement Class) and Rust-Oleum.

hh. "Plaintiffs" means plaintiffs in the Litigation: Angelita Hickman, Michael Reyes, Charles Hoff, Michael Baden, Jerry Lautigar, John Malloy, Hans Shanks, Layla Patterson, Debra Dockstader, Season Gomez, Conrad Shogren, David Sullivan, Kathleen Sullivan, Tracy McCoy, Cory Fales, Robert Webber, Rick Boscardin, Cynthia Scaglione, Jeffrey Mies, Don Gibson, Scott Holbrook, Ed Anderson, John Riello, Robert Dorgan, Carol Larson, Ulbardo Fernandez, James Leonard, Joan Leonard, Christopher McLamb, Tamela McLamb, Irma Blank, Leasha Dixson, Steven Cady, Gina Cady, Lawrence Fredericks, Scott Reinhart, Mark Renzi, Paula Rogers, Dominic Ray Diaz, Becki S. Murphy, Sharon Ledford, George Reynolds, Michael Allen, Carrie McCain, and Daniel T. Howell.

ii. "Plan of Allocation" means the proposed plan for allocating the Settlement Fund for payments to Claimants with Eligible Claims and other payments as set forth herein.

jj. "Preliminary Approval Order" means the order that the Plaintiffs will seek from the Court which would: (i) conditionally certify the Settlement Class for settlement purposes only; (ii) preliminarily appoint the Plaintiffs as class representatives for settlement purposes only; (iii) preliminarily appoint Class Counsel as counsel for the Settlement Class for settlement purposes only; (iv) preliminarily approve this Agreement as fair, adequate, and reasonable, and within the reasonable range of a possible final settlement; (v) approve the forms of Class Notice and find that the Notice Plan constitutes the best notice practicable under the circumstances and satisfies due process and Federal Rule of Civil Procedure 23; (vi) set the date and time for the Final Approval Hearing; (vii) order that Class Notice be disseminated; (viii) set the Claims Deadline, the Objection Deadline, and the Opt-Out Deadline; (ix) provide that Class Members who do not submit a timely and valid Opt-Out Request will be bound by the Final Approval Order and the judgment dismissing the Litigation with prejudice and by the Release, and (x) otherwise comply with Rule 23.

kk. "Qualifying Problem" means an adhesion-related problem with a Restore Product.

ll. "Release" means the Releasing Parties release, waiver, compromise, settlement, and discharge of the Released Claims and covenant not to sue, as set forth herein.

mm.    "Released Claims" means each and every claim of liability or claim for relief against any or all Released Persons, whether under federal, state, or other law, that arises out of the advertising, marketing, promotion, labeling, purchase, sale, distribution, design, testing, manufacture, application, use, performance, or warranting of a Restore Product purchased during the Class Period, including the claims alleged in the Litigation and all claims, causes of action, rights, promises, obligations, allegations, demands, injuries, remedies, facts, or other theories of law or equity that would make any Released Person liable for or subject to damages (of any type, including compensatory damages, consequential damages, incidental damages, punitive damages, exemplary damages, statutory damages, special damages, and damages based upon a multiplication of compensatory damages), penalties, court costs, attorneys' fees or expenses, other monetary relief, injunctions, other equitable relief, or declaratory relief, whether alleged or unalleged, known or unknown, suspected or unsuspected, matured or not yet matured, contingent or non-contingent, patent or latent, manifested or unmanifested, past, present, or future, open or concealed, which existed in the past, exist now, or could exist in the future, without regard to the subsequent existence or discovery of different or additional claims, causes of action, rights, promises, obligations, allegations, demands, injuries, remedies, facts, or other theories of law or equity.

nn.    "Released Persons" means Rust-Oleum, RPM International Inc., Synta Inc., any person or entity that manufactured, distributed, or sold the Restore Product (excluding installers in their role as installers, but not as sellers), suppliers and service providers engaged by Rust-Oleum, and the past, present, and future controlling persons, directors, officers, employees, agents, servants, independent contractors, joint venturers, representatives, advisors, consultants, attorneys, insurers, subrogees, shareholders, partners, members, subsidiaries, divisions, parents, affiliates, predecessors, heirs, executors, administrators, successors, and assigns of any Released Person.

oo.    "Releasing Parties" means any and all of the Plaintiffs, the Settlement Class Members, the past, present, and future controlling persons, directors, officers, employees, agents (including homeowners' and condominium associations), servants, independent contractors, joint venturers, representatives, advisors, consultants, attorneys, insurers, subrogees, shareholders, partners, members, subsidiaries, divisions, parents, affiliates, predecessors, heirs, executors, administrators, successors, and assigns of any of the Releasing Parties, and any other person or entity claiming through or on behalf of any of the Releasing Parties.

pp.    "Restore Product" means Deck & Concrete Restore, Deck Restore, Concrete Restore, and Restore 10X (but does not include Restore 10X Advanced, Restore 4X, and/or other Restore-branded products).

qq. "Rust-Oleum" means Defendant Rust-Oleum Corporation.

rr. "Settlement Class" means all Class Members excluding those persons and entities that make a timely and valid Opt-Out Request as set forth herein.

ss. "Settlement Class Member" means a member of the Settlement Class. This Agreement may use the words "he," "she," "him," "her," or "it" to refer to a Settlement Class Member without excluding any gender, person, or entity.

tt. "Settlement Fund" means the money deposited by Rust-Oleum into an account set up by Class Counsel to fund payments required by this Agreement, or such account itself, as set forth herein.

uu. "Special Master" means the lawyer with judicial and/or mediation experience selected by the Parties to resolve certain disputes, as set forth herein.

vv. "Summary Notice" means the Class Notice substantially in the form of attached Exhibit A that the Claims Administrator will publish and disseminate via email as set forth herein.

## 2. **RECITALS**

2.1. On February 6, 2015, the United States Judicial Panel on Multidistrict Litigation ("JPMDL") issued an Order consolidating before this Court the five then-pending actions complaining about the Restore Product filed in a federal district court,[1] finding that the actions "involve common questions of fact," and that centralization under 28 U.S.C. § 1407 in the Northern District of Illinois would serve the convenience of the parties and witnesses and promote the just and efficient conduct of the Litigation. The MDL Action is captioned *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation* Case No. 1:15-cv-1364 (N.D. Ill.), MDL Docket No. 2602. After the MDL Action was established, on February 18, 2015, the JPMDL issued a conditional transfer order for *Sullivan, et al. v. Rust-Oleum*

---

[1] *McCain, et al. v. Rust-Oleum Corporation*, No. 14-cv-4852 (N.D. Ill.); *Webber, et al. v. Rust-Oleum Corporation*, No. 14-cv-2248 (D. Md.)*; Cady, et al. v. Rust-Oleum Corporation*, No. 14-cv-06156 (E.D. Pa.)*; Fernandez v. Rust-Oleum Corporation, et al.*, No. 14-cv-08857 (S.D.N.Y.)*; Leonard, et al. v. Rust-Oleum Corporation*, No. 14-cv-00259 (E.D.N.C.).

*Corporation,* No. 3:15-cv-00023 (S.D. Ill.), a related action filed on January 8, 2015. Thereafter, an additional action, *Baden, et al. v. Rust-Oleum Corporation*, No. 15-cv-2892, was filed on April 1, 2015 in the Northern District of Illinois, and subsequently reassigned and related to the MDL Action. Later, *Howell v. Rust-Oleum Corporation*, No. 15-cv-8379, was filed in the District of New Jersey, and subsequently transferred and consolidated into the MDL Action by the JPMDL on December 15, 2015.

2.2.    A Consolidated Class Action Complaint was filed in the MDL Action on May 19, 2015. On January 7, 2016, the Court granted in part and denied in part Rust-Oleum's motion to dismiss. A Consolidated Second Amended Class Action Complaint was filed on March 29, 2016.

2.3.    Rust-Oleum denies all allegations of fault, wrongdoing, and/or liability made by the Plaintiffs and does not admit or concede that any of the allegations made by the Plaintiffs in the Litigation are true.

2.4.    Since 2014, Class Counsel have conducted an extensive investigation of the facts and circumstances related to the allegations made in the MDL Action, including consulting experts, serving written discovery, interviewing potential witnesses, conducting inspections of the properties of each of the Plaintiffs and certain Class Members, reviewing the information and evidence that they have obtained, and researching and studying the legal principles applicable to the issues of liability, damages, jurisdiction, and procedure.

2.5.    The Parties have engaged in extensive, arms-length negotiations regarding the settlement of claims involving the Restore Product, including multiple in-person and telephonic conferences. The Plaintiffs, through Class Counsel, have evaluated the time and expense that will be necessary to prosecute these cases to final judgment, the delays that are likely before any judgment may be entered, and the uncertainty inherent in predicting the outcome of any complex

litigation such as this and, based upon such evaluation, have concluded that further proceedings in these actions are likely to be protracted, complex, and expensive, and that the outcome is highly uncertain.

2.6.    Without conceding any lack of merit of any of their claims, the Plaintiffs and Class Counsel have concluded that it is in the best interests of the Settlement Class Members to settle these actions on the terms and conditions set forth herein, and that the settlement with Rust-Oleum embodied in this Agreement is fair, reasonable, and adequate to the Plaintiffs and the Settlement Class Members.

2.7.    While denying any fault, wrongdoing, or liability—and without conceding any infirmity in its defenses, that any of Plaintiffs' allegations in the Litigation are true, or that Plaintiffs' claims qualify for class certification for trial—Rust-Oleum considers it desirable to enter into this Agreement in order to avoid further expense, to dispose of burdensome and protracted litigation, and to avoid the uncertain outcome of proceeding with the Litigation.

2.8.    Rust-Oleum has agreed to enter into the settlement and deposit money into the Settlement Fund, according to the terms and conditions set forth in this Agreement, to resolve or satisfy one or more claims arising from acts allegedly performed in the ordinary course of its business, and such deposit is being paid by Rust-Oleum as an "ordinary and necessary expense" paid or incurred in carrying on its trade or business within the meaning of section 162 of the Internal Revenue Code of 1986, as amended.

2.9.    For the above reasons, it is hereby agreed by and between Rust-Oleum and the Plaintiffs, acting for themselves and the Settlement Class, that, except as specifically stated to the contrary in this Agreement, the Released Claims shall be settled and compromised, and the

Litigation shall be dismissed with prejudice, according to the terms and conditions set forth in this Agreement.

3.   **CLASS CERTIFICATION**

3.1.   For purposes of settlement of the Litigation only, and without any admission or concession that class certification for trial would be appropriate in the Litigation or any other case, Rust-Oleum agrees that it will not object to certification of the Settlement Class pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(e).

3.2.   If the Effective Date does not occur before Rust-Oleum must answer or otherwise plead in response to any complaint in the Litigation, (a) the Litigation shall revert to its current status as one or more uncertified putative class actions, (b) Rust-Oleum shall retain all of the rights to oppose class certification that it had prior to execution of this Agreement, and (c) nothing in this Agreement or in orders, filings, proceedings, or negotiations related to this Agreement may be used as evidence or argument concerning whether the Litigation may be certified as a class action.

4.   **THE SETTLEMENT FUND**

4.1.   In consideration for this Agreement and in full satisfaction and settlement of the Released Claims, within ten (10) days after the Effective Date, Rust-Oleum shall deposit nine million three hundred thousand dollars ($9,300,000) via wire transfer into an interest bearing account set up by Class Counsel establishing the Settlement Fund at a mutually acceptable federally insured banking institution chartered under the National Bank Act, provided that Rust-Oleum has received a properly completed and executed IRS Form W-9 from Class Counsel or the Claims Administrator on behalf of the Settlement Fund (and any other tax forms reasonably requested by Rust-Oleum).

4.2.     The Claims Administrator, acting pursuant to this Agreement and any instructions from the Court, shall control the Settlement Fund and shall have the exclusive right to authorize payments, withdrawals, and transfers from the Settlement Fund.

4.3.     Once the Settlement Fund is established, the Parties shall not bear any risk regarding, responsibility for, or liability in connection with the Settlement Fund, including the investment, administration, maintenance, or distribution of the Settlement Fund and any gains or losses experienced by the Settlement Fund.

4.4.     The Settlement Fund at all times is intended to be a "qualified settlement fund" within the meaning of United States Treasury Regulation § 1.468B-1. Neither the Parties nor the Claims Administrator shall take a position in any filing or before any tax authority that is inconsistent with such treatment. Rust-Oleum shall be the "transferor" within the meaning of United States Treasury Regulation § 1.468B-1(d)(1) to the Settlement Fund with respect to the amounts transferred. The Claims Administrator shall be the "administrator" of the Settlement Fund within the meaning of United States Treasury Regulation § 1.468B-2(k)(3) and, as the administrator, the Claims Administrator shall: (a) timely make or join in any and all filings or elections necessary to make the Settlement Fund a qualified settlement fund at the earliest possible date (including, if requested by Rust-Oleum, a relation-back election within the meaning of United States Treasury Regulation § 1.468B-1(j)); (b) timely file all necessary or advisable tax returns, reports, or other documentation required to be filed by or with respect to the Settlement Fund; (c) timely pay any taxes (including any estimated taxes, any interest or penalties, or any taxes or tax detriments that may be imposed on Rust-Oleum) required to be paid by or with respect to the Settlement Fund; and (d) comply with any applicable information reporting or tax withholding requirements imposed by applicable law, in accordance with United States Treasury

Regulation § 1.468B-2(*l*). Any such taxes, as well as all other costs incurred by the Claims Administrator in performing the obligations created by this paragraph, shall be paid out of the Settlement Fund. Rust-Oleum shall have no responsibility or liability for paying such taxes and no responsibility to file tax returns with respect to the Settlement Fund or to comply with information reporting or tax withholding requirements with respect thereto. The Settlement Fund shall be used to indemnify and hold Rust-Oleum harmless for any such taxes (including any taxes payable by reason of any such indemnification) that Rust-Oleum pays or is required to pay. Rust-Oleum shall provide the Claims Administrator with the required statement under United States Treasury Regulation § 1.468B-3(e).

4.5.    Any interest accrued in the Settlement Fund shall inure to the benefit of Settlement Class Members.

4.6.    In accordance with the terms and conditions of this Agreement, the Settlement Fund shall be used to pay Eligible Claims, the award of fees, expenses, and costs to Class Counsel and Additional Plaintiffs' Counsel, incentive awards to the Plaintiffs, the fees and expenses of the Special Master, and certain fees, costs, expenses, taxes, reimbursements and credits, as set forth herein.

