## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| *In re: Rust-Oleum Restore Mktg., Sales Practices and Prods. Liab. Litig.* | Case No. 1:15-cv-01364 |
| | MDL No. 2602 |
| | Hon. Amy J. St. Eve |

---

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

---

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT .............................................................................................................. 3

I.   The Requested Fee Is Reasonable Under The Percentage Method .................................. 3

    A.   The *Synthroid I* Factors Support Plaintiffs' Fee Request ....................................... 4

        1.   Attorneys' Fee Awards in Other Class Action Cases ........................................ 4

        2.   Agreement Between Plaintiffs and Their Counsel............................................. 5

        3.   The Risk of Nonpayment..................................................................................... 6

        4.   The Quality of Class Counsel's Performance .................................................... 6

        5.   The Amount Of Work Necessary To Resolve This Litigation ........................ 10

        6.   The Stakes of This Litigation............................................................................ 10

    B.   The *Redman* Ratio Supports The Fee Request ....................................................... 11

    C.   Even Under The *Synthroid II* Sliding-Scale, Plaintiffs' Fee Request Is Justified ................................................. 13

        1.   The *Synthroid II* Sliding Scale Is Not Required Or Even Appropriate Here .................................................. 14

        2.   Even If This Court Applies A Sliding Scale, Plaintiffs' Fee Request is Reasonable...................................... 15

           i.   The Risk In This Litigation Warrant An Enhancement Under *Synthroid II*............................................. 16

i

       ii.  This Court's Ruling In *Craftwood II*
Does Not Conflict With An Upward Enhancement...................................16

I.    The Requested Fee Is Reasonable Under The Lodestar Method....................17

III.  The Requested Expenses Are Reasonable .....................................................20

IV.  The Requested Incentive Awards To Plaintiffs Are Appropriate...................21

CONCLUSION.................................................................................................................21

## **TABLE OF AUTHORITIES**

**United States Supreme Court**

*Pa. v. Del. Valley Citizens' Council for Clean Air,*
    478 U.S. 546 (1986) ............................................................................. 17

**United States Court Of Appeals**

*Americana Art China Co.,*
    743 F.3d 243 (7th Cir. 2014) .......................................................... 16, 17

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) ............................................................. 17

*Gaskill v. Gordon,*
    160 F.3d 361 (7th Cir. 1998) ............................................................. 3, 5

*In re Synthroid Mktg. Litig.,*
    264 F.3d 712 (7th Cir. 2001) ................................................................. 3

*In re Synthroid Mktg. Litig.,*
    325 F.3d 974 (7th Cir. 2003) ............................................................... 12

*In re Trans Union Corp. Privacy Litig.,*
    629 F.3d 741 (7th Cir. 2011) ............................................................... 14

*Levitt v. Sw. Airlines Co.  (In re Sw. Airlines Voucher Litig.),*
    799 F.3d 701 (7th Cir. 2015) ................................................................. 3

*Pearson v. NBTY, Inc.,*
    772 F.3d 778 (7th Cir. 2014) ...................................................... 1, 10, 11

*Redman v. Radioshack Corp.,*
    768 F.3d 622 (7th Cir. 2014) .......................................................... 1, 10

*Silverman v. Motorola Solutions, Inc.,*
    739 F.3d 956 (7th Cir. 2013) ............................................................... 13

*Skelton v. Gen. Motors Corp.,*
    860 F.2d 250 (7th Cir. 1988) ............................................................... 17

646672.1

**United States District Court**

*Abbott v. Lockheed Martin Corp.*,
No. 06-cv-701-MJR-DGW, 2015 U.S. Dist. LEXIS 93206
(S.D. Ill. July 17, 2015) ................................................................. 12, 19

*Bickel v. Sheriff of Whitley County*,
No. CAUSE NO.: 1:08-CV-102-TLS, 2015 U.S. Dist. LEXIS 38311
(N.D. Ind. Mar. 26, 2015) ............................................................... 12

*Capital One Tel. Consumer Prot. Act Litig. v. Capital One Fin. Corp.*
(*In re Capital One Tel. Consumer Prot. Act Litig.*),
80 F. Supp. 3d 781 (N.D. Ill. 2015) .............................................. 12-13

*City of Greenville v. Syngenta Crop Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012) ......................................... 4, 17, 19

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-cv-4462, 2015 U.S. Dist. LEXIS 35421
(N.D. Ill. Mar. 23, 2015) ................................................ 4, 12, 13-14, 16

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-cv-4462, 2015 U.S. Dist. LEXIS 59092
(N.D. Ill. May 6, 2015) ................................................... 11, 15-16, 16

*Dial Corp. v. News Corp.*,
No. 13cv6802, 2016 U.S. Dist. LEXIS 150528
(S.D.N.Y. Oct. 31, 2016) ................................................................ 19

*Fleisher v. Phx. Life Ins. Co.*,
No. 14-cv-8714 (CM), 2015 U.S. Dist. LEXIS 121574
(S.D.N.Y. Sept. 9, 2015) .................................................................. 8

*Gehrich v. Chase Bank U.S.*,
316 F.R.D. 215 (N.D. Ill. 2016) .............................................. 12, 13, 16

*Heekin v. Anthem, Inc.*,
No. 1:05-cv-01908-TWP-TAB, 2012 U.S. Dist. LEXIS 165464
(S.D. Ind. Nov. 20, 2012) ............................................................... 13

*In re Pub. Serv. Co. Sec. Litig.*,
125 F.R.D. 480 (S.D. Ind. 1988) ...................................................... 9

iv

*In re Sw. Airlines Voucher Litig.*,
   No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735
   (N.D. Ill. Aug. 26, 2013) ................................................................................................ 3, 20

*Kaufman v. Am. Express Travel Related Servs.*,
   No. 07-cv-1707 CLASS ACTION, 2016 U.S. Dist. LEXIS 26167
   (N.D. Ill. Mar. 2, 2016) ........................................................................................................ 12

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015) ................................................................................. 3, 12, 14

*McCue v. MB Fin., Inc.*,
   No. 15 cv 988, 2015 U.S. Dist. LEXIS 96653
   (N.D. Ill. July 23, 2015) ................................................................................................... 3, 12

*Meyenburg v. Exxon Mobil Corp.*,
   No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 52962
   (S.D. Ill. July 31, 2006) .......................................................................................................... 5