4.7.    Except as provided otherwise in this Agreement, the Settlement Fund shall be the sole and exclusive source for satisfying any claims for payment or other relief by any of the Plaintiffs, Settlement Class Members, Class Counsel, Additional Plaintiffs' Counsel, or persons or entities engaged by Plaintiffs, Settlement Class Members, or their respective counsel that relate to the Litigation or the settlement reflected in this Agreement.

4.8.    As further consideration for this Agreement, Rust-Oleum shall pay all of the costs of Class Notice and all Claims Program Administration Expenses subject to credits and

reimbursements for paid Claims Program Administration Expenses as provided in this Agreement (including paragraphs 10.2 and 10.5). If the Effective Date does not occur, neither the Plaintiffs, the Class Members, nor Class Counsel shall have any obligation to reimburse Rust-Oleum for expenses associated with Class Notice, the Claims Program, or warranty relief or other compensation provided to Settlement Class Members.

5. **THE PRELIMINARY APPROVAL ORDER**

5.1. Not later than ten (10) days after execution of this Agreement, the Plaintiffs shall submit this Agreement to the Court and request (for consideration on an expedited basis) that the Court enter a Preliminary Approval Order. Plaintiffs shall provide Rust-Oleum with drafts of their papers in support of preliminary approval in advance of filing.

6. **NOTICE OF PROPOSED SETTLEMENT**

6.1. No later than thirty (30) days after entry of the Preliminary Approval Order, the Claims Administrator shall commence Class Notice to the Class pursuant to the Preliminary Approval Order and the Notice Plan.

6.2. Rust-Oleum and Class Counsel shall jointly select KCC LLC as the Claims Administrator.

6.3. The Claims Administrator shall distribute the Class Notice in accordance with the terms of this Section and the Notice Plan. The Notice Plan shall be presented to the Court prior to entry of the Preliminary Approval Order.

6.4. Consistent with Federal Rule of Civil Procedure 23 and Due Process, the Notice Plan shall include the following methods of distributing notice: (a) publication of the Summary Notice; (b) mailing or emailing of the Long-Form Notice or Summary Notice; (c) establishment of a toll-free telephone facility; and (d) establishment of a website.

6.5.    Before distribution of either the Summary Notice or the Long-Form Notice, the Claims Administrator shall cause a toll-free telephone facility to be established. The toll-free telephone number of such facility shall be included in the Summary Notice, the Long-Form Notice, and the website established under this Agreement. The telephone facility shall be capable of: (a) receiving requests for the Long-Form Notice or Claim Forms; (b) providing general information concerning deadlines for Claim Forms, Opt-Out Requests, and objections to this Agreement, and the dates of relevant Court proceedings, including the Final Approval Hearing; and (c) mailing materials to Class Members as provided in this Section. The toll-free number shall be maintained until ninety (90) days after the Court approves the Plan of Allocation.

6.6.    Before distribution of either the Summary Notice or the Long-Form Notice, the Claims Administrator shall cause an internet website concerning the settlement reflected in this Agreement to be established. The website shall be maintained until ninety (90) days after the Court approves the Plan of Allocation. The internet address of the website shall be included in the Summary Notice and the Long-Form Notice. Unless otherwise agreed to by the Parties, the website shall provide: (a) general information concerning deadlines for Claim Forms, Opt-Out Requests, and objections to this Agreement, and the dates of relevant Court proceedings, including the Final Approval Hearing; (b) the toll-free phone number to be established under this Agreement; (c) electronic copies of this Agreement, the Long-Form Notice, and the Claim Form that Settlement Class Members can download and print (or complete on-line) when available; and (d) information concerning the submission of Claims Packages.

6.7.    Rust-Oleum shall include in the section of its corporate website concerning warranty claims for the Restore Product a conspicuous link to the website to be established under this Agreement.    Such link shall be established within ten (10) days after the Claims

Administrator notifies Rust-Oleum in writing that the website established under this Agreement has been established and shall be maintained until sixty (60) days after the Court approves the Plan of Allocation.

6.8. The Summary Notice shall be in the form of Exhibit A and shall comply with Federal Rule of Civil Procedure 23 and Due Process. Publication of the Summary Notice shall be targeted to emphasize those geographic areas in which sales of the Restore Product were largest and from which the most Restore Product warranty claims have been submitted as of the date of the Preliminary Approval Order. In consultation with the Claims Administrator, the Summary Notice shall be sent via email to each Class Member identified by the Parties through reasonable efforts, including each Class Member who has submitted a Restore Product warranty claim and each Class Member whose identity becomes known as a result of the Class Notice.

6.9. The Long-Form Notice shall be in the form of Exhibit B and shall comply with Federal Rule of Civil Procedure 23 and Due Process. In consultation with the Claims Administrator, the Long-Form Notice shall be mailed first class postage prepaid to each Class Member identified by the Parties through reasonable efforts, including each Class Member who has submitted a Restore Product warranty claim and each Class Member whose identity becomes known as a result of the Class Notice. The Claims Administrator will promptly log each Long-Form Notice that is returned as undeliverable and shall provide copies of the log to Class Counsel and Defense Counsel. The Claims Administrator shall take reasonable steps to re-mail all undeliverable Long-Form Notices to updated addresses by reasonable means. In the event that any Long-Form Notice mailed to a Class Member is returned as undeliverable a second time, then no further mailing shall be required.

6.10.    The Long-Form Notice shall: (a) describe the Litigation and this Agreement in a concise and neutral way; (b) inform Class Members about their right to make an Opt-Out Request; (c) inform Settlement Class Members about their right to object to this Agreement; (d) inform Settlement Class Members about their right to seek compensation under this Agreement by submitting a Claims Package; (e) describe the Settlement Fund; (f) state the date of the Final Approval Hearing; and (f) provide any other information required to satisfy the notice requirements for a class action settlement.

6.11.    Within ten (10) days after entry of the Preliminary Approval Order, Rust-Oleum shall supply the Claims Administrator, in an electronically searchable and readable format, data that includes the names, last known email address, last known mailing addresses, and telephone numbers for all warranty claimants, warranty holders, and other known Class Members who (according to Rust-Oleum's records) purchased a Restore Product during the Class Period, to the extent that such information is contained in the computerized warranty and customer service records Rust-Oleum maintains.

6.12.    Any personal information regarding Class Members that Rust-Oleum provides to the Claims Administrator or Class Counsel pursuant to this Agreement will be provided solely for the purpose of allowing Class Members to recover under this Agreement, will be kept in strict confidence, will not be disclosed to any third party, and will not be used for any other purpose.

6.13.    After entry of the Preliminary Approval Order, Class Members may identify themselves to the Claims Administrator as potential Claimants for purposes of receiving additional information regarding the Claims Program.

6.14.    The Claims Administrator shall send the CAFA Notice to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), within ten (10) days after this Agreement is submitted to the Court with Plaintiffs' motion for preliminary approval.

6.15.    At least ten (10) days before the date of the Final Approval Hearing, the Claims Administrator shall file proof of the Class Notice.

6.16.    The Claims Administrator may make appropriate modifications to the Notice Plan and Class Notice described in this Section and the Exhibits to this Agreement that have been approved by Rust-Oleum, Class Counsel, and the Court and are consistent with Due Process and the terms of this Section.

7.    **COMPENSATION FOR SETTLEMENT CLASS MEMBERS**

7.1.    The provisions of this Section describing the monetary and other relief available to Settlement Class Members shall serve as guidelines for the Claims Administrator's proposed Plan of Allocation.

7.2.    **Tier 1 Compensation:** Subject to paragraphs 7.6 to 7.13, a Settlement Class Member with an otherwise Eligible Claim who submits (in accordance with the Claims Program) both (a) proof that he or she purchased a Restore Product during the Class Period and (b) proof that he or she experienced a Qualifying Problem with the purchased Restore Product shall be entitled to his or her choice of either:

      (i)    A cash payment equal to the price paid for the purchased Restore Product; or

      (ii)    Restore 10X Advanced (and primer) sufficient to cover the square footage of the area to which the purchased Restore Product was applied.

7.3.    **Tier 2 Compensation:** Subject to paragraphs 7.6 to 7.13, a Settlement Class Member with an otherwise Eligible Claim who submits (in accordance with the Claims Program

and in addition to the proof required for Tier 1 Compensation) both (a) proof that, because of a Qualifying Problem, he or she did or will incur costs to remove the purchased Restore Product from a deck or other substrate (including the amount of such costs) and (b) a statement of the percentage of the area to which the purchased Restore Product was applied that had a Qualifying Problem requiring removal of the Restore Product shall be entitled to (in addition to any Tier 1 Compensation) a payment equal to the lesser of either:

> (i)     $2.00 multiplied by the square footage of the area to which the Restore Product was applied, multiplied by the percentage of that area that had a Qualifying Problem requiring removal; or

> (ii)    The amount shown on the submitted proof of removal costs.

7.4.    **Tier 3 Compensation:** Subject to paragraphs 7.6 to 7.13, a Settlement Class Member with an otherwise Eligible Claim who submits (in accordance with the Claims Program and in addition to the proof required for Tier 1 Compensation) both (a) proof that, because of a Qualifying Problem, he or she did or will incur costs to repair or replace decking or other substrate to which the purchased Restore Product was applied (including the amount of such costs) and (b) a statement of the percentage of the area to which the purchased Restore Product was applied that had a Qualifying Problem requiring decking or other substrate repair or replacement shall be entitled to (in addition to any Tier 1 Compensation) a payment equal to the lesser of:

> (i)     $6.00 multiplied by the square footage of the area to which the Restore Product was applied, multiplied by the percentage of that area that had a Qualifying Problem requiring repair or replacement; or

> (ii)    The amount shown on the submitted proof of repair or replacement costs.

7.5.    **Special Circumstances Supplemental Compensation:** If, and only if, the Claims Administrator determines that sufficient funds exist to pay each Settlement Class

Member with an Eligible Claim according to the compensation guidelines set forth in paragraphs 7.1 to 7.4, the Claims Administrator shall consider requests for Special Circumstances Supplemental Compensation by Settlement Class Members with Eligible Claims for any additional out-of-pocket costs associated with removal and replacement of Restore and/or associated out-of-pocket costs relating to the decking or other area in which Restore has been applied. The instructions and guidelines for applications for Special Circumstances Supplemental Compensation shall be set forth in the Claim Form (or, if more practical, a supplemental claim form). The Plaintiffs and the Claims Administrator shall devise the instructions and guidelines regarding the process for applying for, and receiving, Special Circumstances Supplemental Compensation. The total amount available for this Special Circumstances Supplemental Compensation program shall be determined after all expenses, costs and other payments (including any reserves) have been calculated by the Claims Administrator. Among other factors, the Claims Administrator shall consider the amount of the request, the nature of the request, the relationship between the amount of any payment under the guidelines set forth in paragraphs 7.1 to 7.4 and any additional out-of-pocket costs incurred or to be incurred (with sufficient proof of such costs) by the Settlement Class Member, any prior payments under Rust-Oleum's warranty program, and any other equitable factors or guidelines that the Claims Administrator and Class Counsel determine serve the best interest of the Settlement Class and the overall goals of the settlement. A draft of any guidelines or instructions shall be sent to Rust-Oleum prior to any dissemination or submission to the Court. In no situation shall any Claimant receiving Special Circumstances Supplemental Compensation be entitled to more than any out of pocket costs incurred or to be incurred by that Claimant.

7.6.     Notwithstanding other provisions of this Agreement, a Settlement Class Member may not receive Tier 2 Compensation and Tier 3 Compensation for the same area of the same deck or other substrate.

7.7.     Notwithstanding other provisions of this Agreement, any compensation due to a Settlement Class Member under this Agreement shall be reduced dollar for dollar by any compensation that he or she previously received from Rust-Oleum or any seller with respect to the Qualifying Problem. For purposes of this paragraph, when Tier 1 Compensation or previous compensation takes the form of replacement product, the replacement product shall be valued at less than the retail price of the replacement product.

7.8.     Notwithstanding other provisions of this Agreement, any Settlement Class Member who previously released Rust-Oleum from liability for a Qualifying Problem by way of a valid release of claims shall not be entitled to any compensation under this Agreement.

7.9.     If the Settlement Fund is insufficient to pay all Eligible Claims under the foregoing provisions of this Section and pay all other obligations under this Agreement, the Claims Administrator shall propose a *pro rata* reduction of Eligible Claim payments, under which each Settlement Class Member with an Eligible Claim would receive a proportion of the money remaining in the Settlement Fund after payment of all other obligations under this Agreement that equals the proportion of the total dollar amount of Eligible Claims that the Settlement Class Member would receive under the foregoing provisions of this Section.

7.10.    Under no circumstances shall any portion of the Settlement Fund revert back to Rust-Oleum, provided that any reimbursements or credits from the Settlement Fund payable to or received by Rust-Oleum under this Agreement shall not be considered a refund or reversion.

7.11.    No later than thirty (30) days after the Court approves the Plan of Allocation, the Claims Administrator shall pay the In-Kind Credit to Rust-Oleum out of the Settlement Fund.

7.12.    Absent extraordinary circumstances, no later than thirty (30) days after the Court approves the Plan of Allocation, the Claims Administrator shall issue payments and any other relief to Claimants with Eligible Claims pursuant to the Plan of Allocation.

7.13.    A Settlement Class Member may assign, in writing, any claim for compensation under this Agreement to a current owner of the deck or other substrate to which the Restore Product purchased by the Settlement Class Member was applied, whereupon the assignee shall succeed to the rights and obligations of the Settlement Class Member under this Agreement.

## 8.    <u>CLAIMS PROGRAM PROCEDURES</u>

8.1    No later than ten (10) days after the beginning of the Claims Period, the Claims Administrator shall, to the extent possible, send via email and US Mail a Claim Form to each Settlement Class Member for whom the Claims Administrator has received contact information. The Claims Administer also shall make it possible for Settlement Class Members to (a) electronically submit a Claims Package or download a Claim Form through the website established by the Claims Administrator pursuant to this Agreement; and (b) contact the Claims Administrator by telephone or in writing to request a Claim Form. To the extent practical and cost-effective, the Claims Administrator shall prepopulate Claim Forms based on contact information provided to it by Rust-Oleum and by Settlement Class Members.