*Montgomery v. Aetna Plywood, Inc.*,
   No. 95 C 3193, 1999 U.S. Dist. LEXIS 4432
   (N.D. Ill. Mar. 16, 1999) ................................................................................................... 9, 10

*Prena v. BMO Fin. Corp.*,
   No. 15 C 09175, 2015 U.S. Dist. LEXIS 65474
   (N.D. Ill. May 15, 2015) ...................................................................................................... 12

*Reid v. Unilever U.S., Inc.*,
   No. 12 C 6058, 2015 U.S. Dist. LEXIS 75383
   (N.D. Ill. June 10, 2015) ...................................................................................................... 17

*Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.* ,
   No. 08 C 1832, 2016 U.S. Dist. LEXIS 124235
   (N.D. Ill. Sept. 13, 2016) ................................................................................................ 18, 19

*Spano v. Boeing Co.*,
   No. 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161078
   (S.D. Ill. Mar. 31, 2016) .................................................................................................. 11-12

*Standard. Iron Works v. Arcelormittal*,
   No. 08 C 5214, 2014 U.S. Dist. LEXIS 162557
   (N.D. Ill. Oct. 22, 2014) ...................................................................................................... 18

v

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
No. Cause No: 02-CV-1109-DRH, 2004 U.S. Dist. LEXIS 6363
(S.D. Ill. Mar. 19, 2004) ................................................................................................ 4

*Vitamins Antitrust Litig.*,
No. 99-197 (TFH), MDL No. 1285, 2001 U.S. Dist. LEXIS 25067
(D.D.C. July 13, 2001) ................................................................................................... 8

*Will v. Gen. Dynamics Corp.*,
No. CIVIL NO. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349
(S.D. Ill. Nov. 22, 2010) ........................................................................................... 5, 18

*Wright v. Nationstar Mortg. L.L.C.*,
No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729
(N.D. Ill. Aug. 29, 2016) .............................................................................................. 12

**Statutes**

47 U.S.C. § 227 (2012) ......................................................................................................... 12

**Other**

Fed. R. Civ. P. 23 .................................................................................................................... 3

Fed. R. Civ. P. 23(h) ............................................................................................................... 1

vi

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(h) and this Court's October 26, 2016 Amended Order Granting Preliminary Approval Of Class Action Settlement (Dkt. 109) (the "Preliminary Approval Order"), Plaintiffs[1] by and through their undersigned counsel, individually, and on behalf of the Settlement Class,[2] hereby move for an order for a fee award of $3,069,000.00, reimbursement of reasonable costs and expenses of $89,704.39, plus up to $10,000 in future reasonable costs and expenses. Class Counsel also seeks a $2,000 incentive award for each of the 41 Settlement Class Representatives.

Plaintiffs seek the Court's approval of an award of attorney's fees to Settlement Class Counsel[3] based on a percentage of the ***non-reversionary $9,300,000 common fund*** (the "Settlement Fund")[4] achieved through Class Counsel's work. Plaintiffs' fee request comprises 33% of the $9,300,000 Settlement Fund and is well within both the market price for representation in complex litigation on a contingency-fee basis and the range for attorneys' fees found

---

[1] The Plaintiffs, also the proposed named representatives for the Settlement Class, are: Angelita Hickman, Michael Reyes, Charles Hoff, Michael Baden, Jerry Lautigar, John Malloy, Hans Shanks, Layla Patterson, Debra Dockstader, Season Gomez, Conrad Shogren, David Sullivan, Kathleen Sullivan, Tracy McCoy, Cory Fales, Robert Webber, Rick Boscardin, Cynthia Scaglione, Jeffrey Mies, Don Gibson, Scott Holbrook, Ed Anderson, John Riello, Robert Dorgan, Carol Larson, Ulbardo Fernandez, James Leonard, Joan Leonard, Christopher McLamb, Tamela McLamb, Irma Blank, Leasha Dixson, Steven Cady, Gina Cady, Lawrence Fredericks, Scott Reinhart, Mark Renzi, Paula Rogers, Dominic Ray Diaz, Becki S. Murphy, Sharon Ledford, George Reynolds, Michael Allen, Carrie McCain, and Daniel T. Howell (collectively, "Plaintiffs").

[2] The "Settlement Class" is defined in the Preliminary Approval Order. (Dkt. 109 ¶ 1.)

[3] The "Settlement Class Counsel" is defined in the Preliminary Approval Order. (Dkt. 109 ¶ 5.)

[4] Unless otherwise stated, all capitalized terms herein have the same meaning as provided in the parties' Agreement Of Compromise And Settlement. (Dkt. 105.)

1

presumptively reasonable by the Seventh Circuit.[5] The fee request is also consistent with attorneys' fees awarded in similar cases, including particularly by courts in this District. The reasonableness of the fee request is further bolstered given the enormous risks and investment required to develop and prosecute a case of this nature, and the excellent result achieved for the Class here.

Although the Court need not consider lodestar in approving the fee request here—the law permits and indeed encourages the percentage-of-the-fund analysis alone—a lodestar cross-check serves only to support Class Counsel's fee request. As detailed below, at the time of the currently scheduled final approval hearing, multiple attorneys would have spent thousands of hours over a nearly three-year period to bring this case to its current posture. In fact, a *downward* lodestar multiplier of 0.68 is required to approximate the amount of fees under the percentage-of-the-fund methodology.

Plaintiffs also request that the Court award them modest, routine incentive awards in the amount of $2,000, each, for their work on behalf of the Settlement Class. For these reasons and those discussed below, Plaintiffs respectfully request that this motion be granted.

## BACKGROUND

This MDL is a class action alleging the Defendant Rust-Oleum Corporation ("Rust-Oleum") violated consumer and warranty laws, and was brought on behalf of persons who purchased certain wood and concrete resurfacing products, Deck & Concrete Restore, Deck

---

[5] As discussed *infra*, under the Seventh Circuit's *Redman* ratio, Plaintiffs' fee request amounts to a 1.1% increase, or 34.4% of the money going to the Class. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) ("The ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received."); *see also Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (stating that consumer class action attorneys' fees should up to 50% of the money going to class members and their counsel).