8.2    A Claimant does not have an Eligible Claim unless he or she is a Settlement Class Member.

8.3    A Claimant does not have an Eligible Claim if his or her Claims Package is postmarked or otherwise sent after the Claims Deadline, except that a Claims Package

postmarked within fifteen (15) days after the Claims Deadline shall be deemed timely if the Claimant requested, but did not receive, a Claim Form during the Claims Period.

8.4    A Claimant does not have an Eligible Claim unless his or her Claims Package includes the proof required for compensation under Section 7 of this Agreement and any other information required by the Claim Form.

8.5    In evaluating whether a Claimant has an Eligible Claim for Tier 1, Tier 2, and/or Tier 3 compensation, the Claims Administrator shall accept the following documentation, if reliable, as proof that the Claimant purchased a Restore Product: (a) a receipt from a retailer or a contractor showing the purchase of a Restore Product during the Class Period; (b) a photograph of an opened Restore Product container that the Claimant affirms having purchased during the Class Period and a photograph of the Restore Product applied to a deck or other substrate; (c) a record of a warranty claim or other communication with Rust-Oleum before the execution of this Agreement regarding a Restore Product; or (d) other competent proof accepted by Rust-Oleum in connection with its warranty program.

8.6    In evaluating whether a Claimant has an Eligible Claim for Tier 1, Tier 2, and/or Tier 3 compensation, the Claims Administrator shall accept the following documentation, if reliable, as proof that the Claimant experienced a Qualifying Problem: (a) a photograph showing a Qualifying Problem with a Restore Product that the Claimant affirms having purchased during the Class Period; (b) a record of a warranty claim or other communication with Rust-Oleum before the execution of this Agreement regarding a Qualifying Problem with a Restore Product; or (c) a receipt, invoice, or estimate from a contractor reflecting a Qualifying Problem with a Restore Product that the Claimant affirms having purchased during the Class Period.

8.7     In evaluating whether a Claimant has an Eligible Claim for Tier 2 compensation, the Claims Administrator shall accept the following documentation, if reliable, as proof that the Claimant did or will incur costs to remove a Restore Product from a deck or other substrate: (a) an invoice or estimate from a contractor for the removal of a Restore Product from a deck or other substrate that the Claimant affirms owning; (b) a receipt for supplies or equipment used in the removal of a Restore Product from a deck or other substrate that the Claimant affirms owning; or (c) a record of a warranty claim or other communication with Rust-Oleum before the execution of this Agreement reflecting the cost to the Claimant for removal of a Restore Product from a deck or other substrate.

8.8     In evaluating whether a Claimant has an Eligible Claim for Tier 3 compensation, the Claims Administrator shall accept the following documentation, if reliable, as proof that the Claimant did or will incur costs to repair or replace decking or other substrate to which the purchased Restore Product was applied: (a) an invoice or estimate from a contractor for the repair or replacement of decking or other substrate to which a Restore Product was applied and that the Claimant affirms owning; (b) a receipt for decking or other substrate that the Claimant affirms having purchased for the repair or replacement of decking or other substrate to which a Restore Product was applied; or (c) a record of a warranty claim or other communication with Rust-Oleum before the execution of this Agreement reflecting the cost to the Claimant for repair or replacement of decking or other substrate to which a Restore Product was applied.

8.9     Within forty five (45) days after entry of the Final Approval Order, Rust-Oleum shall provide the Claims Administrator with identifying and other relevant information in Rust-Oleum's records concerning Settlement Class Members who, prior to the entry of the Final Approval Order, (a) received compensation from Rust-Oleum or a seller with respect to a

Qualifying Problem; or (b) released Rust-Oleum from liability for a Qualifying Problem by way of a release of claims.

8.10    If a Settlement Class Member contacts Rust-Oleum during the Claims Period regarding a Qualifying Problem with respect to a Restore Product purchased during the Class Period, Rust-Oleum shall direct any such Settlement Class Member to participate in the Claims Program and shall not compensate any such Settlement Class Member except through the Claims Program.

8.11    Within thirty (30) days after the Claims Deadline, the Claims Administrator shall complete its evaluation of Claims Packages, shall determine which Claimants have Eligible Claims, and shall send a Denial Letter to each Claimant who does not have an Eligible Claim. During the Claims Period, the Claims Administrator may contact a Claimant in connection with its processing and evaluation of a Claims Package, including by telephone, US mail, and email, but all communications (whether written, by email, or by telephone) shall be documented and preserved until three months after the Court approves the Plan of Allocation. A Denial Letter shall provide the reason why the Claims Administrator determined that a Claimant did not have an Eligible Claim. If applicable, a Denial Letter also shall identify what additional material is needed to cure any deficiency and shall advise that the Claimant's claim shall be denied unless the Claimant resolves all identified deficiencies within twenty (20) days after the date of the Denial Letter. Within twenty-five (25) days after the date of a Denial Letter identifying curable deficiencies, the Claims Administrator (via US Mail) shall notify any Claimant who submitted additional material as to whether the Claimant now has an Eligible Claim. The Claims Administrator shall notify the Parties about its determinations concerning Eligible Claims and copy Class Counsel on any Denial Letters.

8.12    A Claimant may contest a Claims Administrator determination that the Claimant does not have an Eligible Claim by notifying Class Counsel and submitting an explanation of the Claimant's grounds for challenging the Eligible Claim determination within ten (10) days after the date of the Denial Letter (including a Denial Letter received after an unsuccessful attempt to cure a deficiency). Upon receiving such notice, Class Counsel may notify the Claims Administrator and Rust-Oleum and forward the submitted explanation to the Special Master, who shall conclusively resolve whether the Claimant has an Eligible Claim and notify the Claimant (via US Mail), Class Counsel, Rust-Oleum, and the Claims Administrator of the Special Master's determination within ten (10) days after the Special Master receives the Claimant's submitted explanation. The Special Master's determination is final and not subject to appeal or other challenge or review.

8.13    Rust-Oleum shall have no right to contest the Eligible Claim determinations of the Claims Administrator.

8.14    In no event shall the Parties or their counsel have any liability for the acts or omissions of the Claims Administrator or Special Master, or any of their agents, employees, or contractors.

8.15    All information submitted or created in connection with the Claims Program (including all information provided in Claims Packages) is confidential. Such information may be disclosed only to Rust-Oleum, Class Counsel, the Claims Administrator, and the Court. Such information may be used only for purposes of performing the obligations and exercising the rights created by this Agreement.

## 9.    ATTORNEYS' FEES AND INCENTIVE AWARDS TO PLAINTIFFS

9.1.    No later than ten (10) days prior to the Objection Deadline, Class Counsel will timely petition the Court for attorneys' fees and for reimbursement of costs and expenses

incurred in connection with the Litigation and the settlement reflected in this Agreement. A failure to grant some or all of the requested attorneys' fees, costs, and expenses shall not be grounds for modification or termination of this Agreement. Any amount awarded by the Court shall be paid by the Claims Administrator out of the Settlement Fund no later than fifteen (15) days after the Effective Date.

9.2.    In recognition of the time and effort Plaintiffs expended in pursuing the Litigation and serving as class representatives, and of the benefits conferred on all Settlement Class Members by this Agreement, Class Counsel will ask the Court to make an incentive award not to exceed two thousand dollars ($2,000) to each Plaintiff. Any incentive award made by the Court shall be paid by the Claims Administrator out of the Settlement Fund no later than fifteen (15) days after the Effective Date. Additionally, each Plaintiff shall be entitled to participate in the Claims Program in the same manner as other Claimants.

9.3.    No other agreement exists between or among the Parties as to payments to be made to Class Counsel or Plaintiffs.

9.4.    Class Counsel shall have the sole authority to allocate any Court-awarded attorneys' fees, costs, and litigation expenses amongst Class Counsel and Additional Plaintiffs' Counsel in a manner which Class Counsel believe reflects the contributions of such counsel.

## 10.    PLAN OF ALLOCATION AND ADMINISTRATION OF SETTLEMENT FUND

10.1.   The Claims Administrator shall administer the Settlement Fund subject to the jurisdiction of the Court. The Claims Administrator shall not disburse the Settlement Fund except (i) as provided in this Agreement, (ii) as provided in the Plan of Allocation ordered by the Court, (iii) by any other order of the Court, or (iv) by written agreement of the Parties.

10.2.　In the proposed Plan of Allocation, the Claims Administrator shall base the proposed allocation and distribution of the Settlement Fund on the following calculations and priority:

    a.    The Claims Administrator shall calculate the Net Settlement Fund by subtracting from the Settlement Fund the following: Court approved counsel fees, costs, and expenses; Plaintiffs' incentive awards; tax related payments; the fees and expenses of the Special Master; the In-Kind Credit due to Rust-Oleum; and the credit to Rust-Oleum for paid or reserved Claims Program Administration Expenses up to three hundred thousand dollars ($300,000);

    b.    The Claims Administrator shall then calculate and propose the payment due to each Claimant with an Eligible Claim under paragraphs 7.2, 7.3, and 7.4 of this Agreement (Tier 1, Tier 2 and Tier 3 Compensation);

    c.    The Claims Administrator shall then propose payment to Rust-Oleum from the remaining Net Settlement Fund of any warranty relief provided to Settlement Class Members on or after the date on which the Court enters the Preliminary Approval Order and before the entry of the Final Approval Order regarding a Qualifying Problem with respect to a Restore Product purchased during the Class Period;

    d.    The Claims Administrator shall then calculate the amount available for Special Circumstances Supplemental Compensation by subtracting from the Net Settlement Fund the amount due to Claimants with Eligible Claims under paragraph 10.2(b) and the amount due to Rust-Oleum under paragraph 10(c) and shall propose the payment due to each Claimant entitled to Special Circumstances Supplemental Compensation;

    e.    The Claims Administrator shall then calculate the amount of the remaining Net Settlement Fund for allocation and proposed payment to Claimants with Eligible Claims on a *pro rata* basis if feasible;

    f.    The Claims Administrator shall inform the parties if a *pro rata* distribution of the remaining Net Settlement Fund is administratively infeasible, in which case the Parties will present a proposal for distribution, subject to Court approval, in a manner consistent with the interests of the Settlement Class.

10.3　Paragraph 10.2 does not change the dates specified elsewhere in this Agreement for payments out of the Settlement Fund.

10.4    Within eighty (80) days after the Claims Deadline, the Claims Administrator shall provide the Parties with a draft Plan of Allocation consistent with this Agreement.  Within ninety (90) days after the Claims Deadline, the Parties shall submit a final proposed Plan of Allocation to the Court for approval.

10.5    Not later than twenty (20) days prior to the submission of the Plan of Allocation to the Court, Rust-Oleum may submit to Class Counsel and the Claims Administrator proof of paid Claims Program Administration Expenses, which the Claims Administrator shall reimburse to Rust-Oleum from the Settlement Fund in accord with paragraph 10.2, within fifteen (15) days after the Court approves the Plan of Allocation. If at the time of its submission, Rust-Oleum's paid Claims Program Administration Expenses excluding the Warranty Credit do not exceed three hundred thousand dollars ($300,000), then the Claims Administrator shall reserve money sufficient for Rust-Oleum to make additional submissions to the Claims Administrator as those expenses are incurred, up to three hundred thousand dollars ($300,000). If, within ten (10) days after any submission by Rust-Oleum of paid Claims Program Administration Expenses, Class Counsel objects to any items in the expense reimbursement request, the Special Master shall promptly and conclusively determine the amount of paid Claims Program Administration Expenses and that amount shall be reimbursed to Rust-Oleum from the Settlement Fund in accord with paragraph 10.2, within fifteen (15) days after the Court approves the Plan of Allocation.

## 11.    **SPECIAL MASTER**

11.1    Fourteen (14) days prior to the Final Approval Hearing, the parties shall jointly request that the Court appoint a Special Master.

11.2    As detailed in this Agreement, the Special Master shall be responsible for resolving disputes arising between the Parties with respect to reimbursements or credits due to

Rust-Oleum and disputes between Settlement Class Members and the Claims Administrator, including but not limited to, claim denials and any disputes the Parties jointly agree should be decided by the Special Master. As part of this obligation, the Special Master shall establish a protocol for resolving the above issues on an expedited and cost-effective basis.

11.3    Rust-Oleum shall pay the fees and expenses of the Special Master, which fees and expenses the Claims Administrator shall reimburse to Rust-Oleum from the Settlement Fund within fifteen (15) days after the Court approves the Plan of Allocation.

## 12.    CLASS MEMBERS' RIGHT OF EXCLUSION

12.1    A Class Member may choose to be excluded from the Settlement Class by sending to the Claims Administrator (via US Mail) a written Opt-Out Request that is timely and valid. Any Class Member who does not submit a timely and valid Opt-Out Request shall be a Settlement Class Member for all purposes under this Agreement, submits to the jurisdiction of the Court, and shall be bound by the terms of this Agreement (including all releases) and by all orders and judgments in the Litigation. Any Class Member who does submit a timely and valid Opt-Out Request shall not (a) be bound by any orders or judgments entered in the Litigation; (b) be entitled to any of the relief or other benefits provided under this Agreement; (c) gain any rights by virtue of this Agreement; or (d) be entitled to object to any aspect of this Agreement.

12.2    To be timely and valid, an Opt-Out Request must be signed by the Class Member or counsel representing the Class Member, must be post-marked on or before the Opt-Out Deadline, and must include (a) the full name, current address, and telephone number of the Class Member (and the location of the relevant deck or other substrate, if different than the Class Member's address); (b) proof that the Class Member purchased a Restore Product during the Class Period; (c) a statement substantially to the effect of: "I/We hereby request that I/we be

excluded from the proposed class in *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*." No "mass" or "class" Opt-Out Requests shall be valid.

12.3    Any Class Member who submits an Opt-Out Request may revoke his or her Opt-Out Request by sending to the Claims Administrator (via US Mail) a written statement of revocation that is postmarked no later than ten (10) days before the date of the Final Approval Hearing.

12.4    If Class Counsel, Rust-Oleum, or Defense Counsel receive Opt-Out Requests or revocations of such requests, they shall promptly provide copies to each other and the Claims Administrator.

12.5    The Claims Administrator shall provide the Parties with copies of all Opt-Out Requests within five (5) days after the Opt-Out Deadline and copies of all revocations of such requests no later than three (3) days before the Final Approval Hearing.

12.6    Class Counsel shall have the right to contact persons who submit Opt-Out Requests.

12.7    If five thousand (5,000) or more Class Members submit timely and valid Opt-Out Requests, Rust-Oleum shall have the right, but not the obligation, to terminate this Agreement by providing notice to Class Counsel and the Court no more than ten (10) days after the Opt-Out Deadline.