Restore, Concrete Restore, and Restore 10X (the "Restore Products") manufactured by Rust-Oleum. Plaintiffs allege that the Restore Products are intended to be used by consumers to repair and revitalize their existing decking by covering the decking with a thick, weather-resistant coating. Plaintiffs further allege Rust-Oleum markets these products as superior, lower-maintenance and lasting alternatives to traditional deck paints and stains. As alleged by Plaintiffs, the product did not perform as promised. (*See generally*, Amended Complaint, Dkt. 85.) An initial class complaint was filed over two years ago in this District, and shortly thereafter, over a dozen other class action cases were subsequently filed alleging similar claims in federal courts in many jurisdictions throughout the United States.[6]

## ARGUMENT

### I.     The Requested Fee Is Reasonable Under The Percentage Method.

Rule 23(h) states that that "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23. "Under the 'common fund' doctrine, an attorney who recovers a common fund for the benefit of a class is entitled to a reasonable portion" of the fund. *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015). "[E]quitable principles permit the Court to 'determine[] the amount of attorney's fees that plaintiffs' counsel may recover' from the fund 'based on the notion that not one plaintiff, but all those who have benefitted from litigation should share its costs.'" *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 499-500 (N.D. Ill. 2015).[7]

---

[6] Plaintiffs reincorporate the factual background from their motion in support of preliminary approval of the Settlement and supporting declarations. (Dkt. 105.)

[7] *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that

## A.    The *Synthroid I* Factors Support Plaintiffs' Fee Request.

"[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (collecting cases). To do so, a court "must estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.*[8] A court should consider the following elements when conducting its analysis: (1) attorneys' fee awards in other class action settlements; (2) any fee agreements between the parties; (3) the risk of nonpayment counsel agreed to bear; (4) the quality of class counsel's performance; (5) the amount of work necessary to resolve the litigation; and (6) the stakes of the case. *Craftwood Lumber Co. v. Interline Brands, Inc.*, Case No. 11-cv-4462, 2015 U.S. Dist. LEXIS 35421, at *11 (N.D. Ill. Mar. 23, 2015) ("*Craftwood I*") (St. Eve, J.) (awarding fees based on *Synthroid I* factors). Each of these factors are met here.

### 1.    Attorneys' Fee Awards in Other Class Action Cases.

A court should consider attorneys' fees awarded in other class actions when assessing a fee request. As noted above, the Settlement Fund here (including attorneys' fees) is $9.3 million. Class

---

most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis.") (internal citations omitted); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate"); *McCue v. MB Fin., Inc.*, 2015 U.S. Dist. LEXIS 96653, at *8 (N.D. Ill. July 23, 2015) ("Awarding attorneys' fees through a percentage of a common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating them in order to recover a larger fee.").

[8] In commercial, non-class litigation, attorneys regularly negotiate contingent fee arrangements which result in a fee of between 33.3% and 40% of the recovery. *See Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2011 U.S. Dist. LEXIS 20397, at *10 (N.D. Ill. Dec. 10, 2001).

4

Counsel's fee request of $3,069,000.00 represents 33% of the Settlement Fund, which is well below the common percentage awarded for other attorneys' fee awards approved in other class actions by courts in this Circuit where fee awards of 33%-40% are the norm. *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012) ("[A] contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price for legal services for a case of similar risk."); *Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*, Case No. 02-CV-1109-DRH, 2004 U.S. Dist. LEXIS 6363, at *3 (S.D. Ill. Mar. 19, 2004) ("In this Circuit, a fee award of thirty-three and one-third (33 1/3%) in a class action in [sic] not uncommon").[9]

Accordingly, the range of fees awarded in other cases supports Counsel's fee request here.

### 2.     Agreement Between Plaintiffs and Their Counsel.

A court should consider an actual agreement between the parties when assessing a fee request. *See Synthroid I*, 264 F.3d at 718. The client representation agreements between Plaintiffs and their counsel provide for legal services to be provided on a contingent basis to be determined by the Court without generally specifying a specific percentage for payment of attorneys' fees. Therefore, this factor supports Class Counsel's fee request.

---

[9] *See also Martin v. Dun & Bradstreet, Inc.*, No. 12-cv-00215, Dkt. 66 (N.D. Ill. Jan. 16, 2014) (awarding one third fee payment); *Cummings v Sallie Mae*, No. 12-cv-9984, Dkt. 91 (N.D. Ill. May 30, 2014) (same); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-cv-05959, Dkt. 116 (N.D. Ill. Dec. 21, 2011) (approving one-third of the settlement fund plus expenses); *Will*, 2010 U.S. Dist. LEXIS 123349, at *7 (stating that, where there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered"); *Gaskill*, 160 F.3d at 362-3 (noting that typical contingency fees are between 33% and 40%); *Meyenburg v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 52962, at *5 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages").

### 3. The Risk of Nonpayment.

At the outset of this litigation, Counsel agreed to represent their clients and the Class on a contingency basis knowing that there was a real possibility that these cases could be litigated for years with no recovery for the time, effort, and costs expended in furtherance of the matter. *See In re Transunion Corp. Priv. Litig.*, 629 F.3d 741, 746 (7th Cir. 2011) (stating that "within the set of colorable legal claims, a higher risk of loss does argue for a higher fee"); *see also* Declaration of Katrina Carroll (the "Carroll Fee Decl."), attached hereto as **Ex. A**, ¶4; Declaration of William M. Audet ("Audet Fee Decl."), attached hereto as **Ex. B**, ¶¶ 13, 47, 56 (time spent and expenses advanced in spite of great risk of non-payment).

As detailed herein, if this matter were litigated to conclusion, Plaintiffs would have had to prevail against dispositive motions filed by Rust-Oleum, obtain class certification, and then prove the merits of their case. Plaintiffs believe that Rust-Oleum, had it not settled, would have had every intention of aggressively litigating this case. *See generally*, Carroll Fee Decl.; Audet Fee Decl.. The possibility of settlement was uncertain at the outset of this matter, and it remained uncertain throughout discovery given the contentious nature of the disputes that arose and the nature of the litigation and the claims asserted by the Plaintiffs. Carroll Fee Decl. ¶¶ 5-19; Audet Fee Decl. ¶¶ 26, 36. Only after many months of good faith, arm's-length negotiations, was this settlement reached. Carroll Fee Decl. ¶ 18; Audet Fee Decl. ¶¶ 39-40.