## 13.    SETTLEMENT CLASS MEMBERS' RIGHT TO OBJECT

13.1    A Settlement Class Member may object to this Agreement and any of its terms by sending to the Court, Class Counsel, and Defense Counsel a written notice of the objection that is timely and valid.

13.2    To be timely and valid, an objection (a) must be sent to the Court, Class Counsel, and Defense Counsel (via US Mail); (b) must be post-marked on or before the Objection

Deadline; and (c) must include (i) the full name and current address and telephone number of the Settlement Class Member; (ii) the location of the deck or other substrate to which the Restore Product purchased by the Settlement Class Member was applied, if different from the current address; (iii) proof that the Settlement Class Member purchased a Restore Product during the Class Period; (iv) a statement of the amount of the Restore Product purchased (in gallons or dollars); (v) all of the Settlement Class Member's objections, the reasons therefor, and all supporting papers, including, without limitation, all briefs, written evidence, and declarations; (vi) a statement of whether the Settlement Class Member intends to appear at the Final Approval Hearing; and (vii) the Settlement Class Member's signature and the signature of any attorney representing the Settlement Class Member. Neither an objection signed by counsel alone nor any "mass" or "class" objections shall be valid.

13.3    Only Settlement Class Members who state in their objections that they intend to appear at the Final Approval Hearing will have the right to present their objections orally at the Final Approval Hearing.

13.4    In sending any objections to the Court, Class Counsel, and Defense Counsel, Settlement Class Members must use the following addresses:

> **The Court:**
> Clerk of Court, MDL No. 2602
> United States District Court for the Northern District of Illinois
> Everett McKinley Dirksen United States Courthouse
> 219 South Dearborn Street
> Chicago, IL 60604
>
> **Co-Class Counsel:**
> LITE DEPALMA GREENBERG LLC
> 211 W. Wacker Drive, Suite 500
> Chicago, IL 60606
> Attn: Katrina Carroll

**Defense Counsel:**
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
Attn: Lori Lightfoot

13.5    The Parties shall have the same right to seek discovery from any objecting Settlement Class Member as they would if the objector was a named party in the Litigation.

13.6    A Settlement Class Member who does not submit a timely and valid objection, does not respond to discovery, or does not make himself or herself available for deposition shall be deemed to have waived, and shall be foreclosed from making, any objection to this Agreement and the settlement reflected in this Agreement (whether by appeal or otherwise) and shall not be permitted to present objections or otherwise be heard at the Final Approval Hearing.

## 14.    FINAL JUDGMENT OF DISMISSAL

14.1    At least fourteen (14) days before the Final Approval Hearing, the Plaintiffs shall file a motion requesting that the Court (a) grant final approval of the settlement reflected in this Agreement and (b) enter a Final Approval Order and a final judgment dismissing the Litigation with prejudice. Plaintiffs shall provide Rust-Oleum with drafts of their papers in support of final approval in advance of filing.  Any Settlement Class Member opposition to Plaintiffs' motion shall be filed ten (10) days before the Final Approval Hearing and Plaintiffs shall file any response five (5) days before the Final Approval Hearing.

14.2    The Final Approval Order requested by Plaintiffs shall:

a.      Provide that the Agreement is fair, reasonable and adequate for Settlement Class Members;

b.      Direct that the Agreement be implemented in accordance with its terms;

c.      Dismiss each of the actions in the Litigation with prejudice;

d.    Adjudge that each of the Releasing Parties has expressly, intentionally, fully, finally, and forever released, waived, compromised, settled, and discharged all Released Claims.

e.    Permanently bar and enjoin each of the Releasing Parties from asserting any Released Claim directly or indirectly against any Released Person;

f.    Approve such award of attorneys' fees, costs, and expenses for Class Counsel and/or incentive awards to Plaintiffs as the Court may award;

g.    Provide that the form and manner of notice given to the Settlement Class Members fairly and adequately informed them of all material elements of the Litigation and this Agreement and constituted sufficient notice to the Settlement Class Members in accordance with Federal Rule of Civil Procedure 23 and Due Process requirements;

h.    Reserve exclusive and continuing jurisdiction over the interpretation, performance, enforcement, and administration of this Agreement and the Court's orders in the Litigation; and

i.    Retain the authority to permanently bar and enjoin any actions in contravention of this Agreement and to otherwise enforce this Agreement through the exercise of equitable powers (including specific performance, contempt, and injunctive relief), irrespective of the availability or adequacy of any remedy at law.

14.3    Upon entry of the Final Approval Order, each of the actions in this Litigation shall be dismissed with prejudice.

## 15.    EXCLUSIVE REMEDY, RELEASE OF CLAIMS, AND WARRANTY RIGHTS

15.1    The relief provided for in this Agreement shall be the sole and exclusive remedy for any and all claims of Settlement Class Members against the Released Persons related to the advertising, marketing, promotion, labeling, purchase, sale, distribution, design, testing, manufacture, application, use, performance, or warranting of any Restore Product purchased during the Class Period.

15.2    Upon entry of the Final Approval Order, the Releasing Parties (for all purposes and in all capacities) shall be conclusively deemed to have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, waived, compromised, settled, and discharged

(as by an instrument under seal without further act by any person, and upon good and sufficient consideration) any and all Released Claims against each and every Released Person. The Releasing Parties also shall be conclusively deemed to have acknowledged that the Release was separately bargained for and is a key element of the settlement reflected in this Agreement.

15.3     Each of the Releasing Parties shall forever refrain from instituting, maintaining, prosecuting, or continuing any suit, action, or proceeding against any of the Released Parties in connection with any of the Released Claims.  If any of the Releasing Parties does institute, maintain, prosecute, or continue any such suit, action, or proceeding, Plaintiffs and Class Counsel shall cooperate with the efforts of any of the Released Persons to obtain dismissal.

**15.4     The Releasing Parties shall be conclusively deemed to have acknowledged, that certain legal authorities, including Section 1542 of the Civil Code of the State of California, provide that "a general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which is known by him or her must have materially affected his or her settlement with the debtor." The Releasing Parties shall be conclusively deemed to have expressly, intentionally, voluntarily, fully, finally, and forever waived and relinquished application of all such legal authorities and any similar federal, state, or other laws, rights, rules, principles, or authorities.**

15.5     Notwithstanding the foregoing provisions of this Section, the Release excludes and will not release: (a) any obligations to Releasing Parties that Rust-Oleum has assumed under this Agreement; or (b) any obligations to Releasing Parties imposed on Rust-Oleum by settlements or judgments prior to entry of the Final Approval Order.

15.6    Notwithstanding the foregoing provisions of this Section, the Releasing Parties specifically reserve any claims or causes of action against any installers of Restore Products, but only in their role as installers not sellers.

15.7    Notwithstanding the foregoing provisions of this Section, Releasing Parties who do not receive compensation under this Agreement shall retain all warranty rights that they obtained upon purchase of a Restore Product, except that the Release fully applies to any class action lawsuit within the terms of the Release in which any of the Releasing Parties is a plaintiff or a class member. The Release also fully applies to Releasing Parties who receive compensation under this Agreement, and their receipt of such compensation shall be conclusively deemed to satisfy and extinguish the warranty rights they obtained upon purchase of the Restore Product that formed the basis for their compensation.

15.8    The Release shall be a complete defense to and will preclude any Released Claim in any suit, action, or proceeding.

## 16.    OTHER TERMS AND CONDITIONS

16.1    Rust-Oleum shall have the right to terminate this Agreement if (a) the Court refuses to approve any part of this Agreement; (b) the Court materially changes the terms of the requested Preliminary Approval Order or the requested Final Approval Order; (c) an appellate court reverses or vacates the Final Approval Order; (d) the Effective Date does not occur before Rust-Oleum must answer or otherwise plead in response to any complaint in the Litigation; or (e) any other ground for termination provided for in this Agreement arises.

16.2    If this Agreement is terminated, the Agreement (except for paragraphs 3.2, 6.12, 8.15, 16.2, 16.3, 16.10, and 16.11) shall become null and void and of no further force and effect. In that event, this Agreement, any negotiations, statements, communications, or proceedings relating thereto, and the fact that the Parties agreed to the Agreement shall be without prejudice

to the rights of the Parties, shall not be construed as an admission or concession by any of the Parties, and shall not be used or subject to discovery for any purpose whatsoever in any subsequent proceedings in the Litigation.

16.3    This Agreement, any negotiations, statements, communications, or proceedings relating thereto, and the fact that the Parties agreed to the Agreement shall not be construed as an admission or concession by any of the Parties or Settlement Class Members or be used or subject to discovery for any purpose whatsoever in any other suit, action, or proceeding, other than to enforce the terms of this Agreement (including the Release).

16.4    The Parties and their counsel agree to undertake their reasonable best efforts to perform the terms of this Agreement and to obtain and defend the Final Approval Order. Plaintiffs and their counsel further agree to recommend approval of this Agreement by the Court and Class Members without qualification or condition not set forth in this Agreement.

16.5    If the Court refuses to approve any part of this Agreement, the Court materially changes the terms of the requested Preliminary Approval Order or the requested Final Approval Order, or if an appellate court reverses or vacates the Final Approval Order, then (before any termination of this Agreement under paragraph 16.1 or otherwise) the Parties shall attempt to amend this Agreement consistent with the applicable order and proceed with a settlement based on an amended version of this Agreement.

16.6    Rust-Oleum represents and warrants that: (a) it has all requisite corporate power and authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby; (b) the execution, delivery, and performance of this Agreement have been duly authorized by all necessary corporate action on the part of Rust-Oleum; (c) the person signing this Agreement on Rust-Oleum's behalf has full authority to sign

on behalf of and to bind Rust-Oleum to the Agreement's terms; and (d) this Agreement has been duly and validly executed and delivered by Rust-Oleum and constitutes its legal, valid, and binding obligation.

16.7    Class Counsel represent and warrant that they have full authority to conduct settlement negotiations with Rust-Oleum and Defense Counsel and enter into this Agreement on behalf of Plaintiffs.

16.8    To the extent permitted by law and the applicable rules of professional conduct, the undersigned Class Counsel and Additional Plaintiffs' Counsel represent and warrant that (a) they do not have any present intention to file any lawsuit in any jurisdiction, including other states or countries, relating to the Restore Products or any other product sold under the Restore brand name; and (b) they will not contact any other attorney or law firm to encourage pursuing litigation related to the Restore Products or any other product sold under the Restore brand name.

16.9    To the extent permitted by law and the applicable rules of professional conduct, Plaintiffs, Class Counsel, and Additional Plaintiffs' Counsel agree not to cooperate with any other plaintiffs' lawyers who are litigating or who wish to litigate claims related to Restore-branded products.

16.10    With the exception of (a) statements endorsing this Agreement that Class Counsel or Additional Plaintiffs' Counsel may make to Class Members and co-counsel, (b) statements that the Parties may make in court filings or in accordance with the terms of this Agreement, and (c) statements that Rust-Oleum or its affiliates may make in connection with current, quarterly, or annual reporting obligations (including in earnings press releases, shareholder communications, statements to analysts, and earnings release calls), the Parties and their counsel may not make any public statement regarding either the opposing party or the existence or terms

of this Agreement unless the Parties agree in writing upon the content and timing of the public statement, except as may be required by applicable law or by the rules of any stock market (provided that a party shall make commercially reasonable efforts in compliance with its legal obligations to give prior notice to the opposing party of the content and timing of any such public statement required by applicable law or by the rules of any stock market).

16.11   Plaintiffs, Class Counsel, and Additional Plaintiffs' Counsel shall keep strictly confidential and not disclose to any third party any non-public information regarding the negotiation of the settlement reflected in this Agreement.

16.12   The Parties and their counsel shall not make any disparaging comments about any opposing party related to the Litigation or its subject matter.

16.13   This Agreement shall be binding upon and inure to the benefit of the Parties, the Settlement Class Members, and their respective agents, heirs, executors, administrators, successors, and assigns.

16.14   This Agreement and any Exhibits attached to it shall constitute the entire agreement of the Parties with respect to the subject matter thereof. The settlement reflected in this Agreement is not subject to any condition not expressly provided for herein, and there exist no collateral or oral agreements among any of the Parties relating to the subject matter of the Agreement that supersede or supplement the Agreement. In entering this Agreement, no party is relying on any promise, inducement, or representation other than those set forth herein and in any Exhibits hereto. Any agreement purporting to change or modify the terms of this Agreement or any Exhibits hereto must be in writing, signed by Class Counsel and Rust-Oleum, and approved by the Court.

16.15   Any Exhibits attached hereto are incorporated as if fully set forth in the body of this Agreement.

16.16   The waiver by any of the Parties to this Agreement of any breach of its terms shall be in writing and shall not be deemed or construed to be a waiver of any other breach of this Agreement, whether prior, subsequent, or contemporaneous. If one of the Parties considers another of the Parties to be in breach of this Agreement, the Party claiming a breach must provide the Party claimed to be in breach with written notice of the alleged breach and a reasonable opportunity to cure the breach before taking any action to enforce the Agreement.

16.17   Within sixty (60) days after the Court approves the Plan of Allocation, Plaintiffs, Class Counsel, and Additional Plaintiffs' Counsel shall return or destroy (and certify in writing that they have destroyed) all documents produced by Rust-Oleum in connection with the Litigation and/or the negotiation or performance of this Agreement.

16.18   This Agreement may be executed in any number of counterparts, including by facsimile or electronic mail, each of which shall be deemed to be an original. All counterparts shall constitute one Agreement, binding on all parties hereto, regardless of whether all parties are signatories to the same counterpart, but the Agreement will be without effect until and unless Rust-Oleum, each Plaintiff, each Class Counsel, and each Additional Plaintiffs' Counsel have executed a counterpart.

16.19   Whenever this Agreement requires or permits notice to the Claims Administrator, Plaintiffs, Class Counsel, Rust-Oleum, or Defense Counsel, the notice shall be provided by e-mail or next-business-day express delivery service, as follows:

> **Claims Administrator:**
> KCC
> P.O. Box 43432
> Providence, RI 02940-3432

**Plaintiffs or Class Counsel:**
Katrina Carroll
LITE DEPALMA GREENBERG LLC
211 W. Wacker Drive, Suite 500
Chicago, IL 60606
Email: kcarroll@litedepalma.com

William Audet
AUDET & PARTNERS, LLP.
711 Van Ness Ave., Suite 500
San Francisco, CA 94102
Email: waudet@audetlaw.com

**Rust-Oleum or Defense Counsel:**
Lori Lightfoot
Joshua Yount
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
Email: llightfoot@mayerbrown.com
jyount@mayerbrown.com

16.20   Any headings, subheadings, or titles herein are used for purposes of convenience only and have no other legal force, meaning, or effect.