### 4. The Quality of Class Counsel's Performance.

A high level of skill and relevant experience was required to prosecute these matters. *See* Carroll Fee Decl. ¶ 3; Audet Fee Decl. ¶¶ 5, 18, 44 (Mr. Audet has specialized in and worked on numerous home building defect cases). Class Counsel faced opposition from Rust-Oleum and

6

their counsel who fought vigorously throughout this litigation. Despite the palpable risks and obstacles facing them, Class Counsel were able to negotiate this meaningful Settlement with Rust-Oleum. *See* Carroll Fee Decl. ¶¶ 18, 39; Audet Fee Decl. ¶¶ 41-42.

Class Counsel respectfully submit that they conducted themselves in this action in a professional, diligent, and efficient manner. Moreover, in litigating this case, Class Counsel focused on the prosecution of this case forgoing other potentially more lucrative cases. *See* Carroll Fee Decl. ¶ 39; Audet Fee Decl. ¶¶ 56-58. In this case, the lead attorneys as Class Counsel allocated tasks internally and within the attorneys with filed cases to prevent "over-lawyering" and inefficiency. Carroll Fee Decl. ¶ 6; Audet Fee Decl. ¶¶ 11, 46, 55. The bulk of the work was performed by Co-Lead Counsel fully familiar with the factual and legal issues presented by this litigation and highly experienced in consumer protection litigation. This division of labor permitted the work to be done efficiently, resulting in an economy of service and avoiding duplication of effort. Carroll Fee Decl. ¶ 6; Audet Fee Decl. ¶ 55.

Class Counsel devoted enormous time and money to the prosecution of this action. Among other things, to achieve this Settlement and its excellent results, Class Counsel undertook the following actions *see generally*, Carroll Fee Decl. ¶¶ 5-20, 38; Audet Fee Decl. ¶¶ 8-11:

- conducted an extensive pre-suit investigation that laid the groundwork for filing of class action complaints by Class Counsel and other plaintiffs' counsel;

- prepared MDL papers seeking consolidation in this Court;

- self-organized and coordinated their combined legal talents for the benefit of the Class;

- prepared and filed a well-researched nationwide Consolidated Amended Class Action Complaint;

- defended the Consolidated Amended Class Action Complaint against Rust-Oleum's 74-page (114-page including the exhibit) motion to dismiss;

- filed an amended complaint after Rust-Oleum's motion to dismiss was granted in part;

- engaged in extensive discovery including *thirty-six (36)* on-site property inspections, the exchange of *thousands* of discovery requests, and the production and review of *tens-of-thousands* of pages of documents obtained from the Defendants;

- sought resolution of contentious discovery disputes involving relevant search terms and production of ESI; which ultimately culminated in Class Counsel drafting and filing motions to compel

- engaged in multiple rounds of negotiations, including multiple in-person sessions in Chicago to negotiate the terms of the Agreement;

- reviewed documents and information produced by Rust-Oleum in preparation for and during the parties' negotiations;

- finalized a Settlement Agreement with Rust-Oleum and filed preliminary approval papers; and

- attended a preliminary approval hearing.

Notably, the work is not done: Class Counsel will undoubtedly continue to incur significant additional time and expense in seeing this Settlement through to its conclusion, including working with the claims administrator and notice provider, answering questions from Class Members, filing and arguing final approval and continue to assist class members with any claims. *See* Carroll Fee Decl. ¶ 40; Audet Fee Decl. ¶¶ 50, 52.

The Court-appointed Class Counsel are nationally recognized for the successful prosecution of complex class action litigation. *See* Carroll Fee Decl. ¶¶ 3, 37; Audet Fee Decl. ¶¶ 5, 18, 44. As set forth above, Class Counsel worked expeditiously and efficiently, reflecting their

8

knowledge and practical experience in litigating claims of this nature. Their expertise was the primary factor in bringing about the expeditious resolution of this litigation on extremely favorable terms for the Settlement Class. *See* Carroll Fee Decl. ¶¶ 5-19; Audet Fee Decl. ¶ 42.

"The quality of opposing counsel is also important in evaluating the quality of Lead Counsel's work." *Fleisher v. Phx. Life Ins. Co.*, Civil Action Nos. 11-cv-8405, 14-cv-8714, 2015 U.S. Dist. LEXIS 121574, at *71 (S.D.N.Y. Sep. 9, 2015); *In re Vitamins Antitrust Litig.*, Misc. No. 99-197 (TFH), MDL No. 1285, 2001 U.S. Dist. LEXIS 25067, at *62 (D.D.C. July 13, 2001) ("The experience, skill and professionalism of counsel and the performance and quality of opposing counsel all weigh in favor of the requested fee."); *In re Pub. Serv. Co. Sec. Litig.*, 125 F.R.D. 480, 483 (S.D. Ind. 1988) (finding class counsel "achieved a fair result for the plaintiffs in light of the complexities of the litigation and the quality of the defense"). Rust-Oleum was well represented by 11 attorneys at one of the country's most prestigious and diligent law firms, Mayer Brown LLP—ranking 17th in *The American Lawyer's* 2016 "AmLaw 100" survey. Lead counsel for Rust-Oleum, Lori E. Lightfoot, has extensive experience having conducted at least 20 trials as commercial litigator and Assistant U.S. Attorney.[10] The ability of Class Counsel to obtain such favorable results in the face of formidable legal opposition further evidences the superior quality of their work and of the proposed Settlement. Carroll Fee Decl. ¶¶ 12-17; Audet Fee Decl. ¶¶ 9, 36.

The awareness of Rust-Oleum's counsel that several leading nationwide plaintiffs' law firms were willing and able to assume the risk of prosecuting this action to trial, if necessary, rather than accept an unsatisfactory settlement unquestionably contributed to the favorable result

---

[10] Mayer Brown LLP, People, Lori E. Lightfoot https://www.mayerbrown.com/people/Lori-E-Lightfoot/ (last accessed December 13, 2016).

9

obtained here. *Montgomery v. Aetna Plywood, Inc.*, No. 95 C 3193, 1999 U.S. Dist. LEXIS 4432, at *17 (N.D. Ill. Mar. 16, 1999) (contributing to class recovery was "the actions of the named plaintiff and counsel's vigorous and zealous representation"); Carroll Fee Decl. ¶ 3; Audet Fee Decl. ¶¶ 16, 28. Class Counsel's efforts on behalf of the Settlement Class and their ability to achieve this Settlement is a testament to their skill and professionalism.