16.21   This Agreement will be governed by the laws of the State of Illinois, without regard for conflicts of law principles.

16.22   Any suit, action, or proceeding to enforce this Agreement shall be commenced and maintained only in the Court.

16.23   This Agreement was drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement will be construed or interpreted against any of the Parties based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by one of the Parties.

16.24   In the event of conflict between this Agreement and any other document prepared pursuant to the Agreement, the terms of this Agreement supersede and control.

16.25   Nothing in this Agreement or any Plan of Allocation shall be construed to alter, interfere with, eliminate, or otherwise restrict Rust-Oleum's past and continuing obligations under the terms of the Restore Product warranty, except as otherwise provided in this Agreement. Rust-Oleum shall continue to retain sole responsibility for responding to and complying with the terms of the Restore Product warranty, except as otherwise provided in this Agreement.

16.26   The Parties, subject to Court approval, reserve the right to agree to any reasonable extensions of time that might be necessary to perform any of the obligations or exercise any of the rights created by this Agreement.

16.27   The words "include," "includes," and "including" are deemed to be followed by the phrase "without limitation."

16.28   If the last date for the performance of any action required or permitted by this Agreement falls on a Saturday, Sunday, or Court holiday, that action may be performed on the next business day as if it had been performed within the time period provided for performance of the action.

IN WITNESS WHEREOF, each of the undersigned, being duly authorized, has caused this Agreement to be executed on the dates shown below and agrees that it shall take effect on the first date that it has been executed by all of the undersigned.  **By signing below, each of the undersigned also acknowledges that he or she has read the Agreement, understands its binding nature, has had the opportunity to consult with counsel, and enters into the Agreement voluntarily.**

EXECUTION COPY

APPROVED AND AGREED TO BY CLASS COUNSEL:

_____     Oct. 19, 2016
_____     _____
William Audet                        Date
Audet & Partners, LLP


_____     _____
Katrina Carroll                      Date
Lite DePalma Greenberg LLC


APPROVED AND AGREED TO BY RUST-OLEUM CORPORATION:


_____     _____
Thomas Reed                          Date
President and Chief Executive Officer


APPROVED AND AGREED TO BY ADDITIONAL PLAINTIFFS' COUNSEL:


_____     _____
Daniel Levin                         Date
Levin, Fishbein, Sedran & Berman


_____     _____
Kevin Daniel Bloom                   Date
Bloom and Bloom, P.C.


_____     _____
Robert N. Isseks, Esq.               Date


_____     _____
Charles LaDuca                       Date
Cuneo, Gilbert and LaDuca LLP

EXECUTION COPY

APPROVED AND AGREED TO BY CLASS COUNSEL:

_____     _____
William Audet                                        Date
Audet & Partners, LLP

_____     _____
Katrina Carroll                                      10/19/16
Lite DePalma Greenberg LLC                Date


APPROVED AND AGREED TO BY RUST-OLEUM CORPORATION:

_____     _____
Thomas Reed                                          Date
President and Chief Executive Officer


APPROVED AND AGREED TO BY ADDITIONAL PLAINTIFFS' COUNSEL:

_____     _____
Daniel Levin                                         Date
Levin, Fishbein, Sedran & Berman


_____     _____
Kevin Daniel Bloom                                   Date
Bloom and Bloom, P.C.


_____     _____
Robert N. Isseks, Esq.                               Date


_____     _____
Charles LaDuca                                       Date
Cuneo, Gilbert and LaDuca LLP

EXECUTION COPY

APPROVED AND AGREED TO BY CLASS COUNSEL:

_____          _____
William Audet                        Date
Audet & Partners, LLP


_____          _____
Katrina Carroll                      Date
Lite DePalma Greenberg LLC

APPROVED AND AGREED TO BY RUST-OLEUM CORPORATION:

_____          _10/18/16_____
Thomas Reed                          Date
President and Chief Executive Officer

APPROVED AND AGREED TO BY ADDITIONAL PLAINTIFFS' COUNSEL:


_____          _____
Daniel Levin                         Date
Levin, Fishbein, Sedran & Berman


_____          _____
Kevin Daniel Bloom                   Date
Bloom and Bloom, P.C.


_____          _____
Robert N. Isseks, Esq.               Date


_____          _____
Charles LaDuca                       Date
Cuneo, Gilbert and LaDuca LLP

EXECUTION COPY

APPROVED AND AGREED TO BY CLASS COUNSEL:

_____     _____
William Audet                                                    Date
Audet & Partners, LLP

_____     _____
Katrina Carroll                                                  Date
Lite DePalma Greenberg LLC

APPROVED AND AGREED TO BY RUST-OLEUM CORPORATION:

_____     _____
Thomas Reed                                                      Date
President and Chief Executive Officer

APPROVED AND AGREED TO BY ADDITIONAL PLAINTIFFS' COUNSEL:

*Daniel C. Levin*
DocuSigned by:
D036A98ABC37441                                         10/5/2016
_____     _____
Daniel Levin                                                     Date
Levin, Fishbein, Sedran & Berman

_____     _____
Kevin Daniel Bloom                                               Date
Bloom and Bloom, P.C.

_____     _____
Robert N. Isseks, Esq.                                           Date

_____     _____
Charles LaDuca                                                   Date
Cuneo, Gilbert and LaDuca LLP

EXECUTION COPY

APPROVED AND AGREED TO BY CLASS COUNSEL:

_____        _____
William Audet                      Date
Audet & Partners, LLP


_____        _____
Katrina Carroll                    Date
Lite DePalma Greenberg LLC


APPROVED AND AGREED TO BY RUST-OLEUM CORPORATION:

_____        _____
Thomas Reed                        Date
President and Chief Executive Officer


APPROVED AND AGREED TO BY ADDITIONAL PLAINTIFFS' COUNSEL:

_____        _____
Daniel Levin                       Date
Levin, Fishbein, Sedran & Berman

_____        _10/12/16_____
Kevin Daniel Bloom                 Date
Bloom and Bloom, P.C.

_____        _10/7/16_____
Robert N. Isseks, Esq.             Date


_____        _____
Charles LaDuca                     Date
Cuneo, Gilbert and LaDuca LLP


Page 42 of 48

EXECUTION COPY

APPROVED AND AGREED TO BY CLASS COUNSEL:

_____    _____
William Audet    Date
Audet & Partners, LLP


_____    _____
Katrina Carroll    Date
Lite DePalma Greenberg LLC


APPROVED AND AGREED TO BY RUST-OLEUM CORPORATION:


_____    _____
Thomas Reed    Date
President and Chief Executive Officer


APPROVED AND AGREED TO BY ADDITIONAL PLAINTIFFS' COUNSEL:


_____    _____
Daniel Levin    Date
Levin, Fishbein, Sedran & Berman


_____    _____
Kevin Daniel Bloom    Date
Bloom and Bloom, P.C.


_____    _____
Robert N. Isseks, Esq.    Date


_____    10/3/2016
Charles LaDuca    Date
Cuneo, Gilbert and LaDuca LLP

EXECUTION COPY

DocuSigned by:

*Joel R. Rhine*

40F91CCB30494B4...

10/4/2016

_____          _____
Joel R. Rhine                                      Date
Rhine Law Firm, P.C.


_____          _____
Joseph G. Sauder                                Date
McCuneWright LLP


_____          _____
Bryan L. Clobes                                  Date
Cafferty Clobes Meriwether & Sprengel LLP


_____          _____
Amy Elisabeth Keller                          Date
Wexler Wallace LLP


_____          _____
Jonathan Shub                                    Date
Kohn, Swift & Graf, P.C.


_____          _____
Robert K. Shelquist                            Date
Lockridge Grindal Nauen PLLP


_____          _____
Eric Gibbs                                          Date
Gibbs Law Group LLP


_____          _____
Richard J. Burke                                Date
Quantum Legal LLC


_____          _____
Lewis G. Adler                                    Date
Law Office of Lewis Adler

DocuSign Envelope ID: E6B8D4A3-B431-4AA6-892F-96A582E41BD8

EXECUTION COPY

_____          _____
Joel R. Rhine                            Date
Rhine Law Firm, P.C.

_Joseph G. Sauder_
_____          10/6/2016
Joseph G. Sauder                         Date
McCuneWright LLP


_____          _____
Bryan L. Clobes                          Date
Cafferty Clobes Meriwether & Sprengel LLP


_____          _____
Amy Elisabeth Keller                     Date
Wexler Wallace LLP


_____          _____
Jonathan Shub                            Date
Kohn, Swift & Graf, P.C.


_____          _____
Robert K. Shelquist                      Date
Lockridge Grindal Nauen PLLP


_____          _____
Eric Gibbs                               Date
Gibbs Law Group LLP


_____          _____
Richard J. Burke                         Date
Quantum Legal LLC


_____          _____
Lewis G. Adler                           Date
Law Office of Lewis Adler

EXECUTION COPY

_____     _____
Joel R. Rhine                      Date
Rhine Law Firm, P.C.


_____     _____
Joseph G. Sauder                   Date
McCuneWright LLP

_____     10/13/2016
Bryan L. Clobes                    Date
Cafferty Clobes Meriwether & Sprengel LLP


_____     _____
Amy Elisabeth Keller               Date
Wexler Wallace LLP


_____     _____
Jonathan Shub                      Date
Kohn, Swift & Graf, P.C.


_____     _____
Robert K. Shelquist                Date
Lockridge Grindal Nauen PLLP


_____     _____
Eric Gibbs                         Date
Gibbs Law Group LLP


_____     _____
Richard J. Burke                   Date
Quantum Legal LLC


_____     _____
Lewis G. Adler                     Date
Law Office of Lewis Adler

DocuSign Envelope ID: C2CD0681-1A24-45A1-973C-8CCA9A7EF33B

EXECUTION COPY

_____     _____
Joel R. Rhine                       Date
Rhine Law Firm, P.C.


_____     _____
Joseph G. Sauder                    Date
McCuneWright LLP


_____     _____
Bryan L. Clobes                     Date
Cafferty Clobes Meriwether & Sprengel LLP

_____     _____
Amy Elisabeth Keller                10/14/2016
Wexler Wallace LLP                  Date


_____     _____
Jonathan Shub                       Date
Kohn, Swift & Graf, P.C.


_____     _____
Robert K. Shelquist                 Date
Lockridge Grindal Nauen PLLP


_____     _____
Eric Gibbs                          Date
Gibbs Law Group LLP


_____     _____
Richard J. Burke                    Date
Quantum Legal LLC


_____     _____
Lewis G. Adler                      Date
Law Office of Lewis Adler

EXECUTION COPY

_____     _____
Joel R. Rhine                                    Date
Rhine Law Firm, P.C.


_____     _____
Joseph G. Sauder                              Date
McCuneWright LLP


_____     _____
Bryan L. Clobes                               Date
Cafferty Clobes Meriwether & Sprengel LLP


_____     _____
Amy Elisabeth Keller                         Date
Wexler Wallace LLP


_____     __10/05/2016__
Jonathan Shub                                 Date
Kohn, Swift & Graf, P.C.


_____     _____
Robert K. Shelquist                          Date
Lockridge Grindal Nauen PLLP


_____     _____
Eric Gibbs                                       Date
Gibbs Law Group LLP


_____     _____
Richard J. Burke                             Date
Quantum Legal LLC


_____     _____
Lewis G. Adler                               Date
Law Office of Lewis Adler

EXECUTION COPY

_____    _____
Joel R. Rhine                                    Date
Rhine Law Firm, P.C.


_____    _____
Joseph G. Sauder                               Date
McCuneWright LLP


_____    _____
Bryan L. Clobes                                 Date
Cafferty Clobes Meriwether & Sprengel LLP


_____    _____
Amy Elisabeth Keller                           Date
Wexler Wallace LLP


_____    _____
Jonathan Shub                                  Date
Kohn, Swift & Graf, P.C.

DocuSigned by:

*Robert K. Shelquist*                   9/30/2016
58BED4F809324CD...
_____    _____
Robert K. Shelquist                           Date
Lockridge Grindal Nauen PLLP


_____    _____
Eric Gibbs                                     Date
Gibbs Law Group LLP


_____    _____
Richard J. Burke                                 Date
Quantum Legal LLC


_____    _____
Lewis G. Adler                                  Date
Law Office of Lewis Adler

DocuSign Envelope ID: E921626A-710D-40D2-BFB5-00CF2D4B02B3

EXECUTION COPY

_____     _____
Joel R. Rhine                                                   Date
Rhine Law Firm, P.C.


_____     _____
Joseph G. Sauder                                           Date
McCuneWright LLP


_____     _____
Bryan L. Clobes                                             Date
Cafferty Clobes Meriwether & Sprengel LLP


_____     _____
Amy Elisabeth Keller                                     Date
Wexler Wallace LLP


_____     _____
Jonathan Shub                                                Date
Kohn, Swift & Graf, P.C.


_____     _____
Robert K. Shelquist                                        Date
Lockridge Grindal Nauen PLLP

_____     _____
Eric Gibbs                                                       Date
Gibbs Law Group LLP

DocuSigned by:
CC4BFE964EEF4B4...                          10/7/2016


_____     _____
Richard J. Burke                                            Date
Quantum Legal LLC


_____     _____
Lewis G. Adler                                               Date
Law Office of Lewis Adler

EXECUTION COPY

_____          _____
Joel R. Rhine                             Date
Rhine Law Firm, P.C.


_____          _____
Joseph G. Sauder                          Date
McCuneWright LLP


_____          _____
Bryan L. Clobes                           Date
Cafferty Clobes Meriwether & Sprengel LLP


_____          _____
Amy Elisabeth Keller                      Date
Wexler Wallace LLP


_____          _____
Jonathan Shub                             Date
Kohn, Swift & Graf, P.C.


_____          _____
Robert K. Shelquist                       Date
Lockridge Grindal Nauen PLLP


_____          _____
Eric Gibbs                                Date
Gibbs Law Group LLP


_____          10/11/16
Richard J. Burke                          Date
Quantum Legal LLC


_____          _____
Lewis G. Adler                            Date
Law Office of Lewis Adler

EXECUTION COPY

_____        _____
Joel R. Rhine                            Date
Rhine Law Firm, P.C.


_____        _____
Joseph G. Sauder                         Date
McCuneWright LLP


_____        _____
Bryan L. Clobes                          Date
Cafferty Clobes Meriwether & Sprengel LLP


_____        _____
Amy Elisabeth Keller                     Date
Wexler Wallace LLP


_____        _____
Jonathan Shub                            Date
Kohn, Swift & Graf, P.C.


_____        _____
Robert K. Shelquist                      Date
Lockridge Grindal Nauen PLLP


_____        _____
Eric Gibbs                               Date
Gibbs Law Group LLP


_____        _____
Richard J. Burke                         Date
Quantum Legal LLC


_____        10/6/16
Lewis G. Adler                           Date
Law Office of Lewis Adler

APPROVED AND AGREED TO BY PLAINTIFFS:

_____     10/6/16
Angelita Hickman                      Date

_____     _____
Michael Reyes                         Date

_____     _____
Charles Hoff                          Date

_____     _____
Michael Baden                         Date

_____     _____
Jerry Lautigar                        Date

_____     _____
John Malloy                           Date

_____     _____
Hans Shanks                           Date

_____     _____
Layla Patterson                       Date

_____     _____
Debra Dockstader                      Date

_____     _____
Season Gomez                          Date

EXECUTION COPY

APPROVED AND AGREED TO BY PLAINTIFFS:

_____          _____
Angelita Hickman                         Date

_____          10/10/16
Michael Reyes                            Date

_____          _____
Charles Hoff                             Date

_____          _____
Michael Baden                            Date

_____          _____
Jerry Lautigar                           Date

_____          _____
John Malloy                              Date

_____          _____
Hans Shanks                              Date

_____          _____
Layla Patterson                          Date

_____          _____
Debra Dockstader                         Date

_____          _____
Season Gomez                             Date

APPROVED AND AGREED TO BY PLAINTIFFS:

Angelita Hickman                    Date

Michael Reyes                       Date

Charles Hoff                        10-12-16
                                    Date

Michael Baden                       Date

Jerry Lautigar                      Date

John Malloy                         Date

Hans Shanks                         Date

Layla Patterson                     Date

Debra Dockstader                    Date

Season Gomez                        Date

EXECUTION COPY

APPROVED AND AGREED TO BY PLAINTIFFS:

_____         _____
Angelita Hickman                    Date

_____         _____
Michael Reyes                       Date

_____         _____
Charles Hoff                        Date

_____         _____
Michael Baden                       Date   10/12/16

_____         _____
Jerry Lautigar                      Date

_____         _____
John Malloy                         Date

_____         _____
Hans Shanks                         Date

_____         _____
Layla Patterson                     Date

_____         _____
Debra Dockstader                    Date

_____         _____
Season Gomez                        Date

APPROVED AND AGREED TO BY PLAINTIFFS:

| | |
|---|---|
| _____ | _____ |
| Angelita Hickman | Date |
| _____ | _____ |
| Michael Reyes | Date |
| _____ | _____ |
| Charles Hoff | Date |
| _____ | _____ |
| Michael Baden | Date |
| _____ | 10/12/16 |
| Jerry Lautigar | Date |
| _____ | _____ |
| John Malloy | Date |
| _____ | _____ |
| Hans Shanks | Date |
| _____ | _____ |
| Layla Patterson | Date |
| _____ | _____ |
| Debra Dockstader | Date |
| _____ | _____ |
| Season Gomez | Date |

EXECUTION COPY

APPROVED AND AGREED TO BY PLAINTIFFS:

_____     _____
Angelita Hickman                 Date


_____     _____
Michael Reyes                    Date


_____     _____
Charles Hoff                     Date


_____     _____
Michael Baden                    Date


_____     _____
Jerry Lautigar                   Date


*John Malloy* (signature)        10/10/16
John Malloy                      Date


_____     _____
Hans Shanks                      Date


_____     _____
Layla Patterson                  Date


_____     _____
Debra Dockstader                 Date


_____     _____
Season Gomez                     Date

EXECUTION COPY

APPROVED AND AGREED TO BY PLAINTIFFS:

_____          _____
Angelita Hickman                                              Date

_____          _____
Michael Reyes                                                  Date

_____          _____
Charles Hoff                                                    Date

_____          _____
Michael Baden                                                 Date

_____          _____
Jerry Lautigar                                                 Date

_____          _____
John Malloy                                                    Date

_____          10-11-2016
Hans Shanks                                                   Date

_____          _____
Layla Patterson                                              Date

_____          _____
Debra Dockstader                                          Date

_____          _____
Season Gomez                                               Date

EXECUTION COPY

APPROVED AND AGREED TO BY PLAINTIFFS:

_____     _____
Angelita Hickman                Date


_____     _____
Michael Reyes                   Date


_____     _____
Charles Hoff                    Date


_____     _____
Michael Baden                   Date


_____     _____
Jerry Lautigar                  Date


_____     _____
John Malloy                     Date


_____     _____
Hans Shanks                     Date


_____     10-5-2016
Layla Patterson                 Date


_____     _____
Debra Dockstader                Date


_____     _____
Season Gomez                    Date

APPROVED AND AGREED TO BY PLAINTIFFS:


_____          _____
Angelita Hickman                          Date


_____          _____
Michael Reyes                             Date


_____          _____
Charles Hoff                              Date


_____          _____
Michael Baden                             Date


_____          _____
Jerry Lautigar                            Date


_____          _____
John Malloy                               Date


_____          _____
Hans Shanks                               Date


_____          _____
Layla Patterson                           Date

_____          5 Oct. 2016
Debra Dockstader                          _____
                                          Date


_____          _____
Season Gomez                              Date

EXECUTION COPY

APPROVED AND AGREED TO BY PLAINTIFFS:

_____        _____
Angelita Hickman                        Date

_____        _____
Michael Reyes                           Date

_____        _____
Charles Hoff                            Date

_____        _____
Michael Baden                           Date

_____        _____
Jerry Lautigar                          Date

_____        _____
John Malloy                             Date

_____        _____
Hans Shanks                             Date

_____        _____
Layla Patterson                         Date

_____        _____
Debra Dockstader                        Date

_____        10/6/16
Season Gomez                            Date

EXECUTION COPY

_____     10-7-16
Conrad Shogren                      Date

_____     _____
David Sullivan                      Date

_____     _____
Kathleen Sullivan                   Date

_____     _____
Tracy McCoy                         Date

_____     _____
Cory Fales                          Date

_____     _____
Robert Webber                       Date

_____     _____
Rick Boscardin                      Date

_____     _____
Cynthia Scaglione                   Date

_____     _____
Jeffrey Mies                        Date

_____     _____
Don Gibson                          Date

_____     _____
Scott Holbrook                      Date

EXECUTION COPY

_____            _____
Conrad Shogren                          Date

_David Sull___                          _10-6-16_
David Sullivan                          Date

_Kathleen Sullivan_                     _10-6-16_
Kathleen Sullivan                       Date

_____            _____
Tracy McCoy                             Date

_____            _____
Cory Fales                              Date

_____            _____
Robert Webber                           Date

_____            _____
Rick Boscardin                          Date

_____            _____
Cynthia Scaglione                       Date

_____            _____
Jeffrey Mies                            Date

_____            _____
Don Gibson                              Date

_____            _____
Scott Holbrook                          Date

Page **45** of **48**

EXECUTION COPY

_____          _____
Conrad Shogren                   Date


_____          _____
David Sullivan                   Date


_____          _____
Kathleen Sullivan                Date


_Tracy McCoy_                    _10/4/16_
Tracy McCoy                      Date


_____          _____
Cory Fales                       Date


_____          _____
Robert Webber                    Date


_____          _____
Rick Boscardin                   Date


_____          _____
Cynthia Scaglione                Date


_____          _____
Jeffrey Mies                     Date


_____          _____
Don Gibson                       Date


_____          _____
Scott Holbrook                   Date

EXECUTION COPY

_____       _____
Conrad Shogren                         Date


_____       _____
David Sullivan                         Date


_____       _____
Kathleen Sullivan                      Date


_____       _____
Tracy McCoy                            Date


_____       6-OCTOBER-2016
Cory Fales                             Date


_____       _____
Robert Webber                          Date


_____       _____
Rick Boscardin                         Date


_____       _____
Cynthia Scaglione                      Date


_____       _____
Jeffrey Mies                           Date


_____       _____
Don Gibson                             Date


_____       _____
Scott Holbrook                         Date

Conrad Shogren           Date

David Sullivan           Date

Kathleen Sullivan           Date

Tracy McCoy           Date

Cory Fales           Date

Robert Webber           10/7/16
                        Date

Rick Boscardin           Date

Cynthia Scaglione           Date

Jeffrey Mies           Date

Don Gibson           Date

Scott Holbrook           Date

EXECUTION COPY

_____          _____
Conrad Shogren                        Date

_____          _____
David Sullivan                        Date

_____          _____
Kathleen Sullivan                     Date

_____          _____
Tracy McCoy                           Date

_____          _____
Cory Fales                            Date

_____          _____
Robert Webber                         Date

_____          _____
Rick Boscardin                        Date    10/10/16

_____          _____
Cynthia Scaglione                     Date

_____          _____
Jeffrey Mies                          Date

_____          _____
Don Gibson                            Date

_____          _____
Scott Holbrook                        Date

EXECUTION COPY

_____     _____
Conrad Shogren                      Date


_____     _____
David Sullivan                      Date


_____     _____
Kathleen Sullivan                   Date


_____     _____
Tracy McCoy                         Date


_____     _____
Cory Fales                          Date


_____     _____
Robert Webber                       Date


_____     _____
Rick Boscardin                      Date

*Cynthia A. Scaglione*              10/6/16
_____     _____
Cynthia Scaglione                   Date


_____     _____
Jeffrey Mies                        Date


_____     _____
Don Gibson                          Date


_____     _____
Scott Holbrook                      Date

EXECUTION COPY

| | |
|---|---|
| Conrad Shogren | Date |

| | |
|---|---|
| David Sullivan | Date |

| | |
|---|---|
| Kathleen Sullivan | Date |

| | |
|---|---|
| Tracy McCoy | Date |

| | |
|---|---|
| Cory Fales | Date |

| | |
|---|---|
| Robert Webber | Date |

| | |
|---|---|
| Rick Boscardin | Date |

| | |
|---|---|
| Cynthia Scaglione | Date |

| | |
|---|---|
| Jeffrey Mies | $10-11-16$ Date |

| | |
|---|---|
| Don Gibson | Date |

| | |
|---|---|
| Scott Holbrook | Date |

Page **45** of **48**

| | |
|---|---|
| Conrad Shogren | Date |
| David Sullivan | Date |
| Kathleen Sullivan | Date |
| Tracy McCoy | Date |
| Cory Fales | Date |
| Robert Webber | Date |
| Rick Boscardin | Date |
| Cynthia Scaglione | Date |
| Jeffrey Mies | Date |

Don Gibson

10/7/2016
Date

Scott Holbrook                              Date

EXECUTION COPY

_____     _____
Conrad Shogren                       Date


_____     _____
David Sullivan                       Date


_____     _____
Kathleen Sullivan                    Date


_____     _____
Tracy McCoy                          Date


_____     _____
Cory Fales                           Date


_____     _____
Robert Webber                        Date


_____     _____
Rick Boscardin                       Date


_____     _____
Cynthia Scaglione                    Date


_____     _____
Jeffrey Mies                         Date


_____     _____
Don Gibson                           Date

_Scott Holbrook_                     _10/10/16_
Scott Holbrook                       Date

EXECUTION COPY

_Ed Anderson_      10/7/2016
Ed Anderson             Date

_____    _____
John Riello               Date

_____    _____
Robert Dorgan           Date

_____    _____
Carol Larson            Date

_____    _____
Ulbardo Fernandez      Date

_____    _____
James Leonard           Date

_____    _____
Joan Leonard            Date

_____    _____
Christopher McLamb      Date

_____    _____
Tamela McLamb          Date

_____    _____
Irma Blank              Date

_____    _____
Leasha Dixson           Date

EXECUTION COPY

Ed Anderson        Date

_____

John Riello        10 - 11 - 16
                   Date

Robert Dorgan        Date

Carol Larson        Date

Ulbardo Fernandez        Date

James Leonard        Date

Joan Leonard        Date

Christopher McLamb        Date

Tamela McLamb        Date

Irma Blank        Date

Leasha Dixson        Date

EXECUTION COPY

_____          _____
Ed Anderson                          Date


_____          _____
John Riello                          Date

_Robert Dorgan_ _(signature)_        10/10/16
_____          _____
Robert Dorgan                        Date


_____          _____
Carol Larson                         Date


_____          _____
Ulbardo Fernandez                    Date


_____          _____
James Leonard                        Date


_____          _____
Joan Leonard                         Date


_____          _____
Christopher McLamb                   Date


_____          _____
Tamela McLamb                        Date


_____          _____
Irma Blank                           Date


_____          _____
Leasha Dixson                        Date

_____     _____
Ed Anderson                          Date


_____     _____
John Riello                          Date


_____     _____
Robert Dorgan                        Date


*Carol Larson*                       10-6-16
_____     _____
Carol Larson                         Date


_____     _____
Ulbardo Fernandez                    Date


_____     _____
James Leonard                        Date


_____     _____
Joan Leonard                         Date


_____     _____
Christopher McLamb                   Date


_____     _____
Tamela McLamb                        Date


_____     _____
Irma Blank                           Date


_____     _____
Leasha Dixson                        Date

EXECUTION COPY

Ed Anderson                          Date

John Riello                          Date

Robert Dorgan                        Date

Carol Larson                         Date

Ulbardo Fernandez                    10/12/16
                                     Date