### 5.   The Amount Of Work Necessary To Resolve This Litigation.

As of the filing of this Motion, Class Counsel and Additional Plaintiffs' Counsel[11] have spent approximately 8,000 hours advancing this matter. *See* Carroll Fee Decl. ¶¶ 20-36, Ex. 2 thereto; Audet Fee Decl., ¶ 49, Exs. C, D thereto. Without question, Class Counsel will spend significant hours and incur additional expenses associated with the final approval process and preparations, and continue to represent the class members in executing the Settlement Agreement. Carroll Fee Decl. ¶ 40; Audet Fee Decl. ¶¶ 43, 52. Accordingly, this factor also favors approval of the requested award of attorneys' fees and expenses.

### 6.   The Stakes of This Litigation.

Despite the risks of this type of class litigation, Class Counsel obtained demonstrable benefits from the proposed Settlement. Indeed, payment of a cash amount, without a revisionary interest, is somewhat unique in this type of class action. Carroll Fee Decl. ¶ 41; Audet Fee Decl. ¶ 38. Thus, this factor also favors approval of Class Counsel's request.

Under the Settlement Agreement, the Settlement Class will realize substantial and

---

[11] Additional Plaintiffs' Counsel are: Lockridge Grindal Nauen, PLLP; Wexler Wallace, LLP; Cuneo Gilbert & LaDuca, LLP; McCuneWright, LLP/Chimicles & Tikellis, LLP; Bloom & Bloom, P.C.; Rhine Martin Law Firm, P.C.; Levin, Fishbein, Sedran & Berman; Kohn, Swift & Graf, P.C./Seeger Weiss, LLP; Quantum Legal, LLC; Robert N. Isseks; Law Office of Jean Sutton Martin, PLLC; Law Office of Lewis G. Adler; Cafferty Clobes Meriwether & Sprengel, LLP; Gibbs Law Group, LLP

immediate benefits, by way of cash reimbursements, after the Settlement is approved. Audet Fee Decl. ¶ 38. The timeliness of class relief is also particularly important where, as here, Plaintiffs and the Settlement Class members might have waited years to receive compensation (if at all) had the case proceeded for the next few years. The class would be exposed to the attendant risks of litigation, including the uncertainties and difficulties pertaining to a disputed class certification proceeding, the legal and factual defenses that Rust-Oleum asserted in its motion to dismiss, the length of time necessary to see this matter through to trial, the uncertainties of the outcome of the litigation, and the fact that resolution of the class claims, whenever and however determined, would likely be submitted for appellate review. Audet Fee Decl. ¶ 42. Thus, the practical-minded approach of Class Counsel to achieve earlier benefits for the Settlement Class should also support the attorneys' fee award requested here. *Id*.

> **B. The *Redman* Ratio Supports The Fee Request.**

The Seventh Circuit has repeatedly "emphasized that in determining the reasonableness of the attorneys' fee agreed to in a proposed settlement, the central consideration is what class counsel achieved for the members of the class rather than how much effort class counsel invested in the litigation." *Redman*, 768 F.3d at 632. Specifically, the "ratio that is relevant . . . is the ratio of (1) the fee to (2) the fee plus what the class members received." *NBTY*, 772 F.3d at 781. Administration expenses and incentive awards are deducted from the Settlement Fund when calculating the *Redman* ratio. *Id.* at 781 ("[A]dministrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class."); *Craftwood II*, 2015 U.S. Dist. LEXIS 59092, at *8-9 (St. Eve, J.) ("In *Redman*, the

Seventh Circuit held that in calculating the attorney's fee percentage in a class action settlement, a court should compare the attorney's fee with the total amount received by plaintiffs, exclusive of administrative costs."). "[I]n consumer class actions . . . attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *NBTY*, 772 F.3d at 782.

Plaintiffs' fee request—because it is based on a fund and not on a "claims made" settlement—easily satisfies the *Redman* ratio. Here, the Settlement Fund is $9,300,000. The Settlement Fund is subject only to a credit for paid claims administration expenses of up to $300,000 (any administrative expenses above $300,000 are to be paid separately by Rust-Oleum and will not deplete the Settlement Fund).[12] The total amount of incentive awards, $2,000 for each of the 41 Class Representatives, is $82,000.[13] Therefore, the "amount of money going to the class" is $8,918,000 ($9,300,000 - $300,000 - $82,000). Plaintiffs are seeking 33% of the Settlement Fund—$3,069,000 ($9,300,000 x 0.33). Accordingly, Plaintiffs' *Redman* ratio is <u>34.4%</u> ($3,069,000/$8,918,000). This ratio is consistent with fee awards post-*Redman* and *NBTY*, especially given the complexity of this MDL. *E.g.*, *Spano v. Boeing Co.*, Case No. 06-CV-743-NJR-DGW, 2016 U.S. Dist. LEXIS 161078, at *11 (S.D. Ill. Mar. 31, 2016) (awarding one-third of monetary recovery in attorneys' fees); *Kaufman v. Am. Express Travel Related Servs.*, Case No. 07-cv-1707, 2016 U.S. Dist. LEXIS 26167, at *42 (N.D. Ill. Mar. 2, 2016) (awarding "34.8% of the value of the benefit conferred on the class" and $40,000 in costs);

---

[12] Under the Settlement Agreement, Rust-Oleum will separately pay administration costs that exceed the $300,000 credit. (Settlement Agreement, ¶ 10.2.)

[13] Under the Settlement Agreement, married Plaintiffs shall share in their respective incentive awards. Therefore, while there are 45 individual Plaintiffs, only 41 incentive awards are requested.