James Leonard                        Date

Joan Leonard                         Date

Christopher McLamb                   Date

Tamela McLamb                        Date

Irma Blank                           Date

Leasha Dixson                        Date

EXECUTION COPY

_____          _____
Ed Anderson                      Date

_____          _____
John Riello                      Date

_____          _____
Robert Dorgan                    Date

_____          _____
Carol Larson                     Date

_____          _____
Ulbardo Fernandez                Date

_____          10/4/16
James Leonard                    Date

_____          10/4/16
Joan Leonard                     Date

_____          _____
Christopher McLamb               Date

_____          _____
Tamela McLamb                    Date

_____          _____
Irma Blank                       Date

_____          _____
Leasha Dixson                    Date

EXECUTION COPY

_____          _____
Ed Anderson                               Date


_____          _____
John Riello                               Date


_____          _____
Robert Dorgan                             Date


_____          _____
Carol Larson                              Date


_____          _____
Ulbardo Fernandez                         Date


_____          _____
James Leonard                             Date


_____          _____
Joan Leonard                              Date


_____          _10 - 13-16_____
Christopher McLamb                        Date


_____          _10 -13-16_____
Tamela McLamb                             Date


_____          _____
Irma Blank                                Date


_____          _____
Leasha Dixson                             Date

EXECUTION COPY

_____     _____
Ed Anderson                   Date

_____     _____
John Riello                   Date

_____     _____
Robert Dorgan                 Date

_____     _____
Carol Larson                  Date

_____     _____
Ulbardo Fernandez             Date

_____     _____
James Leonard                 Date

_____     _____
Joan Leonard                  Date

_____     _____
Christopher McLamb            Date

_____     _____
Tamela McLamb                 Date

                              ON BEHALF OF IRMA A BLANK

_____     10-14-16
Irma Blank                    Date

_____     _____
Leasha Dixson                 Date

Page 46 of 48

Ed Anderson                          Date

John Riello                          Date

Robert Dorgan                        Date

Carol Larson                         Date

Ulbardo Fernandez                    Date

James Leonard                        Date

Joan Leonard                         Date

Christopher McLamb                   Date

Tamela McLamb                        Date

Irma Blank                           Date

Leasha Dixson                        Date
                                     10-5-2016

EXECUTION COPY

_Steven Cady (signature)_
Steven Cady

_10-8-16_
Date

_Gina Cady (signature)_
Gina Cady

_Oct 8th 2016_
Date

_____
Lawrence Fredericks

_____
Date

_____
Scott Reinhart

_____
Date

_____
Mark Renzi

_____
Date

_____
Paula Rogers

_____
Date

_____
Dominic Ray Diaz

_____
Date

_____
Becki S. Murphy

_____
Date

_____
Sharon Ledford

_____
Date

_____
George Reynolds

_____
Date

_____
Michael Allen

_____
Date

Page **47** of **48**

◀ Back to Message    Rustoleum Settlement Agreem...   1 / 1

EXECUTION COPY

_____          _____
Steven Cady                              Date


_____          _____
Gina Cady                                Date


*Lawrence Frederick,*                    *10-10-16*
_____          _____
Lawrence Fredericks                      Date


_____          _____
Scott Reinhart                           Date


_____          _____
Mark Renzi                               Date


_____          _____
Paula Rogers                             Date


_____          _____
Dominic Ray Diaz                         Date


_____          _____
Becki S. Murphy                          Date


_____          _____
Sharon Ledford                           Date


_____          _____
George Reynolds                          Date


_____          _____
Michael Allen                            Date

EXECUTION COPY

_____          _____
Steven Cady                          Date


_____          _____
Gina Cady                            Date


_____          _____
Lawrence Fredericks                  Date

_____          OCTOBER 4, 2016
Scott Reinhart                       Date


_____          _____
Mark Renzi                           Date


_____          _____
Paula Rogers                         Date


_____          _____
Dominic Ray Diaz                     Date


_____          _____
Becki S. Murphy                      Date


_____          _____
Sharon Ledford                       Date


_____          _____
George Reynolds                      Date


_____          _____
Michael Allen                        Date

EXECUTION COPY

Steven Cady _____     Date _____

Gina Cady _____     Date _____

Lawrence Fredericks _____     Date _____

Scott Reinhart _____     Date _____

_Mark Renzi_ _____     10/7/16
Mark Renzi     Date

Paula Rogers _____     Date _____

Dominic Ray Diaz _____     Date _____

Becki S. Murphy _____     Date _____

Sharon Ledford _____     Date _____

George Reynolds _____     Date _____

Michael Allen _____     Date _____

Paula Rogers                                              6155474186          P.2

EXECUTION COPY

_____          _____
Steven Cady                          Date


_____          _____
Gina Cady                            Date


_____          _____
Lawrence Fredericks                  Date


_____          _____
Scott Reinhart                       Date


_____          _____
Mark Renzi                           Date

*Paula Rogers* (signature)           10/12/2016
_____          _____
Paula Rogers                         Date


_____          _____
Dominic Ray Diaz                     Date


_____          _____
Becki S. Murphy                      Date


_____          _____
Sharon Ledford                       Date


_____          _____
George Reynolds                      Date


_____          _____
Michael Allen                        Date

EXECUTION COPY

_____          _____
Steven Cady                                Date


_____          _____
Gina Cady                                  Date


_____          _____
Lawrence Fredericks                        Date


_____          _____
Scott Reinhart                             Date


_____          _____
Mark Renzi                                 Date


_____          _____
Paula Rogers                               Date


_____          _____
Dominic Ray Diaz                           Date


_____          _____
Becki S. Murphy                            Date


_____          _____
Sharon Ledford                             Date


_____          _____
George Reynolds                            Date


_____          _____
Michael Allen                              Date

EXECUTION COPY

_____     _____
Steven Cady                          Date


_____     _____
Gina Cady                            Date


_____     _____
Lawrence Fredericks                  Date


_____     _____
Scott Reinhart                       Date


_____     _____
Mark Renzi                           Date


_____     _____
Paula Rogers                         Date


_____     _____
Dominic Ray Diaz                     Date


_____     _____
Becki S. Murphy                      Date
                                     10/5/2016


_____     _____
Sharon Ledford                       Date


_____     _____
George Reynolds                      Date


_____     _____
Michael Allen                        Date

_____            _____
Steven Cady                          Date

_____            _____
Gina Cady                            Date

_____            _____
Lawrence Fredericks                  Date

_____            _____
Scott Reinhart                       Date

_____            _____
Mark Renzi                           Date

_____            _____
Paula Rogers                         Date

_____            _____
Dominic Ray Diaz                     Date

_____            _____
Becki S. Murphy                      Date

_____            _____
Sharon Ledford                       10-12-16
                                     Date

_____            _____
George Reynolds                      Date

_____            _____
Michael Allen                        Date

EXECUTION COPY

_____          _____
Steven Cady                              Date


_____          _____
Gina Cady                                Date


_____          _____
Lawrence Fredericks                      Date


_____          _____
Scott Reinhart                           Date


_____          _____
Mark Renzi                               Date


_____          _____
Paula Rogers                             Date


_____          _____
Dominic Ray Diaz                         Date


_____          _____
Becki S. Murphy                          Date


_____          _____
Sharon Ledford                           Date


_____          10-7-16
George Reynolds                          Date


_____          _____
Michael Allen                            Date

EXECUTION COPY

_____     _____
Steven Cady                          Date


_____     _____
Gina Cady                            Date


_____     _____
Lawrence Fredericks                  Date


_____     _____
Scott Reinhart                       Date


_____     _____
Mark Renzi                           Date


_____     _____
Paula Rogers                         Date


_____     _____
Dominic Ray Diaz                     Date


_____     _____
Becki S. Murphy                      Date


_____     _____
Sharon Ledford                       Date


_____     _____
George Reynolds                      Date


_____     _____
Michael Allen                        Date  10/6/16


Page **47** of **48**

_Carrie McCain_     _10-4-2016_
Carrie McCain          Date

_____    _____
Daniel T. Howell            Date

EXECUTION COPY



Carrie McCain                          Date

Daniel T. Howell                       Date

# EXHIBIT A

LEGAL NOTICE

# If you purchased certain Rust-Oleum Restore products, you may be eligible for a payment from a class action settlement.

## *Restore Products Include: Deck & Concrete Restore, Deck Restore, Concrete Restore, and Restore 10X*

A settlement has been reached with Rust-Oleum Corp. in a class action lawsuit about whether certain Restore Products are defective (the "Settlement"). Rust-Oleum denies all of the claims in the lawsuit. The Court has not decided who is right.

**WHO IS INCLUDED?** The Settlement includes all persons and entities in the United States and its territories who purchased, not for resale, a Restore Product (Deck & Concrete Restore, Deck Restore, Concrete Restore, and Restore 10X) from January 1, 2008 through [Preliminary Approval date] ("Settlement Class Members").

**WHAT DOES THE SETTLEMENT PROVIDE?** Rust-Oleum will pay $9,300,000 into a Settlement Fund. Additionally, Rust-Oleum will pay separately all of the costs of providing notice to the Class and all administrative expenses relating to the Settlement (subject to limited credits and reimbursements from the Settlement Fund). After deducting Court-approved attorneys' fees, costs and expenses, incentive awards, taxes, other fees, expenses, and certain reimbursements to Rust-Oleum, the balance will be distributed to Settlement Class Members who submit valid Claim Forms. Compensation to Settlement Class Members will vary, and includes, but is not limited to, cash payments (for product replacement or repair costs) and, if elected, replacement product.

**HOW DO YOU ASK FOR A PAYMENT?** You must complete and submit a Claim Form. Claim Forms may be submitted online at www._____.com or printed from the website and submitted by mail. Claim Forms are also available by calling 1-___-___-___ or by writing to *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation* Claims Administrator, PO Box _____, City, ST _____-_____.

**YOUR OTHER OPTIONS.** If you do nothing, your rights will be affected but you will not get a Settlement payment. If you do not want to be legally bound by the Settlement, you must exclude yourself from it by _____, ____. Unless you exclude yourself, you will not be able to sue or continue to sue Rust-Oleum for any legal claim resolved by this Settlement or released by the Settlement Agreement. If you exclude yourself, you cannot get a Settlement payment but you are free to pursue any legal claims that you may have against Rust-Oleum in a different lawsuit. If you stay in the Settlement (that is, don't exclude yourself), you may object to it by _____, ____. More information can be found in the detailed Notice and Settlement Agreement, which are available at www._____.com.

**THE FINAL APPROVAL HEARING.** District Judge Amy J. St. Eve of the U.S. District Court for the Northern District of Illinois, located at 219 South Dearborn Street, Courtroom 1241, Chicago, Illinois 60604, will hold a hearing in this case (*In re Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litig.*, N.D. Ill., No. 15-cv-1364) on _____, ____. At this hearing, the Court will decide whether to approve: the Settlement; Class Counsel's request for attorneys' fees of up to 33% of the Settlement Fund, plus reimbursement of costs and expenses; and $2,000 as an incentive award to each of the Class Representatives. You may appear at the hearing, but you do not have to. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

## 1-___-____-____
## www._____.com

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

# If you purchased certain Rust-Oleum Restore products, you may be eligible for a payment from a class action settlement.

*Restore Products Include Deck & Concrete Restore, Deck Restore, Concrete Restore, and Restore 10X*

A federal court authorized this notice. This is not a solicitation from a lawyer.

- A $9.3 million settlement has been reached with Rust-Oleum in a class action lawsuit about whether certain Restore Products are defective (the "Settlement").

- You may be included in the Settlement and eligible for a payment if you purchased Deck & Concrete Restore, Deck Restore, Concrete Restore, or Restore 10X ("Restore Products").

- Your legal rights are affected whether or not you act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way you can receive a payment from this Settlement. If you submit a Claim Form, you will give up the right to sue Rust-Oleum in a separate lawsuit about the claims this Settlement resolves. |
| **EXCLUDE YOURSELF** | This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Rust-Oleum related to the legal claims this Settlement resolves. But if you exclude yourself, you will no longer be eligible to receive a payment from this Settlement. |
| **OBJECT** | You may write to the Court if you do not like the Settlement. |
| **GO TO A HEARING** | You may ask to appear and speak to the Court about the fairness of the Settlement. |
| **DO NOTHING** | Unless you exclude yourself, you are automatically part of the Settlement. If you do nothing, you will not get a payment from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against Rust-Oleum about the legal claims resolved by this Settlement. |

- These rights and options—**and the deadlines for exercising them**—are explained in this notice.

- The Court has to decide whether to approve the Settlement. Payments will be distributed to those who qualify if the Court approves the Settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**.................................................................................................................**3**

   1.   WHY WAS THIS NOTICE ISSUED? ................................................................................3
   2.   WHAT IS THIS LAWSUIT ABOUT? ...............................................................................3
   3.   WHY IS THE CASE A CLASS ACTION? ..........................................................................3
   4.   WHY IS THERE A SETTLEMENT? .................................................................................3

**WHO IS INCLUDED IN THE SETTLEMENT** ..........................................................................**3**

   5.   HOW DO I KNOW WHETHER I AM PART OF THE SETTLEMENT? .......................................3
   6.   ARE THERE EXCEPTIONS TO BEING INCLUDED? ...........................................................4
   7.   I'M STILL NOT SURE IF I AM INCLUDED. .....................................................................4

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY** ...............................**4**

   8.   WHAT DOES THE SETTLEMENT PROVIDE? ...................................................................4
   9.   HOW MUCH WILL MY PAYMENT BE? ...........................................................................4

**HOW TO GET A SETTLEMENT PAYMENT—SUBMITTING A CLAIM FORM**........................**5**

   10.   HOW DO I GET A PAYMENT? ....................................................................................5
   11.   WHEN CAN I SUBMIT A CLAIM FORM? .......................................................................5
   12.   WHEN WOULD I RECEIVE MY PAYMENT? ....................................................................5
   13.   WHAT AM I GIVING UP TO RECEIVE A PAYMENT OR STAY IN THE SETTLEMENT CLASS? ....5
   14.   WHAT ARE THE RELEASED CLAIMS? ..........................................................................5

**THE LAWYERS REPRESENTING YOU** ...................................................................................**6**

   15.   DO I HAVE A LAWYER IN THIS CASE? .........................................................................6
   16.   HOW WILL THE LAWYERS BE PAID? ...........................................................................6

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...............................................................**6**

   17.   HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS? .......................................6
   18.   IF I EXCLUDE MYSELF, CAN I STILL GET A SETTLEMENT PAYMENT? ...............................6
   19.   IF I DON'T EXCLUDE MYSELF, CAN I SUE RUST-OLEUM FOR THE SAME THING LATER? .........6

**OBJECTING TO THE SETTLEMENT** .......................................................................................**6**

   20.   HOW DO I TELL THE COURT IF I DO NOT LIKE THE SETTLEMENT? ...................................6
   21.   WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING? ...............................7

**THE FINAL APPROVAL HEARING** .........................................................................................**7**

   22.   WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? ........7
   23.   DO I HAVE TO ATTEND THE HEARING? .......................................................................7
   24.   MAY I SPEAK AT THE HEARING? ...............................................................................7

**IF YOU DO NOTHING** .............................................................................................................**7**

   25.   WHAT HAPPENS IF I DO NOTHING? .............................................................................8

**GETTING MORE INFORMATION**............................................................................................**8**

   26.   HOW DO I GET MORE INFORMATION? ..........................................................................8

**QUESTIONS? GO TO WWW._____.COM OR CALL 1-___-___-____**

## BASIC INFORMATION

**1. Why was this notice issued?**

A federal court authorized this notice because you have a right to know about the proposed Settlement of this class action lawsuit and all of your options before the Court decides whether to grant final approval to the Settlement. This notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

Judge Amy J. St. Eve of the United States District Court for the Northern District of Illinois is overseeing this class action. The case is known as *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, N.D. Ill. Civil Action No. 15-cv-1364. The people who filed this lawsuit are called the "Plaintiffs" and the company they sued, Rust-Oleum Corporation, is called the "Defendant."