*Kolinek*, 311 F.R.D. at 500 (awarding a 36% *Redman* ratio after deducting administration expenses and incentive awards); *Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 U.S. Dist. LEXIS 65474, at *3 (N.D. Ill. May 15, 2015) (awarding 33.5% of the fund after deducting administration costs); *Bickel v. Sheriff of Whitley Cnty.*, No. 1:08-CV-102-TLS, 2015 U.S. Dist. LEXIS 38311, at *16 (N.D. Ind. Mar. 26, 2015) (awarding 43.7% of the fund).[14]

      C.      **Even Under The *Synthroid II***
                  **Sliding-Scale, Plaintiffs' Fee Request Is Justified.**

Recently, this Court, along with Judges Holderman and Feinerman applied a "sliding scale" to settlements reached in class action based on the Seventh Circuit's approach in *In re Synthroid Mktg. Litig.*, 325 F.3d 974 (7th Cir. 2003) ("*Synthroid II*"), in which the benchmark percentage of an award of fees from a common fund is: (a) 30% for the first $10 million; (b) 25% of the next $10 million; (c) 20% of the next $20-40 million; and (d) 15% of any amount in excess of $45 million. In each of these cases, the settlements were far in excess of $10 million and involved claims brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). *See e.g.*, *Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 235 (N.D. Ill. 2016) (Feinerman, J.) (adopting *Synthroid II* to $34 million TCPA settlement); *Craftwood I*, 2015 U.S. Dist. LEXIS 35421, at *14-15 (St. Eve, J.) (adopting *Synthroid II* to $40 million TCPA settlement); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 809 (N.D. Ill. 2015) (Holderman, J.) (adopting *Synthroid II* to $75 million TCPA settlement).

---

[14] *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *53 (N.D. Ill. Aug. 29, 2016) (awarding 30% of settlement fund in attorneys' fees); *McCue*, 2015 U.S. Dist. LEXIS 96653, at *8 (awarding one-third of the settlement fund in attorneys' fees, plus costs of litigation); *Abbott v. Lockheed Martin Corp.*, No. 06-cv-701-MJR-DGW, 2015 U.S. Dist. LEXIS 93206, at *12 (S.D. Ill. July 17, 2015) (same).

1.      **The *Synthroid II* Sliding Scale**
        **Is Not Required Or Even Appropriate Here.**

This Court is ***not*** required to apply a *Synthroid II* type sliding scale in this case. *Heekin v. Anthem, Inc.*, Case No. 1:05-cv-01908-TWP-TAB, 2012 U.S. Dist. LEXIS 165464, at *10 (S.D. Ind. Nov. 20, 2012) ("[The objector] argues *Synthroid II* mandates a sliding scale fee award. The Court flatly rejects this argument."). While the Seventh Circuit permitted the use of such scale in *Synthroid II* and *Silverman v. Motorola Sols., Inc.*, 739 F.3d 956 (7th Cir. 2013), the scale was offered as simply one of many tools to calculate market rates and incentivize class counsel to achieve the best result possible for the class they represent. *See Synthroid I*, 264 F.3d at 719 (discussing the "guides" available to courts for determining appropriate market rates, including comparing billable rates of attorneys). Further, the Seventh Circuit recognized that "declining marginal percentages" are not always useful, because "[t]hey also create declining marginal returns to legal work, ensuring that at some point attorneys' opportunity cost will exceed the benefits of pushing for a larger recovery, even though extra work could benefit the client. This feature exacerbates the agency costs inherent in any percentage-of-recovery system, just as the lodestar approach creates the opposite incentive to run up the billable hours." *Synthroid I*, 264 F.3d at 721.

Moreover, *Gehrich*, *Craftwood I*, and *In re Capital One* are all inapposite to Plaintiffs' fee request here. This Settlement is not tens of millions of dollars. Indeed, it was the large size of the settlement funds that prompted those courts to apply a sliding scale. *Gehrich*, 316 F.R.D. at 235 ("[A]s the dollar value of the common fund increases, the percentage of the settlement awarded as attorney fees generally decreases."); *Craftwood I*, 2015 U.S. Dist. LEXIS 35421, at *13-14 ("[T]he settlement ended up being large because of the size of Defendants' potential TCPA

14

liability, that contingency could have been addressed through a sliding-scale attorney's fee percentage that declined with the total amount of recovery."); *In re Capital One*, 80 F. Supp. 3d at 803-04 ("[A]n ex ante negotiation between Class Counsel and class members in this case . . . would have produced a downward scaling fee arrangement.").

That said, Class Counsel achieved a remarkable result for the Class here. Carroll Fee Decl. ¶ 41; Audet Fee Decl. ¶ 38, 41, 42. As discussed in Plaintiffs' motion for preliminary approval (Dkt. 105) and to be further discussed in Plaintiffs' forthcoming motion for final approval, this Settlement provides substantial benefits to the Class, which were only possible through Class Counsel's vigorous advocacy and zealous, arms-length negotiations. Carroll Fee Decl. ¶¶ 5-19; Audet Fee Decl. ¶ 9, 37, 39-40.

> **2. Even If This Court Applies A Sliding Scale, Plaintiffs' Fee Request Is Reasonable.**

While this Court is not required to apply a sliding-scale, if it were, Plaintiffs' fee request of 33% of the Settlement Fund is still reasonable given that upward enhancements are permitted. *Kolinek*, 311 F.R.D. at 503 (awarding 30% as a benchmark *Synthroid II* percentage and an additional 6% as a risk adjustment); *In re Capital One*, 80 F. Supp. 3d at 806 (applying "Eisenberg and Miller's 6% premium" where case was only "slightly riskier" than average TCPA class action). "As the Seventh Circuit has explained, 'if the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million.'" *Kolinek*, 311 F.R.D. at 503 (quoting *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011)).

646672.1

i.      **The Risks In This Litigation**<br>**Warrant An Enhancement Under *Synthroid II*.**

The risks in this complex MDL are substantial, given Rust-Oleum's defenses and the contentious litigation that proceeded all the way up to settlement. (*See* Dkt. 105, at p. 21-24.) Plaintiffs alleged claims involving numerous states' warranty and consumer protection laws and sought to represent several multi-state classes. (Dkt. 89.) At each stage of the litigation, Rust-Oleum mounted vigorous defenses starting with an extensively briefed motion to dismiss—which resulted in Plaintiffs having to file an amended consolidated complaint—all the way through discovery, including challenges to the smallest of details such as the extent of search terms used in discovery. (Dkt. 105, at p 24.) *See also* Carroll Fee Decl. ¶¶ 6-20; Audet Fee Decl. ¶ 26. Despite all of these great risks, which Class Counsel bore entirely, the Court would still only need to a 3% premium to bump the 30% benchmark in the sliding-scale up to 33%, which is less than the 6% premiums awarded in *In re Capital One* and *Kolinek*—far less complex class actions than the MDL litigation here. Further, this percentage would still represent a negative multiplier for less than Plaintiffs' counsel's lodestar—agreed upon by Class Counsel in order to successfully reach a settlement for the Class. Carroll Fee Decl. ¶ 20; Audet Fee Decl. ¶ 53.