**2. What is this lawsuit about?**

The lawsuit claims that Restore Products are defective because they prematurely peel, chip, or degrade after application. As a result, it is alleged, the marketing and warranty promises made in connection with the sale of Restore Products are false and misleading. The lawsuit also claims that Rust-Oleum knew or should have known that Restore Products would not live up to those promises. More information and specific details about the lawsuit can be found in the Second Amended Class Action Complaint available at www._____.com.

Rust-Oleum denies all of the claims and allegations made in the lawsuit.

**3. Why is the case a class action?**

In a class action, one or more people called "Plaintiffs" or "Class Representatives" (in this case, Angelita Hickman, Michael Reyes, Charles Hoff, Michael Baden, Jerry Lautigar, John Malloy, Hans Shanks, Layla Patterson, Debra Dockstader, Season Gomez, Conrad Shogren, David Sullivan, Kathleen Sullivan, Tracy McCoy, Cory Fales, Robert Webber, Rick Boscardin, Cynthia Scaglione, Jeffrey Mies, Don Gibson, Scott Holbrook, Ed Anderson, John Riello, Robert Dorgan, Carol Larson, Ulbardo Fernandez, James Leonard, Joan Leonard, Christopher McLamb, Tamela McLamb, Irma Blank, Leasha Dixson, Steven Cady, Gina Cady, Lawrence Fredericks, Scott Reinhart, Mark Renzi, Paula Rogers, Dominic Ray Diaz, Becki S. Murphy, Sharon Ledford, George Reynolds, Michael Allen, Carrie McCain, and Daniel T. Howell) sue on behalf of themselves and other people who have similar claims. Together, all the people with similar claims (except those who exclude themselves) are members of a "Class." One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

**4. Why is there a Settlement?**

The Court did not decide in favor of the Plaintiffs or Rust-Oleum. Instead, both sides agreed to a Settlement. This Settlement allows the Plaintiffs and Rust-Oleum to avoid the risks and costs of complex litigation and the uncertainty of trial and appeals. The Class Representatives and their attorneys believe this Settlement is in the best interests of all Settlement Class Members.

## WHO IS INCLUDED IN THE SETTLEMENT

**5. How do I know whether I am part of the Settlement?**

The Settlement Class includes all persons and entities in the United States and its territories who purchased, not for resale, a Restore Product (Deck & Concrete Restore, Deck Restore, Concrete Restore, and Restore 10X) from January 1, 2008 through [Preliminary Approval date] (the "Class Period").

Restore 10X Advanced, Restore 4X, and other Restore-branded products are NOT included in the Settlement.

| 6. | Are there exceptions to being included? |
|---|---|

Yes. The Settlement does not include (i) all persons and entities who filed a claim concerning a Restore Product in any court, if that claim has been resolved with a final judgment or order; (ii) Rust-Oleum, any entity in which Rust-Oleum has a controlling interest, any person or entity which has a controlling interest in Rust-Oleum, and Rust-Oleum's legal representatives, assigns, and successors; and (iii) the judge to whom this MDL Action is assigned and any member of the judge's immediate family.

| 7. | I'm still not sure if I am included. |
|---|---|

If you are not sure whether you are in the Settlement Class, go to www._____.com, call 1-___-___-____, send an email to [EMAIL ADDRESS], or write to *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation* Claims Administrator [ADDRESS].

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

| 8. | What does the Settlement provide? |
|---|---|

A $9,300,000 Settlement Fund has been established by Rust-Oleum in this Settlement. Additionally, Rust-Oleum shall pay separately all of the costs of providing notice to the Class and all expenses relating to the administration of the Settlement (subject to certain reimbursements from the Settlement Fund). After deducting Court-approved attorneys' fees, costs and expenses, incentive awards for the Class Representatives, taxes, the Special Master's fees and expenses, product cost reimbursements to Rust-Oleum for Class Members who receive product pursuant to the Settlement, and up to a $300,000 credit to Rust-Oleum for administrative costs, the balance (the "Net Settlement Fund") will be distributed to Settlement Class Members who submit valid Claim Forms (subject to possible reimbursement payments to Rust-Oleum for certain warranty relief provided between Preliminary Approval and Final Approval of the Settlement).

| 9. | How much will my payment be? |
|---|---|

Settlement payments will vary based on the documentation you submit with your Claim Form, whether you experienced a Qualifying Problem (adhesion-related problem with a Restore Product), the type of problem you experienced, and the number of Claims submitted. The Claims Administrator will use the following guidelines in evaluating Claims for initial payment:

- **Tier 1:** Settlement Class Members who include proof that they purchased a Restore Product during the Class Period and proof that they experienced a Qualifying Problem with that product are eligible to receive their choice of either (a) reimbursement for the Restore Product purchased, *or* (b) enough Restore 10X Advanced (and primer) to cover the area where the purchased Restore Product was applied.

- **Tier 2:** Settlement Class Members who include proof that, because of a Qualifying Problem, they have or will incur costs to remove the Restore Product from a deck or other substrate (including the amount of these costs) and a statement indicating the percentage of the area requiring removal are eligible to receive Tier 1 compensation and a payment equal to the lesser of (a) $2.00 multiplied by the square footage of the area the Restore Product was applied, multiplied by the percentage of the area requiring removal; *or* (b) the amount indicated on the proof of removal costs.

- **Tier 3:** Settlement Class Members who include proof that, because of a Qualifying Problem, they have or will incur costs to repair or replace decking or other substrate (including the amount of these costs) and a statement indicating the percentage of the area requiring repair or replacement are eligible to receive Tier 1

compensation and a payment equal to the lesser of (a) $6.00 multiplied by the square footage of the area the Restore Product was applied, multiplied by the percentage of the area requiring repair or replacement; *or* (b) the amount indicated on the proof of repair or replacement costs.

**Special Circumstances Supplemental Compensation:** In addition to the above payments, if the Claims Administrator determines that sufficient funds exist after calculating all eligible payments, expenses, and other costs, applications for Supplemental Compensation to Settlement Class Members due to Special Circumstances will be considered and awarded under the Settlement. Special Circumstances may include any additional out-of-pocket costs associated with removal and replacement of Restore and/or the decking or other area where the Restore Product was applied.

# HOW TO GET A SETTLEMENT PAYMENT—SUBMITTING A CLAIM FORM

## 10. How do I get a payment?

You must complete and submit a Claim Form with all required supporting documentation. Claim Forms may be submitted online at www._____.com or printed from the website and submitted via U.S. Mail. Claim Forms are also available by calling 1-___-___-____, sending an email to [EMAIL ADDRESS], or by writing to *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation* Claims Administrator [ADDRESS].

## 11. When can I submit a Claim Form?

The claims period will begin the day after the Court grants final approval to the Settlement and enters a Final Approval Order. The claims period will be open for at least 180 days, but may be longer in the event of an appeal.

## 12. When would I receive my payment?

The Court will hold a Fairness Hearing on _____, ____ to decide whether to grant final approval to the Settlement. If the Court approves the Settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. The Net Settlement Fund will be distributed to Settlement Class Members who submit valid Claim Forms if and when the Court grants final approval to the Settlement, after any appeals are resolved, all Claim Forms have been received, and payments have been calculated. Please be patient.

## 13. What am I giving up to receive a payment or stay in the Settlement Class?

Unless you exclude yourself, you are choosing to stay in the Settlement Class. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You won't be able to sue, continue to sue, or be part of any other lawsuit against Rust-Oleum and the Released Persons about the legal issues in this case. However, if you do not receive a Settlement payment, you will keep any and all warranty rights received through the purchase of a Restore Product.

The rights you are giving up are called Released Claims. See Question 14 for more detail on the Released Persons and Released Claims.

## 14. What are the Released Claims?

Generally, if and when the Settlement becomes final, members of the Settlement Class will permanently release Rust-Oleum, RPM International Inc., Synta Inc., any person or entity that manufactured, distributed, or sold the Restore Product (excluding installers in their role as installers, but not as sellers), suppliers and service providers engaged by Rust-Oleum (the "Released Persons"), and the past, present, and future controlling persons, directors, officers, employees, agents, servants, independent contractors, joint venturers, representatives, advisors, consultants, attorneys, insurers, subrogees, shareholders, partners, members, subsidiaries, divisions, parents, affiliates, predecessors, heirs, executors, administrators, successors, and assigns

of any Released Person for any and all claims related to the advertising, marketing, promotion, labeling, purchase, sale, distribution, design, testing, manufacture, application, use, performance, or warranting of any Restore Product purchased during the Class Period.

The specific claims you will be releasing are described in the Settlement Agreement, available at www._____.com.

## THE LAWYERS REPRESENTING YOU

### 15. Do I have a lawyer in this case?

Yes. Judge St. Eve appointed the law firms of Audet & Partners, LLP and Lite DePalma Greenberg LLC as "Class Counsel" to represent you and the Settlement Class Members. Additional law firms have filed cases and serve as counsel for the plaintiffs, a list of which is available on the settlement website. These law firms are experienced in handling similar cases. You will not be personally charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 16. How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees of up to thirty-three percent of the Settlement Fund plus reimbursement of costs and expenses incurred by Class Counsel, and a $2,000 incentive award to each Class Representative in the litigation. The Court may award less than these amounts. Class Counsel will post its application on the settlement website at www._____.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue Rust-Oleum or the Released Persons about the legal claims in this case, and you do not want to receive a Settlement payment, you must take steps to get out of the Settlement. This is called excluding yourself or opting out of the Settlement.

### 17. How do I exclude myself from the Settlement Class?

To exclude yourself from the Settlement Class, you must send a letter or other written document by mail to the Claims Administrator. Your letter request must include: (1) your full name, current address, and telephone number; (2) the location of the relevant deck or other substrate the Restore Product was applied to, if different than your address; (3) proof that you purchased a Restore Product during the Class Period; and (4) a statement indicating that you want to be excluded from the settlement, such as: "I/We hereby request that I/we be excluded from the proposed class in *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*." You must mail your exclusion request, postmarked no later than _____, to *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation* Claims Administrator [ADDRESS].

You cannot ask to be excluded on the phone, by email, or at the website.

### 18. If I exclude myself, can I still get a Settlement payment?

No. If you exclude yourself, you are telling the Court that you don't want to be part of the Settlement. You can get a payment only if you stay in the Settlement and submit a valid Claim Form.

### 19. If I don't exclude myself, can I sue Rust-Oleum for the same thing later?

No. Unless you exclude yourself, you give up the right to sue Rust-Oleum and Released Persons for the legal claims that this Settlement resolves. You must exclude yourself from *this* Lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against Rust-Oleum or any of the Released Persons.

## OBJECTING TO THE SETTLEMENT

### 20. How do I tell the Court if I do not like the Settlement?

**QUESTIONS? GO TO WWW._____.COM OR CALL 1-___-___-____**

If you are a Settlement Class Member, you can object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter via U.S. Mail saying that you object to the Settlement in *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*. Your objection must also include: (1) your full name, current address, and telephone number; (2) the location of the deck or other substrate the Restore Product was applied to, if different from your current address; (3) proof that you purchased a Restore Product during the Class Period; (4) a statement indicating the amount of the Restore Product purchased (in gallons or dollars); (5) all of your objections, the reasons for each, and all supporting papers, including all briefs, written evidence, and declarations; (6) a statement of whether you intend to appear at the Final Approval Hearing; and (7) your signature and the signature of any attorney representing you. You must mail your objection to all three addresses below postmarked on or before _____:

| THE COURT | CO-CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of Court, MDL No. 2602 United States District Court for the Northern District of Illinois Everett McKinley Dirksen United States Courthouse 219 South Dearborn Street Chicago, IL 60604 | Lite DePalma Greenberg LLC Attn: Katrina Carroll 211 W. Wacker Drive, Suite 500 Chicago, IL 60606 | Mayer Brown LLP Attn: Lori Lightfoot 71 S. Wacker Drive Chicago, IL 60606 |

### 21. What is the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you remain a member of the Settlement Class (that is, do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Settlement. If you exclude yourself, you cannot object because the Settlement no longer affects you.

## THE FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to.

### 22. When and where will the Court decide whether to approve the Settlement?

The Court has scheduled a Final Approval Hearing on ____, at ____ at the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge St. Eve will listen to people who have asked to speak at the hearing (*see* Question 20 above). After the hearing, the Court will decide whether to approve the Settlement.

### 23. Do I have to attend the hearing?

No. Class Counsel will answer any questions the Court may have. However, you are welcome to come to the hearing at your own expense. If you send an objection, you do not have to come to court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but that is not necessary.

### 24. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing by including a statement in your objection indicating that you intend to appear at the Final Approval Hearing (*see* Question 20). You cannot speak at the hearing if you exclude yourself from the Settlement Class.

## IF YOU DO NOTHING

**QUESTIONS? GO TO WWW._____.COM OR CALL 1-___-___-____**

| 25. What happens if I do nothing? |
|---|

If you are a Settlement Class Member and you do nothing, you will give up the rights explained in Question 14, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Rust-Oleum and the Released Persons about the legal issues in this case. In addition, you will not receive a payment from the Settlement Fund.

## GETTING MORE INFORMATION

| 26. How do I get more information? |
|---|

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at www._____.com. Additional information is also available by calling 1-___-___-____ or by writing to *In re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation* Claims Administrator, [ADDRESS]. Publicly-filed documents can also be obtained by visiting the office of the Clerk of the United States District Court for the Northern District of Illinois or reviewing the Court's online docket.