ii.      **This Court's Ruling In *Craftwood II***<br>**Does Not Conflict With An Upward Enhancement.**

In *Craftwood II*, this Court considered whether to apply an upward enhancement to the *Synthroid II* sliding scale based on the risks of litigation and performance of counsel. Ultimately, this Court declined to do so, finding that the risks were not "great" and that the potential ruinous liability of statutory damages should have made settlement easier. *Craftwood II*, 2015 U.S. Dist. LEXIS 59092, at *19 (St. Eve, J.) (finding that prior order awarding fees appropriately took into

16

account the risks of litigation, stating "Viewed from an ex ante perspective, the plaintiff class and its prospective counsel may have expected the case to be more difficult to resolve, but it would have been reasonable to expect that it had a good chance of being settled once the magnitude of any TCPA violations became clear in discovery."); *see Gehrich*, 316 F.R.D. at 237-38 ("The 20% that the court awards for the settlement amounts from $20 through $28.79 million is slightly less than the 22% awarded for the highest recovery band in *Synthroid II*, but given the relatively low risks in the case, the reduction is appropriate.").

As stated above, the risks in this case, exhibited by the hard-fought motion practice and robust discovery, are "great." Carroll Fee Decl. ¶¶ 5-19; Audet Fee Decl. ¶ 56. Rust-Oleum's defenses to the merits and class certification far outweigh the risks posed in run-of-the-mill TCPA class actions. *See Craftwood II*, 2015 U.S. Dist. LEXIS 59092, at *18 ("As a putative class action, Plaintiff also faced the risk that the Court would not certify the class, either because of these two defenses, or because of other potential class issues. Nevertheless, while there were some risks, the Court does not find that they were so great that they would have justified a higher contingency fee for Plaintiff's counsel at the commencement of the case."). Accordingly, if this Court applies *Synthroid II*, Class Counsel should be awarded for their result and the risk they bore. *Craftwood II* is completely consistent with this result.

## II.     The Requested Fee Is Reasonable Under The Lodestar Method.

This Court recently made clear that when the Settlement constitutes a common fund, as here, using the lodestar method to award fees is "not warranted." *Craftwood I*, 2015 U.S. Dist. LEXIS 35421, at *16 (St. Eve, J.) (citing *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014)). Nevertheless, the lodestar method here only

17

further underscores why Plaintiffs' fee request should be granted.

Under Seventh Circuit standards, a District Court may award attorneys' fees under either the "lodestar" method or the "percentage-of-the-benefit" method. *Florin*, 34 F.3d at 566; *Americana Art China*, 743 F.3d at 247 ("[T]he choice of methods is discretionary."). When evaluating fees on a lodestar basis as opposed to a percentage basis, a reasonable multiplier is often provided to compensate counsel for their risk and success. *See Reid v. Unilever United States, Inc.*, No. 12 C 6058, 2015 U.S. Dist. LEXIS 75383, *8-9 (N.D. Ill. June 10, 2015) ("The court may increase the award by applying a 'multiplier' to the lodestar amount if satisfied that a multiplier is appropriate under the circumstances.").

To calculate lodestar, counsel's reasonable hours expended on the litigation are multiplied by counsel's reasonable rates. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986); *City of Greenville*, 904 F. Supp. at 909. This base lodestar should be adjusted upward to reflect the contingent nature of the attorney's undertaking based on the likelihood of success in obtaining a judgment or settlement measured at the time the attorney began work on the case. *See Skelton v. General Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988); *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998) ("The unenhanced lodestar usually accounts for the difficulty of prevailing on the merits …[b]ut the unenhanced lodestar does not reflect the factual and legal merits of the claim—the fact that at the outset of the litigation, no matter how dazzling the array of legal talent or how many hours will eventually be logged, there is nonetheless the possibility of no recovery.") (internal citation omitted).

Class Counsel and the attorneys working at their direction reported having spent approximately 8,000 hours advancing these matters, as of the filing of this Motion, which

18

represents an aggregate lodestar of approximately $4,480,494.50. Carroll Fee Decl. ¶ 20; Audet Fee Decl. ¶ 49. Counsel's aforementioned services were reasonable and necessary to prosecute these matters and to the reach the terms of the proposed Settlement as set forth in the Settlement Agreement. Carroll Fee Decl. ¶¶ 5-19; Audet Fee Decl. ¶ 47, 51.

Using the lodestar either to calculate fees or as a cross-check, Class Counsel's requested fees are more than reasonable. As explained above, Class Counsel have performed a substantial amount of work on behalf of the Class, and substantial work remains to secure final approval of the Settlement and administer Class Member claims. Class Counsel and the other attorneys working at their direction have invested time such that their requested compensation from this Settlement represents a *negative* multiplier of their actual lodestar. Given that Courts have approved much higher *positive* lodestar multipliers, a negative multiplier easily satisfies a lodestar cross check. *Will v. Gen. Dynamics Corp.*, Civil No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *12 (S.D. Ill. Nov. 22, 2010) (lodestar multiplier of less than 1 "easily withstands" lodestar cross-check); *see In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, Case Nos. 06 C 7023, 07 C 0412, 08 C 1832, 2016 U.S. Dist. LEXIS 124235, at *82 (N.D. Ill. Sept. 13, 2016) (awarding 1.75 multiplier); *Standard Iron Works v. Arcelormittal*, Case No. 08 C 5214, 2014 U.S. Dist. LEXIS 162557, at *10 (N.D. Ill. Oct. 22, 2014) (awarding multiplier of 1.97 and noting that it "is well within the range of reasonable multipliers awarded in similar contingent cases").

Accordingly, the requested fee award of $3,069,000 on current lodestar of $4,480,494.50, reflecting a *negative* multiplier of 0.68, is more than reasonable under a lodestar analysis or lodestar cross-check. This is especially true given the fact that the current lodestar will no doubt

19

increase between now and the completion of Settlement distribution, reflecting an even larger negative multiplier.

### III.    The Requested Expenses Are Reasonable.

Plaintiffs also seek reimbursement of $89,704.39 in expenses incurred to date. "It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reporters; travel expense; copy, phone and facsimile expenses and mediation." *Abbott*, 2015 U.S. Dist. LEXIS 93206, at *13.

The expenses incurred in this litigation, are the type of expenses typically billed by attorneys to paying clients in the marketplace and include such costs as copying/printing, legal research, work performed by contract attorneys, and travel in connection with this litigation. *See* Carroll Fee Decl. ¶ 38, Ex. 3 thereto; Audet Fee Decl. ¶¶ 47-49; *see Dial Corp. v. News Corp.*, No. 13-cv-6802, 2016 U.S. Dist. LEXIS 150528, at *39-41 (S.D.N.Y. Oct. 31, 2016) (approving the inclusion of "contract attorney fees" as an expense, instead of as part of the lodestar, because "[i]t saves the Court from having to 'determine a correct spread between the contract attorney's cost and his or her hourly rate and his or her salary'" and "encourag[ing] the Plaintiffs' class action bar to consider adopting this practice in future actions"); *City of Greenville*, 904 F. Supp. 2d at 910 ("[T]he costs sought here are of the type that are routinely reimbursed by paying clients, such as experts' fees, other consulting fees, deposition expenses, travel, and photocopying costs.").

Plaintiffs also anticipate that they will expend in excess of an additional $10,000.00 between now and final resolution of the settlement process. Audet Fee Decl. ¶ 52; *see also*, *In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, 2016 U.S. Dist. LEXIS 124235,

20

at *82 (approving "reasonable expenses incurred in connection with the final approval hearing and class counsel's duties in connection with the ongoing notice and claims process," subject to previously agreed-upon cap).

## IV. The Requested Incentive Awards To Plaintiffs Are Appropriate.

Finally, Plaintiffs seeks an award for their services to the Class. "In deciding whether an incentive award is proper, and if so, in what amount, 'relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *In re Sw. Voucher Litig.*, Case No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735, at *31 (N.D. Ill. Aug. 26, 2013). Class Counsel respectfully submit the incentive awards in the nominal amount of $2,000 to each Plaintiff are appropriate here. Each of the Plaintiffs was instrumental in assisting Class Counsel with the initial investigation of their claims and the extent of damages attributable to Rust-Oleum's conduct. Each Plaintiff was required to respond to numerous written discovery requests, assemble documentary evidence responsive to Rust-Oleum's requests, and make their homes available for inspection. *See* Carroll Fee Decl. ¶ 19; Audet Fee Decl. ¶ 19. This information was invaluable in reaching a negotiated Settlement Agreement. Given their contributions, awards of $2,000 from the Settlement Fund for each Plaintiff are appropriate. *See In re Sw. Voucher Litig.*, 2013 U.S. Dist. LEXIS 120735, at *31 (awarding incentive award of $15,000 where discovery from plaintiffs "improved the prospects of a favorable settlement").

## CONCLUSION

For all of the reasons stated above, Class Counsel respectfully request that the Court enter an order awarding $3,069,000 for attorneys' fees, $89,704.39 for reimbursement of reasonable

costs and expenses in this matter, up to $10,000 for future costs associated with the final approval

hearing, and 41 incentive awards of $2,000 for the Plaintiffs.


Dated: January 9, 2017                                    Respectfully submitted,


                                                          /s/ *Katrina Carroll*
                                                          Katrina Carroll
                                                          Kyle A. Shamberg
                                                          LITE DEPALMA GREENBERG, LLC
                                                          211 W. Wacker Drive, Suite 500
                                                          Chicago, IL 60606
                                                          Telephone:   (312) 750-1591
                                                          Facsimile:    (973) 877-3845
                                                          kcarroll@litedepalma.com
                                                          kshamberg@litedepalma.com

                                                          /s/ *William Audet*
                                                          William M. Audet
                                                          AUDET & PARTNERS, LLP
                                                          711 Van Ness Avenue, Suite 500
                                                          San Francisco, CA 94102-3275
                                                          Telephone:   (415) 568-2555
                                                          Facsimile:    (415) 568-2556
                                                          waudet@audetlaw.com

                                                          **Co-Lead Counsel for Plaintiffs**
                                                          **and the Settlement Class**

22

Robert K. Shelquist
LOCKRIDGE GRINDAL NAUEN, PLLP
100 Washington Avenue S., Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
rkshelquist@locklaw.com

Edward A. Wallace
Amy E. Keller
WEXLER WALLACE, LLP
55 West Monroe, Suite 3300
Chicago, IL 60603
Telephone:  (312) 346-2222
Facsimile:  (312) 346-0022
eaw@wexlerwallace.com
aek@wexlerwallace.com

Brendan S. Thompson
CUNEO GILBERT & LADUCA, LLP
507 C Street, NE
Washington, DC 20002
Telephone:  (202) 789-3960
brendant@cuneolaw.com

Joseph G. Sauder
MCCUNEWRIGHT, LLP
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone:  (610) 727-3967
jgs@mccunewright.com

Kevin D. Bloom
BLOOM & BLOOM, P.C.
530 Blooming Grove Turnpike
New Windsor, NY 12550
Telephone:  (845) 561-6920
Facsimile:  (845) 561-0978
kbloom@hvc.rr.com

Joel R. Rhine
RHINE MARTIN LAW FIRM, P.C.
1612 Military Cutoff, Suite 300
Wilmington, NC 28403
Telephone:  (910) 772-9960

Facsimile:   (910) 772-9062
jrr@rhinelawfirm.com
Daniel C. Levin
LEVIN, FISHBEIN, SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone:  (215) 592-1500
dlevin@lfsblaw.com

Jonathan Shub
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone:  (215) 238-1700
Facsimile:  (215) 238-1968
jshub@kohnswift.com

Richard J. Burke
QUANTUM LEGAL, LLC
1010 Market Street, Suite 1310
St. Louis, MO 63101
Telephone:  (847) 433-4500
richard@qulegal.com

Robert N. Isseks
6 North Street
Middletown, NY 10940
Telephone:  (845) 344-4322
Facsimile:  (845) 341-1760
isseks@isseksandsmith.com

Jean S. Martin
LAW OFFICE OF JEAN SUTTON MARTIN, PLLC
2018 Eastwood Road, Suite 225
Wilmington, NC 28405
Telephone:  (910) 292-6676
Facsimile:  (888) 316-3485
jean@jsmlawoffice.com

***Additional Counsel for Plaintiffs***

23

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on January 9, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court in the United States District Court for the Northern District of Illinois by using the CM/ECF system, which served copies on all interested parties registered for electronic service.

/s/ *Katrina Carroll*
Katrina Carroll

646672.1